Samuel J. Samaro, Esq. (SS9328)
Ellen W. Smith (ES6174)
**PASHMAN STEIN**
A Professional Corporation
Court Plaza South
21 Main Street
Hackensack, New Jersey 07601
(201) 488-8200
Counsel for Plaintiff,
  **N.V.E., Inc.**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| N.V.E., INC.,<br><br>          Plaintiff,<br><br>v.<br><br>JESUS J. PALMERONI a/k/a JOSEPH PALMERONI, RONALD SUMICEK, SUNBELT MARKETING, ABC CORPORATIONS 1-10, and JOHN DOES 1-10,<br><br>          Defendants. | CIVIL ACTION NO.  cv<br><br>"Electronically Filed"<br><br>**COMPLAINT**<br>**JURY DEMAND** |

Plaintiff, N.V.E., Inc.[1], by and through its attorneys, Pashman Stein, A Professional Corporation, by way of complaint against defendants Jesus J. Palmeroni a/k/a Joseph Palmeroni, Ronald Sumicek, Sunbelt Marketing, ABC Corporations 1-10 and John Does 1-10, says:

### NATURE OF THE ACTION

1.  These claims for relief are brought by Plaintiff in connection with a scheme devised by Defendants to defraud N.V.E., Inc. and to steal monies from N.V.E., Inc. through the

---

[1] N.V.E., Inc. filed a voluntary petition under Chapter 11 of the Bankruptcy Code on 8/10/05, which matter is currently pending in the United States Bankruptcy Court, Case No. 05-35692(NLW).  N.V.E., Inc. continues to operate as debtor and debtor-in-possession.

creation of false brokerage accounts and the fraudulent collection of commissions for those accounts. The relief sought includes actual, punitive and treble damages resulting from the scheme to defraud, an accounting, the imposition of constructive trusts with tracing, the imposition and execution of equitable liens, divestiture, restrictions on future conduct, costs of investigation and suit, interest and attorney fees.

## JURISDICTION AND VENUE

2. This action arises under 18 U.S.C. § 1964 with supplemental state claims under the New Jersey RICO statute, N.J.S.A. 2C:41-1 et seq., civil conspiracy, fraud, interference with contractual relationship, conversion, breach of contract and breach of duty of loyalty and an accounting under 28 U.S.C. § 1367.

3. This Court has jurisdiction of this action under the Organized Crime Control Act of 1970, 18 U.S.C. § 1964 (a) and (c) (Racketeer Influenced and Corrupt Organizations); 28 U.S.C. §§ 1331 (federal question); 1332 (diversity); 1337 (commerce); and under the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

4. Personal jurisdiction and venue in this action are predicated on 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965 since a substantial part of the events giving rise to the claim occurred in New Jersey.

**RELEVANT TIMES**

5.   As used herein, the phrase "at all relevant times" refers to and includes the period commencing on or about June 2000 and continuing through on or about November 2005, as the period during which Defendants and each of them continuously engaged in the wrongful acts described herein.  Plaintiff could not have discovered the wrongful acts sooner as a result of each Defendant's fraudulent concealment.

**PARTIES**

6.   Plaintiff, N.V.E., Inc. ("NVE") is a corporation organized under the laws of the State of New Jersey and is a manufacturer of nutritional supplements. Its principal place of business is located at 15 Whitehall Road, Andover, New Jersey.

7.   Defendant Jesus J. Palmeroni a/k/a Joseph Palmeroni ("Palmeroni") is a resident of the State of Pennsylvania residing at 1930 RR 715, Henryville, PA 18332.

8.   Defendant Ronald Sumicek ("Sumicek") is a resident of the State of Texas, residing at 5714 Community, Houston, TX 77005.

9.   Defendant Sunbelt Marketing ("Sunbelt") is a brokerage business which sold products of manufacturers, including NVE, to distributors and retailers and which then received commissions from the manufacturers for the sale of their products.

3

Sunbelt's principal place of business is located at 4151 S.W. Freeway, Suite 430, Houston, Texas.

