BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
144 N. Beverwyck Road, # 187
Lake Hiawatha, New Jersey 07034
(973) 335-6409
        - and -
GREEN, SAVITS & LENZO, LLC
35 Airport Road – Suite 350
Morristown, New Jersey 07960
(973) 695-7777
Attorneys for defendant/third party plaintiff
JESUS J. PALMERONI

               UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW JERSEY

-----------------------------------X
N.V.E., INC.,                      :        Civil Action No.:
                                            2:06-CV-05455(HAA)(ES)
          Plaintiff,               :

     - v. -                        :        **MOTION DATE:**
                                            *October 22, 2007*

JESUS J. PALMERONI, a/k/a Joseph   :
Palmeroni, RONALD SUMICEK, SUNBELT :        ***ORAL ARGUMENT REQUESTED***
MARKETING, ABC CORPORATIONS 1-10   :
and JOHN DOES 1-10,

                                   :        **MEMORANDUM OF LAW**
          Defendants.                       **IN SUPPORT OF**
                                   :        **DEFENDANT PALMERONI'S**
-----------------------------------X        **MOTION TO DISMISS**
JESUS J. PALMERONI,                :

          Third-party plaintiff,   :

     - v. -                        :

ROBERT OCCHIFINTO and WALTER       :
ORCUTT,
                                   :
          Third-party defendants.
                                   :
-----------------------------------X

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . .   iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . .   1

FACTS . . . . . . . . . . . . . . . . . . . . . .   3

ARGUMENT. . . . . . . . . . . . . . . . . . . . .   9

I.   OVERVIEW OF RELEVANT BANKRUPTCY LAW. . . . . .   9

II.  THIS COURT LACKS JURISDICTION OVER ALL OF
     PLAINTIFF'S CLAIMS . . . . . . . . . . . . . .   16

III. PLAINTIFF IS JUDICIALLY ESTOPPED FROM
     CONTENDING IN THIS COURT THAT IT HOLDS ANY
     PRE-PETITION CLAIMS. . . . . . . . . . . . . .   18

IV.  THIS PLAINTIFF LACKS STANDING TO ASSERT THE
     PRE-PETITION CLAIMS, WHICH MUST ACCORDINGLY
     BE DISMISSED PURSUANT TO RULE 12(b)(6) . . . .   22

     A.   UNLESS PLAINTIFF CAN DEMONSTRATE
          OWNERSHIP OF THE PRE-PETITION CLAIMS,
          THEY MUST BE DISMISSED FOR WANT OF
          STANDING PURSUANT TO RULE 12(b)(6). . . .   23

     B.   THE PRE-PETITION CLAIMS WERE NOT "DEALT
          WITH" BY THE PLAN, PRECLUDING A
          REVESTING IN NVE. . . . . . . . . . . . .   24

     C.   THE PRE-PETITION CLAIMS WERE NOT
          ABANDONED AND REMAIN ESTATE PROPERTY. . .   28

V.   THIS PLAINTIFF IS NOT THE REAL PARTY IN
     INTEREST AS TO THE PRE-PETITION CLAIMS . . . .   29

CONCLUSION. . . . . . . . . . . . . . . . . . . .   29

# TABLE OF AUTHORITIES

## *Cases*

*Carr v. Michigan Real Estate Ins. Trust*
*(In re Michigan Real Estate Ins. Trust)*,
87 B.R. 447 (Bankr. E.D. Mich. 1987) . . . . . .   11, 16, 23

*Chmil v. Rulisa Operating Co. (In re Tudor*
*Assocs.)*, 64 B.R. 656 (E.D. N.C. 1986) . . . . .   12-13

*First Nat'l Bank v. Lasater,* 196 U.S. 115,
49 L. Ed. 408, 25 S. Ct. 206 (1905). . . . . . .   23

*J. Fitzpatrick & Co. v. Solna*, 1991 U.S. Dist.
LEXIS 13122 (Sept. 5, 1991 D.N.J.) . . . . . . .   29

*Krank v. Utica Mutual Ins. Co.*, 109 B.R. 668
(E.D. Pa.), *aff'd*, 908 F.2d 962 (3d Cir. 1990) .   28

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v.*
*General Motors Corp.,* 337 F.3d 314 (3d Cir.
2003), *cert. denied*, 2004 U.S. LEXIS 3429
(U.S. May 7, 2004) . . . . . . . . . . . . . . .   14, 19-22,
                                                   25, 26, 27

*Kunica v. St. Jean Financial, Inc.*,
233 B.R. 46 (S.D.N.Y. 1999). . . . . . . . . . .   11, 15, 24,
                                                   25-26

*Minnesota Mining & Mfg. Co. v. Plymouth*
*Rubber Co.*, 178 F. Supp. 591 (N.D. Ill. 1959). .   27

*Official Committee of Unsecured Creditors of*
*Cybergenics Corp. v. Chinery (In re Cybergenics*
*Corp.)*, 226 F.3d 237 (3d Cir. 2000). . . . . . .   12, 13

*Oneida Motor Freight, Inc. v. United Jersey*
*Bank*, 848 F.2d 414 (3d Cir.), *cert. denied*,
488 U.S. 967, 109 S. Ct. 495, 102 L. Ed.2d
532 (1988) . . . . . . . . . . . . . . . . . . .   19

*Pelham v. United States*, 661 F. Supp. 1063
(D.N.J. 1987) . . . . . . . . . . . . . . . . .   17

*Stein v. United Artists Corp.*, 691 F.2d 885
(9th Cir. 1982) . . . . . . . . . . . . . . . .   23-25, 26, 27,
                                                  28-29

