UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| N.V.E., INC.,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>JESUS J. PALMERONI a/k/a JOSEPH PALMERONI, RONALD SUMICEK, SUNBELT MARKETING, ABC CORPORATIONS 1-10, and JOHN DOES 1-10,<br><br>　　　　　Defendants. | CIVIL ACTION NO. 06-5455 (GEB)(ES)<br><br>**MOTION DATE:** November 1, 2010<br><br>**ORAL ARGUMENT REQUESTED** |
| JESUS J. PALMERONI,<br><br>　　Third-Party Plaintiff,<br><br>v.<br><br>ROBERT OCCHIFINTO AND WALTER ORCUTT,<br><br>　　Third-Party Defendants. | |

---

**LEGAL MEMORANDUM IN OPPOSITION TO MOTION TO QUASH AND FOR A PROTECTIVE ORDER FILED BY DEFENDANT JESUS PALMERONI AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR EXTENSION OF THE TIME PERIOD SUBJECT TO DISCOVERY FROM JUNE 30, 2006 TO PRESENT**

---

　　　　　　　　　　　　　　　　　　　Samuel J. Samaro, Esq.
　　　　　　　　　　　　　　　　　　　David G. White, Esq.
　　　　　　　　　　　　　　　　　　　Ellen W. Smith, Esq.
　　　　　　　　　　　　　　　　　　　**PASHMAN STEIN**
　　　　　　　　　　　　　　　　　　　A Professional Corporation
　　　　　　　　　　　　　　　　　　　Court Plaza South
　　　　　　　　　　　　　　　　　　　21 Main Street
　　　　　　　　　　　　　　　　　　　Hackensack, New Jersey 07601
　　　　　　　　　　　　　　　　　　　(201) 488-8200
　　　　　　　　　　　　　　　　　　　Counsel for Plaintiff,
　　　　　　　　　　　　　　　　　　　　**N.V.E., Inc.**, and
　　　　　　　　　　　　　　　　　　　　Third-Party Defendants,
　　　　　　　　　　　　　　　　　　　　**Robert Occhifinto and Walter Orcutt**

Of Counsel:
　Samuel J. Samaro, Esq.

On the Brief:
　Samuel J. Samaro, Esq.
　Ellen W. Smith, Esq.

**TABLE OF CONTENTS**

    **Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . .  3

    1.    National Retail Consulting Group, Inc. . . . . . 3
    2.    Global Marketing & Sales Group, LLC . . . . . . 4
    3.    American Wholesale Distribution,
        VAR Consulting, Smart World, Inc. . . . . . . . 5

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . .  7

    I.    Legal Standard for Discovery . . . . . . . . . . 7

    II.   NVE is entitled to discovery of Global
        Marketing & Sales Group, LLC's income
        tax returns and other financial records
        because the information sought is relevant
        to the matters at issue in this case . . . . . . 8

    III.  NVE's Cross-Motion to Extend the Scope
        of Discovery beyond June 30, 2006 should
        be granted . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 12

**TABLE OF AUTHORITIES**

**Page**

*Conopco, Inc. v. Wein,*
2007 Dist. LEXIS 53314 (S.D.N.Y. July 23, 2007) . . . . . . 10

*Hickman v. Taylor,*
329 U.S. 495 (1947) . . . . . . . . . . . . . . . . . . . . 8

*Morse/Diesel, Inc. v. Fidelity and
 Deposit Co. of Maryland,*
122 F.R.D. 447 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . 8

*In re Six Grand Jury Witnesses,*
979 F.2d 939 (2d Cir. 1992) . . . . . . . . . . . . . . . . 8


**Statutes**

Fed.R.Civ.P. 26(b)(1) . . . . . . . . . . . . . . . . . 7, 8, 11

Fed.R.Civ.P. 45(a)(2) . . . . . . . . . . . . . . . . . . . 7

## PRELIMINARY STATEMENT

Once again defendant/third party plaintiff, Jesus Palmeroni, has made application to the Court in an attempt to block disclosure of records relating to one of his companies, this time Global Marketing & Sales Group, LLC ("Global"). His motion to quash is based upon the fact that Global was not incorporated until some 5 months after he was terminated from NVE. Global is described as "a full-service sales and marketing consultancy" and according to his Declaration, "Global did not have any involvement with the brokerage transactions which are the subject of the pending action." (Palmeroni Declaration at ¶¶ 3, 9)

