LAW OFFICE OF FRED SHAHROOZ SCAMPATO, PC
445 East Broad Street
Westfield, New Jersey 07090
Ph. (908) 301-9095
Attorney for Defendant/Third-Party Plaintiff
 JESUS J. PALMERONI

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| N.V.E., INC., *Plaintiff,* | Case No.: 2:06-CV-05455(HAA)(ES) |
| - v. - | |
| | <u>CIVIL ACTION</u> |
| JESUS J. PALMERONI, et als., *Defendants.* | Motion Date: March 9, 2011 |
| JESUS J. PALMERONI, *Third-Party Plaintiff,* | |
| - v. - | |
| ROBERT OCCHIFINTO, et al, *Third-Party Defendants.* | |
| RONALD SUMICEK, et al, Third-Party Plaintiffs, | |
| - v. - | |
| CB DISTRIBUTORS, INC. *Third-Party Defendant.* | |

---

**BRIEF OF DEFENDANT/THIRD-PARTY PLAINTIFF, JESUS J. PALMERONI IN
SUPPORT OF MOTION TO SANCTION NVE FOR SPOLIATION OF EVIDENCE**

---

DAVID ROSTAN and FRED
SHAHROOZ SCAMPATO, Esqs.
    On the Brief

                              LAW OFFICE OF FRED SHAHROOZ
                              SCAMPATO, PC
                              445 East Broad Street
                              Westfield, New Jersey 07090
                              Attorneys for Plaintiff

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . iv

EXHIBIT LIST. . . . . . . . . . . . . . . . . . . . . . . i

PRELIMINARY STATEMENT.. . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . 2

    NVE's Loss of Access and Destruction of Documents. . . . . 2

    Since the Beginning of 2006, Plaintiff's Need to
    Preserve Sales Data, Personnel Files, Customer Records,
    Commission and Brokerage and Related Communications and
    Correspondence as well as all Records Related to Joe
    Palmeroni was Foreseeable... . . . . . . . . . . . . . . 5

    Sales Data and Records, Brokerage Commission,
    Individual Broker Records and Agreements, Financial
    Records, and Customer Relations Records, Evidence of
    Compensation for Records and Agreements, Personnel
    Files, Insurance Documents and Associated Correspon-
    dence, Regular and Email Correspondence Dating from
    1999 are Relevant to this Litigation.. . . . . . . . . . 7

    Plaintiff Has Acknowledged Being Unable to Locate
    Documents Responsive to Defendant Palmeroni's Requests
    for Admission. . . . . . . . . . . . . . . . . . . . . . 11

    Plaintiff Belatedly Acknowledged its Inability to
    Respond to Discovery Because Documents were Shredded
    and its Former Computer System has become Inoperative... 13

    In addition to Documents Plaintiff Has Acknowledged as
    Lost, Destroyed or Inaccessible, Plaintiff has Failed
    To Produce Other Documents Typically Kept in the
    Ordinary Course of Business... . . . . . . . . . . . . . 15

    Much of Mr. Palmeroni's Personnel File and Compensation
    Records Are Missing... . . . . . . . . . . . . . . . . . 16

    Missing Emails with Brokers, Sales Persons and
    Customers. . . . . . . . . . . . . . . . . . . . . . . . 18

LEGAL AGRUMENT. . . . . . . . . . . . . . . . . . . . . . 21

POINT I. . . . . . . . . . . . . . . . . . . . . 21

    THE ACTS OF PLAINTIFF NVE CONSTITUTES SPOLIATON OF
    EVIDENCE AND, AS A RESULT, SANCTIONS MUST BE
    IMPOSED.. . . . . . . . . . . . . . . . . . . . 21

        Introduction, Definition of Spoliation.. . . . . 21

        Plaintiff's Duty to Preserve.. . . . . . . . . 22

        Plaintiff Failed to Preserve and or Destroyed
        Categories of Documents Which It Could
        Foresee Were Discoverable... . . . . . . . . . 23

        Appropriateness of Sanctions.. . . . . . . . 28

        Test for Imposing Sanctions. . . . . . . . . 28

POINT II.. . . . . . . . . . . . . . . . . . . . 30

    AS A RESULT OF NVE'S SPOLIATON OF EVIDENCE, THE
    SANCTION OF EXCLUSION OF EVIDENCE IS APPROPRIATE
    REGARDING PLAINTIFF'S CLAIMS REGARDING SMART
    WORLD.. . . . . . . . . . . . . . . . . . . . 30

        Exclusion of Evidence. . . . . . . . . . . . 30

POINT III. . . . . . . . . . . . . . . . . . . . 34

    AS A RESULT OF NVE'S SPOLIATON OF EVIDENCE, THE
    SANCTION OF ADVERSE INFERENCE IS APPROPRIATE AS A
    SANCTION REGARDING DESTROYED EVIDENCE RELEVANT TO
    PLAINTIFF'S INITIAL COMPLAINT, AND AS AN
    ALTERNATIVE SANCTION FOR DOCUMENTS RELATED TO
    SMARTWORLD... . . . . . . . . . . . . . . . . 34

        Adverse Inference Test.. . . . . . . . . . . 34

        Within Party's Control.. . . . . . . . . . . 36

        Actual Suppression or Withholding of
        Evidence36.. . . . . . . . . . . . . . . . . .

        Relevant to Claims or Defenses.. . . . . . . 40

Reasonably Foreseeable that Evidence would
later be Discoverable. . . . . . . . . . . .  42

## TABLE OF AUTHORITIES

Pages

**CASES**

Aetna Life and Cas. Co. v. Imet Mason Contractors, 309 N.J.
    Super. 358 (App. Div. 1998). . . . . . . . . . . . . . . 22

Arteria Property Pty Ltd v. Universal Funding V.T.O., 2008
    U.S. Dist. LEXIS 77199 (D.N.J. Mar. 11, 2009)
    [Exhibit 25]. . . . . . . . . . . . . . . . . . . . 37, 38

Brewer v. Quaker State Oil Ref. Co., 72 F.3d 326 (3d Cir.
    1995). . . . . . . . . . . . . . . . . . . . . . . . . 35

Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D.
    614 (D. Colo. 2007). . . . . . . . . . . . . . . . . . 42

Chambers v. NASCO, Inc., 501 U.S. 32 (1991). . . . . . . . . 22

Keir v. Unumprovident Corp., No. 02-CV-8781(DLC), 2003 WL
    21997747 (S.D.N.Y. Aug. 22, 2003) [Exhibit 28]. . . . . 42

Kolanovic v. Pak Gida A/S(Turk.), 77 F. Supp.2d 595 (D.N.J.
    1999). . . . . . . . . . . . . . . . . . . . . . . . . 22

Kounelis v. Sherrer, 529 F. Supp.2d 503 (D.N.J. 2008). . . 21, 22

Kronischv. United States, 150 F.3d 112 (2d Cir. 1998). . . . . 22

Major Tours, Inc. v. Colorel, 2009 U.S. Dist. LEXIS 68128
    (D.N.J. Aug. 4, 2009) [Exhibit 26]. . . . . . . . . . 22, 23

Manorcare Health Services, Inc. v. Osmose Wood Preserving,
    Inc., 336 N.J. Super. 218 (App. Div. 2001). . . . . . 30, 31

Micron Technology, Inc. v. Rambus, Inc., 255 F.R.D. 135 (D.
    Del. 2009). . . . . . . . . . . . . . . . . . . . . . 42

Mitchell v.Procini, 331 N.J. Super. 445 (App. Div. 2000). . . 30

MOSAID Techs., Inc. v. Samsung Elecs. Co., 348 F. Supp.2d
    332 (D.N.J. 2004). . . . . 21, 26-28, 34, 36, 37, 39, 40, 43

Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76 (3d Cir.
    1994). . . . . . . . . . . . . . . . . . . . . 29, 30, 34, 37

Scott v. IBM Corp., 196 F.R.D. 233 (D.N.J. 2000).  21, 26, 27, 35

Telequest Int'l Corp. v. Dedicated Business Systems, 2009
    U.S. Dist. LEXIS 19546 (D.N.J. March 11, 2009)
    [Exhibit 27].. . . . . . . . . . . . . . . . . . 38, 40, 41

