NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| N.V.E., INC., | : | |
| | : | |
| | : | **Civil Action No. 06-5455 (GEB)** |
| **Plaintiff,** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JESUS PALMERONI, et al.** | : | <u>**OPINION**</u> |
| | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

Pending before this Court is a Motion by Plaintiff N.V.E., Inc. ("Plaintiff" or "NVE") to amend its complaint to add thirty-four new defendants ("New Defendants") and two additional claims against Defendants Jesus J. Palmeroni ("Mr. Palmeroni"), Ronald Sumicek and Sunbelt Marketing (collectively the "Defendants"). (Docket Entry No. 160, the "Motion"). Having considered the parties' submissions, including the Court-requested supplemental submissions dated February 21, 2011, the Court **GRANTS** Plaintiff's motion for leave to file an amended complaint.

## I.    PROCEDURAL BACKGROUND

In November 2006, Plaintiff instituted this action against Defendants seeking damages for Defendants' conspiracy to defraud. (Docket Entry No. 1, the "Complaint"). The Complaint included thirteen causes of action, such as claims under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), New Jersey RICO, Fraud, Civil Conspiracy, Conversion, Interference with Property Rights, Breach of Duty of Loyalty and Breach of Contract. (*Id.*). Thereafter, in November 2007, Mr. Palmeroni sought to dismiss this action. (Docket Entry No. 30). In October

2008, Chief Judge Brown transferred this matter to the Bankruptcy Court and in October 2009, the Court withdrew the reference. (Docket Entry Nos. 66 & 71). Thereafter, in January 2010, the Court entered a Case Management Order setting deadlines for, among other things, fact and expert discovery. (Docket Entry No. 78). Since October 2009, the Court has ruled on multiple motions to quash and informal discovery disputes. The parties are currently engaged in discovery.

## II.     FACTUAL BACKGROUND

Plaintiff manufactures, distributes and sells nutritional supplements and energy drinks. (Docket Entry No. 160, Certification of Ellen W. Smith, Esq., Exhibit 1, the "Proposed Amended Complaint" at ¶ 7). Plaintiff sells its products through brokers, who get paid a commission on sales directly to consumers, and to distributors, who resell the product to retailers. (*Id.* at ¶ 39). Plaintiff employed Mr. Palmeroni from 1999 to 2006, first as a salesman and later as Vice President of Sales. (*Id.* at ¶ 37).

NVE alleged that Mr. Palmeroni entered into secret arrangements with certain brokers who purchased NVE products for payments in exchange for assignment or manipulation of NVE accounts. (*Id.* at ¶ 40). In addition to the kickback scheme, Mr. Palmeroni and a fellow NVE employee, Vincent Rosarbo, formed an entity called Smart World, Inc. ("SW US"). (*Id.* at ¶ 16). NVE already maintained a relationship with a European distributor located in the Netherlands, also called Smart World ("SW Netherlands"). (*Id.* at ¶ 33). NVE contends that Mr. Palmeroni used SW US to purchase NVE products at a lower international sales price without ever intending to export them and resold the products in the United States, undercutting NVE's sales. (*Id.* at ¶ 16). NVE also contends that SW Netherlands received commissions for permitting SW US to place orders in the United States under the guise that it was placing the orders for SW Netherlands. (*Id.* at ¶ 33).

-2-

In the Motion, NVE seeks to add thirty-four defendants and two causes of actions to the existing thirteen.   The thirty-four defendants include Mr. Palmeroni's wife, Mr. Rosarbo, Mr. Rosarbo's wife and daughter, Mr. Palmeroni and Mr. Rosarbo's companies (National Retail Consulting Group, SW US, American Wholesale Distributors, Foremost International, Global Marketing & Sales Group, LLC and VAR), the brokers and distributors allegedly involved in the kickback scheme and SW Netherlands.  (*Id.* at ¶¶ 8 - 36).  NVE seeks to add the New Defendants to the existing RICO and common law claims.

## II.    LEGAL ANALYSIS

Fed. R. Civ. P. 15(a)(2) allows a party to amend its pleading by leave of court when justice so requires.  Leave to amend pleadings is to be freely given.  Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  The decision to grant leave to amend rests within the discretion of the court.  *Foman*, 371 U.S. at 182.  Pursuant to *Foman*, leave to amend may be denied on the basis of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposing party; and (4) futility of amendment.  *Id.*  "Only when these factors suggest that amendment would be 'unjust' should the court deny leave."  *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006) (internal citations omitted).  Here, Mr. Palmeroni is opposing Plaintiff's motion on the basis of undue delay, prejudice and futility of the proposed amendment.  These arguments will be addressed in turn.

