Samuel J. Samaro, Esq.
Aidan P. O'Connor, Esq.
Ellen W. Smith, Esq.
**PASHMAN STEIN**
A Professional Corporation
Court Plaza South
21 Main Street
Hackensack, New Jersey 07601
(201) 488-8200
Counsel for Plaintiff, **N.V.E., Inc.**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| N.V.E., INC.,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>JESUS J. PALMERONI a/k/a JOSEPH PALMERONI, MICHELLE HOOEY a/k/a MICHELLE PALMERONI, MARIA C. PALMERONI, VINCENT ROSARBO, ANGELINA ROSARBO, NICOLE DILUNGO, NATIONAL RETAIL CONSULTING GROUP, INC., AMERICAN WHOLESALE DISTRIBUTION, INC., SMART WORLD, INC., FOREMOST INTERNATIONAL, GLOBAL MARKETING & SALES GROUP, LLC, VAR CONSULTING, INC., RONALD SUMICEK, SUNBELT MARKETING, INTERNATIONAL SALES GROUP,  RICHARD D. HOROWITZ, JERALD I. HOROWITZ, PROFIT MOTIVATORS, INC., PMI GLOBAL MARKETING CORP., DIRK NIEUWENHUIS, CARLOS BENGOA, CB DISTRIBUTORS, INC., DARREN HOUSEHOLDER, BRAND NEW ENERGY, INC., STEVE R. SESSIONS, SESSIONS SPECIALTY COMPANY, JARRETT W. PORTZ, JOHN J. PORTZ, SR., KATHERINE M. PORTZ,  INTERNATIONAL WHOLESALE SERVICE, INC., INTERNATIONAL WHOLESALE SUPPLY, INC., ALFREDO D. FELICE, CHARMAINE C. FELICE, CURTIS BEVERAGE, LLC, SMART WORLD (NETHERLANDS), VITAL PHARMA, T & J LIMITED, ABC COMPANIES 1-10, and JOHN DOES 1-10,<br>　　　　　　　Defendants. | CIVIL ACTION NO. 06-cv-5455 (GEB)(ES)<br><br>Document Electronically Filed<br><br>**FIRST AMENDED COMPLAINT**<br>**JURY DEMAND** |
| JESUS J. PALMERONI,<br><br>　　　　　Third-Party Plaintiff,<br><br>v.<br><br>ROBERT OCCHIFINTO and WALTER ORCUTT,<br><br>　　　　　Third-Party Defendants. | |

Plaintiff, N.V.E., Inc. ("NVE"), by and through its attorneys, Pashman Stein, a Professional Corporation, by way of amended complaint against the captioned defendants states:

## NATURE OF THE ACTION

1.  This is a case arising out of interlocking aspects of one or more conspiracies among Plaintiff's former employees and outside brokers and distributors to steal money, products and opportunities from NVE. The lynchpin of the schemes is defendant Jesus Palmeroni ("Palmeroni"), NVE's former Vice President of Sales, who initiated and orchestrated a scheme involving manipulation of accounts and kickbacks by brokers of sales commissions, and a scheme involving fraudulent misrepresentations to NVE as to the real purchaser of its products that allowed Palmeroni and Vincent Rosarbo, another NVE sales employee, to siphon off millions of dollars of NVE sales, as well as an elaborate cover up of these activities.  NVE seeks relief, including actual, punitive and treble damages, an accounting and the imposition of equitable trusts and liens on the proceeds of the nefarious schemes.

## JURISDICTION AND VENUE

2.  This action arises under 18 *U.S.C.* § 1964 and 28 *U.S.C.* § 1367, seeking an accounting, with supplemental state claims under the New Jersey RICO statute, *N.J.S.A.* 2C:41-1 et seq., civil conspiracy, fraud, interference with prospective

economic advantage, interference with property rights, breach of contract and breach of duty of loyalty.

3.     This Court has jurisdiction of this action under the Organized Crime Control Act of 1970, 18 *U.S.C.* § 1964 (a) and (c) (Racketeer Influenced and Corrupt Organizations); 28 *U.S.C.* §§ 1331 (federal question); 1332 (diversity); 1337 (commerce); and under the principles of supplemental jurisdiction under 28 *U.S.C.* § 1367.

4.     Personal jurisdiction and venue in this action are predicated on 28 *U.S.C.* § 1391(b) and 18 *U.S.C.* § 1965 since a substantial part of the events giving rise to the claim occurred in New Jersey.

**RELEVANT TIMES**

5.     As used herein, the phrase "relevant times" refers to and includes the period commencing in or about 1999 and continuing through at least October 2009 and potentially longer, as the period during which Defendants and each of them continuously engaged in the wrongful acts described herein.

6.     Because these schemes were the product of one or more ongoing conspiracies and were affirmatively and fraudulently concealed by the defendants, the applicable statutes of limitations were tolled until NVE's recent discovery of these improper acts.

## PARTIES

### A.   Plaintiff

7.   Plaintiff, NVE, is a corporation organized under the laws, and a resident, of the State of New Jersey engaged in the manufacture, distribution and sale of nutritional supplements and energy drinks. Its principal place of business is located at 15 Whitehall Road, Andover, New Jersey.

### B.   Defendants

8.   Jesus "Joe" Palmeroni ("Palmeroni"), a resident of Pennsylvania, was employed for over six years in sales for NVE, rising to the position of Vice President of Sales.  Palmeroni's position gave him significant control and influence over brokers and distributors of NVE's products.

9.   Palmeroni is the sole owner or principal of defendants National Retail Consulting Group ("NRCG") and Global Marketing & Sales, LLC ("Global") and a joint owner with Vincent Rosarbo of American Wholesale Distribution, Inc. ("AWD") and Smart World, Inc. ("Smart World US") and has an interest in Foremost International ("Foremost").  Palmeroni also has interests in Curtis Beverage, LLC and Alpha Pharmaceuticals.

