# PASHMAN STEIN
A PROFESSIONAL CORPORATION
COUNSELORS AT LAW

AIDAN P. O'CONNOR
SHAREHOLDER

DIRECT DIAL: 201-270-4940
E-MAIL: aoconnor@pashmanstein.com

November 7, 2011

Hon. Esther Salas. U.S.D.J.
United States Court House
50 Walnut Street
Newark, New Jersey 07102

Re: *N.V.E., Inc. v. Palmeroni, et alia*
<u>Civil No. 2:06-CV-05455 (ES) (CLW)</u>

Dear Judge Salas:

Please accept this letter and Certification in lieu of a more formal brief on behalf of Plaintiff N.V.E., Inc. ("NVE") in opposition to the Motion to Compel the Production of Documents filed by defendants Jesus J. Palmeroni, Michelle Hooey, National Retail Consulting Group, Inc. ("NRCG") and Global Marketing & Sales Group, LLC, ("GMSG") (Docket No. 248).

## PRELIMINARY STATEMENT

Aside from the fact that defendants Hooey, NRCG and GMSG have never made a single discovery demand with which they could claim non-compliance on NVE's part, all of these defendants, including Palmeroni, are currently in default. As a result, as even opposing counsel acknowledges, defendant Palmeroni has no right to make this motion or even to demand or receive discovery from any party to this action at his time. This is not the first time that defendant Palmeroni has wasted the Court's time making motions while he is in default. See Docket No. 228, Court's Opinion Denying

PASHMAN STEIN, P.C.

Palmeroni's Motion to Dismiss the Amended Complaint. Despite this, and with only the most token of efforts to resolve any realistic discovery issues, Palmeroni seeks attorney fees for this specious motion. Indeed, it is NVE that should be granted its fees for being forced to expend time and resources responding to this motion.

Even if defendant Palmeroni were not in default, there is no merit to his motion. As defendant Palmeroni has cycled through attorneys in the past several years, it is apparent that discovery demands have become duplicative, redundant and inconsistent. The present motion was apparently made to meet a deadline without true consultation to resolve genuine disputes and without a meaningful review of previously produced materials or the discovery demands themselves. Additionally, defendant's discovery demands have either been totally irrelevant and over generalized or have changed from the original demand to the letter or motion claiming non-compliance.

The present motion demands materials in so general and broad a fashion as to be meaningless – all intra-company e-mail; all emails between NVE and its brokers, distributors and customers; all correspondence between NVE and its brokers, distributors and customers; all customer records, etc., without reference to time, subject matter, or relevance to this litigation. The motion also seeks to compel production of documents that were already produced in this matter, including NVE's Smart World file from 2000-2004, missing personnel files (which are in fact not missing) and commission and brokerage files relating to NVE brokers Wayne Dail, Harold Miller and Kris Sujack.

Even if defendant Palmeroni had status to bring this motion, it is premature. Counsel claimed that NVE had to produce additional documents or respond to him by October 21, 2011. Despite this, counsel then indicated that he would file a motion if the

PASHMAN STEIN, P.C.

documents were not given to him by October 20. 2011. (10/14/2011 letter from Robert A. Vort to Aidan P. O'Connor, attached as Exhibit A to Vort Declaration (Docket Entry No. 248-4). Palmeroni then filed this Motion at 10:03 a.m. on October 21, 2011. NVE sent its detailed reply to Palmeroni's demands (including the Bates number locations of the documents previously produced) via facsimile to defense counsel at 12:38 p.m. on October 21, 2011, and was clearly timely (see October 21, 2011 letter from Ellen Smith to Robert A. Vort and fax confirmation, attached as Exhibit A to the Certification of Aidan P. O'Connor). NVE, as it has done previously, offered to meet and confer to determine additional search terms for electronic discovery issues despite Palmeroni's default, and requested that the Motion to Compel be withdrawn in order to save both time and money. Counsel declined and insisted that certain document gaps existed. (See October 31, 2011 letter from Robert A. Vort to Ellen Smith, attached as Exhibit B to O'Connor Certification.) This is not the case, but as will be discussed below in greater detail, it is an example of demands being made for documents that have already been produced, presumably because of unfamiliarity with the more than 7,000 pages of discovery that NVE has previously produced.

