UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

N.V.E., INC.,

        Plaintiff,

        v.

JESUS J. PALMERONI a/k/a JOSEPH
PALMERONI, et alia,

        Defendants.

Civil Action No. 06-5455 (ES) (CLW)

JESUS J. PALMERONI,

        Third-Party Plaintiff,

        v.

ROBERT OCCHIFINTO and WALTER
ORCUTT,

        Third-Party Defendants.

---

MEMORANDUM OF LAW IN OPPOSITION TO THE
MOTION TO DISMISS THE COMPLAINT FILED BY
DEFENDANTS JESUS J. PALMERONI, MICHELLE HOOEY,
THE NATIONAL RETAIL CONSULTING GROUP, INC. AND
GLOBAL MARKETING & SALES GROUP, LLC

---

PASHMAN STEIN, P.C.
21 Main Street, Suite 100
Hackensack, N.J. 07601
(201) 488-8200
*Attorneys for Plaintiff N.V.E., Inc.*

*On the Brief:*
Aidan P. O'Connor
Elisabeth L. Rowley

## TABLE OF CONTENTS

Page

Preliminary Statement ................................................................................. 1

Legal Argument ......................................................................................... 3

I    The First Amended Complaint Survives Moving Defendants'
Motion To Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ........... 3

    A.  Federal Rule of Civil Procedure 8 ................................................. 4

    B.  Federal Rule of Civil Procedure 9 ................................................. 9

II    A More Definite Statement Pursuant to Federal Rule of
Civil Procedure 12(e) Is Not Warranted ............................................. 12

III    Any Deficiency in the Complaint May Be Remedied by Filing
an Amended Complaint ................................................................ 13

Conclusion ......................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) ................................................................. 8, 9

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)............................................... 4, 8, 9

Commodity Futures Trading  Com'n  v. Sterling Trading Group, Inc. v. , 605 F.Supp.2d
      1245 (S.D.Fla. 2009) ........................................................................................... 13

Denton v. Hernandez, 504 U.S. 25 (1992) ................................................................ 16

Foman v. Davis, 371 U.S. 178 (1962). ...................................................................... 15

Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159 (3rd Cir.
      2010). ........................................................................................................ 9, 10, 15

Illinois Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc., 653 F.3d 225 (3d Cir.
      2011) ................................................................................................................... 10

In re Insurance Brokerage Antitrust Litigation, 618 F.3d 300 (3d Cir. 2010)................... 4

Kaltenbach v. Richards, 464 F.3d 524, (5th Cir. 2006)................................................... 3

Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406 (3d Cir.
      2003) ................................................................................................................... 10

Nixon v. Zickefoose, 2011 U.S. Dist. LEXIS 1601 (D.N.J. January 7, 2011) ................. 16

Pension Advisory Group, Ltd. v. Country Life Ins. Co., 771 F. Supp. 2d 680 (S.D. Tex.
      2011) ................................................................................................................... 13

Phillips v. County of Allegheny, 515 F. 3rd 224 (3d Cir. 2008) ............................. 3, 9, 10

United States v. Duffus, 174 F. 3d 333 (3d Cir. 1999)................................................. 15

United States v. Thomas, 221 F. 3d 430 (3d Cir. 2000) ............................................. 15

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 3

Fed. R. Civ. P. 12(e) ................................................................................................ 13

Fed. R. Civ. P. 15(a)(2). ........................................................................................... 15

Fed. R. Civ. P. 8(a)(2) ................................................................................................ 4

Fed. R. Civ. P. 9(b)................................................................................................... 10

## PRELIMINARY STATEMENT

Plaintiff N.V.E., Inc. ("NVE") initiated this action on November 15, 2006, by the filing of its Complaint (#1). That Complaint, among other things, charged violations of the Racketeer Influenced and Corrupt Organization Act ("RICO") and a RICO conspiracy against defendants, including former employee Jesus Palmeroni ("Palmeroni") and brokers of NVE products based on an illegal kickback scheme. After detours through the Bankruptcy Court and delaying tactics by defendant Palmeroni, NVE filed its First Amended Complaint ("FAC") (#199), on May 18, 2011, alleging RICO and other violations against Palmeroni and others, including defendants Michelle Hooey ("Hooey"), National Retail Consulting Group, Inc. ("NRCG") and Global Marketing & Sales Group, Inc. ("Global") (collectively the "Moving Defendants") for the illegal kickback scheme and also for the related scheme by Palmeroni, Vincent Rosarbo and others, including the other Moving Defendants, involving misrepresentations to NVE in order to fraudulently obtain NVE products, including Stacker 2, at lower prices intended for overseas markets so they could illegally resell them to domestic customers resulting in an improper profit to themselves and the loss of millions of dollars in sales and profits to NVE.