10. Defendants ABC Corporations 1-10 and John Does 1-10 represent fictitious and unknown entities and persons whose conduct may have contributed to the injuries to the plaintiff, but whose identities may only become known through the course of discovery against the named defendants.

### SUBSTANTIVE FACTUAL ALLEGATIONS

11. At all relevant times, Palmeroni was employed by NVE as its National Sales Manager. As such, he occupied a position of trust and was responsible for all sales throughout the United States. Palmeroni operated out of NVE's principal place of business located in Andover, New Jersey.

12. At all relevant times, Sumicek was the owner of Sunbelt Marketing, a brokerage company which sold products of manufacturers, including NVE, to distributors and retailers and which then received commissions from the manufacturers for the sale of their products.

13. On or about January 12, 2000, Import Warehouse, Inc., located in Dallas, Texas, and owned by Rhavi Bhatia, became a distributor for NVE products. At all relevant times, Import Warehouse was a direct account of NVE and did not order its products through Sunbelt Marketing or any brokerage company.

4

14. On or about January 11, 2000, CB Distributors, Inc., located in Beloit, Wisconsin, and owned by Carlos Bengoa, M.D., became a distributor for NVE products. At all relevant times, CB Distributors was a direct account of NVE and did not order its products through Sunbelt Marketing or any brokerage company.

15. In or about 2000, Palmeroni entered into a secret arrangement, unknown to NVE, with Sumicek and Sunbelt to credit all direct orders placed by Import Warehouse and CB Distributors to Sunbelt as broker so that Sunbelt would receive a broker's commission ranging between 2.5% and 5% of each order in exchange for a kickback to Palmeroni of 50% of all such commissions received by Sunbelt on these, and possibly other, accounts. Each of the Defendants knew that the Import Warehouse and CB Distributors accounts were direct NVE accounts for which Sunbelt was not entitled to a broker's commission and that this secret arrangement was improper and unlawful. The commissions received by Sunbelt for Import Warehouse and CB Distributors purchases from 2000 to 2005 exceeded $914,500.00 to the date of the filing of this Complaint.

## THE SCHEME

16. As part of their scheme to defraud NVE, Palmeroni and Sumicek conspired, individually and collectively to induce NVE to make commission payments to Sunbelt as the broker for the Import Warehouse and CB Distributors accounts. This scheme to

defraud NVE was implemented in the District of New Jersey in the following manner:

(a) In or about December 1999, Sunbelt Marketing became a broker for NVE products. On or about January 12, 2000, Import Warehouse became a distributor for NVE products, ordering directly through NVE. On or about January 11, 2000, CB Distributors became a distributor for NVE products, ordering directly through NVE.

(b) In or about 2000, Palmeroni conspired with Sumicek to credit Sunbelt as the broker for all Import Warehouse and CB Distributors' purchases from NVE so that Sunbelt would receive commissions ranging from 2.5% - 5% on each such order in exchange for Sumicek and Sunbelt turning over 50% of said commissions to Palmeroni. At the time, Defendants knew that Palmeroni was NVE's agent, knew that Palmeroni owed a fiduciary duty to NVE and knew that the payment of said brokerage commissions to Sunbelt would be improper and unlawful. Nevertheless, Sumicek and Sunbelt agreed to pay Palmeroni and/or his designees 50% of these commissions and Palmeroni succeeded in designating Sunbelt as the broker on these accounts in NVE's records so that the broker commissions were paid to Sunbelt.

(c) As a result of Palmeroni designating Sunbelt as the broker on the Import Warehouse and CB Distributors accounts, NVE paid Sunbelt a total of $248,419.98 in broker commissions for

6

sales to Import Warehouse from 2000-2005 and a total of
$666,169.54 in broker commissions for sales to CB Distributors
from 2000-2005.  These commissions were paid by NVE to Sunbelt
by means of periodic checks mailed from New Jersey to Sunbelt's
offices in Texas throughout the relevant time period.  At the
time Sumicek and Sunbelt received these broker commission
payments, they knew that the receipt of these broker commissions
was improper and unlawful.