## *Statutes*

11 U.S.C. § 101 . . . . . . . . . . . . . . . . .   10

11 U.S.C. § 301 . . . . . . . . . . . . . . . . .   10

11 U.S.C. § 321 . . . . . . . . . . . . . . . . .   13

11 U.S.C. § 521(a) . . . . . . . . . . . . . . .   5

11 U.S.C. § 541(a) . . . . . . . . . . . . . . .   11

11 U.S.C. § 554 . . . . . . . . . . . . . . . . .   15, 28

11 U.S.C. § 726 . . . . . . . . . . . . . . . . .   12

11 U.S.C. § 727 . . . . . . . . . . . . . . . . .   12

11 U.S.C. § 1107(a) . . . . . . . . . . . . . . .   13

11 U.S.C. § 1108 . . . . . . . . . . . . . . . .   6

11 U.S.C. § 1121 . . . . . . . . . . . . . . . .   13

11 U.S.C. § 1125 . . . . . . . . . . . . . . . .   13-14, 25

11 U.S.C. § 1125 . . . . . . . . . . . . . . . .   14

11 U.S.C. § 1141(c) . . . . . . . . . . . . . . .   15, 24

## *Court Rules*

Fed. R. Bankr. Proc. 1007 . . . . . . . . . . .   10

Fed. R. Bankr. Proc. 1008. . . . . . . . . . . .   10

Fed. R. Bankr. Proc. 1009. . . . . . . . . . . .   10

Fed. R. Bankr. Proc. 7001. . . . . . . . . . . .   7

Fed. R. Civ. Proc. 12(b)(1). . . . . . . . . . .   18

Fed. R. Civ. Proc. 12(b)(6). . . . . . . . . . .   22-23, 26, 27

Fed. R. Civ. Proc. 17(a) . . . . . . . . . . . .   29

<u>*Other*</u>

Standing Order of the U.S. Court for the
District of New Jersey dated July 23, 1984 . . .   16

9A Am. Jur.2d *Bankruptcy* . . . . . . . . . . . .   12

59 Am. Jur.2d *Parties* § 37 (2002). . . . . . . .   27

Defendant JESUS J. PALMERONI, by and through his counsel, hereby submits this Memorandum of Law in support of his motion to dismiss all claims asserted against him in the Complaint.

<u>PRELIMINARY STATEMENT</u>

This action is intertwined with plaintiff's bankruptcy proceeding; this motion requires consideration of bankruptcy issues.  Bankruptcy permits a bankrupt to free itself from all of its debts.  To achieve this end, the bankrupt must surrender all of its assets to its creditors.  The process is governed by statute and court rule, and occurs under court supervision.  The relevant law provides that upon the institution of a bankruptcy action, the bankrupt's assets cease to be the bankrupt's property.  The new owner of those assets is a temporary entity called a bankruptcy estate, which exists for the benefit of the bankrupt's creditors.  The assets contained in the bankruptcy estate are ultimately distributed to those creditors, whose claims against the bankrupt are thereby extinguished.

In a typical bankruptcy, the bankrupt's debts significantly exceed its assets.  The creditors therefore receive less than the amount they would be entitled to receive in the absence of bankruptcy.  For instance, in the bankruptcy of the present plaintiff, N.V.E., Inc. ("NVE"), its unsecured creditors are to receive only 35% of the amounts due them.

1

To protect the creditors from being short-changed more than is necessary and to ensure the integrity of the bankruptcy process, bankruptcy law takes pains to ensure that a bankrupt discloses _all_ of its assets.  Unscrupulous bankrupts sometimes seek to evade these laws in one way or another.  A bankrupt owning a gold ring as of the time it files for bankruptcy is obliged by bankruptcy law to surrender that ring to the bankruptcy estate, so that the ring or proceeds from its sale may be distributed to creditors.  However, a bankrupt successfully concealing the existence of that ring from the bankruptcy court will obtain a discharge from all of its debts _without_ surrendering the gold ring.  Such a bankrupt will have thereby cheated its creditors, and will have violated the law.

Almost all of the claims in the present matter concern damages allegedly suffered by NVE before it filed for bankruptcy protection.  As such, these claims belong not to NVE but to its bankruptcy estate, and ultimately, to its creditors. NVE has concealed the existence of these claims from the bankruptcy court, and seeks to recover the proceeds of these claims for itself, rather than for NVE's creditors.  Like the bankrupt who conceals a gold ring, NVE is attempting to retain pre-bankruptcy assets for itself, thereby cheating its creditors, in violation of law.

2

To facilitate that plan, NVE has commenced this action in the District Court rather than in this District's bankruptcy court (the "Bankruptcy Court").  The District Court may not however hear the action, because a standing order of this Court provides that in the absence of contrary court order, the action may be heard only in the Bankruptcy Court.  While defendant Palmeroni lacks standing to complain of the fraud being perpetrated on NVE's creditors, he surely has standing to seek dismissal of the action based on this Court's lack of subject matter jurisdiction.  He likewise has standing to move for dismissal of the claims against him on the ground that they are not owned by the present plaintiff.  And he has standing to urge that this plaintiff, which has already advised the Bankruptcy Court under oath that it holds no claims arising prior to bankruptcy, is judicially estopped from asserting any such pre-bankruptcy claims in another forum, such as this Court.

Palmeroni moves for dismissal of the action on all of these bases.

## FACTS

(As a number of the facts relevant to this motion concern events occurring in NVE's bankruptcy action, an overview of relevant bankruptcy law and procedures appears below in the "Legal Argument" section of this Memorandum of Law.)