Here is the connection: one of the entities that paid kickbacks to National Retail Consulting Group (NRCG) - PMI Global Marketing Corp. ("PMI") - continued to pay them to Palmeroni through Global after NRCG was shut down. Attached to the Certification of Samuel J. Samaro as Exhibit C are copies of checks totaling $90,000 that Global received from PMI between 2006 and 2009. Other records reveal that Palmeroni was selling, both before and after his dismissal, NVE products to a company called CB Distributors, Inc. ("CB"). While we do not yet know if these were pirated products or stolen products, the numbers are staggering: over $5,000,000 worth of fake or stolen goods were purchased by CB from Palmeroni/Rosarbo companies. (See CB

1

records attached as Exhibit G to Samaro Cert.)  Sales to other NVE distributors, Brand New Energy and A.M.S. Enterprises, continued through the Court mandated cut-off of June 2006. (See Bank of America documents for VAR, attached as Exhibit H to Samaro Cert.}

Given this backdrop, Palmeroni's temporal distinction regarding Global is just another fiction.  While Palmeroni would have the Court believe that Global merely provided consulting services, the checks show that this is just another lie.  Not only should NVE have access to the accounting records sought by subpoena, but to Global's bank records as well.

By way of cross-motion, we seek to extend the scope of the relevant discovery period beyond the June 30, 2006 limitation previously applied by the Court.  The PMI records reflect payments to Palmeroni through 2009 and bank records for multiple distributors reflect sale of NVE products through the June 30, 2006 deadline set by the Court. Under these circumstances, NVE should be allowed to conduct full discovery to determine the full extent of the fraud, and not restricted to an end date of June 30, 2006.

**STATEMENT OF FACTS**

This is the 3rd motion to quash documents that has been filed by Palmeroni on behalf of himself or on behalf of his companies. Given the incriminating information that has been produced so far within the parameters set by the Court, it is easy to understand his continued fight to keep other records hidden. To fully understand the nature of the fraudulent activities undertaken by Palmeroni and the interplay of his various corporate entities, a review of the documents produced so far is required.

1. **National Retail Consulting Group, Inc.** ("NRCG")

Lakeland Bank records for NRCG which was wholly owned by Palmeroni reflect over $1.2 million dollars[1] deposited into the account by multiple N.V.E. brokers or distributors, including not only defendant Sunbelt Marketing, but also PMI Global Marketing Corp., its sister company, Profit Motivators, Inc., Brand New Energy and CB Distributors, Inc. as well as others. Palmeroni has previously admitted that these monies were "commission splits" although asserting that they were authorized by NVE. (See Declaration of Jesus Joseph Palmeroni, dated April 28, 2010, ¶¶ 5, 6, 7, attached as Exhibit A to the Certification of Samuel J. Samaro, Esq. ("Samaro Cert.")) Ronald Sumick has also described the monies paid by his company, Sunbelt to NRCG

---

[1] We would be glad to provide the Court with copies of the various bank records, should the Court desire.

as commission splits as well. (See Deposition of Ronald Sumicek, May 11, 2010, T109:10-17; T122:16-23; T128:16-23; T177:5-T178:15; T200:18-T201:2, attached as Exhibit B to Samaro Cert.)

Attached to the Certification of Samuel J. Samaro, Esq. are records secured from PMI Global Marketing ("PMI") and Profit Motivators, two related brokers for NVE products. (See documents bearing Bates Nos. NVE-PMI Global-0001 to NVE-PMI Global-0077, attached as Exhibit C to Samaro Cert.; see also documents bearing Bates Nos. NVE-Profit Mot.-0001 to NVE-Profit Mot.-0047, attached as Exhibit D to Samaro Cert.) These records reflect total payments to NRCG of $374,036.10 by PMI and $278,612.79 by Profit Motivators from 2001 to 2006. (See document bearing Bates No. NVE-PMI Global-0001, attached as Exhibit C to Samaro Cert.) Early PMI checks contain memos that the payments represented 1% of commissions earned from NVE on their CVS, Navajo, and Wal-Mart accounts and confirm Palmeroni's successful scheme to get kick-backs from multiple brokers. (See documents bearing Bates Nos. NVE-PMI Global-0067; 0069; 0070; 0071; 0072; 0073; 0074; 0075; 0076; and 0077, attached as Exhibit C to Samaro Cert.)

2. **Global Marketing & Sales Group, LLC**

Records from PMI/Profit Motivators also reflect continuing payments by PMI to Global from 2006-2009. (See documents bearing Bates Nos. NVE-PMI Global-0001 to NVE-PMI Global--0036,

4

attached as Exhibit C to Samaro Cert.)  The pay-offs to Palmeroni were not completed until 10/26/09 and from these two related entities totaled $742,648.89. (See document bearing Bates No. NVE-PMI Global-0001, attached as Exhibit C to Samaro Cert.)