U.S. v. Suarez, No. 09-932 (D.N.J. October 21, 2010). . . . . 39

Ware v. Rodale Press, Inc., 322 F.3d 218(3d Cir. 2003). . . . 29

Wymbs v. Tp. of Wayne, 163 N.J. 523 (2000). . . . . . . . . 31

Zubulake  v. UBS Warburg LLC, 229 F.R.D. 422 (S.D.N.Y. 2004)
    .. .. . . . . . . . . . . . . . . . . . . . 21, 23, 42

**FEDERAL RULES OF CIVIL PROCEDURE**

FRCP 30(b)(6).. . . . . . . . . . . . . . . . . . . . . . . 43

FRCP 37(a). . . . . . . . . . . . . . . . . . . . . . . . . 1

**EXHIBIT LIST**

Exhibit 1     -     Plaintiff's initial disclosures

Exhibit 2     -     Smith letter, dtd. Nov. 19, 2010

Exhibit 3     -     Fred Sharooz Scampato, Esq., letter dtd.
                    Nov. 22, 2010

Exhibit 4     -     Smith letter dtd. Jan 18, 2010

Exhibit 5     -     NVE document Bates # NVE 00085

Exhibit 6     -     Plaintiff's Response to Interrogatory 8 in
                    Third-Party plaintiff's Interrogatories
                    (March 2, 2010)

Exhibit 7     -     Osvaldo F. Torres letter, dtd. Jan. 24, 2006

Exhibit 8     -     Daniel M. Stolz letter dtd. Jan. 25, 2006

Exhibit 9     -     Stolz's certification

Exhibit 10    -     November 15, 2006 Complaint

Exhibit 11    -     February 7, 2007 Counterclaim

Exhibit 12    -     April 25, 2007 Amended Answer and
                    Counterclaim

Exhibit 13    -     Sumicek May 30, 2007 Answer with Counterclaim

Exhibit 14    -     Defendant Palmeroni Initial Disclosures

Exhibit 15    -     Plaintiff's Request for Admission to Sumicek

Exhibit 16    -     Defendant's Interrogatories to Plaintiff,
                    dtd. Sept. 7, 2007, with Answers

Exhibit 17    -     Defendant Palmeroni's Request for Admissions
                    with Answers

Exhibit 18    -     Transcript of June 1, 2010, hearing with
                    Judge Salas

Exhibit 19    -     Third-Party Plaintiff's Second Set Interroga-
                    tories, dtd. Aug. 3, 2010, with Answers

i

Exhibit 20   -   Defendant Palmeroni's Second Set of Interro-
                 gatories with Answers

Exhibit 21   -   Declaration of Jesus Palmeroni

Exhibit 22   -   Sumicek Req for Prod Docs with Answers

Exhibit 23   -   Brian Cige, Esq., cover Letter for Request
                 for Production of Documents

Exhibit 24   -   Order of Judge Salas, dtd. June 15, 2010

Exhibit 25   -   Arteria Property Pty Ltd., v. Universal
                 Funding V.T.O., Case No. 05-4896 (PGS), 2008
                 U.S. Dist. LEXIS 77199 (D.N.J. Oct. 1, 2008)

Exhibit 26   -   Major Tours, Inc., v. Colorel, Case No.
                 05-3091(JBS/JS), 2009 U.S. Dist. LEXIS 68128
                 (D.N.J. Aug. 4, 2009)

Exhibit 27   -   Telequest International Corp., v. Dedicated
                 Business Systems, Inc., Case No. 06-5359
                 (PGS), 2009 U.S. Dist. LEXIS 19546 (D.N.J.
                 Mar. 11, 2009)

Exhibit 28   -   Jesus J. Palmeroni Summary of Certain NVE
                 Documents

## PRELIMINARY STATEMENT

Defendant/third party plaintiff Jesus Joseph Palmeroni hereby submits this memorandum of law in support of his motion for an order pursuant to Fed. R. Civ. Proc. 37(a),(b) for sanctions against plaintiff for failing to make disclosures and for failure to provide documents in response to discovery because of plaintiff's willful destruction of relevant documents.

This lawsuit which was filed in 2006 concerns plaintiff's allegations that defendants conspired to steal money in the form of commission payments from N.V.E.  Defendant Palmeroni's position is that he had permission to negotiate a portion of his compensation which was derived from commission savings to the company.  In addition, he has asserted counterclaims under New Jersey's Conscientious Employee Protection Act for complaining of wrongful acts by the company which violated public policy as well as counterclaims for breach of contract.

From the start the relationship of NVE with its customers, brokers, distributors and employees has been central to the disputes at issue.  In June 2007, Plaintiff's initial disclosures at Item B (Exhibit 1) identified the following categories of documents as being relevant to this dispute:

    (a)  Sales, commission and related financial records;
    (b)  Customer relations records
    (c)  Promotional materials
    (d)  Checks and banking records

1

This motion concerns Plaintiff's failure to disclose even to its own attorneys that during the course of the litigation (1) its financial and accounting computer system broke down, causing financial and accounting records to become inaccessible and (2) its employees had shredded boxes of documents whose contents concerned NVE's sales and related financial documents. The discarded information concerns the very categories of documents Plaintiff itself has identified from the outset as being relevant to this dispute.

### STATEMENT OF FACTS

**NVE's Loss of Access and Destruction of Documents**

On November 19, 2010, in a letter from its counsel, Plaintiff advised for the first time that it had lost access to its computer accounting and financial system and that "[d]etailed records prior to November 2005 cannot likely be retrieved. (Exhibit 2). The letter does not indicate when NVE first learned that its financial and accounting system software was inoperative nor what steps NVE undertook, if any, to preserve documents on its system, known as MACS, once it was aware or could foresee that litigation would commence against Mr. Palmeroni.

According to the letter, "[t]owards the end of 2009, NVE's storage room containing hard copy paper files was purged in the regular course of business and substantially all records from 2004 and earlier years except files that were the subject of

2

litigation, personnel records and certain bank records were shredded. (Emphasis added). Some paper files that were maintained by individual employees from 1999 have been retrieved."

In response to this letter, defendant Palmeroni's counsel, Fred Shahrooz Scampato, Esq., wrote to Ms. Smith on November 22, 2010, seeking information on the categories of documents destroyed and those not destroyed, the dates when documents were discarded or destroyed, the circumstances giving rise to the destruction, the persons involved at NVE in the process, and the identity of persons authorizing the purging. Also sought were written protocols at NVE, if any, for the destruction or retention of documents or establishing its regular business practice. (Exhibit 3)

Counsel for NVE responded by letter dated January 18, 2011. According to her client, the shredded documents were hard copies and "related documents" from 2004 and earlier. The definition of "related documents" has not been provided to us. In this letter NVE now advised that the document purging actually occurred sometime in earlier in 2009, prior to May of that year: "In 2009, NVE's storage room was overcrowded and Erling Jensen, CFO of NVE, requested that Heather Gabone, a receptionist who is no longer employed by NVE, take old records from 2004 and earlier one box at a time and shred them. At the time she left NVE in

3

May 2009, the project stopped.  Later in the summer of 2009, Mr. Jensen looked through the remaining boxes and determined which should have been saved and which shredded."  The files "*included all customer files, consisting of orders from distributors who used paper orders rather than electronic orders, a subsequent internal order entry form and printout of the sales order which was transmitted to shipping for delivery to the customer.*"  (<u>Exhibit 4</u>).

We have yet to learn of the entire scope of documents that were shredded.  NVE has not told us of the date when the old computer system became inoperative and has not created a back up of its old computer system during the course of the litigation.

Based on the print date of a customer document of sale to International Sales Group, we believes the computer system was operative at least through May of 2006. (<u>Exhibit 5</u>).  This was several months after NVE could foresee the possibility of this litigation since Plaintiff claims to have fired Mr. Palmeroni for conspiring with Mr. Sumicek to steal from the company.

Plaintiff has not provided any policy documents or other written protocol to establish its business practice for retaining or destroying documents, or an inventory of documents, contemporaneous or otherwise, of documents saved and those destroyed by receptionist Gabone, or Chief Financial Officer Jensen.