### A.    Undue Delay and Prejudice

In determining whether an amendment should be denied for undue delay, the Court must "focus on the plaintiffs' motives for not amending their complaint to assert [the proposed] claim earlier[.]" *Adams v. Gould*, 739 F.2d 858, 868 (3d Cir. 1984).  "There is no presumptive period in

which a motion for leave to amend is deemed 'timely' or in which delay becomes 'undue.'" *Coulson v. Town of Kearny*, No. 07-5893, 2010 U.S. Dist. LEXIS 3711, at *8 (D.N.J. Jan. 19, 2010).  "The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court[.]" *Adams*, 739 F.2d at 868.  "Delay may become undue when a movant has had previous opportunities to amend the complaint."  *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).  In other words, the Court should also consider whether "new information came to light or was available earlier to the moving party." *In re Adams Golf, Inc. Secs. Litig.*, 381 F.3d 267, 280 (3d Cir. 2004).

In essence, Mr. Palmeroni contends that Plaintiff unduly delayed in filing the Motion because Plaintiff knew or should have known the facts underlying the amendment since 2006.  *See* Legal Memorandum in Opposition to Plaintiff's Motion to Amend Complaint ("Def. Brief") at 11.  Mr. Palmeroni argues that Plaintiff had access to documents and witnesses since the inception of this lawsuit or shortly thereafter, which, if Plaintiff had examined, would have provided the basis for Plaintiff's claims. *See id.* at 15.  Finally, Mr. Palmeroni argues that this case is four years old and an amended complaint will only delay the litigation further.   In opposition, Plaintiff argues that it did not know the facts underlying its claims against the New Defendants until March 2010.  *See* Reply Brief in Support of Plaintiff's Motion for Leave to File An Amended Complaint ("Plaintiff Reply") at 9.  Plaintiff also contends that because the Defendants concealed their actions, Plaintiff could not have uncovered the facts that support the allegations sooner. *See id.* at 9-10.

In determining whether the instant motion was the result of undue delay, this Court must examine Plaintiff's reasons for not moving to amend sooner.  *AstraZeneca AB v. Ranbaxy Pharms.,*

-4-

*Inc.*, No. 05-5553, 2008 U.S. Dist. LEXIS 102097, at \*21 (D.N.J. Dec. 15, 2008).  In doing so, the Court finds that Plaintiff has not unduly delayed in seeking to amend the complaint.  Although Plaintiff initially filed this case in late 2006, the District Court subsequently transferred this matter to the Bankruptcy Court in 2008.  (*See* Docket Entry No. 66).  Between 2006 and 2008, the parties engaged in very little discovery.  In October 2009, the Court withdrew the reference to the Bankruptcy Court, reactivating the case. (*See* Docket Entry No. 71).  Since that time, Plaintiff has diligently pursued discovery, including propounding written requests and subpoenas to third parties. *See* Plaintiff Reply at 4 - 9.  Therefore, Plaintiff has demonstrated good cause for the amount of time it took to file the instant motion.

Moreover, delay alone does not justify denying a motion to amend.  *Cureton*, 252 F.3d at 273.  Rather, only when the delay places an unwarranted burden on the court or on the opposing party is a denial on the basis of delay appropriate.  *Adams*, 739 F.2d at 868.  Here, Defendant fails to advance a single piece of evidence to demonstrate that the amendment would be prejudicial. Reading Mr. Palmeroni's opposition liberally, at most, Mr. Palmeroni argues that he is "prejudiced in his ability [to] ascertain an accurate calculation of damages  based on reliable NVE documents" because NVE allegedly destroyed documents created from 2002 to 2004.   Def. Brief at 14.  The Court, however, cannot ascertain how NVE's alleged destruction of documents will result in prejudice to Mr. Palmeroni should the Court grant the Motion.  Moreover, Plaintiffs have proffered a reasonable explanation for the delay and are not guilty of repeated failures to cure deficiencies by previous amendments since this is Plaintiff's first attempt to amend its Complaint.  *Sullivan v. W.N.Y. Residential, Inc.*, No. 01-cv-7847, 2003 U.S. Dist. LEXIS 6498, at \*4 (E.D.N.Y. Mar. 4, 2003).    As such, the Court finds that NVE has not unduly delayed nor has Mr. Palmeroni

demonstrated prejudice should the Court grant the Motion.