10.   Michelle Hooey a/k/a Michelle Palmeroni ("Hooey") is a former employee of NVE, a resident of Pennsylvania and the spouse of Palmeroni.  During the relevant time period, she aided Palmeroni's activities while she was employed by NVE.  Later while

4

employed by Lakeland Bank in NJ, she misused her position to facilitate the unlawful affairs of Palmeroni and his entities, including NRCG, generally, and through the transfer of kickbacks to them.

11.  Maria C. Palmeroni, a resident of Pennsylvania, was previously married to Palmeroni and was actively involved in the unlawful transactions of his companies, including NRCG.

12.  Vincent Rosarbo ("Rosarbo"), a resident of Connecticut, was employed by NVE as a Salesman from February 5, 2001 until August 10, 2004, when he was terminated.  Rosarbo, together with his wife, defendant Angelina Rosarbo, is the owner of defendant VAR Consulting ("VAR").  Rosarbo also owned defendants AWD and Smart World US with Palmeroni.

13.  Angelina Rosarbo, a resident of Connecticut, is a co-owner and treasurer of defendant VAR.

14.  Nicole Dilungo ("Dilungo"), a resident of Connecticut, is the daughter of Angelina Rosarbo and the stepdaughter of Rosarbo and the corporate secretary and treasurer of VAR.

15.  National Retail Consulting Group, Inc. ("NRCG"), a resident of Nevada, was owned by Palmeroni and used to launder kickbacks from brokers and as a repository of proceeds from the sale of NVE products through Smart World, American Wholesale Distribution, Inc. and VAR.  In 2006, NRCG also sold fraudulently-

obtained NVE products to Brand New Energy and others at a price below that charged by NVE.

16.   Smart World, Inc. ("Smart World US"), a resident of Nevada, now dissolved, was owned by Palmeroni and Rosarbo, both of whom formed the entity on or about June 26, 2001, while employed by NVE, using the same name as a legitimate NVE distributor, Smart World, located in The Netherlands ("Smart World Netherlands"). Either posing as the Dutch company or in complicity with Smart World Netherlands and its personnel, Smart World US purchased NVE products at NVE's lower international sales price reserved for export items and resold the products in the United States, in competition with NVE, at prices unavailable domestically.  By at least the end of 2002 if not before, Palmeroni and Rosarbo began paying T & J Limited, agents of Smart World Netherlands, "commissions" for their complicity in this scheme, eventually totaling over $900,000.

17.   American Wholesale Distribution, Inc. ("AWD"), a resident of Nevada, was incorporated by Palmeroni and Rosarbo on July 9, 2001, while both were employed by NVE.  AWD purchased NVE products from Smart World US and, in competition with NVE, resold them domestically below the prices charged by NVE to its domestic distributors and customers.  AWD was used as a conduit for unlawful proceeds to pass to Palmeroni, Rosarbo or their other entities.

18.  Foremost International ("Foremost") is a company located in Carlstadt, NJ, in which Palmeroni may have an interest. Foremost provides warehouse facilities and freight forwarding and was used by Palmeroni to pick up and store the products from NVE that were purchased fraudulently for Smart World US, and also to ship these same products to domestic distributors and customers after sale by one of Palmeroni or Rosarbo's entities.

19.  Global Marketing & Sales Group, LLC ("Global"), a resident of Nevada, is owned by Palmeroni.  During the period 2006 to 2009 Palmeroni used Global to collect kickbacks and other unlawful payments from other conspiring defendants, including defendant PMI.

20.  VAR, a resident of Connecticut, formed in 2001 by the Rosarbos, received kickbacks or other unlawful payments from participants in the unlawful schemes described herein, including NRCG, and was used, generally, in the sale of products fraudulently-obtained from NVE by Smart World US and as a repository of unlawful proceeds.

21.  Ronald Sumicek ("Sumicek") is an owner and/or principal of defendants Sunbelt Marketing ("Sunbelt"), a broker of NVE products, and International Sales Group ("ISG"), a distributor of NVE products, all residents of Texas.  Sumicek and Sunbelt conspired with Palmeroni by paying kickbacks to Palmeroni consisting of part of commissions paid to them by NVE.  ISG, while

aware that Palmeroni and Rosarbo were employed by NVE, knowingly purchased fraudulently-obtained NVE products from them through NRCG and AWD at a price lower than NVE charged its domestic distributors.

22.  Sunbelt, a resident of Texas, is a broker of manufacturers' products, including NVE's.  While Palmeroni was at NVE, Sunbelt paid Palmeroni kickbacks in exchange for the assignment of favorable accounts.

23.  ISG, established by Sumicek and others and a resident of Texas, was a distributor of NVE products. While aware that Palmeroni and Rosarbo were employed by NVE, ISG knowingly purchased fraudulently-obtained NVE products from NRCG and AWD at prices lower than NVE charged its domestic distributors.  ISG is also indebted to NVE in the amount of $262,070.20 for products it purchased without payment.

24.  Richard D. Horowitz and his brother, Jerald Horowitz (the "Horowitzes"), residents of Florida, are the owners and/or principals of defendants Profit Motivators, Inc. and PMI Global Marketing Corp. (together "PMI"), brokers of NVE products.  The Horowitzes and PMI conspired with Palmeroni to kick back part of commissions paid by NVE to them.

25.  PMI and Profit Motivators, New York residents, are the brokerage businesses used by the Horowitzes, above, to kick back payments to Palmeroni.

26.   Dirk Nieuwenhuis ("Nieuwenhuis"), a resident of
California, is a broker or distributor of NVE products who
conspired with Palmeroni to kick back portions of commissions to
Palmeroni in exchange for the assignment of favorable accounts.