## THE DOCUMENT DEMANDS

By letter dated October 14, 2011, Palmeroni's requested that NVE produce the following documents:

   a) certain documents and emails retrieved from defendant Palmeroni's work hard drive by a forensic computer expert;
   b) The MACS accounting and financial system;
   c) NVE's Smart World file from 2000-2004;
   d) All intra office emails;
   e) All emails between NVE and its brokers, distributors and customers;

3

PASHMAN STEIN, P.C.

    f) All correspondence between NVE and its brokers, distributors and customers;

    g) All destroyed sales data relevant to determine Mr. Palmeroni's commissions in 2000, 20001, 2002 and 2005;

    h) Missing personnel files;

    i) All customer records;

    j) Commission and brokerage files relating to NVE brokers Wayne Dail, Harold Miller and Kris Sujack.

(Exhibit A to Vort Declaration).

a. **Emails and Documents Retrieved from Palmeroni's Work Hard Drive**

As noted earlier, NVE hired a computer forensic expert who recovered certain emails and documents from the hard drive of a computer that defendant Palmeroni used at the time that he worked for NVE. There are a substantial volume of documents, including thousands of emails, some of which appear to be privileged. NVE has previously told counsel for defendant Palmeroni that it intends to intends to produce these documents as soon as it has completed its privilege review. If the default is lifted, NVE will produce these documents as soon as practicable.

b. **The MACS accounting and financial system**

As the Court and counsel are aware, NVE has spent considerable time and resources attempting to resuscitate an outdated computer known as the MACS system without success. This issue was discussed extensively during the spoliation motion. Nonetheless, in our October 21, 2011, letter to current defense counsel, we briefly outlined the history of the MACS system, advised counsel that our own forensic computer expert was unable to access the system, and advised that we had offered previous counsel the opportunity to have their own computer expert examine the hardware and see if they could access it, which offer was declined. (See O'Connor

PASHMAN STEIN, P.C.

Certification, Exhibit A). Palmeroni apparently prefers to complain about the lack of information than to take NVE up on its offer to have his own computer experts examine the MACS system computer, which remains at NVE headquarters. This is not a new issue, just one that Palmeroni apparently thinks he can take advantage of with the Court by repeating as often as possible.

Palmeroni wants NVE to reconstruct the MACS system, whatever the cost or feasibility, on the oft chance that it might contain information relevant to his claims. It should be noted that federal law is to the contrary. *See, Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d 587, 620-21 (D.N.J. 2010) (There is no bright line requirement that negligent spoliation requires production, no matter how burdensome or expensive).

c. **NVE'S Smart World File from 2000-2004**

As noted in our October 21, 2011, letter to counsel for defendant Palmeroni, NVE produced all the hard copy documents in its possession for both Smart World, Inc. (the Palmeroni and Rosarbo fraudulent company) and Smart World (Holland). (O'Connor Certification, Exhibit A.) Palmeroni was provided with the Bates numbers for these previously produced documents. In addition, NVE had searched its computer e-mail system of sales persons involved with the Smart World account using terms related to it and provided Bates number references for these documents as well as shipping documents, bills of lading and bank statements reflecting transfers of money received. NVE produced over 1,000 pages of documents relating to Smart World, despite the fact that Palmeroni and the other defendants kept the Smart World Conspiracy a secret from NVE until its discovery in the Spring of 2010, thus allowing documents that could have been useful to NVE, as well as perhaps Palmeroni, to be lost.

5

PASHMAN STEIN, P.C.