Despite being involved in the this case for many years, Palmeroni and his related co-defendants now move to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative to compel NVE to file a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) (# 267), rather than answering and submitting to discovery on these claims.

The First Amended Complaint lays out the schemes that made up the RICO violations and other causes of action in sufficient detail to put all defendants, but especially defendant Jesus Palmeroni and his related Moving Defendants, on fair notice of the charges against them.  Furthermore, as the Court is aware, a substantial amount of discovery materials have already been produced by both sides and as the result of subpoenas to third parties.  The materials previously produced include responses to requests for admissions, answers to interrogatories, depositions and thousands of pages of documents produced thus far.

If the Court should find that the First Amended Complaint is deficiently pled, NVE requests that it be permitted to file an amended complaint.

# LEGAL ARGUMENT

## POINT I

### The First Amended Complaint Survives Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

NVE's allegations against moving defendants satisfy both Fed. R. Civ. P. 8(a)(2) and Fed. R. Civ. P. 9(b) and as a result, the FAC survives the Fed. R. Civ. P. 12(b)(6) motion to dismiss.  The Moving Defendants erroneously assert that the FAC fails to provide fair notice of the facts constituting the Federal and State RICO violations. Indeed, the Moving Defendants alternatively and schizophrenically charge that the FAC is both too vague and too detailed in its allegations against the defendants, apparently requesting that all of the discovery be placed into an already lengthy complaint.  The Moving Defendants do not seriously argue that Plaintiff NVE has not alleged a cause of action, just that they want to know how we found out about it or what bank records were used to set forth the allegations of specific payments and amounts.[1]  The current motion seems more geared toward a discovery dispute than to a motion to dismiss.

In deciding a motion to dismiss under Rule 12(b)(6) the court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. County of Allegheny, 515 F. 3rd 224, 228 (3d Cir. 2008); see also Kaltenbach v. Richards, 464 F.3d 524, 526-27 (5th Cir. 2006) (holding that when a claim is challenged under 12(b)(6), the court construes the pleading liberally in the pleader's favor).

---

[1]  Not only have these bank records detailing payments made and received previously been produced, but some of them were included as exhibits to the Court with NVE's motion to amend the complaint back in October 2010 (#153 and 160).

3

**A. Federal Rule of Civil Procedure 8**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). "The touchstone of Rule 8(a)(2) is whether a complaint's statement of facts is adequate to suggest an entitlement to relief under the legal theory invoked and thereby put the defendant on notice of the nature of the plaintiff's claim." In re Insurance Brokerage Antitrust Litigation, 618 F.3d 300, 320 n.18 (3d Cir. 2010) (citing Twombly, 550 U.S. at 565 n.10). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Twombly, 550 U.S. at 55.

The FAC details how two NVE employees, Jesus Palmeroni and Vincent Rosarbo, concocted a scheme to set up an enterprise to defraud NVE by setting up sham companies and enlisting the aid of various relatives, including Hooey, as well as distributors and brokers of NVE through illegal kickbacks of commissions and illegal domestic sales of products designated for lower priced international sale. Palmeroni's enterprise set up and used a number of companies and entities including Smart World US, NRCG, Global, American Wholesale Distribution, Inc., ("AWD") and VAR Consulting ("VAR"), to hide their ongoing involvement with the other defendants in this pattern of racketeering. See FAC ¶¶ 8-20. The FAC details how Palmeroni, NVE's Vice President of Sales, conspired with certain brokers of NVE products to obtain kickbacks on commissions in return for the assignment or manipulation of NVE accounts. FAC ¶ 37-41. The FAC details the amount of money paid by the Conspiring Brokers as