(d) Sumicek and Sunbelt in turn paid 50% of these broker
commissions to Palmeroni by means of cash and check payments
made to Palmeroni and various other of his designees.  These
payments were made pursuant to Palmeroni and Sumicek's secret
agreement that Sumicek and Sunbelt would pay Palmeroni and/or
his designee 50% of broker commissions received by Sunbelt for
the Import Warehouse and CB Distributors accounts.  At the time
Sumicek and Sunbelt made these payments to Palmeroni, Defendants
knew that Palmeroni was NVE's agent, knew that Palmeroni owed a
fiduciary duty to NVE and knew that the payment of such amounts
was improper and unlawful.

17.  In engaging in such conduct, Palmeroni, Sumicek and
Sunbelt would and did agree and conspire together and with others,
as yet unknown, to devise and participate in a scheme and plan of
deceit whereby they would and did abuse the position of trust and
fiduciary relationship of Palmeroni with NVE; they would and did

7

abuse the discretion granted to Palmeroni and conspired with him
to breach his obligation of undivided loyalty and fidelity and his
duty to act honestly and faithfully in the best interests of NVE
and not for his own self-interest; and they would and did use
false and fraudulent pretenses calculated to deceive persons of
ordinary prudence and due care, and make material nondisclosures
and concealments of fact and information important to NVE in
deciding whether to act in the conduct of their affairs, all so as
to unlawfully, intentionally, willfully and with intent to
defraud, that is, knowingly and with specific intent to deceive,
in order to cause financial gain to themselves, procure unlawful
commissions and divert the services, assets and profits of NVE to
the use and benefit of themselves and others and to the detriment
of NVE.

18.   At all relevant times, in connection with the activities
giving rise to this claim for relief, Palmeroni, Sumicek and
Sunbelt conspired with each other and with others yet unknown to
engage in the various activities set forth herein and aided and
abetted one another in such activities, all proscribed and
prohibited by 18 U.S.C. §1962(d).

## FACTUAL ALLEGATIONS

19.   NVE relied on Palmeroni as its national sales manager
to accurately and faithfully record sales transactions and, to
the date of the filing of this complaint, has paid brokerage

8

commissions to Sunbelt in excess of $914,500.00 on orders placed by Import Warehouse and CB Distributing.

20. In connection with the activities giving rise to this claim for relief, each of the Defendants named herein acted with malice, intent and knowledge and with a wanton and reckless disregard of the rights of NVE.

21. At all relevant times, NVE was engaged in interstate and foreign commerce in that their products were sold throughout the United States and abroad and these activities caused money, products, supplies, materials, services and individuals, which originated outside of the United States and the States of New Jersey and Texas to travel and be transported into these states.

22. At all relevant times and in furtherance and for the purpose of executing the scheme and artifices to defraud and to obtain money by means of false pretenses, Defendants, on numerous occasions, used and caused to be used mail depositories of the United States Postal Service by both placing and causing to be placed letters and other mailable matter in the depositories and by removing and causing to be removed letters and other mailable matter from the depositories, each such use of the mails in connection with the schemes and artifices to defraud and to obtain money by means of false pretenses constituting a separate and distinct violation of 18 U.S.C. § 1341.

9

23.  At all relevant times and in furtherance of and for the purposes of executing the scheme and artifices to defraud and to obtain money by false pretenses, Defendants, on numerous occasions, used and caused to be used wire communications in interstate and foreign commerce, by both making and causing to be made wire communications, each such use of a wire communication in connection with the schemes and artifices to defraud and obtain money by means of false pretenses constituting a separate and distinct violation of 18 U.S.C. § 1343.

24.  At all relevant times and in execution or concealment of the scheme and artifices to defraud and obtain money by means of false pretenses, Defendants, on numerous occasions, caused and induced persons to travel in interstate and foreign commerce and transported or caused to be transported goods and money of the value of five thousand dollars ($5,000) or more, in interstate and foreign commerce, each such use of interstate or foreign commerce in the execution or concealment of the scheme or artifice to defraud constituting a separate and distinct violation of 18 U.S.C. § 2314.