During the relevant period, Mr. Palmeroni was an NVE employee. *See* Complaint, a copy of which is annexed to the accompanying Declaration of Neil Grossman ("Grossman Declaration") as Exhibit A, at Paragraph 11. The Complaint alleges that defendants schemed to obtain commission payments from NVE to which they were not entitled, *id.* at Paragraph 16, by having NVE make unwarranted payments to defendant Sunbelt Marketing ("Sunbelt") in an aggregate amount approximating $914,500, *id.* at Paragraph 15. Defendants are alleged to have then divided these improper commissions among themselves. The Complaint alleges that this scheme was perpetrated starting in June 2000 and continuing until November 2005, *id.* at Paragraph 5.

Near the very end of this period, specifically, on August 10, 2005, NVE filed a petition seeking bankruptcy protection with the Bankruptcy Court (copies of relevant excerpts of this petition, as subsequently amended (the "Bankruptcy Petition"), are annexed to the Grossman Declaration as Exhibit B). NVE's filings in its bankruptcy action reveal that NVE made only two payments to Sunbelt, aggregating approximately $47,000, between the commencement of bankruptcy on August 10, 2005 and November, 2005, the alleged scheme's end date. *See* Grossman Declaration Paragraph 4 and Exhibit C. It follows that of the approximately $914,500 in supposedly improper payments made by NVE to Sunbelt

4

according to the Complaint, approximately $867,500 in payments were made *prior* to bankruptcy.  NVE seeks in this action among other things to recover for itself -- not for its bankruptcy estate, *see* discussion *infra* -- this $867,500 together with treble damages (NVE's claims for such an award will be referred to herein as the "Pre-Petition Claims").  The Pre-Petition Claims therefore have a potential value of more than $2.6 million.

On September 26, 2005, NVE's president, Mr. Robert Occhifinto, swore to the accuracy of schedules to the Bankruptcy Petition setting forth, among other things, NVE's assets.  *See* Bankruptcy Petition, Grossman Declaration Exhibit B, at its final page.  The Pre-Petition Claims are identified nowhere in these schedules; to the contrary, Item 20 of Schedule B, listing NVE's property, specifically states that NVE at the time of bankruptcy held no contingent or unliquidated claims of any kind.  To be sure, the plaintiff's position is that it did not discover the existence of the present claims until after bankruptcy was filed.  However, while NVE's Bankruptcy Petition was amended during the course of the bankruptcy action for other reasons, it was never amended to note the existence of the present claims, despite NVE's duty to schedule all of its assets, 11 U.S.C. § 521(a).  Nor does it appear despite inquiry to NVE's counsel, *see* Grossman Declaration Paragraph 5 and Exhibit D, that the existence of

these claims was revealed in any other filing in NVE's bankruptcy
action.

NVE's Bankruptcy Petition sought reorganization of its
affairs under Chapter 11 of the Bankruptcy Code.  That is, and as
is discussed more fully below, NVE sought to reach agreement with
its creditors by making partial payments of the amounts due them
in exchange for full discharge of NVE's debts, following which
NVE would enjoy a post-bankruptcy existence.  As is typical in
such reorganization bankruptcies, NVE was permitted to continue
operating its business during the pendency of bankruptcy, and was
accordingly appointed "debtor in possession" pursuant to 11
U.S.C. § 1108, *see* Certificate of Retention of Debtor In
Possession, a copy of which is annexed to the Grossman
Declaration as Exhibit E; NVE in its capacity as debtor-in-
possession shall be referred to herein as the "DIP**).**

In February of 2006, Daniel Stolz, Esq., counsel for the
DIP, applied to the Bankruptcy Court for permission to employ the
firm of Pashman Stein, P.C. ("Pashman") "to represent it in
connection with a current labor and employment matter and future
labor and employment matters" , *see* Application, Grossman
Declaration Exhibit F.  Pashman submitted a supporting
certification stating that it wished to be appointed NVE's "labor
and employment counsel", *id.*  The application nowhere indicates

6

in either document that Pashman was to represent NVE in relation to any *past* matters; rather, it referred specifically to *current* and *future* labor and employment matters.  Nowhere did either of these documents reveal the existence of the $2.6 million Pre-Petition Claims, of NVE's desire to pursue them, or of NVE's desire to obtain a recovery for itself, rather than for NVE's Bankruptcy Estate.

The DIP's application to employ Pashman was granted, *see* Order dated May 4, 2006, a copy of which is annexed to the Grossman Declaration as Exhibit G.  While the DIP prosecuted other claims held by NVE as of the date it filed for bankruptcy by commencing adversary proceedings in the Bankruptcy Court pursuant to Fed. R. Bankr. Proc. 7001, Grossman Declaration Paragraph 6, it commenced no such adversary proceeding addressing the present Pre-Petition Claims.  Instead, Pashman instituted this action in the United States District Court on November 15, 2006.  Complaint, Grossman Declaration Exhibit A.

Defendant counsel, believing such an action might be commenced only in the Bankruptcy Court, repeatedly asked Pashman to explain why this action had been commenced instead in the District Court.  In response, Pashman and DIP counsel Stolz provided only oral assurances that the Bankruptcy Court had provided proper authorization, Grossman Declaration Paragraphs 7.

7

Ultimately, at court on June 29, 2007, Pashman presented counsel with the May 4, 2006 Order permitting its retention as counsel, Grossman Declaration Paragraph 7 and Exhibit G, as evidence that the Bankruptcy Court had authorized the filing of the present action in the District Court.