Palmeroni describes Global as a legitimate company providing sales and marketing expertise, a claim that would be hard to dispute without access to its records.  More to the point, that description would never explain why money was paid by PMI because that is precisely what PMI did for NVE. PMI/Profit Motivators are brokers of NVE's products and have been since 2000.  That means that they have relationships with companies like Wal-Mart and CVS and are successful in getting NVE's products placed in those retail establishments.  (See Certification of Erling Jensen, attached as Exhibit E to Samaro Cert.)  There is simply no conceivable way that Palmeroni and Global would have expertise to sell to PMI that would justify payments of $90,000.00.

3. **American Wholesale Distribution, VAR Consulting, Smart World, Inc.**

Bank of America records for American Wholesale Distribution, Inc. reflect almost $8,000,000.00 in deposits from multiple NVE brokers, distributors or customers from 2002 until the account was closed on January 17, 2006.  (See document bearing Bates No.

5

BoA-AWD-0001, attached as Exhibit F to Samaro Cert.) CB Distributors, Inc., a long time distributor of NVE products and a subject of the Sunbelt allegations, was the largest single customer of AWD, accounting for over $5 million dollars of its deposits. CB has produced documents, including purchase orders, related to its purchases from AWD, Smart World, Inc. (another Palmeroni/Rosarbo company) and VAR Consulting. (See CB Documents bearing Bates Nos. NVE-CB Dist.-0001 to NVE-CB Dist.-0031, attached as Exhibit G to Samaro Cert.) These documents confirm that these Palmeroni entities were somehow converting NVE products to their own use and selling NVE or NVE branded products directly to NVE customers, both while employed by NVE and after. CB's documents reflect payments made to AWD through 4/18/06 and to VAR through that date as well. Bank of America records for VAR indicate payments by two other NVE distributors, Brand New Energy and A.M.S. Enterprises, continued through at least the end of June 2006. (See documents bearing Bates Nos. NVE-CB Dist.-0029 to NVE-CB Dist.-0031, attached as Exhibit G to Samaro Cert.; see also, documents bearing Bates Nos. BoA-VAR-086; 098; 109; 127; 129; 131 and 138, attached as Exhibit H to Samaro Cert.) While it is clear that the illicit sale of NVE products continued after Palmeroni's termination, what is not clear is how long these sales continued since the Court has restricted the inquiry to the period ending June 30, 2006.

Depending on the source for the illicit NVE products sold by the various Palmeroni and Rosarbo entities, the sales may have continued well beyond the June 26, 2006 date, as it is clear that Palmeroni's termination did not end his continuing conversion and sale of NVE products.

Based upon the proofs to date that Palmeroni and his entities continued to extract kick-backs from NVE brokers through 2009 and that his entities were continuing to sell NVE products through the current June 2006 discovery cut-off date, we respectfully request that the Court extend the scope of relevant discovery up to the present.

## **LEGAL ARGUMENT**

### I.   Legal Standard for Discovery

*Fed.R.Civ.P. 45(a)(2)* authorizes "the court for the district in which the production or inspection is to be made" to issue a subpoena commanding production.  It is well established that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party" and that "for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Fed.R.Civ.P. 26(b)(1)*.  A subpoena may seek information likely to lead to the discovery of information relevant to the matters at issue in the case. *Id.*  Rule 26

7

construes relevancy broadly, as any information "reasonably calculated to lead to the discovery of admissible evidence." *Id; see also Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland,* 122 F.R.D. 447, 4479 (S.D.N.Y. 1988)(term "reasonably calculated" in Rule 26(b)(1) means "any possibility" that the information sought may be relevant)(quoting *Fed.R.Civ.P. 26(b)(1))*. In addition, permissible discovery extends beyond evidence admissible at trial. *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947).

Courts will place limitations only "on discovery sought in bad faith, to harass or oppress the party subject to it, when it is irrelevant, or when the examination is on matters protected by a recognized privilege." *In re Six Grand Jury Witnesses,* 979 F.2d 939, 943 (2d Cir. 1992) (citing *Hickman v. Taylor* 329 U.S. 495, 507-08 (1947). Movant has failed to demonstrate a basis for quashing NVE's subpoena and evidence produced to date supports an enlargement of the time frame for relevant discovery beyond the June 30, 2006 deadline previously imposed by the Court.