4

According to Plaintiff counsel's letter NVE advised that in May 2009 the "project [shredding box after box of documents] stopped.  No reason was provided for why the project was stopped.  However, it apparently began again sometime during the summer with Mr. Jensen.  Mr. Jensen is a certified public accountant, has appeared on behalf of NVE at depositions, and certified its answers to interrogatories, including most recently to defendant's second set of interrogatories, which he signed on January 2011.

Based upon counsel's letters of November 19, 2010 and January 18, 2011, it appears that NVE withheld from its own counsel and defendants the fact of the purging of the hard documents since roughly the beginning of 2009.  The shutdown of the accounting and financial system known as MACS has been withheld from a date unknown.

**Since the Beginning of 2006, Plaintiff's Need to Preserve Sales Data, Personnel Files, Customer Records, Commission and Brokerage and Related Communications and Correspondence as well as all Records Related to Joe Palmeroni was Foreseeable.**

On January 6, 2006, Plaintiff terminated defendant Palmeroni, and has alleged that the reason for the termination was his conspiring with Mr. Sumicek to steal money from the company.  (Exhibit 6).  On January 24, 2006, Osvaldo F. Torres, the then counsel for Jesus Palmeroni, sent a letter to David Caldwell, Esq., and counsel for NVE.  In his letter, Mr. Torres

notified NVE of a number of claims which would ultimately be
included in Mr. Palmeroni's counterclaims in the instant lawsuit.
These include assertions that Mr. Palmeroni's employment was
terminated in violation of the New Jersey Conscientious Employee
Protection Act (CEPA).  It was specifically alleged that
Palmeroni repotted to the President of NVE and expressed his
objection to unlawful activity within the company relating to
sexual harassment, FDA violations, bankruptcy fraud, tax fraud
and ongoing unlawful conspiracies with third parties.
(Exhibit 7).

On January 25, 2006, Daniel M. Stolz, Esquire, bankruptcy
counsel for NVE, responded to Mr. Torres' communication of the
day before.  Mr. Stolz wrote that NVE was in the process of
applying to the Bankruptcy court for an application for the
retention of the firm of Pashman, Stein, to act as counsel for
NVE with regard to the employment disputes with Mr. Palmeroni.
(Exhibit 8).

Plaintiff submitted a certification of Daniel M. Stolz in
connection with a prior motion before this Court.  At paragraph 3
of Mr. Stolz's certification, he provided the following:  "By
Order dated May 4, 2006, NVE was authorized to employ the law
firm of Pashman Stein as special counsel for the Debtor in
Possession, in connection with the within litigation, commenced
against Defendant, Jesus J. Palmeroni."  (Exhibit 9).  During the

summer of 2006, Mr. Samaro utilized the bankruptcy proceedings to engage in discovery in connection with the present matter.   Mr. Samaro took depositions of Mr. Sumicek, Mr. Bathia, Connie Sumicek, Edward Sukicek, Dara Keener, and Mr. Palmeroni in this process.

Based on the foregoing, Plaintiff's knowledge of the likelihood of litigation arose no later than January 25, 2006. But was foreseeable from the beginning of that month.

**Sales Data and Records, Brokerage Commission, Individual Broker Records and Agreements, Financial Records, and Customer Relations Records, Evidence of Compensation for Records and Agreements, Personnel Files, Insurance Documents and Associated Correspondence, Regular and Email Correspondence Dating from 1999 are Relevant to this Litigation.**

In November 15, 2006, Plaintiff filed a 13-count Complaint, alleging that, from 1999 through January 2006, defendant Jesus Palmeroni conspired with co-defendants Sunbelt Marketing and Ronald Sumicek to split fictitious commissions ranging from 2.5% to 5% on orders from Import Warehouse and CB Distributors. According to the complaint, Ronald Sumicek and Sunbelt Marketing became a broker of NVE in December 1999 and as of January 2000 both CB Distributors and Import Warehouse became direct customers of Plaintiff.   Plaintiff alleged that Import Warehouse and CB Distributors were not represented by Sunbelt and as such commissions were not due.   Plaintiff NVE's claims for damages flow from this alleged arrangement. (Exhibit 10).

7

On February 7, 2007, defendant Palmeroni filed an Answer and Counterclaim, denying the alleged conspiracy and asserting a counterclaims for retaliation against Plaintiff for fraud based on Plaintiff's unfulfilled promise to pay Palmeroni a bonus, breach of contract for failure to provide him with a severance upon termination, and wrongful termination in violation of the Conscientious Employee Protection Act (C.E.P.A.) based upon his refusal to participate in acts of Plaintiff violating clear mandates of public policy. (Exhibit 11).

On April  25, 2007, Mr. Palmeroni filed an Amended Cnswer with Counterclaims arising under C.E.P.A. including:  (1) plaintiff's falsification of insurance documents overstating NVE's insurance coverage customers required of it;  (2) plaintiff's failure to remit cash proceeds from the sale of vans to creditors during the period NVE was in bankruptcy proceedings as a debtor in possession; (3) defendant's refusal to participate in plaintiff's cash deals; (4) Mr. Occhifinto's charging NVE for personal construction on his home during the period of the bankruptcy; and (5) firing Mr. Palmeroni for complaining of sexual harassment. (Exhibit 12).  Defendant Sumicek and Sunbelt filed an Answer on May 30, 2007, denying the alleged conspiracy and asserting a Counterclaim for alleged unpaid commissions and interference with contractual relations with its customers 7-11, McLane and Kroger Corporation.  (Exhibit 13).

8

Defendant Palmeroni's initial disclosures, served on June 15, 2007, identified multiple employees and brokers of NVE, including at 1b those with knowledge concerning the commission dispute, Vincent Rosarbo, Roland Bossie, Ronald Sumicek, brokers of NVE including Wayne Dial, Harold Miller, and Kris Sujack, and customers of NVE including Rite Aid and Walmart. Also identified was Richard Horowitz and Profit Motivators (a broker of NVE) as were multiple employees (at least 10) with knowledge concerning his counterclaims as well as all emails and correspondence pertinent to the dispute as well as to the counterclaims. (<u>Exhibit 14</u>).

Plaintiff's Initial Disclosures, dated June 29, 2007, identified among other things (a) sales, commission and related financial records; (b) customer relations records, (c) promotional materials; and (d) checks and banking records. <u>Id.</u>

Plaintiff's Requests for Admissions to Ronald Sumicek, dated September 7, 2007, reference documents and/or recordings or transcripts of the February 2006 meeting of Roger Sumicek, Robert Occhifinto and Carlos Bengoa, and agreements related to the exclusive brokerage arrangement for NVE products in Texas, Louisiana, Arkansas, Oklahoma, and New Mexico, Sunbelt and NVE commissions and sales documents relating to all Sunbelt brokerage accounts as well as agreements related to commission sharing. (<u>Exhibit 15</u>).

9

Defendant Palmeroni's First Set of Interrogatories dated September 7, 2007, requested all documents pertinent to this case (Interrogatory 1); detailed information of all compensation bonus and commission received by Mr. Palmeroni and the basis for such compensation and any agreements between NVE and Joe Palmeroni (Interrogatories 5, 14); detailed information on how Import Warehouse and CB Distributors became a distributor for NVE, including all communications involved in this process, as well as any and all agreements between NVE and theses entities (Interrogatories 6-7, 11-12); and agreements of any kind between NVE and Sunbelt Marketing; annual sales revenue of NVE and a history of the brokerage commissions paid by NVE to its other brokers who arranged sales of NVE product, from NVE's inception to date, as well as the basis for calculating commission. (Interrogatory 18) and a history of sales commissions paid to NVE or NVE personnel, from inception to date. (Exhibit 16).

Thus by the Fall of 2007, in addition to the issues raised in the complaint answers and counterclaims, the parties had placed into issue brokers of NVE, customers and distributors of NVE, financial transaction records, personnel files, and associated communication and correspondence relevant to the lawsuit subject to being preserved.

Plaintiff has also acknowledged destroying certain documents responsive to discovery demands and being unable to retrieve

10

still others.  Discovery to date has revealed that Plaintiff has
been unable to locate documents which should reasonably be
available, even after a diligent search.