**B.    Futility**

The Court next considers Defendant's futility argument.  An amendment is considered futile if it advances a claim or defense that is legally insufficient on its face.  Courts may properly deny a motion to amend when the amendment would not withstand a motion to dismiss.  *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983).  With respect to futility, "[it is] clear that an amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)); *see also Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (reasoning that an amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face" (citations and footnotes omitted)).  As such, "[i]n assessing futility, the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Burlington*, 114 F.3d at 1434 (citing *Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir. 1996) (further citation omitted)).  The Court therefore must accept all factual allegations as true "as well as the reasonable inferences that can be drawn from them." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 796 (3d Cir. 2001).

Here, Defendant argues that Plaintiff may not add new defendants to the RICO claims (Counts One through Five, the "RICO Claims") to the extent the newly plead allegations occurred outside of the four year statute of limitation period for Civil RICO cases.   *See* Def. Brief at 2.  Specifically, Mr. Palmeroni contends that any activity prior to November 2006 cannot form the basis of the allegations in the Proposed Amended Complaint as the amendment would not relate back to

the original filing nor should the Court utilize equitable tolling.  *See id.* at 3, 9, 15.   Mr. Palmeroni

does not argue that the addition of the New Defendants to the remaining claims (Counts Six through

Fifteen) are futile.   As such, the Court grants the Motion as to those counts.

In opposition, Plaintiff contends that the doctrine of equitable tolling supports its position

that its claims against the New Defendants did not begin to accrue until Spring 2010 when it

discovered the alleged wrongdoing. *See* Plaintiff Reply at 15-16.  Plaintiff further argues that it could

not have discovered the facts supporting the allegations against the New Defendants until that time

due to Mr. Palmeroni and the alleged co-conspirators' actions to conceal the fraud.  *Id.*  As such,

Plaintiff contends that the Amended Complaint is timely and thus, not futile.

It is well settled that the applicable statute of limitations period for a Civil RICO claim is four

years. *See Agency Holding Corp. v. Malley-Duff Assocs.*, 483 U.S. 143, 156 (1987).   There are two

ways the Court may assess when the statute of limitation for the RICO Claims accrued.[1]   Under the

injury discovery rule announced by the Third Circuit in *Forbes v. Eagleson*, the Court must

"determine when the plaintiffs knew or should have known of their injury." 228 F.3d 471, 484 (3d

Cir. 2000).   In the alternative, the Court can utilize equitable tolling, which "functions to stop the

statute of limitations from running where the claim's accrual date has already passed."  *Forbes*, 228

F.3d at 486 (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir.

1994)).

Plaintiff filed the Motion on November 22, 2010. Therefore, to be timely, Plaintiff could not

have known nor should it have known of the alleged injury prior to November 22, 2006.  *See*

---

[1] Although Defendant addresses relation back, Plaintiff does not argue that the Court
should apply Fed. R. Civ. P. 15.  Therefore, the Court need not address those arguments.

*Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*, Civil Action No. 9-379, 2010 WL 597475, at

* 3 (W.D.Pa. Feb. 16, 2010).   Accordingly, before the Court considers whether the statute of

limitations can be equitably tolled, the Court must first apply the injury discovery rule to determine

when Plaintiff knew or should have known about its injuries.

To apply the injury discovery rule, the Court considers objective and subjective inquiries.

*See Knit With v. Knitting Fever, Inc.*, No. Civ. A. 08-4221, 2008 WL 5381349, at * 18 (E.D. Pa.

Dec. 18, 2008).   First, the Court considers the objective inquiry, i.e., whether the plaintiff had

"inquiry notice" of its injuries.   To do so, the defendant must "show the existence of 'storm

warnings,' meaning that 'any information or accumulation of data would alert a reasonable person

to the probability' that the defendant engaged in wrongdoing." *Id.* (citing *Cetel v. Kriwan Fin. Grp.,

Inc.*, 460 F.3d 494, 507 (3d Cir. 2006)).   Defendant need not demonstrate actual awareness of the

injury, merely that a "reasonable [plaintiff] of ordinary intelligence would have discovered the

information and recognized it as a storm warning." *Cetel*, 460 F.3d at 507 (internal citations

omitted).   If the defendant is successful, the burden shifts to the plaintiff for the second step, the

subjective inquiry, to show that, "heeding the storm warnings, they exercised reasonable diligence

but were unable to find and avoid the storm." *Id.*

Mr. Palmeroni contends that Plaintiff should have known about its injury between January

2006 and February 2006, yet Plaintiff did not seek to file the Amended Complaint until November

22, 2010. *See* Defendant Brief at 18; Declaration of David Rostan Esq. in Support of Supplemental

Submission in Opposition to Plaintiff's Motion to Amend Complaint dated February 21, 2011