27.   Carlos Bengoa ("Bengoa") is the owner and president of
defendant CB Distributors, Inc. ("CB"), a Wisconsin resident,
which operates as a distributor for NVE products.   Bengoa and CB,
while aware that Palmeroni and Rosarbo were employed by NVE,
knowingly purchased fraudulently-obtained NVE products from them
through their companies at prices lower than NVE charged its
domestic distributors.

28.   Darren Householder ("Householder") is the President of
defendant Brand New Energy ("Brand New"), both California
residents, which operates as a distributor of NVE products.
Householder, personally, and Brand New, while aware that Palmeroni
and Rosarbo were employed by NVE, knowingly purchased
fraudulently-obtained NVE products from NRCG, AWD and VAR at
prices lower than NVE charged its domestic distributors.

29.   Steve R. Sessions is an owner of defendant Sessions
Specialty Company, both residents of North Carolina, who act as
distributors of NVE products. Sessions and Sessions Specialty
Company, while aware that Palmeroni and Rosarbo were employed by
NVE, knowingly purchased fraudulently-obtained NVE products from
AWD at prices lower than NVE charged its domestic distributors.

9

30.  Jarrett Portz is the president and CEO of defendants International Wholesale Service, Inc. and International Wholesale Supply, Inc., residents of Arizona.  Jarrett Portz and International Wholesale Service and International Wholesale Supply, while aware that Palmeroni and Rosarbo were employed by NVE, knowingly purchased fraudulently-obtained NVE products from AWD at prices lower than NVE charged its domestic distributors.

31.  John J. Portz, Sr. and Katherine M. Portz are officers of defendants International Wholesale Service, Inc. and International Wholesale Supply, Inc., residents of Arizona. John J. Portz, Sr. and Katherine M. Portz, while aware that Palmeroni and Rosarbo were employed by NVE, personally and for their companies knowingly purchased fraudulently-obtained NVE products from AWD.

32.  Defendants Alfredo D. Felice and Charmaine C. Felice are residents of Florida.  Charmaine C. Felice is a member manager of Curtis Beverage, LLC, a resident of Florida, in which Palmeroni has an ownership interest. The Felices, individually, and Curtis Beverage, while aware that Palmeroni and Rosarbo were employed by NVE, knowingly purchased fraudulently-obtained NVE products from AWD.

33.  Defendant Smart World (Netherlands) ("Smart World Netherlands") is a resident of The Netherlands and was a European distributor of NVE products since 1999.  Smart World

10

Netherlands conspired with Palmeroni and Rosarbo to defraud NVE
by placing orders for Smart World Netherlands, at greatly
reduced international prices, with no intention of exporting the
products from the US.  Instead, Smart World Netherlands knew
that the products would be sold by Palmeroni, Rosarbo and their
companies to NVE customers at prices that undercut the prices
charged by NVE.  In exchange, Smart World Netherlands or its
agents were paid "commissions" for participating in the
conspiracy.

34.  Defendant Vital Pharma is a resident of The
Netherlands and has some common ownership and/or relationship
with Smart World Netherlands.  Vital Pharma participated in the
fraudulent misrepresentations to NVE by placing some of the
orders for NVE products purportedly for delivery to Smart World
Netherlands.

35.  T & J Limited, a resident of The Netherlands or the
British Territory of Gibraltar, served as a conduit for the
payments made by Palmeroni, Rosarbo and Smart World US to Smart
World Netherlands for its participation in the conspiracy.
Payments from Smart World US to T & J Limited known to date
total over $900,000 between December 2002 and May 2006.

36.  Defendants ABC Companies 1-10 and John Does 1-10
represent fictitious names of presently unknown entities and
persons who participated in the schemes to defraud NVE,

11

including by paying or receiving kickbacks in connection with sales of NVE Products or by selling or purchasing fraudulently-obtained NVE products.

## SUBSTANTIVE FACTUAL ALLEGATIONS

### A.   Kickback of Commissions

37.   Between approximately 1999 and his termination in January of 2006, Palmeroni was employed by NVE as a salesman and later, Vice President of Sales.

38.   Palmeroni's position at NVE carried responsibility for all sales, worldwide, in a multimillion dollar business.

39.   NVE sells its products directly to consumers and through brokers, who receive commissions on the sales they transact.   NVE also sells products to distributors, who resell the products to retailers at higher prices.

40.   Beginning in 2000, Palmeroni entered into secret arrangements, unknown to NVE, with certain brokers of NVE products, including Sumicek, the Horowitzes and Nieuwenhuis (collectively the "Conspiring Brokers") to make illicit payments to Palmeroni, including kickbacks on commissions, in exchange for the assignment or manipulation of NVE accounts to the benefit of Conspiring Brokers (the "Kickback Scheme").

41.   The Conspiring Brokers knew or should have known that the Kickback Scheme was improper and unlawful.

42.   Between 2000-2005, Sunbelt Marketing received commissions from NVE under the Kickback Scheme exceeding $914,500 and unlawfully paid no less than $466,949.35 to Palmeroni in kickbacks.

43.   Palmeroni directed that proceeds of the Kickback Scheme with Sunbelt be paid to his company, NRCG.

44.   Palmeroni deposited kickbacks from Sunbelt in Lakeland Bank in New Jersey ("Lakeland Bank") and possibly other banks as well.

45.   Between 2001 and 2009, PMI and Profit Motivators paid Palmeroni not less than $742,648.89 in kickbacks under the Kickback Scheme.   Between 2001 and 2006, these monies were paid, at Palmeroni's instructions, to NRCG.   Also pursuant to Palmeroni's instructions, PMI, between 2006 and 2009, made payments totaling not less than $90,000 to another Palmeroni company, Global.

46.   Nieuwenhuis made kickback payments totaling not less than $51,287 to NRCG between 2001-2005, and may have made unlawful payments to other Palmeroni entities after that date.