With regard to Smart World orders and other documents, we note that defendant Palmeroni essentially seeks to have NVE produce duplicates of his own records that he and his partner in Smart World, co-defendant Vincent Rosarbo, admit that they have destroyed and no longer possess. See Response of Defendant Jesus J. Palmeroni to Plaintiff's Second Request for Documents, pp. 6-8, O'Connor Certification, Exhibit C; and March 29, 2011, Declaration of Vincent Rosarbo, O'Connor Certification, Exhibit D.

d.   **All intra office emails**

On its face, this request is so broad and unlimited as to time, recipient or subject matter as to be totally objectionable. There is no defensible rationale for now demanding every single intra-office email ever sent by any employee of NVE. In our October 21st letter, we once again offered to meet and confer with counsel to establish a meaningful list of search terms for e-discovery from the available NVE computers but were refused. (Exhibits A and B (Vort's October 31, 2011, response) to O'Connor Certification.)

d.   **All e-mails between NVE and its brokers, distributors and customers**

This request for all emails between NVE and its brokers, distributers and customers is another example of Palmeroni's ever shifting demands. Palmeroni has never requested this information in a document request and in its present form, without limitation to time, person or subject matter, NVE objects to this blanket request. Prior counsel for Mr. Palmeroni relied on the general interrogatory contained in Palmeroni's first set of interrogatories requesting all relevant documents to the litigation and upon Interrogatory #18 from the first set which sought the following:

> 18. Please provide a history of the brokerage commissions paid by NVE to brokers who arranged sales of NVE products, from NVE's inception to date.

PASHMAN STEIN, P.C.

> Your answer should indicate at a minimum the percentage of sales paid to each such broker, and/or describe how the amount of such brokerage commission was computed.

None of these referred to all email correspondence and were in any event limited to the time period of Mr. Palmeroni's employment.

During the Joint Protocol for Discovery Disputes (which the Court presided over as a Magistrate Judge in 2010), Palmeroni's then counsel referred to Interrogatory #18 above as the only open item related to documents requested from brokers. (See Palmeroni Disputes with NVE discovery, attached as Exhibit E to O'Connor Certification). This issue was thus resolved in 2010.

NVE has, in fact, produced thousands of pages of documents relating to its brokers during the relevant time period (1999-2006) that include monthly commission statements and calculations as well as the back-up orders from customers. The documents also included available correspondence. We provided the Bates number references for each NVE broker to current counsel in our October 21st letter (Exhibit A to O'Connor Certification). In addition, we offered to meet and confer to discuss additional search terms.

e. **All correspondence between NVE and its brokers, distributors & customers**

See response to d. above.

f. **All destroyed sales data relevant to determine defendant Palmeroni's commissions in 2000, 20001, 2002 and 2005**

The sales data relevant to determine Mr. Palmeroni's commissions were not destroyed and have been produced to defendants. We reminded defense counsel of this in our October 21st letter and referred him to the Bates number references for the broker commissions and the back-up documents that reflect sales to particular

7

PASHMAN STEIN, P.C.

accounts. In addition, we previously produced documents reflecting Mr. Palmeroni's yearly commissions and all other written commission documents relating to him.

Furthermore, while Mr. Palmeroni has a counterclaim related to alleged failures relating to bonuses and severance from NVE, his Counterclaim and Third-Party Complaint raise no issues about the commissions he received. (See Palmeroni Amended Answer, Counterclaims and Third-Party Complaint, Docket Entry No. 13). This issue simply is not relevant to any claim in this case.

g. **Missing personnel files**

There are no missing personnel files. NVE has produced the requested personnel files of Jesus Palmeroni, Vincent Rosarbo and Edward Sosnow. The Court has already noted in its September 21, 2011 Opinion, p. 3, that despite defendant Palmeroni's claim that not all the documents he believed should be in his personnel file were produced, "the Court is convinced that NVE produced what it maintained in the regular course of business."

h. **All customer records**

Even if defendant Palmeroni had previously requested "all customer records", which he did not, the request is improper as overbroad and burdensome. This blanket request does not specify time period or subject matter so as to be able to determine relevancy. We advised counsel in our October 21, 2011, letter that documents previously produced for brokers included monthly customer order information and also referred to the Smart World information produced.

i. **Commission and brokerage files relating to NVE brokers Wayne Dail, Harold Miller and Kris Sujack**

8

PASHMAN STEIN, P.C.