kickbacks – e.g., Sunbelt Marketing received $914,500 in commissions from NVE between 2000 and 2005 and kicked back approximately $466,949.35 to Palmeroni and companies that he controlled (FAC ¶42-44); PMI and Profit Motivators paid approximately $652,648.89 in kickbacks between 2001 and 2006 to NRCG and then approximately another $90,000 through Global between 2006 and 2009 (FAC ¶ 45); another broker, Dirk Niewenhuis paid approximately $51,287 in kickbacks between 2001 and 2005 (FAC ¶ 46).  Bank records previously produced also show details for these illicit payments, including most obviously the dates and how payments were made, in most cases showing the interstate nature of the transaction, leaving aside the interstate nature of NVE's business and the shipment of its goods in interstate commerce.  See FAC ¶¶ 7, 47.  The FAC further details how checks were mailed from New Jersey to Texas, New York and California and then that the Conspiring Brokers returned a portion of the money as kickbacks.  FAC ¶ 49-50.  Although the FAC does not detail each and every separate payment, that information is available through discovery.  Certainly the Conspiring Brokers and the Moving Defendants have been apprised of and have fair notice of the nature of the claims against them.  The FAC further alleges that Hooey and the Conspiring Brokers knew that Palmeroni was NVE's Agent, that Palmeroni owed NVE a duty of loyalty and that the payment of said brokerage commissions to him would be improper and unlawful.  FAC ¶ 48.  Given the allegation of the business relationship between the Conspiring Brokers and NVE, which must be accepted as true at this stage, it is not at all implausible that they would engage in an ongoing pattern of racketeering activity to obtain money from NVE to which they were not entitled.

The FAC also alleges in detail how Palmeroni and Rosarbo set up a scheme with a number of distributors, customers and NRCG to take advantage of the fact that NVE sold products to overseas customers at a price significantly lower than the price available to domestic distributors and customers.  Palmeroni and Rosarbo using their inside knowledge and connections, set up a company, Smart World US, which had a very similar name to a legitimate Dutch distributor of NVE products.  FAC ¶¶ 9, 12, 15, 16, 20, 33.  Palmeroni had orders placed in the name of the Dutch Smart World for export to Holland at the lower price, then used Smart World US to take possession of the products and resold them to the Conspiring Distributors at a price lower than NVE itself was charging for the same identical products in the United States.  FAC ¶¶ 16-18, 33-35, 53.  The Conspiring Distributors purchased millions of dollars of products that the Palmeroni enterprise claimed were being sold to the Dutch Smart World and its related entities at the lower international price.  This allowed the Conspiring Distributors to take the NVE products for less than NVE's own domestic price.  The FAC alleges that the Conspiring Brokers were located in states other than New Jersey and it is a fair inference that the NVE goods were shipped to them outside of New Jersey.  FAC 21-32.

The FAC also alleges that although Palmeroni was the vice president of sales for NVE, the Conspiring Distributors did not pay NVE for the NVE products.  Instead, the FAC specifically alleges the amounts of money each of the Conspiring Distributors paid to the companies set up by Palmeroni and Rosarbo for the fraudulently obtained NVE products – defendants Carlos Bengoa and CB made payments totaling at least $6,000,000 ($35,236.64 to NRCG; $5,053,072.36 to AWD; $862,920 to Smart World US; and $44,641.26 to VAR) (FAC ¶ 54); defendant Householder paid $24,942 to AWD

(FAC ¶ 55); defendant Brand New Energy paid $926,090 to AWD, NRCG and VAR (FAC ¶ 56); defendants Sessions and Sessions Specialty Company paid $274,799.58 to AWD (FAC ¶ 57); Sumicek and ISG paid $35,251.52 to AWD and NRCG (FAC ¶ 58); defendants John W. Portz and Katherine M. Portz paid $50,000 to AWD in 2004 (FAC ¶ 59); defendant International Wholesale Service paid $270,951.20 to AWD between 2003 and 2005 (and of that amount, $19,440 was paid to AWD in 2005) (FAC ¶ 60); defendants Alfredo and Charmaine Felice paid $5,031 to AWD between 2003 and 2004 (FAC ¶ 61); and defendant Curtis Beverage paid $119,124 to AWD and VAR in 2004 (FAC ¶ 62).  Indeed, The FAC alleges as predicate acts that the payments referred to above were made by means of the mails and that people, money and goods of more than $5,000 in value travelled in interstate commerce (FAC ¶¶ 68-69).  Thus, the FAC sets forth sufficient detail for the defendants to know the nature of the claims and enough facts to receive fair notice to defend themselves. [2]

---

[2]      Indeed, defendant Palmeroni had the following information -- including his own admission that they had spent approximately $8,000,000 buying NVE products through the Smart World scheme -- detailing his involvement in the scheme even before the FAC was filed, as it was set forth in NVE's brief (#160.1, pp. 8-10) and supporting exhibits in conjunction with NVE's motion to amend the complaint (#160):

     In complicity with the Smart World in The Netherlands ("Smart World Netherlands"), Palmeroni and Rosarbo's Smart World paid almost $8,000,000 by wire to NVE for products at a much lower international price for purported shipment to The Netherlands. Foremost International, a warehouse and shipper in which Palmeroni had some control, was designated as the shipper for these orders. The products, priced for sale in Europe, were never exported, and instead were resold to NVE's own US distributors, undercutting NVE's price.