25.  The activities of the various Defendants in the formation and execution of the scheme to defraud NVE had a pervasive and debilitating impact on NVE's affairs and efforts to participate and compete successfully in commerce in the

various states of the United States.  The time of NVE's
management personnel and legal counsel was diverted from other
potentially profitable ventures and misspent on the various
projects described herein.  Services and assets of NVE were not
only diverted into purposes that served the best interests of
others and not those of NVE, but they were not then available
for alternative uses and opportunities.  Additional services and
assets have had to be employed to keep these projects profitable
or to keep them from becoming unduly unprofitable.  As such,
Plaintiff has been and is being not only directly injured in
their property by having to pay brokerage commissions that it
would not have had to without the breach of fiduciary duty and
the failure of the various Defendants to account for their
secret profits, but it also has been and is distinctly being
injured in its business, that is, the activity of investing in
various business opportunities.

### FIRST CAUSE OF ACTION
### RACKETEER INFLUENCED AND CORRUPT
### ORGANIZATIONS STATUTE
### (Federal Civil RICO Substance and Conspiracy)

26.  NVE incorporates herein by reference Paragraphs 1
through 25 above as though fully set forth herein.

27.  NVE is a "person" within the meaning of 18 U.S.C. §§
1961(3) and 1964(c).

28.  Palmeroni, Sumicek and Sunbelt are "persons" within
the meaning of 18 U.S.C. §§ 1961(3).

11

29.  Palmeroni, Sumicek and Sunbelt are a group associated in fact and thus an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and (d).  Said enterprise has a hierarchical structure and differentiated roles of its participants, with Palmeroni managing the criminal enterprise through his actions as the inside man in the fraudulent scheme.

30.  The criminal enterprise set forth above engaged in activities which affected interstate commerce, within the meaning of 18 U.S.C. § 1962(c).

31.  Palmeroni, Sumicek, Sunbelt and others yet unknown conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs, and conspired to do so through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B) and (5) to wit:

    (a)  Multiple instances of mail fraud in violation of 18 U.S.C. § 1341;

    (b)  Multiple instances of wire fraud in violation of 18 U.S.C. § 1343; and

    (c)  Multiple instances of transportation fraud in violation of 18 U.S.C. § 2314.

32.  NVE was directly and distinctly injured by Palmeroni, Sumicek and Sunbelt Marketing in its business and property in an as yet undetermined amount by reason of a violation of 18 U.S.C. § 1962(c) and (d) committed by Palmeroni, Sumicek and Sunbelt.

12

**SECOND CAUSE OF ACTION**
**RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS STATUTE**
**(Federal Civil RICO Substance and Conspiracy)**

33. NVE incorporates herein by reference Paragraphs 1 through 32 above as though fully set forth herein.

34. NVE is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

35. Palmeroni, Sumicek and Sunbelt are "persons" within the meaning of 18 U.S.C. §§ 1961(3).

36. NVE is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and (d).

37. Palmeroni, Sumicek and Sunbelt were each employed by or associated with NVE, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce within the meaning of 18 U.S.C. § 1962(c) and (d).

38. With respect to the secret agreement among the Defendants to defraud NVE of brokerage commissions, Palmeroni, Sumicek and Sunbelt conspired to, within the meaning of 18 U.S.C. § 1962(d) and did conduct or participate, directly or indirectly, in the conduct of NVE's affairs in a fashion prohibited by 18 U.S.C. § 1962(c) through a pattern of activity defined by 18 U.S.C. §§ 1961(1)(B) and (5), to wit:

    (d) Multiple instances of mail fraud in violation of 18 U.S.C. § 1341;

  (e) Multiple instances of wire fraud in violation of 18 U.S.C. § 1343; and

  (f) Multiple instances of transportation fraud in violation of 18 U.S.C. § 2314.

  39. NVE was directly and distinctly injured by Palmeroni, Sumicek and Sunbelt Marketing in its business and property in an as yet undetermined amount by reason of a violation of 18 U.S.C. § 1962(c) and (d) committed by Palmeroni, Sumicek and Sunbelt.