In April 2007, the DIP put forward a proposed bankruptcy plan (the "Plan", relevant excerpts of which are annexed to the Grossman Declaration as Exhibit H) accompanied by a statutorily required disclosure statement (the "Disclosure Statement", a copy of which is annexed to the Grossman Declaration as Exhibit I) in accordance with 11 U.S.C. § 1125.  According to the Disclosure Statement, NVE's bankruptcy had been prompted by a wave of over 110 product liability lawsuits to which NVE was made party because of its manufacture of products containing ephedra, a substance that came to be banned by the U.S. Food and Drug Administration, *id.* at 6-7.  The Disclosure Statement also indicated that NVE "had commenced a series of actions during the course of the Chapter 11 case", *id.* at 38.  Only one such action was identified with any specificity; the present action was not. Nor did the Disclosure Statement reveal that NVE was pursuing a claim outside of the Bankruptcy Court; nor did the Disclosure Statement reveal that NVE is presently seeking more than $2.6 million in pre-petition damages by means of this action.

8

The proposed Plan and the Disclosure Statement provide that $21.25 million (to be supplied by NVE and others) will be paid to all of the litigants in the ephedra matters as part of a global settlement of their claims, and that NVE's other unsecured creditors will accept only 35 cents on the dollar in satisfaction of their claims against NVE. *See* summary chart in Disclosure Plan, Grossman Declaration Exhibit I, at its pages 5-6. The Plan provides also that upon its confirmation, all of NVE's property not disposed of by the Plan shall revest in NVE, and that "any rights or causes of action owned by or accruing in favor of the Debtor [i.e., NVE], whether or not previously asserted, shall also revest with the Debtor." Plan, Grossman Declaration H, at its pages 27-28, Section 10.1. The Plan was confirmed by the Bankruptcy Court on August 22, 2007, *see* Notice of Confirmation, Grossman Declaration Exhibit J.

NVE thus appears to have successfully concealed the existence of the Pre-Petition Claims from their rightful owners, NVE's creditors, and to have nevertheless obtained a discharge of indebtedness. However that may be, NVE's conduct prevents it from proceeding in this Court, and from pursuing the Pre-Petition Claims in any court.

**ARGUMENT**

I.   OVERVIEW OF RELEVANT BANKRUPTCY LAW

9

The Bankruptcy Code uses the term "debtor" to refer to the party that is the subject of the bankruptcy case, 11 U.S.C. § 101(13). Broadly speaking, and subject to many exceptions, the bankruptcy process is one under which a debtor surrenders all of its property to its creditors, in exchanged for being discharged from all of its debts, even if those debts have not been satisfied in full.  This arrangement often leaves a creditor with less money than it has contracted to receive, or than it would otherwise have been legally entitled to receive in the absence of bankruptcy.  The Bankruptcy Code and Rules were accordingly drafted to require full disclosure of a debtor's assets and proper management of those assets during bankruptcy proceedings.

A voluntary bankruptcy such as that commenced by NVE is instituted by the debtor's filing of a petition in a bankruptcy court.  11 U.S.C. § 301.  This petition is the debtor's sworn statement, Fed. R. Bankr. Proc. 1008, providing a host of information regarding the debtor's financial condition, including all of its assets and all of its liabilities.  Fed. R. Bankr. Proc. Bankruptcy Rule 1007(b).  The petition may be amended at any time prior to the close of the bankruptcy case, Fed. R. Bankr. Proc. 1009.  Accordingly, should the debtor come to discover that it possesses an asset of which it was not aware at

the time the bankruptcy was commenced, it has a duty to amend its bankruptcy petition accordingly, and the means to do so.

By filing a bankruptcy petition, a debtor creates a "bankruptcy estate", which includes at a minimum "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a).  These interests include causes of action held by the debtor at the time the bankruptcy petition is filed.  *Carr v. Michigan Real Estate Ins. Trust (In re Michigan Real Estate Ins. Trust)*, 87 B.R. 447, 453 (Bankr. E.D. Mich. 1987), *citing, inter alia, In re Whiting Pools, Inc.*, 462 U.S. 198, n. 9, 103 S. Ct. 2309, 76 L. Ed. 2d 515 (1984); *In re Crevier*, 820 F.2d 1553 (9th Cir. 1987); and 4 Collier on Bankruptcy, para. 541.10 (15th ed. 1987).  "A basic tenet of bankruptcy law is that all assets of the debtor, including all pre-petition causes of action belonging to the debtor, are *assets of the bankruptcy estate that must be scheduled* for the benefit of creditors."  *Kunica v. St. Jean Financial, Inc.*, 233 B.R. 46, 52 (S.D.N.Y. 1999), *citing, inter alia, Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d Cir. 1988) (emphasis added).

NVE was accordingly required to list the present Pre-Petition Claims in its Bankruptcy Petition.  If these claims were unknown at the time bankruptcy was filed, NVE was obliged to

11

amend its Bankruptcy Petition accordingly once they became known. Moreover, because the Pre-Petition Claims are property of NVE's bankruptcy Estate rather than of NVE itself, NVE has no right to prosecute those claims on its own behalf. "Once a petition in bankruptcy is filed, the debtor lacks standing to pursue any causes of action held by him or her against third parties as of the commencement of the case, because these causes of action become part of the bankruptcy estate." 9A Am. Jur.2d *Bankruptcy* § 1108.

Broadly speaking, a bankruptcy estate represents and contains the assets that are to be turned over to the debtor's creditors in exchange for the discharge of the debtor's obligations. *See* 11 U.S.C. § 726 and § 727. Upon the creation of such an estate, it is in most bankruptcy situations turned over to an appointed fiduciary for management. "A paramount duty of . . . [the fiduciary] is to act on behalf of the bankruptcy estate, that is, for the benefit fo the creditors." *Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 243-44 (3d Cir. 2000). This duty, and the usual fiduciary duties to refrain from self-dealing and the like, are owed to both the debtor's creditors and to the bankruptcy court. *See, e.g., Chmil v. Rulisa Operating Co. (In re Tudor Assocs.)*, 64 B.R. 656, 662 (E.D. N.C. 1986)

12

(appointed fiduciary is an officer of the court owing fiduciary duties to the court as well as to creditors).