    **II.  NVE is entitled to discovery of Global Marketing & Sales Group, LLC's income tax returns and other financial records because the information sought is relevant to the matters at issue in this case**

Once again, Palmeroni has posited a right to privacy governing the affairs of one of his companies and has accused

8

NVE of "going on a 'fishing expedition' into the affairs of Palmeroni and his business associates" (Palmeroni brief at p.7), and once again, the entity at issue is clearly entangled with the wrongful conduct alleged in this matter.  Despite Palmeroni's eloquent recitation of the legitimate goals and purposes of Global Marketing, records now show that Global Marketing, like National Retail Consulting Group before it, simply became the next Palmeroni vehicle for collection of kick-backs and other illicit monies.  The documents produced by PMI Global Marketing reflecting continued kick-backs to Palmeroni through 2009 – paid to Global Marketing & Sales Group, LLC once the accounts for NRCG were closed down, are irrefutable.

Palmeroni argued first that the records of NRCG should be kept private, then those of American Wholesale Distribution, Inc. and VAR Consulting and now Global Marketing & Sales Group, LLC.  There simply is no "good cause" for shielding the records of any of these entities when they directly relate to the RICO claims asserted and to be asserted in this matter.  Records of NRCG included information identifying multiple commission kick-back participants and also led to identification of massive amounts of money moving through AWD and VAR Consulting.  The records of AWD and VAR led to identification of the entities engaged in transactions with them, and ultimately to the records of CB Distributors which confirm that AWD, VAR and SmartWorld,

9

Inc., another Palmeroni company, were engaged in converting NVE products to their own use and selling them directly to customers.

PMI Global's records confirm that Palmeroni used Global Marketing & Sales Group, LLC as a repository for his illicit gains. The accounting records sought to be shielded as well as any bank records of Global Marketing will no doubt facilitate identification of other entities and transactions relevant to this RICO claim.

Under these circumstances, there simply is no basis to quash the subpoena to the accountants regarding Global Marketing's records, nor for any protective order. This information is being sought for a legitimate cause related to this RICO claim.

As noted in NVE's response to Palmeroni's previous motions to quash subpoenas, the decision in *Conopco, Inc. v. Wein,* 2007 Dist. LEXIS 53314 (S.D.N.Y. July 23, 2007) is instructive. The *Conopco* Court found that "the money Wein either invests in or receives from the alleged RICO conspiracy may be evidence of how the enterprise operates, and the role Wein plays in the enterprise." *Id.* at *9. That reasoning has proven true in this case, as successive records have yielded clearer and clearer pictures of the scope of the illicit schemes.

By his own declaration, Palmeroni has operated through at least 5 separate companies (Palmeroni declaration at ¶7), all of whom are implicated in some degree with the illicit transactions at issue in this matter. Discovery into the affairs of all of these entities is warranted in view of discovery to date.

### III. NVE's Cross-Motion to Extend the Scope of Discovery beyond June 30, 2006 should be granted

As noted previously, *Fed.R.Civ.P.* 26(b)(1) allows for broad discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense..." and that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."

Initially the Court's determination that discovery should be limited temporally to the six-month period after Palmeroni's termination from NVE made sense. But, that was before receipt of records establishing that 1) Palmeroni continued to get kickback monies from brokers long after that date, and 2) that Palmeroni entities were selling and continued to sell illicitly obtained NVE products directly to customers long after Palmeroni was terminated. To date, we know that this activity continued through the end of June 2006. Because of the time limitation placed by the Court, we do not know how long it continued after that.

11

Given that Palmeroni's activities did not taper off after his termination from NVE, we respectfully request that the Court expand the scope of the relevant discovery period to the present, so that a full picture of how Palmeroni's enterprises operated and the concomitant full calculation of NVE's losses can be determined.

## CONCLUSION

For the reasons set forth full above, we respectfully request that the Court deny defendant/third party plaintiff, Jesus Palmeroni's Motion to Quash the subpoena for the accounting records of his company Global Marketing & Sales Group, LLC or for a protective order with regard to these documents and that the Court grant NVE's cross-motion to extend the scope of relevant discovery beyond June 30, 2006 to the present.

                                                **PASHMAN STEIN**
A Professional Corporation
Counsel for Plaintiff,
**N.V.E., Inc.**, and
Third-Party Defendants,
**Robert Occhifinto and Walter Orcutt**

Dated:  October 12, 2010        By:    s/ Ellen W. Smith
                                                    **ELLEN W. SMITH**
                                                    **SAMUEL J. SAMARO**