**Plaintiff Has Acknowledged Being Unable to Locate Documents
Responsive to Defendant Palmeroni's Requests for Admission**

Defendant Palmeroni served Requests for Admissions dated
April 2, 2010, upon Plaintiff.  (Exhibit 17).  In answering in
March of 2010, Plaintiff advised that it could not locate
pertinent "data or records" as follows:  Requests 7 and 8
(concerning the compensation package of Ms. Karen Samartine, who
is referenced in referenced in Mr. Palmeroni's automatic
disclosure and was Mr. Palmeroni's immediate predecessor as
National Sales Manager);  Request 10 (concerning Mr. Palmeroni's
appointment as National Sales Manager);  Request 11 (concerning
Mr. Palmeroni's commission agreements);  Request 12 (concerning
commission payments to sales personnel Plaintiff "believes"
commission payments were made to sales personnel, but is unable
to locate data or records regarding such sales commissions);
Requests 15 and 16 (concerning employment and commission
agreements of Patty Cosentino, named in defendant Palmeroni's
automatic disclosure, wherein NVE acknowledges the payment of
commissions but cannot locate applicable data or records);
Requests 23 and 24 (Plaintiff states that it "may have" data on
sales revenue enjoyed before and after Mr. Palmeroni's hire).

11

(Emphasis supplied.)  In fact, on June 11, 2010, the Court
Ordered that NVE produce sales revenue and Mr. Palmeroni has to
date received only a bar chart, no actual hard data on sales
revenue.  If, in fact, Plaintiff simply lacks these records
because they have been destroyed or Plaintiff does not know
whether they have been destroyed we should be advised;  Request
27 (Plaintiff unable to locate data or records concerning the
three brokers with whom Mr. Palmeroni worked at the time he began
working for NVE);  Request 50 (Plaintiff unable to locate records
concerning broker Dirk Nieuwenhuis' introduction to NVE) (Id.).

On June 11, 2010, the Court ordered Plaintiff to produce
records for the brokers with whom Mr. Palmeroni dealt in order to
corroborate the sales data which formed the basis of the
brokerage commissions.  See Transcript of Status Conference
June 11, 2010 (Exhibit 18) at pp. 24-25.  Defendant Palmeroni's
Initial Disclosures identified three brokers with whom he worked
initially:  Wayne Dial, Harold Miller, and Kris Sujack.  Subse-
quently, Mr. Palmeroni asked for detailed information concerning
the history of brokerage commissions and the basis for calcula-
tion of such commissions for each broker with whom Mr. Palmeroni
dealt.  Missing from NVE's document production to date is any
information concerning the broker Sujack and there is no actual
sales or commission data for all three brokers referenced in
Palmeroni's initial disclosure.

12

This information was sought because Mr. Palmeroni's defense is in part reliant on his assertion that upon his hire brokers were receiving 10% commissions and he negotiated a reduction of sales commissions for these brokers, resulting in increased profits for NVE.  This was also consideration for his permission to negotiate a portion of his compensation out of commission savings.

**Plaintiff Belatedly Acknowledged its Inability to Respond to Discovery Because Documents were Shredded and its Former Computer System has become Inoperative.**

In September 2007, Mr. Palmeroni as Third Party Plaintiff asked in Interrogatory 6 for all documents and oral communications made by anyone relating or referring to this litigation. (Exhibit 16).  In response to these interrogatories, Plaintiff failed to disclose that Heather Gabone had shredded box after box of unnamed documents.  Likewise, Plaintiff failed to disclose that Erling Jensen had continued the project.

In March of 2010, when plaintiff answered defendant's Requests for Admissions, there was no mention of the destruction of documents which had occurred in the prior year.  On August 3, 2010, Mr. Palmeroni as Third-Party Plaintiff served a second set of Interrogatories concerning insurance.  (Exhibit 19).  Notably, Interrogatory 6 in the second set of interrogatories asked NVE to identify any requested insurance documents which had been lost discarded or destroyed and to provide detailed information

concerning the circumstances of its being lost stolen or destroyed.  NVE's response dated October 14, 2010 to Interrogatory 6 was that it could not identify what documents if any <u>may</u> have been destroyed in the usual course of business.  (<u>Exhibit 20</u>).

This response shows that Plaintiff made no inventory of the documents it destroyed, and that more than product orders were destroyed, purportedly in the "usual course of business."  Mr. Palmeroni's counterclaim concerning NVE's falsification of insurance coverage from 2006 concerns an allegation that Arthur Prindle with Plaintiff's blessing falsified insurance coverage for its customers.  Plaintiff has produced insurance certifications for customers to date but no correspondence back and forth between Mr. Prindle and customers, whether in email or hard copy form.  Mr. Prindle, was identified as being in charge of Plaintiff's insurance for customers. (<u>Exhibit 21</u>).

Defendant Palmeroni's Second Set of Interrogatories was served on Plaintiff on November 16, 2010.  (<u>Exhibit 20</u>).  NVE's responses reveal that documents have been destroyed relevant to Mr. Palmeroni's defenses to allegations in the proposed Amended Complaint.  Interrogatory 5 requests detailed information concerning services rendered and products sold to any entity, whether domestic or foreign, entitled "Smart World."  NVE advised in response that it does not have order and accounting records

14

prior to 2005 with regard to Smart World, except as to records kept by individual employees. (Exhibit 20).

In response to Interrogatory 7 NVE advised of three meetings with principals of Smart World in Holland and again indicated that it had not notes or records of these meetings.  In response to Interrogatory 15 NVE acknowledged that it made oral agreements with its sales force but provides no documents which reference such agreements.  In response to Interrogatory 18 NVE indicates that it has no documents to establish its purported policy of providing deep wholesale discounts to companies that distribute NVE products overseas."  Interrogatory 23 requested documents concerning financial transactions and income received from entities known as Smart World in Holland.  (Exhibit 20).  In response Plaintiff references documents Bates stamped NVE 4334B - NVE 5226B.  Notably these documents fail to provide accounting and financial information for the years 2000 through 2005, making it impossible to ascertain what NVE's purported agreements were with Smart World as well as the income it expected to receive during the period of 2000 through 2005.

**In addition to Documents Plaintiff Has Acknowledged as Lost, Destroyed or Inaccessible, Plaintiff has Failed To Produce Other Documents Typically Kept in the Ordinary Course of Business.**

Notably missing from Plaintiff's response to Defendant Palmeroni's First Set of Interrogatories, dated June 15, 2006, are types of documents which were routinely used at NVE during

Mr. Palmeroni's tenure.  (Exhibit 21, Declaration of Jesus Palmeroni, dtd. Feb. 13, 2011, describing record keeping during his tenure, from 1999 to January 2006).

According to Mr. Palmeroni, there was a separate mail server which used Outlook software.  There was a constant stream of emails from staff which would be stored on a server.

His own computer enabled him to access communications going back to the inception of his employment in October 1999 and other computers also had this capacity in the sales department.

Moreover, Mr. Occhifinto had a desktop computer and a lap top computer which he brought to his office.  Mr. Palmeroni's understanding is that this computer was used in business.  There was also email correspondence conducted externally with customers and brokers.  Email, regular mail and fax correspondence was sent and received internally between the sales, marketing, and accounting department, procurement, production, construction and legal departments.  (Exhibit 21).  Notwithstanding this, NVE has produced virtually no emails bearing on what is central to Plaintiff's case and Palmeroni's defense, the commission and compensation agreements for brokers, distributors, customers and employees.

**Much of Mr. Palmeroni's Personnel File and Compensation Records Are Missing.**

Defendant Palmeroni's Request for Admissions 10 (concerning

Mr. Palmeroni's appointment as National Sales Manager); Request
11 (concerning Mr. Palmeroni's commission agreements) were not
answered according to Plaintiff because of an inability to locate
documents; Interrogatories 5 and 14 in Palmeroni's First Set of
Interrogatories referenced requests for documents concerning his
compensation.  NVE has produced virtually no commission data
concerning Mr. Palmeroni, despite the fact that it believes there
were commission arrangements with its sales force at least
through 2001.  (Exhibit 17).  Such commission agreements would
presumably extend to the National Sales Manager.  Despite running
a multi-million dollar sales force, Mr. Palmeroni's entire
personnel file consists of 53 pages, NVE 2897 to 2951, and
consists mostly of 401(k), COBRA, and attendance documents.
There is no correspondence from Mr. Palmeroni, one undated memo
to Robert Occhifinto concerning commission payments to sales
persons, and one undated and unsigned hand written note
purportedly concerning his own commission.  Despite denying the
Mr. Occhifinto reached a commission agreement with Mr. Palmeroni,
NVE's own documents substantiate payment of commissions from
2000, 2001, 2005.  (NVEA documents Bates #s 02843 to NVEA 2848).
Also missing are sales data necessary to calculate Joe
Palmeroni's commissions for the years 2000 through 2002 as well
as 2005.