("Palmeroni Supplement") at ¶¶ 30, 32.   In essence, Mr. Palmeroni argues that the following events

occurred prior to November 2006 and thus, cannot support NVE's claims: (1) bank records

-8-

implicating Michelle Hooey and Maria Palmeroni dated between 2001 and 2006 (Certification of Ellen W. Smith, Esq., Ex. 4 to 7); (2) kickbacks from and fraudulent sales to brokers including Curtis Beverage, Darren Householder, Brand New Energy, AWD, Dirk Nieuwenhuis and Carlos Bengoa occurring between 2003 and 2006 (Amended Complaint at ¶¶ 9, 15, 17, 28 to 32); and (3) the 2001 to 2006 conspiracy by Mr. Palmeroni and Mr. Rosarbo to create false orders for international products utilizing SW US.   The Court, however, is not persuaded by this argument.   Although these events may have occurred prior to November 22, 2006, Mr. Palmeroni must demonstrate that Plaintiff knew or should have known about them for the statute of limitations to begin to accrue.

In support of Mr. Palmeroni's argument that NVE had knowledge of the facts underlying the amendment prior to November 22, 2006, Mr. Palmeroni cites to the following "storm warnings:" (1) Mr. Bengoa's cooperation with NVE in February 2006; (2) NVE's accounting records showing wire transfers from SW US to NVE from 2002 to 2004; and (3) Mr. Palmeroni's initial disclosures in June 2007. *See generally* Def. Brief.  In his supplemental brief, Mr. Palmeroni attempts to bolster his argument by citing more "storm warnings:" (1) Mr. Rosarbo and Mr. Occhifinto's prior relationship in the 1990s and Mr. Rosarbo's employment history (Palmeroni Supplement at ¶¶ 5 to 12); (2) an alleged "brown notebook" with a Smart World ledger found on NVE's premises[2] (*Id.* at ¶¶ 13 to 18); and  (3) an unrelated lawsuit between NVE and Smart World in 2005  (*Id.* at ¶¶ 19 to

---

[2] Mr. Palmeroni's supplemental submission claims that he gained knowledge of this brown notebook through Mr. Rosarbo's attorney, Mr. Stephen Dratch.  Palmeroni Supplement at ¶¶ 5 to 12.   Since then, NVE submitted a letter to the Court attaching a letter from Mr. Dratch denying knowledge of such a notebook. (Docket Entry No. 184).   Because there is a dispute about the existence of the notebook and Mr. Palmeroni's supplemental submission contains no specific details about the relevance of the notebook to the statute of limitations, the Court declines to consider the notebook in its analysis.

24).

Mr. Palmeroni, however, has failed meet his burden to allege how any of these activities were "storm warnings" which should have alerted NVE to the alleged injury, prior to November 22, 2006. First, Mr. Palmeroni has not set forth any evidence that Mr. Bengoa's cooperation with NVE in February 2006 relates to newly plead allegations. Moreover, Mr. Palmeroni has not shown any reason why Plaintiff should have known to ask Mr. Bengoa about the alleged Smart World conspiracy or the involvement of other parties in the kickback scheme. Second, Mr. Palmeroni's initial disclosures occurred less than four years ago. Therefore, even if the disclosures contained "storm warnings," NVE's investigation and subsequent Motion is timely. Third, Mr. Palmeroni has not demonstrated how the SW US wire transfers would trigger NVE to investigate the transfers when it appeared that the orders were in the normal course of business. Mr. Palermoni has not shown any out of the ordinary documentation that would have alerted a reasonable party to investigate Mr. Palmeroni, Mr. Rosarbo, any of the new entities allegedly involved in the kickback scheme or the SW US transactions prior to November 22, 2006. Finally, Mr. Palmeroni has not articulated the relevance of Mr. Rosarbo and Occhifinto's prior relationship in the 1990s or the unrelated litigation with Smart World Netherlands to the accrual of the statute of limitations for the newly plead allegations. The Court cannot ascertain how either of these facts would have alerted NVE to the facts underlying the Proposed Amended Complaint.

In sum, the Court finds that the RICO Claims in the Amended Complaint are timely as NVE did not know, nor could it have known, about the facts underlying the new allegations prior to November 22, 2006. Therefore, the Motion is hereby granted.

-10-

**III .**   **CONCLUSION**

       For the reasons set forth above, the Court grants Plaintiff's Motion to Amend the Complaint.

The Court will issue an appropriate Order.

                           s/ Esther Salas
                           **ESTHER SALAS**
                           **UNITED STATES MAGISTRATE JUDGE**