47.   At all relevant times, Michelle Hooey, a former NVE employee, Palmeroni's companion and later his wife, aided and abetted Palmeroni in carrying out the Kickback Scheme, first while she was still employed by NVE and later by actively using her position at Lakeland Bank to deposit and transfer monies

13

among various Palmeroni or Palmeroni-controlled accounts maintained at the Bank and elsewhere.

48.  The Conspiring Brokers knew that Palmeroni was NVE's agent, that Palmeroni owed NVE a duty of loyalty and that the payment of said brokerage commissions to him would be improper and unlawful.  Nevertheless, the Conspiring Brokers agreed to pay kickbacks to Palmeroni and/or his designees.

49.  NVE paid the Conspiring Brokers commissions by means of periodic checks mailed from New Jersey to Texas (Sunbelt), New York (Profit Motivators and PMI) and California (Nieuwenhuis) throughout the relevant time period.

50.  The Conspiring Brokers illicitly paid Palmeroni or various other of his designees, including NRCG and Group Marketing & Sales, LLC., a portion of the commissions paid by NVE by means of interstate commerce in cash, checks or wire transfers.

51.  In engaging in such conduct, Palmeroni, Sumicek and Sunbelt, the Horowitzes and Profit Motivators and PMI, and Nieuwenhuis did agree and conspire together and with others as yet unknown, to devise and participate in schemes and plans of deceit in which they would and did abuse Palmeroni's fiduciary relationship and obligations to NVE to cause financial gain to themselves, procure unlawful commissions and divert the services,

14

assets and profits of NVE to the use and benefit of themselves and others and to the detriment of NVE.

52.  At all relevant times, in connection with the activities giving rise to this claim for relief, Palmeroni, Sumicek and Sunbelt, the Horowitzs and Profit Motivators and PMI, and Nieuwenhuis conspired with each other and with others yet unknown to engage in the various activities set forth herein and aided and abetted one another in such activities, all proscribed and prohibited by 18 U.S.C. §1962(d).

**B.   Creation of Smart World and Fraudulent Misrepresentation**

53.  Beginning no later than 2001, Palmeroni and Rosarbo conspired with a number of NVE distributors (the "Conspiring Distributors") and other customers to distribute the NVE products fraudulently-obtained by Smart World US, keeping the proceeds which rightly belonged to NVE.  These products were sold through their jointly-owned companies, AWD and Smart World, as well as through one or more of their separately-owned entities, including VAR and NRCG.  The proceeds of these illegal sales were transferred to other entities Palmeroni and Rosarbo owned and to themselves personally.

54.  During the relevant time period, Bengoa and CB made payments totaling at least $6,000,000 for the purchase of fraudulently-obtained NVE products from AWD, NRCG, Smart World, and VAR and possibly from other Palmeroni or Rosarbo entities.

The amounts of such payments made by CB known to date are: NRCG ($35,236.64), AWD ($5,053,072.36), Smart World ($862,920.00) and VAR ($44,641.26).

55.  During the relevant time period, Householder individually made payments totaling at least $24,942 for the purchase of fraudulently-obtained NVE products from AWD.

56.  During the relevant time period, Brand New Energy made payments totaling at least $926,090 for the purchase of fraudulently-obtained NVE products from AWD, NRCG and VAR and possibly from other Palmeroni or Rosarbo entities, including payments in the first half of 2006 of at least $41,556 to VAR and at least $42,560 to NRCG.  In addition to payments made to VAR and NRCG, Brand New made payments known to date to AWD in the amount of $841,974.

57.  During the relevant time period, Sessions and Sessions Specialty Company made payments totaling at least $274,799.58 for the purchase of fraudulently-obtained NVE products from AWD and possibly other Palmeroni or Rosarbo entities.

58.  During the relevant time period, Sumicek and ISG made payments totaling at least $35,251.52 for the purchase of fraudulently-obtained NVE products from AWD and NRCG and possibly from other Palmeroni or Rosarbo entities, including purchases of at least $29,251.52 from AWD in 2004 and at least $6,000 from NRCG in 2005.

16

59.   In 2004, John J. Portz, Sr. and Katherine M. Portz individually made payments totaling at least $50,000 for the purchase of fraudulently-obtained NVE products from AWD.

60.   Between 2003 and 2005, International Wholesale Service made payments totaling at least $270,951.20 to AWD for the purchase of fraudulently-obtained NVE products.  In 2005, International Wholesale Supply, Inc. made payments totaling at least $19,440 to AWD for the purchase of fraudulently-obtained NVE products.

61.   Between 2003 and 2004, Alfredo D. Felice and Charmaine C. Felice individually made payments totaling at least $5,031 for the purchase of fraudulently-obtained NVE products to AWD.

62.   In 2004, Curtis Beverage, LLC made payments to AWD and VAR totaling at least $119,124 for the purchase of fraudulently-obtained NVE products.

63.   Palmeroni and Rosarbo conspired and entered into secret arrangements with the Conspiring Distributors as aforesaid for the purchase and sale of NVE products which had been fraudulently-obtained by Smart World US at prices lower than the legitimate prices available for NVE products in the US, the unlawful proceeds of which went to Palmeroni, Rosarbo or their entities.  Each of the Conspiring Distributors knew or reasonably should have known that this secret arrangement was

improper and unlawful and defrauded NVE by depriving it of its rightful sales and profits.

64.   Upon information and belief, sales of such fraudulently-obtained NVE products may have begun before 2001 and continued after June 2006 and may include additional sales to Conspiring Distributors as well as sales to individuals and entities whose identities are currently concealed.

65.   Palmeroni, as NVE's Vice President of Sales, and Rosarbo, as its salesman, were obligated to perform their duties faithfully and loyally to NVE.