NVE provided this information relating to the commission and brokerage files relating to Wayne Dail, Harold Miller and Kris Sujack on February 24, 2011. (See February 24, 2011, letter from Ellen W. Smith to Fred Shahrooz Scampato and David Rostan, attached as Exhibit F to O'Connor Certification). This response was included in NVE's Legal Memorandum in Opposition to the Palmeroni Spoliation Motion (Docket Entry No. 186 at p. 9, #4) as well as the Declaration of Erling Jensen, filed March 2, 2011 (Docket Entry No. 186-1). During oral argument on the Spoliation Motion, David Rostan, Esq., prior counsel for Palmeroni acknowledged that they had received the information except for Kris Sujack (May 26, 2011 Transcript of Motion Hearing, pp. 22-23). This, like the complaints regarding personnel files, is a matter of looking for documents that never existed. Kris Sujack was a sales representative for a radio station, not an NVE broker and it is thus not surprising that NVE does not have broker records for her. Nonetheless, Palmeroni continues to attempt to make an issue out of this so-called non-production.

## UNNECESSARY DUPLICATION OF REQUESTS BECAUSE OF UNFAMILIARITY WITH THE FILE

On October 14, 2010, NVE responded to Third-Party Plaintiff Palmeroni's Second Set of Interrogatories.[1] These interrogatories were directed to NVE's relationships with its insurance brokers. At that time (and later supplemented by production of a copy of the Universal Reinsurance binder), NVE provided information concerning its insurance policies from 2002-2006, a time period in which it was basically self-insured (NVE Response to Third Party Plaintiff Jesus J. Palmeroni's Second Set of Interrogatories, attached as Exhibit G to O'Connor Certification). Prior counsel then

---

[1] There was also a second set of Interrogatories served by Palmeroni as a defendant.

9

PASHMAN STEIN, P.C.

sought by letter dated November 11, 2010, additional items, including contact information for any insurance entity other than for Atlantic Security, Ltd. (which handled the Universal Reinsurance plan) (see November 11, 2010, letter from David Rostan to Ellen Smith, attached as Exhibit H to O'Connor Certification). On November 30, 2010, NVE provided a response to the 11/11/10 Rostan letter (see November 30, 2010, letter from Ellen Smith to David Rostan, attached as Exhibit I to O'Connor Certification).

On January 5, 2011, prior counsel sent another letter, asking specifically for additional information with regard to communications with the insurance companies, including Evanston Insurance Company which was the underlying carrier providing insurance to NVE from 1999-2001 (see January 5, 2011 letter from David Rostan to Ellen Smith, attached as Exhibit J to O'Connor Certification). By letter dated February 8, 2011, NVE responded to the this letter, noting that the request for information about insurance brokers providing coverage to NVE kept changing (see February 8, 2011, letter from Ellen Smith to David Rostan, attached as Exhibit K to O'Connor Certification).

Although NVE had previously produced documents relating to the Universal Reinsurance policy covering the 2002-2006 time period, we provided additional documents to defendants on October 21, 2011, in response to this new request for documents relating to the earlier Evanston Insurance Policies for the 1999-2001 time period, as well as documents received from defendant Palmeroni's tax attorneys.

Current counsel, apparently not familiar with prior production in this case, responded on October 31, 2011, by erroneously claiming that "[t]he insurance documents received do not cover the time period after 2002 until 2006 when NVE

PASHMAN STEIN, P.C.

terminated Palmeroni's employment." Palmeroni must be responsible for keeping track of his own multiple, duplicative and shifting document demands, to say nothing of reviewing the documents produced to him. It should not be NVE's burden to educate new counsel as to the materials provided to predecessor counsel. At a minimum, defendant Palmeroni should not file motions seeking attorneys' fees to compel production of documents that have been previously produced, or which have not been properly requested.

### CONCLUSION

For the reasons set forth above, we respectfully request that the Court deny the Motion to Compel production of documents which has been served by Palmeroni's new counsel.

Respectfully submitted,

AIDAN P. O'CONNOR

cc: Robert Vort, Esq.
Robert J. Basil, Esq.
Todd Greenberg, Esq.
Stephen N. Dratch, Esq.