     Palmeroni has admitted that his Smart World paid NVE almost $8,000,000 for purchase of NVE products.  (See pages 2 and 3 of opposition filed by Fred Shahrooz Scampato, Esq. to NVE Cross-Motion to extend temporal limits of discovery, attached as Exhibit 24 to Smith Cert.) What Palmeroni has neglected to inform the Court is that:
          1) Palmeroni and Rosarbo obtained these products by misrepresenting to NVE that this company was the Dutch Smart World both through verbal orders placed by Palmeroni and by written orders received from Smart World Netherlands after Palmeroni was terminated from NVE (see Smart World orders for NVE products attached as Exhibit 25 to Smith Cert.)

While it is true that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'", the FAC contains "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-1950 (2009) (citing Twombly, 550 U.S. at 555, 570). The Supreme Court noted that the "plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 129, S.Ct. at 1950. It is worth noting that the Supreme Court noted that "a well pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." Twombly, 550 U.S. at 556; Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 175 (3rd Cir. 2010).

The allegations of the FAC, when read in total, make a showing, rather than a blanket assertion of entitlement to relief. See Twombly, 550 U.S. at 555, n.3. The allegations contained in the FAC, including specific defendants and specific allegations, not only of the nature of the offense, but also the precise amounts paid or kicked back "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555; Great Western Mining, 615 F.3d at 176. Thus even though the Court need not accept legal conclusions, as opposed to facts, as true, the FAC does state a plausible claim for relief and should not be dismissed. See Iqbal, 129 S.Ct. at 1950.

---

2) That these products were never exported and instead were sold by multiple Palmeroni and Rosarbo companies including Smart World, AWD, NRCG, and VAR to NVE's own US distributors and others at a great profit (See Exhibits 5 to 21, attached to Smith Cert.)
3) That the US Smart World paid one or more agents of the Smart World Netherlands, over $900,000 in "commissions" for their complicity (See Bank of America Smart World Account Statements reflecting international wire transfers to T & J Ltd., attached as Exhibit 26 to Smith Cert.; see also handwritten Smart World US payment ledgers indicating that these payments were made "To Holland" for "commissions" attached as Exhibit 27 to Smith Cert.);
4) That these purchases for Smart World continued until at least April 2007, more than a year after Palmeroni' s termination. (See orders placed by Smart World attached as Exhibit 25 to Smith Cert.)

After Twombly, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 563 n.8).  The FAC in this case alleges more than enough facts to at least suggest the illicit activities of the defendants and in the context of this action it contains enough "factual allegations to make out a 'showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Phillips, at 232 (quoting Twombly, 550 U.S. at 555).  The Third Circuit has summed up the Twombly pleading standard as follows: "'[S]tating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, at 234 (quoting Twombly, 550 U.S. at 556).  In other words, "there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation." Phillips, at 234-35; see also Great Western Mining, 615 F.3d at 177.

## B. Federal Rule of Civil Procedure 9

Rule 9(b) of the Federal Rules of Civil Procedure states:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally.

Rule 9(b) exists to insure adequate notice so that defendants can intelligently respond. Illinois Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc., 653 F.3d 225, 233 (3d Cir. 2011); see also Morganroth & Morganroth v. Norris, McLaughlin & Marcus,

P.C., 331 F.3d 406, 414 n.2 (3d Cir. 2003) ("The purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim.").  The Third Circuit has noted that in order to meet this standard and "[t]o survive a motion to dismiss, a plaintiff must allege facts sufficient to nudge his claims across the line from conceivable to plausible." Illinois Nat'l Ins. Co., 653 F.3d at 233.  Given the amount of litigation that has taken place in this lawsuit, the only thing that is not plausible is that Palmeroni and the Moving Defendants do not understand what has been pled and it is unlikely that Palmeroni and the Moving Defendants will not be able to continue to engage in discovery or answer the FAC.