**THIRD COUNT**
**NEW JERSEY RACKETEER INFLUENCED AND**
**CORRUPT ORGANIZATIONS ACT**
**(New Jersey Civil RICO Substantive)**

  40. NVE incorporates herein by reference Paragraphs 1 through 39 above as though fully set forth herein.

  41. NVE is a "person" within the meaning of N.J.S.A. 2C:41-1(b).

  42. Palmeroni, Sumicek and Sunbelt are "persons" within the meaning of N.J.S.A. 2C:41-1(b).

  43. Palmeroni, Sumicek and Sunbelt are a group associated in fact and thus an "enterprise" within the meaning of N.J.S.A. 2C:41-1(c).  Said enterprise has a hierarchical structure and differentiated roles of its participants, with Palmeroni managing the criminal enterprise through his actions as the inside man in the fraudulent scheme.

44.  The criminal enterprise set forth above engaged in activities which affected trade or commerce, within the meaning of N.J.S.A. 2C:41-1(h).

45.  With respect to the secret agreement among the Defendants to defraud NVE of brokerage commissions, Palmeroni, Sumicek and Sunbelt participated in a pattern of racketeering activity including, but not limited to theft by deception, N.J.S.A. 2C:20-4 and falsifying and tampering with the records of NVE in violation of N.J.S.A. 2C:21-4 as well as conduct defined as "racketeering activity" under 18 U.S.C. § 1961(1)(B), pursuant to of N.J.S.A. 2C:41-1(a)(2).

46.  NVE was directly and distinctly injured by Palmeroni, Sumicek and Sunbelt Marketing in its business and property in an as yet undetermined amount by reason of the racketeering activities of Palmeroni, Sumicek and Sunbelt.

### FOURTH CAUSE OF ACTION
### CORRUPT ORGANIZATIONS ACT
### (New Jersey Civil RICO Substantive)

47.  NVE incorporates herein by reference Paragraphs 1 through 46 above as though fully set forth herein.

48.  NVE is a "person" within the meaning of N.J.S.A. 2C:41-1(b).

49.  Palmeroni, Sumicek and Sunbelt are "persons" within the meaning of N.J.S.A. 2C:41-1(b).

50.   NVE is an "enterprise" within the meaning of N.J.S.A. 2C:41-1(c).

51.   Palmeroni, Sumicek and Sunbelt were each employed by or associated with NVE, an enterprise engaged in, and the activities of which affected trade or commerce.

52.   Palmeroni, Sumicek and Sunbelt participated through a pattern of racketeering activity extending from in or about 2000 to 2005, directly and indirectly, in the affairs of NVE in violation of N.J.S.A. 2C:41-2(c).

53.   With respect to the secret agreement among the Defendants to defraud NVE of brokerage commissions, Palmeroni, Sumicek and Sunbelt participated in a pattern of racketeering activity including, but not limited to theft by deception, N.J.S.A. 2C:20-4 and falsifying and tampering with the records of NVE in violation of N.J.S.A. 2C:21-4 as well as conduct defined as "racketeering activity" under 18 U.S.C. § 1961(1)(B), pursuant to of N.J.S.A. 2C:41-1(a)(2).

54.   NVE was directly and distinctly injured by Palmeroni, Sumicek and Sunbelt Marketing in its business and property in an as yet undetermined amount by reason of the racketeering activities of Palmeroni, Sumicek and Sunbelt.

**FIFTH COUNT**
**NEW JERSEY RACKETEER INFLUENCED AND**
**CORRUPT ORGANIZATIONS ACT**
**(New Jersey Civil RICO Conspiracy)**

55.   NVE incorporates herein by reference Paragraphs 1 through 54 above as though fully set forth herein.

56.   Defendants Palmeroni, Sumicek and Sunbelt, in their individual capacities and for their individual interests, engaged in the formation and operation of a conspiracy in which Defendants would abuse the fiduciary relationship and trust between Palmeroni and NVE; Defendants would abuse the discretion granted to Palmeroni by NVE; Defendant Palmeroni would breach his obligation of undivided loyalty and fidelity to NVE; and Defendants would alter the records of NVE so as to make material misrepresentations with the intent of defrauding NVE.