In most bankruptcy proceedings, the fiduciary appointed to manage the bankruptcy estate is called a "trustee".  A bankruptcy trustee is normally a private individual (typically, a bankruptcy attorney) well-versed in the bankruptcy process, *see* 11 U.S.C. § 321.  In reorganization bankruptcies such as that filed by NVE, however, the bankruptcy court more often permits the debtor itself to act as the fiduciary that will manage the bankruptcy estate, as a "debtor in possession".  In such cases, the debtor in possession owes the same obligations to the creditors and the court as does a bankruptcy trustee.  11 U.S.C. § 1107(a).  The debtor in possession must therefore manage the bankruptcy estate for the benefit of creditors -- not for its own benefit -- and owes a fiduciary obligation to maximize the estate's value.  *Cybergenics, supra,* 226 F.3d at 243.

A debtor in possession may propose a bankruptcy plan -- essentially, a statutorily governed settlement agreement with the debtor's creditors, *see* 11 U.S.C. § 1121 *et seq.*  Any proposed plan must be accompanied by a disclosure statement containing "adequate information" creditors will use to determine whether or not they wish to accept the plan offered.  "Adequate information" is accordingly defined as "information of a kind, and in

13

sufficient detail . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests . . . to make an informed judgment about the plan."  11 U.S.C. § 1125(a) and (b).  This requirement exists because the bankrupt's creditors are inevitably short-changed by the bankruptcy process, *see, e.g.*, NVE's Plan, Grossman Declaration Exhibit H, providing at Paragraph 4.1 that NVE's unsecured creditors will accept only 35% of their claims in exchange for discharging NVE's obligations. Creditors are entitled to a means of verifying that their loss will be no greater than circumstance requires.  Full and adequate disclosure of a debtor's assets by means of the bankruptcy petition and disclosure statement are accordingly essential to the integrity of the bankruptcy process:

> "A long-standing tenet of bankruptcy law requires one seeking benefits under its terms to satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights." Therefore, "preparing and filing a disclosure statement is a critical step in the reorganization of a Chapter 11 debtor.  It has been called by one commentator, "the pivotal concept in reorganization of a Chapter 11 debtor."

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 322 (3d Cir. 2003), *cert. denied*, 2004 U.S. LEXIS 3429 (U.S. May 7, 2004) (citations omitted).  If a bankruptcy plan cannot be agreed upon, the bankrupt entity will simply be liquidated, *see* 11 U.S.C. § 1174, and the estate corpus

14

divided among creditors.  The creditor accordingly has a right to reasonable certainty that any plan it accepts will yield a recovery at least equal to what the creditor might recover via liquidation.

There are two ways, and only two ways, *Kunica, supra,* 233 B.R. at 53, in which a Chapter 11 debtor may reacquire property it held at the commencement of bankruptcy and that it surrendered to the bankruptcy estate.  First, such reacquisition may be provided for in the bankruptcy plan, provided that such plan "dealt with" the property in question within the meaning of the relevant statute, 11 U.S.C. § 1141(c).  Second, where the fiduciary managing the bankruptcy estate determines that an item of estate property "is burdensome to the estate or . . . is of inconsequential value and benefit to the estate," 11 U.S.C. § 554(a), the fiduciary may abandon such property to the debtor after notice and hearing, *id.*

By commencing the present action, NVE has tacitly asserted its ownership of the Pre-Petition Claims, which, by operation of law, became property of the Estate upon NVE's bankruptcy filing. NVE is accordingly obliged to show that it somehow reacquired the Pre-Petition Claims from the Estate, either through abandonment, or through revesting pursuant to the Plan.

15

## II.  THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER ALL OF PLAINTIFF'S CLAIMS

By Standing Order dated July 23, 1984, the U.S. District Court for the District of New Jersey entered a Standing Order (the "Standing Order", a copy of which is annexed to the Grossman Declaration as Exhibit J) referring all bankruptcy cases filed in this District, and all cases filed in this District related to such bankruptcy cases, to the District's Bankruptcy Court.  As NVE filed a bankruptcy case in this district, and as this case is one related to NVE's bankruptcy case, the Standing Order deprives this Court of jurisdiction over this matter.

The Complaint specifically states that NVE Inc. filed a bankruptcy action on August 10, 2005 and that such bankruptcy proceeding was pending as of the date the Complaint was filed. Complaint, Grossman Declaration Exhibit A, n.1.  The Complaint also alleges a scheme that began well prior to bankruptcy and that supposedly deprived the now-bankrupt entity of hundreds of thousands of dollars. *See, generally,* Complaint, Grossman Declaration Exhibit A.  Any claim for these monies belong to NVE's bankruptcy Estate, <u>*Carr*</u>, *supra*, 87 B.R. at 453.  Both the scheme described in the Complaint that was allegedly perpetrated on the bankrupt entity and the potential recovery are thus related to the bankruptcy case filed by NVE.

16

NVE has itself admitted as much, first by noting the
existence of the bankruptcy action in the Complaint, and more
recently, in an August 6, 2007 Certification of Daniel M. Stolz,
Esq. ("Stolz Certification, a copy of which is annexed to the
Grossman Declaration as Exhibit K), which states at Paragraph 4:

> The provisions of the Bankruptcy Code . . . do not
> prohibit a Debtor in Possession from commencing actions
> outside of the Bankruptcy Court.  28 U.S.C. § 1334
> provides that the Bankruptcy Court does not have
> exclusive jurisdiction over _matters related to the_
> _Bankruptcy case_.  Therefore, despite its ongoing
> Chapter 11 case, N.V.E. was entitled to commence the
> within action before this Court.   I know of no
> obstacle to the institution of this action by N.V.E.
> before this Court.