    Notwithstanding that NVE has acknowledged that sales

17

personnel were paid commissions, NVE has failed to produce any correspondence or communication concerning the agreements that clearly existed for commission payments.  Also missing from his personnel file is even reference to his appointment as National Sales Manager or his later appointment as Vice-President of Sales.

**Missing Emails with Brokers, Sales Persons and Customers**

NVE has produced few if any emails concerning financial transactions with brokers, sales persons and customers, even though there was a constant stream of emails at NVE which had a bearing on customer and broker relations.  In response to Interrogatory 1, in Defendant Palmeroni's First Set of Interrogatories, dated June 2007, for example, requesting all documents relevant to the action, Plaintiff references in its response 2,863 documents.  See NVE Series A0001 to 2863  (Exhibit 16). These documents consist almost exclusively of customer orders but there are only approximately 10 emails, all of which relate to the issue of the sale of vans.  See Declaration of David Rostan, Esq., dtd. Feb. 14, 2011.

Strikingly, missing from this response is any email or correspondence from Import Warehouse or CB Distributors, despite NVE's position that it engaged in millions of dollars of business with these distributors.  Moreover, NVE has not produced the raw data for its sales figures or shown the connection between this

18

data and the calculation of sales commissions.  Defendant
Palmeroni's First Set of Interrogatories 6, 7, 11, and 12
requested information on how Import Warehouse and CB Distributor
became direct customers (as opposed to being brought in by
Sumicek as broker) and NVE provided no documents in response.

In contrast with the virtual absence of email correspondence
prior to 2005, NVE produced well over 100 emails relative to
Smart World, in which current NVE Sales Director Arthur Prindle
was a participant.  These emails all date from after 2005. <u>See</u>
Declaration of David Rostan, Esq., dated Feb. 14, 2011.
Defendant Sumicek's Request for Production of Documents is broad
and seeks all purchase orders, invoices and statements, delivery
tickets contracts and other documents regarding any alleged
wrongful payment of commission to Sunbelt (Interrogatory
1) documents related in any way to Plaintiff's claims against
defendant Sunbelt or Sumicek (Interrogatory 2) and any and all
communications or correspondence of any kind or character between
N.V.E. Inc., and any of the following listed entities, referring
in any way whatsoever to any of the allegations that are the
subject of this lawsuit:  (a) Sunbelt b)CB Distributors,
(c) Import Warehouse, Inc., (d) Joe Palmeroni, and (e) Ron
Sumicek (Interrogatory 4).

Notably, Plaintiff identified approximately 100 documents in
response to the Request for Production of Documents.

(Exhibit 22).  Of these documents, only 15 referenced commission.
And none of the 15 discussed commission or brokerage agreements
between Sunbelt, CB Distributors, Import Warehouse, Joe Palmeroni
or Ron Sumicek, except one memo from Joe Palmeroni to Robert
Occhifinto.  (See Exhibit 28).

**Plaintiff's Failure to Produce Responses to Defendant Defendant Sumicek's Court Ordered Discovery**

Defendant Sumicek by its former counsel Brian Cige formu-
lated document requests and interrogatories dated December 17,
2007 with a cover letter of the same date.[1] (Exhibit 23).  The
document request specifically asks Plaintiff at page two to
submit a written statement accounting for any document which has
been lost or destroyed, identifying the author of the document,
the person to whom the document was sent, the date on which the
document was prepared or transmitted and the date, if known, the
document was lost or destroyed, and if destroyed, the conditions
or reasons for such destruction and the persons requesting and
performing the destruction.  Plaintiff's first identification of
destroyed documents did not occur until November 2010.

The Sumicek Interrogatories were the subject of 41 subpoenas

---

[1] The Interrogatories appear to have been formulated in
2007.  However, it is unclear when these requests were actually
received by NVE.  According to counsel for Sunbelt and Sumicek,
these discovery requests were sent in December 2007 and again on
March 4, 2010.  A cover letter obtained from former counsel
suggests that the requests were sent on December 17, 2007.
(Exhibit 23).

which were ultimately withdrawn when the Court ordered NVE to
provide all sales data concerning the 41 Sumicek customers.
(<u>Exhibit 24</u>.  To date our understanding is that NVE has not
provided this information nor explained whether these documents
have been destroyed or are simply now inaccessible.

**LEGAL AGRUMENT**

**POINT I**

**THE ACTS OF PLAINTIFF NVE CONSTITUTES SPOLIATON OF
EVIDENCE AND, AS A RESULT, SANCTIONS MUST BE IMPOSED.**

A.   <u>Introduction, Definition of Spoliation</u>

Spoliation is "the destruction or significant alteration of
evidence, or the failure to preserve property for another's use
as evidence in pending or reasonably for[e]seeable litigation."
<u>MOSAID Technologies v. Samsung  Elecs. Co.</u>, 348 F. Supp.2d 332,
335 (D.N.J. 2004), <u>Zubulake  v. UBS Warburg LLC</u>, 229 F.R.D. 422,
430 (S.D.N.Y. 2004).  It occurs "when a party has intentionally
or negligently breached its duty to preserve potentially
discoverable evidence[.]"  <u>Kounelis v. Sherrer</u>, 529 F. Supp.2d
503, 518-519 (D.N.J. 2008).

Federal District courts have the authority to impose
spoliation sanctions pursuant to the Federal Rules of Civil
Procedure and inherent authority to impose sanctions on parties,
including the imposition of spoliation sanctions.  <u>Scott v. IBM</u>

<u>Corp.</u>, 196 F.R.D. 233, 247-48 (D.N.J. 2000) (citing <u>Chambers v.</u>

<u>NASCO, Inc.</u>, 501 U.S. 32 (1991)).


B.   <u>Plaintiff's Duty to Preserve</u>

A duty to preserve is an affirmative obligation arising

when the party in possession of the evidence knows that

litigation by the party seeking the evidence is pending or

probable and the party in possession of the evidence can foresee

the harm or prejudice that would be caused to the party seeking

the evidence if the evidence were to be discarded.  <u>Kounelis v.</u>

<u>Sherrer</u>, 529 F. Supp.2d 503, 518 (D.N.J. 2008).  "The existence

of a duty to preserve evidence is a question of law to be

determined by the court."  <u>Kolanovic v. Pak Gida A/S(Turk.)</u>, 77

F. Supp.2d 595, 602 (D.N.J. 1999) (citing <u>Aetna Life and Cas. Co.</u>

<u>v. Imet Mason Contractors</u>, 309 N.J. Super. 358, 365 (App. Div.

1998).

The duty to preserve material evidence arises not only

during litigation but also extends to that period before

litigation "when a party should have known that the evidence may

be relevant to future litigation.  <u>Major Tours, Inc. v. Colorel</u>,

2009 U.S. Dist. LEXIS 68128, *9 (D.N.J. Aug. 4, 2009)

(<u>Exhibit 26</u>); <u>Kronischv. United States</u>, 150 F.3d 112, 126 (2d

Cir. 1998),

"Once a party reasonably anticipates litigation, it must

suspend its routine document retention/destruction policy and put in place a `litigation hold' to ensure the preservation of relevant documents." <u>Major Tours, Inc. v. Colorel</u>, 2009 U.S. Dist. LEXIS 68128, *9 (D.N.J. Aug. 4, 2009) (quoting <u>Zubulake v. UBS Warburg LLC</u>, 220 F.R.D. 212, 218 (S.D.N.Y. Oct. 23, 2003).

"However, a party's discovery obligations do not end with the implementation of a litigation hold," <u>Major Tours, Inc. v. Colorel</u>, 2009 U.S. Dist. LEXIS 68128, * (D.N.J. Aug. 4, 2009) (citing <u>Zubulake</u>, 229 F.R.D. at 432).  "Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce relevant documents." <u>Major Tours, Inc. v. Colorel</u>, 2009 U.S. Dist. LEXIS 68128, * (D.N.J. Aug. 4, 2009).