66.   In connection with the activities giving rise to these claims for relief, each of the Defendants named herein acted with malice, intent and knowledge and with a wanton and reckless disregard of the rights of NVE.

67.   At all relevant times, NVE was engaged in interstate and foreign commerce in that its products were sold throughout the United States and abroad and these activities caused money, products, supplies, materials, services and individuals to travel interstate and abroad.

68.   At all relevant times and in furtherance of the schemes and artifices to defraud and to obtain money by means of false pretenses, defendants, on numerous occasions, used and caused to be used mail depositories of the United States Postal

Service and transmitted and or received payments by checks or wire transfers in violation of 18 U.S.C. §§ 1341 and 1343.

69.  At all relevant times and in execution or concealment of the schemes and artifices to defraud and obtain money by means of false pretenses, defendants, on numerous occasions, caused and induced persons to travel in interstate and foreign commerce and transported or caused to be transported money and goods of the value of five thousand dollars ($5,000) or more, each such use of interstate or foreign commerce in the execution or concealment of the scheme or artifice to defraud constituting a separate and distinct violation of 18 U.S.C. § 2314.

70.  The activities of the various defendants in the formation and execution of the scheme to defraud NVE had a pervasive and debilitating impact on NVE's affairs and efforts in commerce among states of the United States and abroad.  The time of NVE's management personnel and legal counsel was diverted from other potentially profitable ventures and misspent identifying or compensating for the various activities described herein.  Services and assets of NVE were not only diverted into purposes that served the best interests of others and not those of NVE, but they were not then available for alternative uses and opportunities.  Additional services and assets have had to be employed to keep NVE's projects profitable or to keep them from becoming unduly unprofitable.  As such, Plaintiff has been

and is being directly and indirectly injured by the Kickback
Scheme and the purchase and sale of its products that were
fraudulently obtained.

**FIRST CAUSE OF ACTION**
**RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS STATUTE**
**(Federal Civil RICO Substance and Conspiracy)**
**(ALL DEFENDANTS)**

71.  NVE repeats and incorporates the preceding paragraphs
as if set forth in full herein.

72.  NVE is a "person" within the meaning of 18 U.S.C. §§
1961(3) and 1964(c).

73.  Palmeroni, Rosarbo and all other named defendants are
"persons" within the meaning of 18 U.S.C. §§ 1961(3).

74.  Palmeroni, Rosarbo and all other named defendants are
a group associated in fact and thus an "enterprise" within the
meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and (d).  Said
enterprise has a hierarchical structure and differentiated roles
of its participants, with Palmeroni and Rosarbo initiating and
managing the criminal enterprise through their actions, first as
the inside men in the fraudulent scheme.

75.  The criminal enterprise set forth above engaged in
activities which affected interstate commerce, within the
meaning of 18 U.S.C. § 1962(c).

76.  Palmeroni, Rosarbo and all other named defendants and
others yet unknown conducted or participated, directly or

indirectly, in the conduct of the enterprise's affairs, and
conspired to do so through a pattern of racketeering activity
within the meaning of 18 U.S.C. § 1961(1)(B) and (5), to wit:

    (a)   Multiple instances of mail fraud in violation of 18
          U.S.C. § 1341;

    (b)   Multiple instances of wire fraud in violation of 18
          U.S.C. § 1343; and

    (c)   Multiple instances of transportation fraud in
          violation of 18 U.S.C. § 2314.

    77.   NVE was directly and distinctly injured by Palmeroni,
Rosarbo and all other named defendants in its business and
property in an as yet undetermined amount by reason of a
violation of 18 U.S.C. § 1962(c) and (d) committed by Palmeroni,
Rosarbo and all other named defendants.

**SECOND CAUSE OF ACTION**
**RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS STATUTE**
**(Federal Civil RICO Substance and Conspiracy)**
**(ALL DEFENDANTS)**

    78.   NVE repeats and incorporates the preceding paragraphs
as if set forth in full herein.

    79.   NVE is a "person" within the meaning of 18 U.S.C. §§
1961(3) and 1964(c).

    80.   Palmeroni, Rosarbo and all other named defendants are
"persons" within the meaning of 18 U.S.C. §§ 1961(3).

81. NVE is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and (d).

82. Palmeroni, Rosarbo and all other named defendants were each employed by or associated with NVE, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce within the meaning of 18 U.S.C. § 1962(c) and (d).

83. With respect to the secret agreement among the Defendants to defraud NVE of brokerage commissions and rightful sales and profits of its products, Palmeroni, Rosarbo and all other named defendants conspired to, within the meaning of 18 U.S.C. § 1962(d) and did conduct or participate, directly or indirectly, in the conduct of NVE's affairs in a fashion prohibited by 18 U.S.C. § 1962(c) through a pattern of activity defined by 18 U.S.C. §§ 1961(1)(B) and (5), including:

(a) Multiple instances of mail fraud in violation of 18 U.S.C. § 1341;

(b) Multiple instances of wire fraud in violation of 18 U.S.C. § 1343; and

(c) Multiple instances of transportation fraud in violation of 18 U.S.C. § 2314.

84. NVE was directly and distinctly injured by Palmeroni, Rosarbo and all other defendants in its business and property in an as yet undetermined amount by reason of a violation of 18

22

U.S.C. § 1962(c) and (d) committed by Palmeroni, Rosarbo and all other named defendants.

**THIRD CAUSE OF ACTION**
**NEW JERSEY RACKETEER INFLUENCED AND**
**CORRUPT ORGANIZATIONS ACT**
**(New Jersey Civil RICO Substantive)**
**(ALL DEFENDANTS)**

85.  NVE repeats and incorporates the preceding paragraphs as if set forth in full herein.

86.  NVE is a "person" within the meaning of N.J.S.A. 2C:41-1(b).

87.  Palmeroni, Rosarbo and all other named defendants are "persons" within the meaning of N.J.S.A. 2C:41-1(b).

88.  Palmeroni, Rosarbo and all other named defendants are a group associated in fact and thus an "enterprise" within the meaning of N.J.S.A. 2C:41-1(c).  Said enterprise has a hierarchical structure and differentiated roles of its participants, with Palmeroni and Rosarbo initiating and managing the criminal enterprise through their actions, first as the inside men in the fraudulent scheme.