As set forth in detail in subsection A, pages 4-7 above, NVE laid out the schemes that made up the RICO violations and other causes of action in ample detail to put all defendants on fair notice of the charges against them.  Specifically, with regard to the Moving Defendants, the FAC set forth with particularity that they were involved in receiving laundered kickbacks from specifically named brokers; that they were further involved in a scheme to obtain proceeds from the illegal sale of NVE products through Smart World, AWD and VAR; that they sold fraudulently-obtained NVE products to Brand New Energy and others at a price below that charged by NVE; and that they collected kickbacks and other unlawful payments from other conspiring defendants, including defendant PMI; that they aided and abetted Palmeroni in carrying out the kickback scheme; that Hooey used her position at Lakeland Bank to deposit and transfer monies among various Palmeroni or Palmeroni-controlled accounts maintained at the bank and elsewhere; that they fraudulently misrepresented the legitimacy of accounts to NVE so that it would pay brokerage commissions to them, part of which

was then kicked back to Palmeroni.  The FAC further lays out a conspiracy that took place over a long period of time in a number of different states and countries, including Nevada, New York, New Jersey, Pennsylvania, Texas, Connecticut, California and the Netherlands.  The FAC details how Palmeroni and Vincent Rosarbo directed this conspiracy, with the connivance and use of defendants Hooey, NRCG and Global.

Accordingly, not only has NVE met the general threshold of Rule 8(a), NVE has also fulfilled the particularity requirement of Rule 9(b).  Thus, the FAC survives the moving defendants' motion to dismiss.

## POINT II

### A More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e) is Not Warranted.

Moving Defendants' alternative request that NVE issue a more definite statement pursuant to Fed. R. Civ. P. 12(e) fails, as it is clearly not warranted under the circumstances.  "[A] motion for more definite statement is generally disfavored and is used to provide a remedy only for an unintelligible pleading rather than a correction for lack of detail."  See Pension Advisory Group, Ltd. v. Country Life Ins. Co., 771 F. Supp. 2d 680, 707 (S.D. Tex. 2011) (citations omitted).  Moreover, motions for a more definite statement are not a substitute for discovery and ordinarily will not be granted where the level and nature of the detail sought is a proper role for discovery.  Commodity Futures Trading Com'n v. Sterling Trading Group, Inc. v. , 605 F.Supp.2d 1245, 1326 (S.D.Fla. 2009).

As set forth at length herein, the FAC details how two NVE employees, Jesus Palmeroni and Vincent Rosarbo, concocted a scheme to set up an enterprise to defraud NVE by setting up sham companies and enlisting the aid of various relatives as well as distributors and brokers of NVE through illegal kickbacks of commissions and illegal domestic sales of products designated for lower priced international sale.  With requisite specificity, NVE names numerous defendants, factual allegations and causes of action in 37 pages and 153 paragraphs.  Accordingly, NVE's complaint is far from unintelligible and the detail sought by moving defendants is clearly reserved for discovery.   A more definite statement is not warranted and should not be granted under the circumstances.

## POINT III

### Any Deficiency in the Complaint May be Remedied
### By Filing an Amended Complaint.

If the Court were to find that the First Amended Complaint lacks the required specificity, that shortfall can be remedied by allowing NVE to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

It is well-settled that "leave to amend should be freely granted unless there is evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment or futility of amendment.'" United States v. Thomas, 221 F. 3d 430, 435 (3d Cir. 2000) (citing United States v. Duffus, 174 F. 3d 333, 337 (3d Cir. 1999) and Foman v. Davis, 371 U.S. 178, 182 (1962)).

Although, the grant or denial of an opportunity to amend is within the discretion of the District Court, that discretion is limited by the liberal pleading philosophy of the Federal Rules.  Furthermore, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."  Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 174 (3rd Cir. 2010) (citing Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008)); Nixon v. Zickefoose, 2011 U.S. Dist. LEXIS 1601, *16-17 (D.N.J. January 7, 2011) ("Where a complaint can be remedied by amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment." (citing Denton v. Hernandez, 504 U.S. 25, 34 (1992))).

13

In this case, the Court has previously found that there has been no undue delay, bad faith or dilatory tactics by NVE.  One amendment to the complaint has been made in this matter and if the Court finds in favor of an additional curative amendment, such amendment would not be inequitable or futile.[3]

---

[3] "Futility 'means that the complaint, as amended would fail to state a claim upon which relief could be granted.'"  <u>Great Western Mining</u>, 615 F.3d at 175.

## **CONCLUSION**

For the reasons set forth above, Plaintiff N.V.E., Inc., respectfully requests that the Court deny the motion to dismiss the First Amended Complaint, and in the alternative requests that it be given permission to file a Second Amended Complaint addressing any deficiencies.

Respectfully submitted,

PASHMAN STEIN, P.C.
*Attorneys for Plaintiff N.V.E., Inc.*

By: _____
AIDAN P. O'CONNOR

Dated:  February 21, 2012

15