57.   Defendants Palmeroni, Sumicek and Sunbelt, committed wrongful acts pursuant to the conspiracies to defraud NVE, including, but not limited to, Defendants' actual abuse of the fiduciary relationship and trust between Palmeroni and NVE; Palmeroni's breach of his obligation of undivided loyalty and fidelity to NVE; and Defendants' knowing, intentional and willful misrepresentations of material fact in order to defraud NVE.

58.   Said actions were taken by Palmeroni, Sumicek and Sunbelt in furtherance of the conspiracy to violate N.J.S.A.

2C:41-2(b) and (c) and constitute a violation of N.J.S.A. 2C:41-2(d).

59.   NVE was directly and distinctly injured by Palmeroni, Sumicek and Sunbelt Marketing in its business and property in an as yet undetermined amount by reason of the racketeering activities of Palmeroni, Sumicek and Sunbelt.

### SIXTH CAUSE OF ACTION
#### FRAUD

60.   NVE incorporates herein by reference Paragraphs 1 through 59 above as though fully set forth herein.

61.   In engaging in the secret agreement to defraud NVE of brokerage commissions, Palmeroni, Sumicek and Sunbelt fraudulently misrepresented that Sunbelt was the broker for the Import Warehouse and CB Distributing accounts so that NVE would make payments of brokerage commissions to Sunbelt that were then shared with Palmeroni.

62.   Defendants actively concealed, through change of NVE's records or otherwise, that Sunbelt was not entitled to these brokerage commissions.

63.   Defendants had sole knowledge and/or access to material facts and knew that these facts were not known to or reasonably discoverable by NVE.

64.   Defendants intentionally and knowingly led NVE to believe that Sunbelt was entitled to these brokerage commissions

18

with the intent to induce NVE to continue to pay these fraudulent brokerage commissions.

65.  As a result of Defendants' fraudulent misrepresentations and in justifiable reliance thereon, NVE was induced to pay brokerage commissions to Sunbelt on orders placed by Import Warehouse and CB Distributing.

66.  In doing the acts herein alleged, Defendants acted with oppression, fraud and malice and subjected NVE to unjust hardship in conscious disregard of NVE's rights. NVE was directly and distinctly injured by Palmeroni, Sumicek and Sunbelt Marketing in its business and property in an as yet undetermined amount by reason of the fraudulent misrepresentations and omissions of material fact by the Defendants.

## SEVENTH CAUSE OF ACTION
### CIVIL CONSPIRACY

67.  NVE incorporates herein by reference Paragraphs 1 through 66 above as though fully set forth herein.

68.  Palmeroni, Sumicek and Sunbelt knowingly and purposefully agreed to defraud NVE to secure broker commissions and acted in concert to commit the unlawful acts asserted above, thereby causing damage to NVE.

69.  NVE was directly and distinctly injured by Palmeroni, Sumicek and Sunbelt Marketing in its business and property in an

19

as yet undetermined amount by reason of the wrongful and unlawful acts of the Defendants.

### EIGHTH CAUSE OF ACTION
#### CONVERSION

70.   NVE incorporates herein by reference Paragraphs 1 through 69 above as though fully set forth herein.

71.   The activities of Palmeroni, Sumicek and Sunbelt constituted the common law tort of conversion by the Defendants against NVE, the conversion being willful.

72.   NVE has sustained and will continue to sustain substantial damages as a result of the conversion in an amount that is presently undetermined.

### NINTH CAUSE OF ACTION
#### INTERFERENCE WITH PROPERTY RIGHTS

73.   NVE incorporates herein by reference Paragraphs 1 through 72 above as though fully set forth herein.

74.   The activities of Palmeroni, Sumicek and Sunbelt constitute an interference with the property rights of NVE.

75.   The Defendants' interference with the property rights of NVE was willful and intentional.

76.   NVE has sustained and will continue to sustain substantial damages as a result of the Defendants' interference with it property rights in an amount that is presently undetermined.