(Emphasis supplied).  This certification by DIP counsel itself
acknowledges that the action is one related to NVE's bankruptcy
proceeding; the obstacle to instituting this action before this
Court of which counsel is unaware is the Standing Order.

In considering a motion to dismiss a complaint for want of
subject matter jurisdiction, a court must take all of the
complaint's allegations as true, but may also consider affidavits
and other materials outside the complaint.  _Pelham v. United_
_States_, 661 F. Supp. 1063, 1065 (D.N.J. 1987).   A plaintiff
bears the burden of establishing this Court's subject matter
jurisdiction over an action, even in motion practice initiated by
a defendant. _Id._  Plaintiff cannot meet its burden as it has

17

already _admitted_ in both the Complaint and the Stolz

Certification that this action is one related to a bankruptcy

case pending in this District.  The Standing Order requires that

all such actions be referred to the Bankruptcy Court -- not to

the District Court.

        While there are undoubtedly circumstances under which the

Standing's Order's reference may be withdrawn or under which the

Bankruptcy Court might abstain from hearing a referred action, no

such withdrawal or abstention has occurred, or has even been

applied for.  As this Court may not hear this action without

violating the Standing Order, the action must be dismissed for

want of subject matter jurisdiction pursuant to Fed. R. Civ.

Proc. 12(b)(1).

III. PLAINTIFF IS JUDICIALLY ESTOPPED FROM CONTENDING IN THIS
     COURT THAT IT HOLDS ANY PRE-PETITION CLAIMS

        NVE represented to the Bankruptcy Court in a never-amended

sworn statement that it possessed no claims as of the time it

filed for bankruptcy protection, _see_, Bankruptcy Petition,

Grossman Declaration Exhibit B, at Item 20.  NVE then obtained

Plan confirmation and a discharge of its indebtedness on that

basis.  NVE is accordingly judicially estopped from representing

to this Court that it _does_ possess any such claims.  That

estoppel demands dismissal of the Pre-Petition Claims.

The doctrine of judicial estoppel, "distinct from that of equitable estoppel, applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted.  Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir.), *cert. denied,* 488 U.S. 967, 109 S. Ct. 495, 102 L. Ed.2d 532 (1988) (affirming dismissal of a claim not revealed in bankruptcy proceedings but pursued by the bankrupt thereafter). The doctrine exists "to prevent a litigant from 'playing fast and loose with the courts'".  *Krystal, supra,* 337 F.3d at 319.

The doctrine of judicial estoppel applies where (a) a party takes "two positions that are *irreconcilably inconsistent*", (b) has done so "*in bad faith* -- i.e., with intent to play fast and loose with the court", (c) "*no lesser sanction would adequately remedy the damage* done by the litigant's misconduct" and (d) the offending party has been given a meaningful opportunity to provide an explanation for its change in position.  *Krystal, supra,* 337 F.3d at 319-20, *quoting Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001) (emphasis supplied by the *Krystal* court).

19

Like the present plaintiff, the plaintiff in *Krystal* may not have known of the subject claims at the time it filed its bankruptcy petition but failed to amend the petition when it learned of the claims and then failed to identify the claims properly in its disclosure statement.  *Id.*, 337 F.3d at 320-21. These facts were sufficient to permit findings that the *Krystal* plaintiff had taken "irreconcilably inconsistent" positions.  The same finding ought to be made in the present matter -- it is impossible for NVE both to hold Pre-Petition Claims, as it contends in this action, while also not holding any pre-petition claims, as it has contended before the Bankruptcy Court.  As for the bad faith requirement of judicial estoppel:

> [A] rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose.  That is precisely Krystal's position here.

*Krystal*, 337 F.3d at 321 *citing* *Oneida, supra,* 848 F.2d at 416-18.  That is also precisely NVE's position in this action.  NVE acquired knowledge of its Pre-Petition Claims no later than November 15, 2006, the date it filed its Complaint asserting them in this Court, *see* Grossman Declaration Exhibit A.  Yet NVE has never amended its bankruptcy petition to reveal their existence. Worse, NVE's Disclosure Statement filed five months later in April 2007, Grossman Declaration Exhibit I, does not identify any

20

pre-petition claims.  To state the obvious, NVE may well have been motivated to conceal these claims from their rightful owners, the creditors, so as to be able to keep any recovery for itself.  As claims have been concealed where they ought to have been disclosed, and as a motive for concealment is obvious, NVE must overcome the rebuttable presumption of bad faith referred to in _Krystal_.

But NVE must overcome more than this presumption to avoid a finding that it has played "fast and loose" with the courts. Even after all of these issues had been raised before this Court at conference, NVE has continued to maintain that the present action has somehow been authorized by the Bankruptcy Court. Indeed, Paragraph 3 of the August 7, 2007 Stolz Certification submitted to this Court, Grossman Declaration Exhibit L, states:

> By Order dated May 4, 2006, N.V.E. was authorized to employ the firm of Pashman Stein, as special counsel to the Debtor in Possession, in connection with the within litigation, commenced against Defendant, Jesus J. Palmeroni.

In fact, the relevant Order and application therefor, Grossman Declaration Exhibits F and G, merely authorize the retention of Pashman to assist in unspecified current and future employment matters.  Those documents say nothing whatsoever about this litigation, about Mr. Palmeroni, about any Pre-Petition Claims or about any assets of the Estate.  A finding that NVE has "played

21

fast and loose" with both this Court and the Bankruptcy Court may accordingly be made even without regard to the rebuttable presumption referred to in *Krystal*.