C.   <u>Plaintiff Failed to Preserve and or Destroyed Categories of Documents Which It Could Foresee Were Discoverable.</u>

_____On January 6, 2006, Plaintiff terminated defendant Palmeroni, and has alleged that the reason for the termination was his conspiring with Mr. Sumicek to steal money from the company.  On January 24, 2006, Osvaldo F. Torres, the then counsel for Jesus Palmeroni, sent a letter to David Caldwell, Esquire, and counsel for NVE.  In his letter, Mr. Torres notified NVE of a number of claims which would ultimately be included in Mr. Palmeroni's counterclaims in the instant lawsuit.  These

include assertions that Mr. Palmeroni's employment was terminated
in violation of the New Jersey Conscientious Employee Protection
Act (CEPA).  It was specifically alleged that Palmeroni repotted
to the President of NVE and expressed his objection to unlawful
activity within the company relating to sexual harassment, FDA
violations, bankruptcy fraud, tax fraud and ongoing unlawful
conspiracies with third parties. (Exhibit__).

By August 6, 2007, Plaintiff, NVE submitted a certification
of Daniel M. Stolz in connection with a prior motion before this
Court.  At paragraph 3 of Mr. Stolz's certification, he provided
the following:  "By Order dated May 4, 2006, NVE was authorized
to employ the firm of Pashman Stein, as special counsel in the
Debtor in Possession, in connection with the within litigation,
commenced against Defendant, Jesus J. Palmeroni." (Exhibit__).

Accordingly, Plaintiff's knowledge of the likelihood of
litigation CONCERNING Mr. Palmeroni and his dealings with brokers
and customers arose no later than January 25, 2006, when Mr.
Stolz, counsel for NVE, advised Mr. Palmeroni's attorney that
they were going to apply to the bankruptcy court to hire Pashman
Stein as special counsel in connection with commencing the within
litigation against Mr. Palmeroni.

Moreover, the initial pleadings in this matter were file by
November 2006 and initial disclosures followed by June 2007.  By
the fall of 2007, in addition to the issues raised in the

24

complaint answers and counterclaims, the parties had placed into issue brokers of NVE, customers and distributors of NVE, financial transaction records, personnel files, and associated communication and correspondence relevant to the lawsuit subject to being preserved. Plaintiff's initial disclosures specifically referenced Sales, commission and related financial records; Customer relations records; Promotional materials; checks and banking records.

The discovery requests which followed from defendants and plaintiff were broad and went beyond the immediate parties to the lawsuit. Notably, plaintiff's own discovery requests of September 2007 sought agreements related to the exclusive brokerage arrangement for NVE products in Texas, Louisiana, Arkansas, Oklahoma, and New Mexico, Sunbelt and NVE commissions and sales documents relating to all Sunbelt brokerage accounts as well as agreements related to commission sharing. Clearly the litigation encompassed commission brokerage and commission agreements beyond those which were referenced in the November 2006 complaint. Moreover, Palmeroni and Sumicek's discovery request were equally broad.  Mr. Palmeroni' First Set of Interrogatories in September 2007 encompassed annual sales revenue of NVE, a history of the brokerage commissions paid by NVE to its other brokers who arranged sales of NVE product, from NVE's inception to date, as well as the basis for calculating commission and a history of

sales commissions paid to NVE or NVE personnel, from inception to date.

Defendant Sumicek's Interrogatory and Document Requests of December 2007 specifically requested information on all documents that had been destroyed or discarded and defendant Palmeroni's interrogatory requests asked for all documents relevant to this lawsuit in addition to the specific requests made.

Clearly, as early as 2007, Plaintiff was on notice to preserve documents related to its company sales and brokerage data and agreements, not just with respect to the immediate parties, but with respect to its broader transactions with customers, brokers and distributors.  By allowing the destruction of some of these documents in 2009, NVE has failed to meet its "affirmative obligation" to preserve these categories of relevant and discoverable information.

"While a litigant is under no duty to keep or retain every document in its possession, even in advance of litigation, it is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." MOSAID Technologies v. Samsung  Elecs. Co., 348 F. Supp.2d 332, 336 (D.N.J. 2004) (citing Scott, 196 F.R.D. at 249).

In sum, NVE expressed a very definite intention to initiate or at least investigate a lawsuit against Mr. Palmeroni and had knowledge of potential counterclaims against it some 11 months in

26

advance of the actual filing of the lawsuit.

When spoliation occurs, the Court may impose sanctions on the offending party because a litigant is "under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." Scott v. IBM Corp., 196 F.R.D. 233, 249 (D.N.J. 2000).  Importantly, negligent destruction of relevant evidence can be sufficient to give rise to the spoliation inference.  If a party has notice that evidence is relevant to an action, and either proceeds to destroy that evidence or allows it to be destroyed by failing to take precautions, common sense dictates that the party is more likely to have been threatened by that evidence.  MOSAID, 348 F. Supp.2d at 338.

Defendant Palmeroni asserts that as of February 2006 NVE had an affirmative obligation to take all reasonable measures to preserve its computer systems and all files and emails contained in those computer systems.  One reasonable precaution would have been to back up computer files.

Plaintiff's failed computer system ("MACS") was operative at least through May of 2006 based on the print date of a customer document of sale to International Sales Group. (Exhibit ). This was several months after NVE determined or at least could foresee the possibility of this litigation.  Consequently, either intentionally, or inadvertently, NVE failed to meet its duty to

preserve its computer files as it knew, or reasonably should have known, that these computer files and/or emails would likely be requested in reasonably foreseeable litigation.

D.   Appropriateness of Sanctions

The imposition of sanctions is "appropriate when there is evidence that a party's spoliation of evidence threatens the integrity of this Court." MOSAID, 348 F. Supp.2d at 335, "Potential sanctions for spoliation include: dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; and attorneys' fees and costs."   Id.

Spoliation sanctions serve a remedial function by leveling the playing field or restoring the prejudiced party to the position it would have been without spoliation. They also serve a punitive function, by punishing the spoliator for its actions, and a deterrent function, by sending a clear message to other potential litigants that this type of behavior will not be tolerated and will be dealt with appropriately if need be. Id.

E.   Test for Imposing Sanctions

Although in certain cases the court may impose spoliation sanctions as serious as the "dismissal of a claim or granting judgment in favor of a prejudiced party . . . [or the] suppression of evidence," id., the Court of Appeals for the Third

28

Circuit has cautioned that the imposition of such "drastic" sanctions is only warranted once the court evaluates "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994).

In order to establish prejudice, the party seeking spoliation sanctions must "come forward with plausible, concrete suggestions as to what [the missing] evidence might have been, and must show that its "ability to prepare effectively a full and complete trial strategy" has been impeded. Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003).

In choosing the appropriate sanction for the spoliation of evidence, courts should "select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." Schimd, 13 F.3d at 79.

**POINT II**

**AS A RESULT OF NVE'S SPOLIATON OF EVIDENCE, THE SANCTION OF EXCLUSION OF EVIDENCE IS APPROPRIATE REGARDING PLAINTIFF'S CLAIMS REGARDING SMART WORLD.**

A.   Exclusion of Evidence

Dismissal or suppression of evidence are the two most drastic sanctions because they strike at the core of the underlying lawsuit.  "As such, they should only be imposed in the most extraordinary of circumstances."  Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994)).

"Preclusion of evidence as a sanction for failure to provide notice or make required disclosures is available `in the limited circumstances where a lesser sanction is not sufficient to remedy the problem caused by an inexcusable delay in providing the required notice, thereby resulting in substantial prejudice to the non-disclosed party's ability to mount an adequate defense.'" Manorcare Health Services, Inc. v. Osmose Wood Preserving, Inc., 336 N.J. Super. 218 (App. Div. 2001) (citing Mitchell v.Procini, 331 N.J. Super. 445, 453-54 (App. Div. 2000)).  Manocare Health vs. Osmose Wood, 336 N.J. Super 218, 236-237 (2001), (where the manufacturer was afforded an opportunity to inspect damaged plywood and did so, but either intentionally or inadvertently was denied notice of the removal and replacement of the damaged plywood and thereby lost the ability to monitor the removal and

30

replacement phase, "to level the playing field" at trial the
admissibility the Court barred evidence obtained during the
removal and replacement stages.)