89.  The criminal enterprise set forth above engaged in activities which affected trade or commerce within the meaning of N.J.S.A. 2C:41-1(h).

90.  With respect to the secret agreement among the Defendants to defraud NVE of brokerage commissions and rightful sales and profits of its products, Palmeroni, Rosarbo and all

23

other named defendants participated in a pattern of racketeering activity including, but not limited to theft by deception, N.J.S.A. 2C:20-4, and falsifying and tampering with the records of NVE in violation of N.J.S.A. 2C:21-4 as well as conduct defined as "racketeering activity" under 18 U.S.C. § 1961(1)(B), pursuant to of N.J.S.A. 2C:41-1(a)(2).

91.   NVE was directly and distinctly injured by Palmeroni, Rosarbo and all other named defendants in its business and property in an as yet undetermined amount by reason of their racketeering activities.

**FOURTH CAUSE OF ACTION**
**CORRUPT ORGANIZATIONS ACT**
**(New Jersey Civil RICO Substantive)**
**(ALL DEFENDANTS)**

92.   NVE repeats and incorporates the preceding paragraphs as if set forth in full herein.

93.   NVE is a "person" within the meaning of N.J.S.A. 2C:41-1(b).

94.   Palmeroni, Rosarbo and all other named defendants are "persons" within the meaning of N.J.S.A. 2C:41-1(b).

95.   NVE is an "enterprise" within the meaning of N.J.S.A. 2C:41-1(c).

96.   Palmeroni, Rosarbo and all other named defendants were each employed by or associated with NVE, an enterprise engaged in, and the activities of which affected, trade or commerce.

97.  Palmeroni, Rosarbo and all other named defendants participated through a pattern of racketeering activity beginning in or about 2000 to at least 2006 and possibly beyond those times, directly and indirectly, in the affairs of NVE in violation of N.J.S.A. 2C:41-2(c).

98.  With respect to the secret agreement among the Defendants to defraud NVE of brokerage commissions and rightful sales and profits of its products, Palmeroni, Rosarbo and all other named defendants participated in a pattern of racketeering activity including, but not limited to theft by deception, N.J.S.A. 2C:20-4 and falsifying and tampering with the records of NVE in violation of N.J.S.A. 2C:21-4 as well as conduct defined as "racketeering activity" under 18 U.S.C. § 1961(1)(B), pursuant to of N.J.S.A. 2C:41-1(a)(2).

99.  NVE was directly and distinctly injured by Palmeroni, Rosarbo and all other named defendants in its business and property in an as yet undetermined amount by reason of the racketeering activities of Palmeroni, Rosarbo and all other named defendants.

### FIFTH CAUSE OF ACTION
### NEW JERSEY RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
### (New Jersey Civil RICO Conspiracy)
### (ALL DEFENDANTS)

100. NVE repeats and incorporates the preceding paragraphs as if set forth in full herein.

25

101. Defendants Palmeroni, Rosarbo and all other named defendants, in their individual capacities and for their individual interests, joined in conspiracies to abuse the fiduciary relationship and trust between Palmeroni and Rosarbo and NVE and to  abuse the discretion granted to Palmeroni and Rosarbo by NVE; under which Defendants Palmeroni and Rosarbo would breach their obligation of undivided loyalty and fidelity to NVE; and Defendants would alter the records of NVE so as to make material misrepresentations with the intent of defrauding NVE and concealing the schemes from it.

102. Defendants Palmeroni, Rosarbo and all other named defendants, committed wrongful acts pursuant to the conspiracies to defraud NVE, including, but not limited to, Defendants' actual abuse of the fiduciary relationship and trust between Palmeroni and Rosarbo and NVE; Palmeroni and Rosarbo's breach of their obligation of undivided loyalty and fidelity to NVE; and Defendants' knowing, intentional and willful misrepresentations of material fact in order to defraud NVE.

103. Said actions were taken by Palmeroni, Rosarbo and all other named defendants in furtherance of the conspiracy to violate N.J.S.A. 2C:41-2(b) and (c) and constitute a violation of N.J.S.A. 2C:41-2(d).

104. NVE was directly and distinctly injured by Palmeroni, Rosarbo and all other named defendants in its business and

26

property in an as yet undetermined amount by reason of the
racketeering activities of Palmeroni, Rosarbo and all other
named defendants.

### SIXTH CAUSE OF ACTION
#### FRAUD
#### (PALMERONI, HOOEY, MARIA C. PALMERONI,
#### NRCG, GLOBAL AND CONSPIRING BROKERS)

105. NVE repeats and incorporates the preceding paragraphs
as if set forth in full herein.

106. Palmeroni, Rosarbo, Hooey, Maria Palmeroni and all
Conspiring Brokers fraudulently misrepresented the legitimacy of
their accounts to NVE so that it would pay brokerage commissions
to them, part of which was then kicked back to Palmeroni.

107. Palmeroni and the Conspiring Brokers actively
concealed, by changing NVE's records or otherwise, that they
were not entitled to all or a part of these brokerage
commissions and were kicking back a portion of them to
Palmeroni.

108. Palmeroni and the Conspiring Brokers had sole
knowledge and/or access to material facts and knew that these
facts were not known to or reasonably discoverable by NVE.

109. Palmeroni and the Conspiring Brokers intentionally and
knowingly led NVE to believe that they were entitled to these
brokerage commissions with the intent to induce NVE to continue
to pay these fraudulent brokerage commissions.