## TENTH CAUSE OF ACTION
## BREACH OF DUTY OF LOYALTY

77.  NVE incorporates herein by reference Paragraphs 1 through 76 above as though fully set forth herein.

78.  Palmeroni, as National Sales Manager for NVE, owed NVE an obligation of undivided loyalty and fidelity and had a duty to act honestly and faithfully in the best interests of NVE and not for his own self-interest.

79.  The aforesaid acts engaged in by Palmeroni were willful and intentional and constituted a breach of his duty of loyal to NVE.

80.  NVE has sustained substantial damages as a result of Palmeroni's breach of his duty of loyalty in an amount that is presently undetermined.

## ELEVENTH CAUSE OF ACTION
## BREACH OF CONTRACT

81.  NVE incorporates herein by reference Paragraphs 1 through 80 above as though fully set forth herein.

82.  The aforesaid acts engaged in by Palmeroni were willful and intentional and constituted a breach of his contract with NVE.

83.  NVE has sustained substantial damages as a result of Palmeroni's breach of his contract in an amount that is presently undetermined.

### TWELFTH CAUSE OF ACTION
#### ACCOUNTING

84. NVE incorporates herein by reference Paragraphs 1 through 83 above as though fully set forth herein.

85. Defendants, as a result of the fraudulent conduct herein alleged, received and split brokerage commissions, which payments they were not entitled to or authorized to receive. The amount of such payments made to Defendants for the accounts of Import Warehouse and CB Distributing as well as unknown others are presently unknown to NVE.

86. NVE requests an accounting of all of the aforesaid commission payments received by Defendants, and each of them, and payment with interest of the amount due as a result of the accounting.

### THIRTEENTH CAUSE OF ACTION
#### CONSTRUCTIVE TRUST

87. NVE incorporates herein by reference Paragraphs 1 through 86 above as though fully set forth herein.

88. As a result of the wrongful acts of the Defendants, the Defendants have been unjustly enriched.

89. NVE requests that the Court impose a constructive trust upon the monies received by the Defendants through implementation of their fraudulent scheme and require Defendants to account for and return all such monies to NVE.

22

## PRAYER FOR RELIEF

**WHEREFORE**, NVE prays that judgment be entered against Defendants Palmeroni, Sumicek and Sunbelt, as follows:

### A.  Monetary Relief

1.  For damages against the Defendants, and each of them, jointly and severally, in an as yet undetermined amount duly trebled in accordance with 18 U.S.C. § 1964(c);

2.  For damages against the Defendants, and each of them, jointly and severally, in an as yet undetermined amount duly trebled in accordance with N.J.S.A. 2C:41-4(a)(8);

3.  For punitive damages, in an amount to be determined at trial, against the Defendants, and each of them, jointly and severally; and

4.  For the costs of investigation and litigation reasonably incurred, as well as attorney fees in accordance with 18 U.S.C. § 1964(c).

### B.  Equitable Relief

1.  An accounting of all benefits, consideration and profits received and/or paid, directly or indirectly, including, but not limited to, the imposition of constructive trusts with tracing;

2.  The imposition and execution of equitable liens;

3.   Orders of divesture of any interest, including real or personal property, money, or obligations or otherwise, wrongfully obtained, directly or indirectly, from NVE; and

4.   Any restrictions that may be appropriate on the future conduct or activities of any person.

### C.   Other Relief

For such other damages, relief and pre- and post-judgment interest as the Court may deem just and proper to award NVE complete relief.

### JURY DEMAND

Pursuant to F.R.Civ.P.38, Plaintiff hereby demands a trial by jury on each and every issue so triable.

**PASHMAN STEIN**
A Professional Corporation


Dated:  November 15, 2006     By:   s/Ellen W. Smith
                                    ELLEN W. SMITH (ES6174)
                                    SAMUEL J. SAMARO (SS9328)


**PASHMAN STEIN**
A Professional Corporation
Court Plaza South
21 Main Street
Hackensack, New Jersey 07601
(201) 488-8200
esmith@pashmanstein.com
ssamaro@pashmanstein.com