The final element of a judicial estoppel apart from the opportunity that must be given to the offender to explain itself is the severity of the sanction to be imposed.  The *Krystal* court rejected any sanction less than severe than an estoppel, as failure to apply that sanction would encourage debtors to conceal claims on the chance that they might be able to succeed in so doing, and would not suffer any penalty for trying:

> The fact that a sanction is to be used sparingly does not mean that it is not to be used when appropriate.  Applying a lesser sanction here . . . would reward Krystal for what appears to be duplicitous conduct in the course of its bankruptcy proceeding.  . . . [and] would send a message that "a debtor should consider disclosing potential assets only if he is caught concealing them."

*Krystal*, *supra*, 337 F.3d at 325.  Nothing in that reasoning appears inapplicable to the present matter.

Accordingly, unless NVE is able in opposing this motion to provide a satisfactory explanation for its conduct, the doctrine of judicial estoppel ought to be applied, and the Pre-Petition Claims stricken.

IV.  THIS PLAINTIFF LACKS STANDING TO ASSERT THE PRE-PETITION
     CLAIMS, WHICH MUST ACCORDINGLY BE DISMISSED PURSUANT TO RULE
     12(b)(6)

A.   UNLESS PLAINTIFF CAN DEMONSTRATE OWNERSHIP OF THE PRE-
PETITION CLAIMS, THEY MUST BE DISMISSED FOR WANT OF
STANDING PURSUANT TO RULE 12(b)(6)

A bankrupt's pre-petition claims against third parties are owned by the bankrupt's estate rather than by the bankrupt itself, *see, e.g., Carr, supra.*, 87 B.R. at 453.  Accordingly, where bankrupts pursue such claims after failing to disclose their existence in bankruptcy proceedings, the claims are dismissed pursuant to Rule 12(b)(6) for want of standing.

> It cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy has been finally closed up, immediately thereafter assert title to the property on the ground that the trustee had never taken any action in respect to it.  *If the claim was of value . . . it was something to which the creditors were entitled, and this bankrupt could not, by withholding knowledge of its existence, obtain a release from his debts and still assert title to the property*.

*First Nat'l Bank v. Lasater,* 196 U.S. 115, 49 L. Ed. 408, 25 S. Ct. 206 (1905) *quoted in Stein v. United Artists Corp.,* 691 F.2d 885, 891 (9th Cir. 1982) (emphasis added).   As noted in *Stein*:

> The dangers resulting from the concealment of assets are greater when the debtor remains in possession than in cases in which a third party acts as trustee. . . .  If a debtor in possession were permitted to omit claims in the bankruptcy and later assert title to them, there might be an inducement to do so, to the prejudice of the creditors' interests. Such a rule would undermine the fiduciary status of the debtor in possession.

*Stein*, 691 F.2d at 892-93 (affirming dismissal of action for want of standing pursuant to Rule 12(b)(6)).  Accordingly, unless NVE can demonstrate that it somehow reacquired the Pre-Petition Claims ceded by operation of law to NVE's bankruptcy Estate, those claims require dismissal.

There are two ways in which such reacquisition might have been effected -- revesting through the bankruptcy Plan and abandonment by the estate's fiduciary.  *Kunica, supra,* 233 B.R. at 53.  Each of these methods requires at a minimum effective disclosure of the existence of the Pre-Petition Claims to the Bankruptcy Court.  If disclosure was non-existent or inadequate, there may be neither revesting nor abandonment, nor reacquisition by NVE.

> B.    THE PRE-PETITION CLAIMS WERE NOT "DEALT WITH" BY THE PLAN, PRECLUDING A REVESTING IN NVE

11 U.S.C. § 1141(c) governs the revesting of estate property in a Chapter 11 debtor pursuant to a bankruptcy plan, and provides that such revesting can occur where the property has been "dealt with" by the plan.  Property is considered "dealt with" only where it has been "administered or listed in the bankruptcy proceedings and supervised by the bankruptcy court, and therefore only such property reverts to the bankrupt upon

termination of the bankruptcy proceedings." _Stein_, _supra,_ 691 F. 2d at 893.

The present Pre-Petition Claims may not be considered to have been "dealt with" by NVE's Plan, because they were not identified in NVE's Bankruptcy Petition; nor were they otherwise revealed to the Bankruptcy Court.  In particular, the DIP was required by statute to identify the Pre-Petition Claims in its Disclosure Statement of April 2007, Grossman Declaration, Exhibit I, which stated at 38 merely that "[t]he Debtor has commenced a series of actions during the course of the Chapter 11 case".  Such "disclosure", if it may be called that, fails to satisfy the requirement of 11 U.S.C. § 1125 that "adequate information" be provided sufficient to permit an informed judgment about the proposed Plan.  _See Krystal, supra,_ 337 F.3d at 321, finding a bankruptcy plan's description of a claim inadequate where the language employed:

> was 'little more than boilerplate.'  It did not specify any of the claims . . . much less attempt to place any monetary value on them.  We agree that such boilerplate language is simply not adequate to provide the level of notice required.  The bankruptcy rules were clearly not intended to encourage this kind of inadequate and misleading disclosure by creating an escape hatch debtors can duck into to avoid sanctions for omitting claims once their lack of candor is discovered.

_See, also_, _Kunica, supra_, 233 B.R. at 56, finding disclosure statement inadequate where debtor:

25

>merely indicated that it would retain certain
>unenumerated and unvalued causes of action against
>various unnamed third parties. These vague references
>to the Claims are insufficient, do not disclose the
>substance, nature and value of the Claims against the
>Defendants and do not override the contrary disclosures
>made in the Schedules that no claims exist. As noted by
>one court, "general retention clauses are not
>convenient hiding places for debtors. . . . The
>creditors have a right to know what the debtor's assets
>are even though the potential may be contingent,
>dependent, or conditional."