Substantial prejudice in maintaining one's defense "implies
the loss of witnesses, the loss of evidence, fading memories, and
the like." Id. "[T]he exclusion of testimony by surprise
witnesses is an appropriate sanction in cases where failure to
provide notice prejudiced the non-delinquent party." Id. (citing
Wymbs v. Tp. of Wayne, 163 N.J. 523, 545 (2000) (finding that
exclusion of the proffered testimony was the only viable option,
where "[t]he surprise to plaintiffs was real, the State's conduct
was inexcusable, and the prejudice to plaintiffs irreparable")).
The "exclusion of testimony and/or evidence is an appropriate
sanction to alleviate the prejudice resulting from serious
discovery violations." Id.

Exclusion of evidence prior to 2005 in the proposed Smart
World amended complaint is appropriate here, assuming the Court
permits the amendment, because Plaintiff has destroyed or made
inaccessible two categories of relevant evidence. First,
Plaintiff's financial and accounting system apparently crashed
sometime between May 2006 and November 2009.  Plaintiff lost from
its accounting and financial system, according to its own
counsel's letter, "[d]etailed records prior to November 2005
[which] cannot likely be retrieved.  Counsel's letter does not

31

state when NVE first learned that its financial and accounting system software was inoperative nor what steps NVE undertook, if any, to preserve documents on its system, known as MACS, once it was aware or could foresee that litigation would commence against Mr. Palmeroni.

Clearly, Plaintiff either chose to withhold or recklessly disregarded providing this information to defendants. Since the likelihood is that this information will not be retrieved it will be virtually impossible to identify contemporaneous terms of agreements NVE's may have had with the Holland company prior to 2005. Even if witnesses testify at trial regarding arrangements during the pre-2005 period, they cannot be cross examined with documents from this period. Plaintiff's spoliation of evidence thus threatens the integrity of this Court and the discovery and trial process. Should the Court, the parties, and a jury pass judgment in a case where, to use counsel for Plaintiff's words, "[d]etailed [financial and accounting] records prior to November 2005 [which] cannot likely be retrieved?" It is precisely this time period which is addressed in the proposed amended complaint of Plaintiff.

Even if Plaintiff were somehow to build a case in relation to Smart World based primarily on testimony, the alleged damages cannot be established in the absence of NVE's financial records and agreements for the period of 2000 through 2005. Likewise,

without the relevant sales documents it is impossible for defendants to know the quality of the products that was being sent to Smartworld or whether the discounts were being given to Smartworld for accepting close dated or overstocked items.

The integrity of this process is further compromised by the fact that Plaintiff apparently concealed the loss of its computer system from the Court and the parties for some time and compounded this problem by inexplicably authorizing its receptionist to destroy unnamed documents one by one.  Plaintiffs themselves may or may not know what documents have been lost. However, there appears to be no inventory or sensible rationale or protocol for the destruction of these documents.  Furthermore, there can be no excuse for Plaintiff withholding the fact that documents have been destroyed from defendants as well as from their own attorneys.

Although Plaintiff may argue that it did not anticipate its Smart World claims against defendants, Plaintiff was clearly on notice that its sales records and financial and accounting system was pertinent to the initial claims made against defendants Sumicek and Palmeroni as early as 2006. Indeed, plaintiff even acknowledged this very fact by including these very categories of documents as relevant in its Rule 26 initial disclosures.

Additionally, one of NVE's sources of information regarding its claims relating to Smartworld, was  information that was

"voluntarily produced" to NVE by Carolos Bengoa, owner of CB Distributors.  While NVE claims that it did not know about Smartworld until 2010, Mr. Bengoa voluntarily provided to NVE, on some unspecified date, documentation which gave rise to plaintiff's newly asserted claims.  This Court is fully aware of the fact that Mr. Bengoa has been involved in this litigation for five years now and he has been cooperating with plaintiff during that entire time period.

Whether NVE's failure to preserve relevant computer files and documents was intentional or inadvertent, the resulting prejudice is so significant that it deprives defendant access to crucial information from which to mount a defense.


## POINT III

**AS A RESULT OF NVE'S SPOLIATON OF EVIDENCE, THE SANCTION OF ADVERSE INFERENCE IS APPROPRIATE AS A SANCTION REGARDING DESTROYED EVIDENCE RELEVANT TO PLAINTIFF'S INITIAL COMPLAINT, AND AS AN ALTERNATIVE SANCTION FOR DOCUMENTS RELATED TO SMARTWORLD.**

<u>Adverse Inference Test</u>

An adverse inference or spoliation instruction, which is generally regarded as a rather mild spoliation-related sanction, see <u>Schmid</u>, 13 F.3d at 79 (recognizing that the exclusion of evidence is a "far more serious" sanction than the spoliation inference); <u>MOSAID</u>, 348 F. Supp.2d at 338 (calling the spoliation inference a "lesser sanction" than dismissal or

evidence suppression and which is intended to level the playing field between the parties).

The spoliation inference informs the trier of fact that it may "receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." Brewer v. Quaker State Oil Ref. Co.,72 F.3d 326, 334 (3d Cir. 1995); Scott, 196 F.R.D. at 248.

This inference is predicated upon the common sense observation that when a party destroys evidence that is relevant to a claim or defense in a case, the party did so out of the well-founded fear that the contents would harm him. Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1994)). In order for the spoliation inference to apply, four essential factors must be satisfied. First, `it is essential that the evidence in question be within the party's control. Id. Second, it must appear that there has been actual suppression or withholding of the evidence. Id. Third, the evidence destroyed or withheld was relevant to claims or defenses. Scott, 96 F.R.D. at 248). Fourth, it was reasonably foreseeable that the evidence would later be discoverable. Brewer, 72 F.3d 326.

Application of the four-part test for adverse inference follows:

1.   <u>Within Party's Control</u>

NVE has provided no document retention protocols or provided counsel with categories of documents destroyed and retained. Therefore, no one really knows what or how many documents are missing.  Plaintiff clearly acknowledges that the destroyed and inaccessible documents were within their control.  Likewise it was within Plaintiff's control to at least undertake efforts to preserve its financial and accounting and email records by instituting a backup system once it became certain in 2006 that litigation against defendants would ensue.

Plaintiff's purported reason for destroying documents—its need for additional storage space clearly makes no sense whatsoever since a company which realized gross sales in multiples of tens of millions of dollars likely could afford to rent additional storage space rather than risk destroying documents clearly relevant to this case.

2.   <u>Actual Suppression or Withholding of Evidence</u>

Our Federal New Jersey District courts have recognized that when considering this question, a Court need not have evidence of a party's specific intent to destroy evidence to order the imposition of a spoliation inference, as "negligent destruction of relevant evidence can be sufficient to give rise to the spoliation inference." <u>MOSAID</u>, 348 F. Supp.2d at 338.  A party need not show that its adversary "intentionally or knowingly

36

destroyed or withheld" evidence.  <u>Id.</u> at 337.  This is true because "[i]f a party has notice that evidence is relevant to an action, and either proceeds to destroy that evidence or allows it to be destroyed by failing to take reasonable precautions, common sense dictates that the party is more likely to have been threatened by the evidence" and, regardless of the "offending party's culpability[,] . . . it cannot be denied that the opposing party has been prejudiced." <u>Id.</u> at 338 (citing <u>Schmid</u>,13 F.3d at 78); <u>see also</u> <u>Scott</u>, 196 F.R.D. at 248-49.

Because NVE was unquestionably put on notice regarding the relevance of the evidence and because the record in this case indicates that the evidence in question has disappeared while under the defendants' control, defendant has met its burden to show that there has been "actual suppression or withholding of the evidence."  <u>MOSAID</u>, 348 F. Supp.2d at 336.

Here Plaintiff itself set forth the parameters of relevant evidence in its complaint and initial disclosures and not undertook to destroy documents without any system or protocol in place to preserve relevant evidence.  Ms. Gabone was simply ordered to destroy box after box.  Likewise, Plaintiff failed to print our financial and accounting evidence as a back up to its MACS system and has not even identified when the system became inaccessible.