27

110. NVE reasonably relied to its detriment on the false representations of defendants mentioned above, and paid brokerage commissions on false accounts or other accounts manipulated by Palmeroni to provide for greater commission payments than they otherwise would have been entitled to.

111. NVE was directly and distinctly injured by Palmeroni and the Conspiring Broker defendants in its business and property in an as yet undetermined amount by reason of the fraudulent misrepresentations and omissions of material fact by these defendants.

**SEVENTH CAUSE OF ACTION**
**FRAUD-DECEIT**
**(PALMERONI, ROSARBO, SMART WORLD, INC., SMART WORLD**
**(NETHERLANDS), VITAL PHARMA AND T&J LTD. AND**
**CONSPIRING DISTRIBUTORS)**

112. NVE repeats and incorporates the preceding paragraphs as if set forth in full herein.

113. Palmeroni and Rosarbo incorporated Smart World US under the same name as an existing NVE distributor in The Netherlands, Smart World, for the purpose of deceiving NVE into believing that purchase orders from Smart World were for products that would be exported for sale internationally, in order to qualify for deeply reduced international prices.

114. Either posing as the Dutch company or in complicity with it, Palmeroni and Rosarbo, directly or through their other entities purchased NVE products as Smart World Netherlands at

28

lower, international prices, well below NVE's price to domestic distributors.

115. At a certain point, Palmeroni and Rosarbo bought Smart World Netherlands' silence and/or assistance to continue the phony international purchases.

116. Palmeroni and Rosarbo resold the products purchased for or on behalf of Smart World US to NVE distributors and other customers in the United States at a price that was lower than NVE's own price to US distributors and customers.

117. Defendants Palmeroni, Rosarbo, Smart World US and Smart World Netherlands knowingly and falsely represented to NVE that purchases were for Smart World Netherlands and for international sale.

118. NVE believed and justifiably relied upon defendants' misrepresentation that the orders entered for Smart World were for export to Smart World Netherlands and was induced by this misrepresentation to sell its products to Smart World US at the greatly reduced international price.

119. Palmeroni and Rosarbo conspired with the defendant NVE distributors to sell them these NVE products at a price lower than that offered by NVE to domestic distributors.

120. Each of the Conspiring Distributors purchased NVE products from Palmeroni, Rosarbo or one of their entities, knowing that their secret arrangement was improper and unlawful

and defrauded NVE by depriving it of its rightful sales and
profits.

121. As a result of NVE's justifiable reliance on
defendants' misrepresentations, it sustained damages, in lost
profits, sales and business opportunities in an amount not yet
fully known.

### EIGHTH CAUSE OF ACTION
#### UNLAWFUL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
#### (ALL DEFENDANTS)

122. NVE repeats and incorporates the preceding paragraphs
as if set forth in full herein.

123. NVE had a reasonable expectation of economic advantage
from the manufacture and sale of its products.

124. Defendants knew that NVE had a rightful expectancy of
economic advantage through the sale of its products.

125. Defendants, including Palmeroni, Rosarbo, their
entities and all persons associated with them, wrongfully and
without justification, interfered with NVE's expectancy of
economic advantage or benefit by inducing NVE to pay undeserved
commissions to Conspiring Brokers, part of which was kicked back
to Palmeroni; and by fraudulently obtaining NVE products and
reselling them to Conspiring Distributors who knowingly
purchasing fraudulently-obtained NVE products from Palmeroni,
Rosarbo and their entities (Conspiring Distributors).

126. In the absence of the wrongful acts of the defendants, NVE would have realized greater profit both by paying lower commissions to the Conspiring Brokers and by realizing its sales potential to the Conspiring Distributors who instead ordered NVE products from the Palmeroni and Rosarbo entities at a lower price.

127. As the result of these wrongful acts by the defendants, NVE sustained damages, in lost profits, sales and business opportunities in an amount not yet fully known.

**NINTH CAUSE OF ACTION**
**CIVIL CONSPIRACY**
**(ALL DEFENDANTS)**

128. NVE repeats and incorporates the preceding paragraphs as if set forth in full herein.

129. Palmeroni, Rosarbo and the other named defendants purposefully agreed to defraud NVE to secure broker commissions and/or sell or purchase fraudulently- obtained NVE products and acted in concert to commit the unlawful acts asserted above, thereby causing damage to NVE.

130. NVE was directly and distinctly injured by Palmeroni, Rosarbo and all other named defendants in its business and property in an as yet undetermined amount by reason of the wrongful and unlawful acts of these defendants.

## TENTH CAUSE OF ACTION
### INTERFERENCE WITH PROPERTY RIGHTS
### (ALL DEFENDANTS)

131. NVE repeats and incorporates the preceding paragraphs as if set forth in full herein.

132. The activities of Palmeroni, Rosarbo and the other named defendants constitute an interference with the property rights of NVE.

133. The defendants' interference with the property rights of NVE was willful and intentional.

134. NVE has sustained and will continue to sustain substantial damages as a result of the defendants' interference with its property rights in an amount that is presently undetermined.

## ELEVENTH CAUSE OF ACTION
### BREACH OF DUTY OF LOYALTY
### (PALMERONI AND ROSARBO)

135. NVE repeats and incorporates the preceding paragraphs as if set forth in full herein.

136. Palmeroni, as Vice President of Sales for NVE, and Rosarbo, as a full-time salesman for NVE, owed NVE obligations of undivided loyalty and fidelity and had a duty to act honestly and faithfully in the best interests of NVE and not for their own self-interests.

137. The aforesaid acts engaged in by Palmeroni and Rosarbo were willful and intentional and constituted a breach of their duties of loyal to NVE.

138. NVE has sustained substantial damages as a result of Palmeroni and Rosarbo's breach of their duties of loyalty in an amount that is presently undetermined.