(citation omitted).  The DIP's statement that it had commenced a series of actions failed to put anybody anywhere on notice that NVE was pursuing an award exceeding $2.6 million in pre-bankruptcy damages that properly belonged to NVE's creditors.  As disclosure of the Pre-Petition Claims was patently lacking, disclosure was not "adequate" and the Pre-Petition Claims were not "dealt with" by the Plan.  *Stein*, *supra*, 691 F.2d at 892-93. Accordingly, NVE may not reacquire those claims as a result of Plan confirmation, and the Pre-Petition Claims warrant dismissal pursuant to Rule 12(b)(6).  *See, generally, Krystal, supra,* 337 F.3d 314 (affirming dismissal of a bankrupt's inadequately disclosed claims based on judicial estoppel, but noting at 319 that the claims also warranted dismissal under Rule 12(b)(6)).

Likewise, the DIP's application to the Bankruptcy Court to retain Pashman as counsel was designed to conceal rather than to reveal the existence of the Pre-Petition Claims.  Pashman's

retention was sought "in connection with a *current* labor and employment matter" (emphasis added) and for *future* matters, Grossman Declaration Exhibit F, not for any matters arising in the past. Certainly, nothing in this application suggests that Pashman was being retained to assert claims properly belonging to NVE's Estate and seeking over $2.6 million.  The lack of disclosure of the Pre-Petition Claims precludes revesting pursuant to the Plan, and deprives this plaintiff of standing. The Pre-Petition Claims must accordingly be dismissed pursuant to Rule 12(b)(6).  *Krystal, supra; Stein, supra.*

Revesting is impossible for another and independent reason: it is beyond dispute that the plan was not confirmed as of the time the Complaint was filed. "If a plaintiff at the time of commencing an action has no valid and subsisting title or right to the subject thereof, the plaintiff's subsequent acquisition, or perfection, of a right or title to the subject of the action during the pendency thereof will nor remedy the defect so as to enable the plaintiff to maintain the action."  59 Am. Jur.2d *Parties* § 37 (2002).  *Accord, Minnesota Mining & Mfg. Co. v. Plymouth Rubber Co.*, 178 F. Supp. 591, 596 (N.D. Ill. 1959).  As no plan was confirmed at the time the Complaint was filed, there could not then have been any revesting of the Pre-Petition Claims in NVE.

C.   THE PRE-PETITION CLAIMS WERE NOT ABANDONED AND REMAIN
     ESTATE PROPERTY

Nor may the Pre-Petition Claims be considered to have been abandoned to NVE in its capacity as reorganized debtor.  As a matter of law, property not disclosed in bankruptcy proceedings cannot be abandoned property.   *Krank v. Utica Mutual Ins. Co.*, 109 B.R. 668, 669 (E.D. Pa. 1990) (if "the debtor fails to list a claim as an asset, the trustee cannot abandon the claim because he or she will have had no opportunity to determine whether it will benefit the estate); *accord,  Stein*, *supra,* 691 F.2d at 891 (bankrupts "asserting title to unlisted causes of action. . . [cannot] enforce the claim, because they cannot demonstrate abandonment by the trustee").  Abandonment requires notice, hearing and a ruling by the bankruptcy court as to whether or not the claim ought to be abandoned, 11 U.S.C. § 554, and such a ruling may be made only where the claim has been listed on the bankruptcy petition.  *Stein, supra,* 691 F.2d at 891 *citing Scharmer v. Carrollton  Mfg. Co.*, 525 F.2d 95 (6th Cir. 1975). The "proper procedure to enforce any newly discovered asset neither listed nor abandoned by the debtor in possession is to petition the bankruptcy court to reopen the proceedings . . . to permit the court to decide whether reopening is desirable and, if so, whether the claim is to be administered for the benefit of

the creditors or abandoned." *Stein*, 691 F.2d at 893.  This is the procedure the present plaintiff is obliged to follow if it wishes to pursue the Pre-Petition Claims.

V.   THIS PLAINTIFF IS NOT THE REAL PARTY IN INTEREST AS TO THE PRE-PETITION CLAIMS

Fed. R. Civ. Proc. 17(a) requires that "[e]very action shall be prosecuted in the name of the real party in interest." Because NVE does not own the Pre-Petition Claims it is not the real party in interest and cannot assert them:

> The real party in interest is the person who, according to governing substantive law, *possesses the original cause of action* and is entitled to enforce the right. 6A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1543 (2d ed. 1990).

*J. Fitzpatrick & Co. v. Solna*, 1991 U.S. Dist. LEXIS 13122 at *10 (Sept. 5, 1991 D.N.J.) (dismissing claims by parties who had not personally suffered the injury alleged) (a copy of *Solna* is annexed to the Grossman Declaration as Exhibit M).  Because the Estate, and not NVE, possessed the Pre-Petition Claims, these claims may be prosecuted only by the Estate or its representative.  NVE may accordingly not prosecute the Pre-Petition Claims on its own behalf, as it has attempted to do, and they must accordingly be dismissed.

CONCLUSION

For the foregoing reasons, defendant JESUS JOSEPH PALMERONI

respectfully requests that his motion to dismiss the Complaint in

this action be GRANTED.

                          BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
                          *Attorneys for defendant*
                          *Jesus Joseph Palmeroni*


                          s/ Neil Grossman
                          NEIL GROSSMAN


Dated:  September 4, 2007

30