In <u>Arteria Property Pty Ltd v. Universal Funding V.T.O.</u>,

2008 U.S. Dist. LEXIS 77199 (D.N.J. March 11, 2009) (Exhibit 25),
the defendants, the alleged spoliators, admitted in their Rule 26
disclosures to have in possession the Bank of New York letter,
yet when pressed about the issue in his deposition, defendants
stated that he did not know anything about the letter.  The Court
in Arteria held that this tends to show that the alleged
spoliators either had the document and then willfully destroyed
it, or had the document and lost it, which would constitute bad
faith or negligence, respectively.  "What was once under the
control of the Defendants is now gone.  The factors justifying an
adverse inference have been met as to this letter and the jury
should be instructed accordingly."  Arteria Property Pty Ltd v.
Universal Funding V.T.O., 2008 U.S. Dist. LEXIS 77199, * 14
(D.N.J. March 11, 2009).

Regarding Evidence Relevant to Initial Complaint

     Likewise, in our present case, NVE indicated in its initial
disclosures that the following categories of documents as being
relevant to this dispute:

     (a)  Sales, commission and related financial records;
     (b)  Customer relations records
     (c)  Promotional materials
     (d)  Checks and banking records

     Furthermore, other documents were identified as relevant,
including Mr. Palmeroni's compensation, correspondence and
emails, sales data brokerage and commission records, insurance

correspondence.  These categories of documents are those which
NVE cannot now locate and has admitted that these documents may
have been destroyed or in fact have been destroyed.  As in
Arteria, the above actions of NVE tend to indicate that it either
had the documents and computer files and willfully destroyed them
or had these relevant and discoverable items and lost them.
Either way, the factors justify an adverse inference.

Regarding Evidence Relevant to Proposed Amended Complaint

    In MOSAID, the district court directly addressed whether the
"actual suppression" requirement implies a requirement of bad
faith.  348 F. Supp.2d 332.  After a thorough analysis of Third
Circuit case law in light of the spoliation inference's "remedial
function" of "leveling the playing field after a party has
destroyed or withheld relevant evidence," the court in MOSAID
adopted a "flexible approach," which takes into account both the
culpability of the offending party and the prejudice to the
innocent party.  Id. at 337-38.  It explained that cases will
arise in which "the offending party's culpability is largely
irrelevant as it cannot be denied that the opposing party has
been prejudiced."  Id.; see also U.S. v. Suarez, No. 09-932, at
*17 (D.N.J. October 21, 2010).

    In the present case, the prejudice to defendant cannot be
understated.  Based on the amount of business that NVE allegedly
did with Smartworld, we can only surmise that there were

thousands of documents relating to their business dealings.  NVE only supplied defendant, Palmeroni's counsel with a handful of documents with NVE collaborator, Carlos Bengoya, supplying another fifty or so documents.  Defendant Palmeroni contends that the loss of likely hundres or thousands of documents leaves defendant without the means to mount an adequate defense. Consequently, as noted in <u>MOSAID</u>, NVE's culpability, while significant, is largely irrelevant as it cannot be denied that Palmeroni has been prejudiced

    3.   <u>Relevant to Claims or Defenses</u>

In the instant case, counsel for Palmeroni has requested plaintiff to provide a breakdown of categories of documents that were destroyed and those that were not destroyed.  A demand was also made regarding NVE's retention protocols.  NVE has not responded to these requests.  One must assume that NVE did not have retention protocols in place. NVE contents that none of the destroyed documents were relevant.  But by failing to provide categories of destroyed and saved documents, NVE itself does not know the contents or categories of missing evidence.  We do know however that NVE's financial and accounting system has shut down and is unlikely to be retrieved.

In <u>Telequest Int'l Corp. v. Dedicated Business Systems</u>, 2009 U.S. Dist. LEXIS 19546, * 10 (D.N.J. March 11, 2009) (<u>Exhibit 27</u>), with respect to the third element, the alleged

spoliator argued that "we do not even know if any evidence is missing or what it consists of." Id.  The Telequest Court viewed the statement as a relevancy objection.  The Court went on to state that it is beyond argument that the alleged spoliators were aware that a lawsuit had been brought against them and that the subject matter of this lawsuit focused directly on alleged spoliator's business activities and customer interactions.  The Court therefore ruled that any emails and documents relating to these issues were potentially relevant.  Id.

Similarly, in our present case, as discussed more fully in the Statement of Facts, Plaintiff was on ample notice in 2006 of the need to preserve pertinent evidence and not destroy information without knowing its contents.

The prejudice to defendant Palmeroni is described in detail in the above statement of facts, the declaration of Jesus J. Palmeroni and in earlier points of this legal argument.  The prejudice to Mr. Palmeroni is profound and affects his ability to raise defenses to plaintiff's complaint and his ability to muster facts in support of his counterclaim.  As a result of NVE's failure to meet its affirmative obligation to preserve relevant and discoverable evidence, defendant Palmeroni does not have the collaborating sales data, emails, brokerage agreements and other items of evidence that he will need to  mount an adequate defense and sustainable counterclaim.

4.   <u>Reasonably Foreseeable that Evidence would later be Discoverable</u>

The duty to preserve evidence arises when a party reasonably believes that litigation is foreseeable and, as such, may arise "many years before litigation commences[.]" <u>Micron Technology, Inc. v. Rambus, Inc</u>., 255 F.R.D. 135,148 (D. Del. 2009).  As discussed in **Point I**, D., above, Plaintiff was well aware in January 2006 that this litigation would soon commence and its duty to preserve started in 2006.

## POINT IV

**ASSUMING THIS COURT MAKES A FINDING OF SPOLIATON OF EVIDENCE IN THIS CASE, PLAINTIFF, NVE, MUST BE COMPELLED TO RELEASE ITS LITIGATION HOLD LETTERS.**

Although in general hold letters are privileged, the prevailing view, which the Court adopts, is that when spoliation occurs the letters are discoverable.  <u>See</u> <u>Keir v. Unumprovident Corp.</u>, No. 02-CV-8781(DLC), 2003 WL 21997747 at *6 (S.D.N.Y. Aug. 22, 2003) (allowing detailed analysis of emails pertaining to defendant's preservation efforts after finding that electronic records which had been ordered preserved had been erased).[2]

---

[2]   <u>See</u> <u>also</u> <u>Zubulake v. UBS Warburg LLC</u>, 229 F.R.D. 422, 425nn. 15-16 (S.D.N.Y. 2004) ("<u>Zubulake V</u>") (disclosing the details of counsel's litigation hold communication after discovering that at least one e-mail had never been produced); <u>Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.</u>, 244 F.R.D. 614,
(continued...)

In this matter defendant seeks to know whether Plaintiff failed to preserve evidence notwithstanding a specific instruction from counsel.  Such information would have a bearing on Plaintiff's culpability as well as the issue of prejudice. The letters, if any, could be submitted for in camera review.

## CONCLUSION

In spoliation cases, monetary sanctions are used to compensate a party for "the time and effort it was forced to expend in an effort to obtain discovery" to which it was otherwise entitled.  MOSAID, 348 F. Supp.2d at 339.  Sanctions may also include attorneys fees and costs.  Id. at 335.  In this matter Plaintiff acted willfully to destroy paper evidence, failed to inventory the destroyed documents and compounded the problems by concealing this fact from its own attorney and the defendants.  In addition, Plaintiff withheld information concerning the wholesale loss of financial and accounting data which now, according to Plaintiff's counsel, appears irretrievable.  In light of these facts, defendant Palmeroni seeks an order suppressing Plaintiff's evidence with respect to

---

[2] (...continued)
634 (D. Colo. 2007) (permitting plaintiff to take a Rule 30(b)(6) deposition to explore the procedures defendants' counsel took "to identify, preserve and produce responsive documents" after finding that defendants expunged the hard drives of several former employees after the present litigation had began).

Smart World prior to 2005 as well as an order permitting an adverse inference with respect to all destroyed evidence in connection with the case against defendants Palmeroni, Sumicek and Sunbelt.

Counsel for defendant Palmeroni also seeks costs and attorneys fees in connection with making this motion.