### TWELFTH CAUSE OF ACTION
#### BREACH OF CONTRACT
#### (PALMERONI AND ROSARBO)

139. NVE repeats and incorporates the preceding paragraphs as if set forth in full herein.

140. The aforesaid acts engaged in by Palmeroni and Rosarbo constituted a breach of their contracts with NVE.

141. NVE has sustained substantial damages as a result of Palmeroni and Rosarbo's breaches of their contracts in an amount that is presently undetermined.

### THIRTEENTH CAUSE OF ACTION
#### ACCOUNTING
#### (ALL DEFENDANTS)

142. NVE repeats and incorporates the preceding paragraphs as if set forth in full herein.

143. Palmeroni and the conspiring defendants, as a result of the fraudulent conduct herein alleged, received and split brokerage commissions and/or proceeds of fraudulently-obtained NVE products, to which they were not entitled or authorized. The full amount of such payments made to defendants for these

33

improper accounts as well as unknown others are presently
unknown to NVE.

144. NVE requests an accounting of all of the aforesaid
commission payments received by Palmeroni and the Conspiring
Brokers, and each of them, and an accounting of the proceeds of
sales of fraudulently-obtained NVE products, and payment with
interest of the amount due as a result of the accounting.

145. Palmeroni and Rosarbo received payments from the
conspiring distributors for sales of NVE products which they
fraudulently obtained. The full amount of payments made by
conspiring distributors to Palmeroni and Rosabo are presently
unknown to NVE.

146. NVE requests an accounting of all of the aforesaid
sales payments made by the conspiring distributors, and each of
them, and payment with interest of the amount due as a result of
the accounting.

### FOURTEENTH CAUSE OF ACTION
#### CONSTRUCTIVE TRUST
#### (ALL DEFENDANTS)

147. NVE repeats and incorporates the preceding paragraphs
as if set forth in full herein.

148. As a result of the wrongful acts of the defendants,
the defendants have been unjustly enriched.

149. NVE requests that the Court impose a constructive
trust upon the monies received by the defendants through

implementation of their fraudulent schemes and require

defendants to account for and return all such monies to NVE.

### FIFTEENTH CAUSE OF ACTION
### BREACH OF CONTRACT, UNJUST ENRICHMENT AND BOOK ACCOUNT
### (ISG AND SUMICEK)

150. NVE repeats and incorporates the preceding paragraphs
as if fully set forth herein.

151. ISG owes NVE $262,070.20 for NVE products it purchased
without payment. ISG and Sumicek are alter egos.

152. NVE has demanded payment, but ISG and Sumicek have
failed and refused to pay the monies owed.

153. By reason of the foregoing, ISG and Sumicek are
obligated to NVE for breach of contract, unjust enrichment and
under a book account in the amount of $262,070.20.

### PRAYER FOR RELIEF

**WHEREFORE**, NVE prays that judgment be entered against

Defendants Jesus Palmeroni, Michelle Hooey, Maria C. Palmeroni,

Vincent Rosarbo, Angelina Rosarbo, Nicole Dilungo, National

Retail Consulting Group, Inc. American Wholesale Distribution,

Inc., Smart World, Inc., Foremost International, Global

Marketing & Sales Group, LLC, VAR Consulting, Inc., Ronald

Sumicek, Sunbelt Marketing, International Sales Group, Richard

D. Horowitz, Jerald I. Horowitz, Profit Motivators, Inc., PMI

Global Marketing Corp., Dirk Nieuwenhuis, Carlos Bengoa, CB

Distributors, Inc.,  Darren Householder, Brand New Energy, Inc.,

Steve R. Sessions, Sessions Specialty Company, Jarrett W. Portz, John J. Portz, Sr., Katherine M. Portz, International Wholesale Service, Inc., International Wholesale Supply, Inc., Alfredo D. Felice, Charmaine C. Felice, Curtis Beverage, LLC, Smart World (The Netherlands), Vital Pharma and T & J Ltd. as follows:

### A.    Monetary Relief

1.   For damages against the defendants, and each of them, jointly and severally, in an as yet undetermined amount duly trebled in accordance with 18 U.S.C. § 1964(c);

2.   For damages against the defendants, and each of them, jointly and severally, in an as yet undetermined amount duly trebled in accordance with N.J.S.A. 2C:41-4(a)(8);

3.   For damages against ISG and Sumicek in the amount of $262,070.20 plus interest;

3.   For punitive damages, in an amount to be determined at trial, against the defendants, and each of them, jointly and severally; and

4.   For the costs of investigation and litigation reasonably incurred, as well as attorney fees in accordance with 18 U.S.C. § 1964(c).

### B.    Equitable Relief

1.   An accounting of all benefits, consideration and profits received and/or paid, directly or indirectly, including

36

but not limited to, the imposition of constructive trusts with tracing;

2.    The imposition and execution of equitable liens;

3.    Orders of divesture of any interest, including real or personal property, money, or obligations or otherwise, wrongfully obtained, directly or indirectly, from NVE; and

4.    Any restrictions that may be appropriate on the future conduct or activities of any person.

### C.    Other Relief

For such other damages, relief and pre- and post-judgment interest as the Court may deem just and proper to award NVE complete relief.

### JURY DEMAND

Pursuant to F.R.Civ.P.38, Plaintiff hereby demands a trial by jury on each and every issue so triable.

**PASHMAN STEIN**
A Professional Corporation

Dated:  May 12, 2011          By:    _Ellen W. Smith_

ELLEN W. SMITH
SAMUEL J. SAMARO
AIDAN P. O'CONNOR

**PASHMAN STEIN**
A Professional Corporation
Court Plaza South
21 Main Street
Hackensack, NJ 07601
(201) 488-8200
esmith@pashmanstein.com
ssamaro@pashmanstein.com
aoconnor@pashmanstein.com