# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

N.V.E., INC.,

                Plaintiff,

        v.

JESUS J. PALMERONI a/k/a JOSEPH
PALMERONI, et alia,

              Defendants.

_____

JESUS J. PALMERONI,

            Third-Party Plaintiff,

        v.

ROBERT OCCHIFINTO AND WALTER
ORCUTT,

          Third-Party Defendants.

_____

Civil Action No. 06-5455 (ES) (CLW)

## PLAINTIFFS' RICO CASE STATEMENT
## PURSUANT TO LOCAL RULE 16.1(B)(4)

PASHMAN STEIN, P.C.
21 Main Street, Suite 100
Hackensack, New Jersey 07601
(201) 488-8200
*Attorneys for Plaintiff N.V.E., Inc.*

Pursuant to the Court's Order of May 21, 2012, Plaintiff N.V.E., Inc. ("NVE")

respectfully submits this RICO Case Statement under Local Civil Rule 16.1(B)(4).

**1.     State whether the alleged unlawful conduct is in violation of 18 U.S.C. §1962(a), (b), (c) and/or (d).**

Plaintiff asserts violations of 18 U.S.C. §1962(c) and 18 U.S.C. §1962(d).  The

Complaint as amended does not allege violations of 18 U.S.C. §1962(a) or 18 U.S.C.

§1962(b).

**2.     List each defendant and state the alleged misconduct and basis of liability of each defendant.**

(1)     Defendants Palmeroni[1], Hooey[2], Maria C. Palmeroni[3], Rosarbo[4], Angelina

Rosarbo[5], Dilungo[6], NRCG[7], Smart World US[8], AWD[9], Foremost[10], Global[11], VAR[12],

Sumicek[13], Horowitzes[14], Nieuwenhuis[15], Bengoa[16], Householder[17], Sessions[18],

---

[1]    "Palmeroni" refers to Defendant Jesus "Joe" Palmeroni, identified in ¶¶ 8 and 9 of the First Amended Complaint ("FAC").

[2]    "Hooey" refers to Defendant Michelle Hooey, a/k/a "Michelle Palmeroni", identified in ¶ 10 of the FAC.

[3]    "Maria C. Palmeroni" refers to Defendant Maria C. Palmeroni, identified in ¶ 11 of the FAC.

[4]    "Rosarbo" refers to Defendant Vincent Rosarbo, identified in ¶ 12 of the FAC.

[5]    "Angelina Rosarbo" refers to Defendant Angeline Rosarbo, identified in ¶ 13 of the FAC.

[6]    "Dilungo" refers to Defendant Nicole Dilungo, identified in ¶ 14 of the FAC.

[7]    "NRCG" refers to Defendant National Retail Consulting Group, Inc., identified in ¶ 15 of the FAC.

[8]    "Smart World US" refers to Defendant Smart World, Inc., identified in ¶ 16 of the FAC.

[9]    "AWD" refers to Defendant American Wholesale Distribution, Inc., identified in ¶ 17 of the FAC.

[10]    "Foremost" refers to Defendant Foremost International, identified in ¶ 18 of the FAC.

[11]    "Global" refers to Defendant Global Marketing & Sales Group, LLC, identified in ¶ 19 of the FAC.

[12]    "VAR" refers to Defendant VAR Consulting, identified in ¶ 20 of the FAC.

[13]    "Sumicek" collectively refers to Defendants Ronald Sumicek, Sunbelt Marketing and International Sales Group, identified in ¶¶ 21-23 of the FAC.

Portzes[19], Felices[20], Smart World Netherlands[21], Vital Pharma[22] and T&J Limited[23] (herein referred to collectively as the "Defendants") formed a group associated in fact and thus an enterprise (the "Palmeroni Enterprise") and participated in or conducted the affairs of the Palmeroni Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c), utilizing interstate mail, wire and transportation fraud in furtherance of the scheme. The Defendants likewise conspired to violate 18 U.S.C. §1962(c) in violation of 18 U.S.C. §1962(d).

(2)     The Defendants participated in schemes to defraud NVE by paying or receiving improper kickbacks in connection with sales of NVE products and/or by selling or purchasing fraudulently-obtained NVE products by improperly representing that the products were to be exported to Europe, thus illegally undercutting NVE's own domestic price, resulting in a loss of profits to NVE and an illegal windfall to the Defendants.

---

[14]   "Horowitzes" collectively refers to Defendants Richard D. Horowitz and Jerald "Jerry" Horowitz, identified in ¶¶ 24 and 25 of the FAC.

[15]   "Nieuwenhuis" refers to Defendant Dirk Nieuwenhuis, identified in ¶ 26 of the FAC.

[16]   "Bengoa" collectively refers to Defendants Carlos Bengoa and CB Distributors, Inc., identified in ¶ 27 of the FAC.

[17]   "Householder" collectively refers to Defendants Darren Householder and Brand New Energy, identified in ¶ 28 of the FAC.

[18]   "Sessions" collectively refers to Defendants Steve R. Sessions and Sessions Specialty Company, identified in ¶ 29 of the FAC.

[19]   "Portzes" collectively refers to Defendants Jarrett Portz, John J. Portz, Katherine M. Portz, International Wholesale Service and International Wholesale Supply, identified in ¶¶ 30 and 31 of the FAC.

[20]   "Felices" collectively refers to Defendants Alfredo D. Felice, Charmaine C. Felice and Curtis Beverage, LLC, identified in ¶ 32 of the FAC.

[21]   "Smart World Netherlands" refers to Defendant Smart World, identified in ¶ 33 of the FAC.

[22]   "Vital Pharma" refers to Defendant Vital Pharma, identified in ¶ 34 of the FAC.

[23]   "T&J Limited" refers to Defendant T & J Limited, identified in the ¶ 35 of the FAC.

**KICKBACK OF COMMISSIONS**

(3)     Between approximately 1999 and his termination in January of 2006, Palmeroni was employed by NVE as a salesman and later, as Vice President of Sales. Palmeroni's position at NVE carried responsibility for all domestic and international sales of, *inter alia*, nutritional and dietary supplement and energy drinks, in a multimillion dollar business.  NVE sells its products directly to consumers and through brokers, who receive commissions on the sales they arrange.  NVE also sells products to distributors, who resell the products to retailers at higher prices.

(4)     Brokers generally received approximately a 5% commission on money that NVE collected from the sale of NVE products.  Palmeroni, as Vice President in charge of sales, had the power to assign accounts to brokers and take them away. During approximately 2000 to 2004 (when ephedra was banned by the FDA) sales of NVE products, especially Stacker 2, increased dramatically.  Beginning in 2000, Palmeroni entered into secret arrangements, unknown to NVE, with certain brokers of NVE products, including Sumicek, the Horowitzes and Nieuwenhuis (collectively the "Conspiring Brokers") to make illicit payments to Palmeroni, including kickbacks on commissions,  in exchange for the assignment, retention or manipulation of NVE accounts to the benefit of Conspiring Brokers (the "Kickback Scheme").

(5)     Palmeroni wielded his power over the Conspiring Brokers to demand and receive kickbacks as follows:

- Between 2000 and 2005, Sumicek, through Sunbelt Marketing, received commissions from NVE under the Kickback Scheme exceeding $914,500 and unlawfully paid no less than $466,949.35 to Palmeroni in kickbacks.  See Lakeland Bank records previously produced as LakelandBank-001 to

LakelandBank-000498.

- Palmeroni directed that proceeds of the Kickback Scheme with Sumicek be paid to his company, NRCG, and deposited kickbacks from Sumicek in Lakeland Bank in New Jersey and possibly other banks as well.  See Lakeland Bank records previously produced as LakelandBank-001 to LakelandBank-000498.

- Between 2001 and 2006, the Horowitzes, through PMI and Profit Motivators, paid Palmeroni $610,616.42 in kickbacks under the Kickback Scheme.  These monies were paid at Palmeroni's instructions to NRCG.  See records previously produced as NVE-PMI-000001 to NVE-PMI-000080 and NVE-ProfitMot-0001 to NVE-ProfitMot-000060.

- Between 2006 and 2009, the Horowitzes, though PMI, made payments totaling not less than $90,000 to another Palmeroni company, Global, in connection with the kickback scheme.   See records previously produced as NVE-PMI-000001 to NVE-PMI-000080.

- Between 2001 and 2005, Nieuwenhuis made kickback payments totaling not less than $51,287 to NRCG and may have made unlawful payments to other Palmeroni entities after that date.   See Lakeland Bank records previously produced as LakelandBank-001 to LakelandBank-000498.[24]

(6)     As the head of sales for NVE, Palmeroni represented to the Conspiring Brokers that he controlled the accounts and had the power to determine which brokers got which accounts, the power to make agreements, quote prices, etc. and that the owner of NVE deferred to him.  Palmeroni knew that for certain Conspiring Brokers, NVE made up a significant portion of their business.  Thus, Palmeroni made it known to the Conspiring Brokers that if they did not agree to pay him kickbacks (e.g., 1% of sales or 20% of the brokers' commission), he had the power to give away their accounts and/or not give them new NVE accounts.  Palmeroni instructed the Conspiring Brokers,

---

[24]    Each transfer of funds is a separate predicate act.

often by interstate telephone lines, to whom they should make the kickback checks payable and where to mail them.  Palmeroni even demanded of the Horowitzes, that they continue to pay him for one to two years in the event he ever got fired or left NVE, which they agreed to do.  Palmeroni never indicated to the Conspiring Brokers that NVE or its owner knew about or approved of the kickback payments.

(7)     At all relevant times, Michelle Hooey, a former NVE employee, Palmeroni's companion and later his wife, aided and abetted Palmeroni in carrying out the Kickback Scheme, first while she was still employed by NVE and later by actively using her position at Lakeland Bank to deposit and transfer monies among various Palmeroni and/or Palmeroni-controlled accounts maintained at Lakeland Bank and elsewhere.   See, inter alia, Lakeland Bank records previously produced as LakelandBank-001 to LakelandBank-002212.

(8)     Correspondence and testimony will show that the Conspiring Brokers knew that Palmeroni was NVE's agent and employee, that Palmeroni owed NVE a duty of loyalty, and that the payment of said brokerage commissions to him would be improper and unlawful.  Nevertheless, the Conspiring Brokers agreed to pay kickbacks to Palmeroni and/or his designees.  NVE paid the Conspiring Brokers commissions by means of periodic checks mailed from New Jersey to Texas (Sumicek), New York  (Horowitzes), Florida (Horowitzes) and California (Nieuwenhuis) throughout  the relevant time period.  See, inter alia, records previously produced as NVE-001-A to NVE-002863-A; NVE-000001-B to NVE-003310-B; NVE-003311-B to NVE-003318-B; NVE-003504-B to NVE-003626-B; NVE-003815-B to NVE-003930-B; NVE-006027-B to NVE-006187-B; and NVE-006331-B to NVE-006605-B.  The

Conspiring Brokers then illicitly paid Palmeroni and/or various other of his designees, including NRCG and Global, a portion of the commissions paid by NVE by means of interstate commerce in cash, checks or wire transfers.  See bank records previously produced as LakelandBank-001 to LakelandBank-000498; NVE-ProfitMot-000001 to NVE-ProfitMot-000060; and NVE-PMI-000001 to NVE-PMI-000080.

(9)     In engaging in such conduct, Palmeroni, Sumicek, the Horowitzes and Nieuwenhuis did agree and conspire together and with others as yet unknown, to devise and participate in schemes and plans of deceit in which they would and did abuse Palmeroni's fiduciary relationship and obligations to NVE to cause financial gain to themselves, procure unlawful commissions and divert the services, assets and profits of NVE to the use and benefit of themselves and others and to the detriment of NVE.  At all relevant times, in connection with the activities giving rise to this claim for relief, Palmeroni, Sumicek, the Horowitzes and Nieuwenhuis conspired with each other and with others yet unknown to engage in the various activities set forth herein and aided and abetted one another in such activities, all proscribed and prohibited by 18 U.S.C. §1962(d).

## CREATION OF SMART WORLD AND FRAUDULENT MISREPRESENTATION

(10)    Beginning no later than 2001 and continuing well into at least 2006, Palmeroni and Rosarbo set up a scheme with a number of distributors, customers and NRCG to take advantage of the fact that, for legitimate business reasons, NVE sold products to overseas customers at a price significantly lower than the price available to domestic distributors and customers.  Palmeroni and Rosarbo used their inside knowledge and connections to set up a company, Smart World US, which had a very

similar name to a legitimate Dutch distributor of NVE products (Smart World
Netherlands).  FAC ¶¶ 9, 12, 15, 16, 20, 33.  Palmeroni and Rosarbo had orders placed
in the name of Smart World Netherlands, falsely representing that they were to be
exported to Holland at the lower price, then used Smart World US to take possession of
the products and resold them to number of NVE distributors and customers (the
"Conspiring Distributors")  at a price lower than NVE itself was charging for the identical
products in the United States.  FAC ¶¶ 16-18, 33-35, 53.  Palmeroni and Rosarbo
obtained these products by misrepresenting to NVE that Smart World US was Smart
World Netherlands both through verbal orders placed by Palmeroni and by written
orders received from Smart World Netherlands after Palmeroni was terminated from
NVE.  See Smart World orders for NVE products attached as Exhibit 25 to the
Certification of Ellen Smith dated November 22, 2010, Docket # 160-12.

(11)    As set forth below, the Conspiring Distributors purchased millions of
dollars of products that the Palmeroni Enterprise claimed were being sold to Smart
World Netherlands and its related entities at the lower international price.  This allowed
the Conspiring Distributors to take the NVE products for less than NVE's own domestic
price, causing a loss to NVE.  The Conspiring Distributors were located in states other
than New Jersey and the NVE goods were shipped from New Jersey to other states,
including Wisconsin, California, North Carolina, Texas, Florida, and Arizona.  FAC 21-
32.  These products were never exported and instead were sold by multiple Palmeroni
and Rosarbo companies, including Smart World, AWD, NRCG, and VAR, to the
Conspiring Distributors (all prior distributors of NVE) at a great profit to themselves and

corresponding loss to NVE.  See 2010-11-22 Smith Certification, Exhibits 5 to 21, # 160-5 -160-11.

(12)    Even though Palmeroni was the vice president of sales for NVE, and he was thus responsible for sales for NVE, as part of this scheme, the Conspiring Distributors did not pay NVE for its products.  Instead, as detailed below, the Conspiring Distributors made payments to companies set up by Palmeroni and Rosarbo for the fraudulently obtained NVE products.  FAC ¶¶ 54-62.  The FAC alleges, as predicate acts, that the payments referred to above were made by means of the mails and that people, money and goods of more than $5,000 in value travelled in interstate commerce.  FAC ¶¶ 68-69.  Palmeroni has admitted that his enterprise sent approximately $8,000,000 in wire transfers for illegal purchases of NVE products through the Smart World scheme.  See 2012-11-22 Smith Certification, # 160-2 and 160-11.

(13)    These products were sold through AWD and Smart World US, which were jointly owned by Palmeroni and Rosarbo, as well as through one or more of their separately-owned entities, including VAR and NRCG.  The proceeds of these illegal sales were transferred to other entities Palmeroni and Rosarbo owned and to themselves personally.  The fraudulently-obtained NVE products were distributed and sold as follows:

- During the relevant time period, Bengoa, through CB, made payments totaling at least $6,000,000 for the purchase of fraudulently-obtained NVE products from AWD, NRCG, Smart World US, and VAR and possibly from other Palmeroni or Rosarbo entities.  The amounts of such payments made by Bengoa known to date are: NRCG ($35,236.64), AWD ($5,053,072.36), Smart World US ($862,920.00) and VAR ($44,641. 26).

See, *inter alia*, bank records previously produced as LakelandBank-001 to LakelandBank-000498; BoA-AWD-0001 to BoA-AWD-0220; BOA-SmartWorld-000001 to BOA-SmartWorld-000368; BoA-VAR-0001 to BoA-VAR-000663; Sarinelli-AWD-0001 to Sarinelli-AWD-0413; Sarinelli-NRCG-001 to Sarinelli-NRCG-0285 and Sarinelli-SW-0001 to Sarinelli-SW-0472.

- During the relevant time period, Householder individually made payments totaling at least $24,942 for the purchase of fraudulently-obtained NVE products from AWD. See Bank of America records previously produced as BoA-AWD-0001 to BoA-AWD-0220 and Sarinelli-AWD-0001 to Sarinelli-AWD.

- During the relevant time period, Householder, through Brand New Energy, made payments totaling at least $926,090 for the purchase of fraudulently-obtained NVE products from AWD, NRCG and VAR and possibly from other Palmeroni or Rosarbo entities, including payments in the first half of 2006 of at least $41,556 to VAR and at least $42,560 to NRCG. In addition to payments made to VAR and NRCG, Householder, through Brand New Energy, made payments known to date to AWD in the amount of $841,974. See, *inter alia*, bank records previously produced as BoA-VAR-0001 to BoA-VAR-000663; LakelandBank-001 to LakelandBank-000498; BoA-AWD-0001 to BoA-AWD-0220; Sarinelli-AWD-0001 to Sarinelli-AWD-0413 and Sarinelli-NRCG-001 to Sarinelli-NRCG-0285.

- During the relevant time period, Sessions, through Sessions Specialty Company, made payments totaling at least $274,799.58 for the purchase of fraudulently-obtained NVE products from AWD and possibly other Palmeroni or Rosarbo entities. See, *inter alia*, Bank of America records previously produced as BoA-AWD-0001 to BoA-AWD-0220 and Sarinelli-AWD-0001 to Sarinelli-AWD-0413.

- During the relevant time period, Sumicek made payments totaling at least $35,251.52 for the purchase of fraudulently-obtained NVE products from AWD and NRCG and possibly from other Palmeroni or Rosarbo entities, including purchases of at least $29,251.52 from AWD in 2004 and at least $6,000 from

NRCG in 2005.  See, *inter alia*, bank records previously produced as LakelandBank-001 to LakelandBank-000498; BoA-AWD-0001 to BoA-AWD-0220; Sarinelli-AWD-0001 to Sarinelli-AWD-0413 and Sarinelli-NRCG-001 to Sarinelli-NRCG-0285.

- In 2004, the Portzes (John J. Portz, Sr. and Katherine M. Portz individually) made payments totaling at least $50,000 for the purchase of fraudulently-obtained NVE products from AWD.  See Bank of America records previously produced as BoA-AWD-0001 to BoA-AWD-0220 and Sarinelli-AWD-0001 to Sarinelli-AWD-0413.

- Between 2003 and 2005, the Portzes, including Jarrett Portz, through International Wholesale Service, made payments totaling at least $270,951.20 to AWD for the purchase of fraudulently-obtained NVE products.  See Bank of America records previously produced as BoA-AWD-0001 to BoA-AWD-0220 and Sarinelli-AWD-0001 to Sarinelli-AWD-0413.

- In 2005, the Portzes, including Jarrett Portz, through International Wholesale Supply, Inc., made payments totaling at least $19,440 to AWD for the purchase of fraudulently-obtained NVE products.  See Bank of America records previously produced as BoA-AWD-0001 to BoA-AWD-0220 and Sarinelli-AWD-0001 to Sarinelli-AWD-0413.

- Between 2003 and 2004, the Felices (Alfredo D. Felice and Charmaine C. Felice individually) made payments totaling at least $5,031 for the purchase of fraudulently-obtained NVE products to AWD.  See Bank of America records previously produced as BoA-AWD-0001 to BoA-AWD-0220 and Sarinelli-AWD-0001 to Sarinelli-AWD-0413.

- In 2004, the Felices, through Curtis Beverage, LLC, made payments to AWD and VAR totaling at least $119,124 for the purchase of fraudulently obtained NVE products.  See Bank of America records previously produced as BoA-AWD-0001 to BoA-AWD-0220; Sarinelli-AWD-0001 to Sarinelli-AWD-0413 and BoA-VAR-0001 to BoA-VAR-000663.[25]

---

[25]  Each of these purchases, and related transfer of funds, is a separate predicate act.

(14)    Palmeroni spearheaded the scheme to resell NVE goods that were supposed to be for export on the premise that the purchase price was lower for export goods.  Palmeroni suggested to Rosarbo that they set up a company (Smart World US) to divert the product and that they do so in Nevada, which was known for keeping company information private.  See incorporation records previously produced as LakelandBank-025 to LakelandBank-027 and Sarinelli-SmartWorld-0019 and Sarinelli-SmartWorld-0023.  Palmeroni and Rosarbo each put up approximately $10,000 - $15,000 for the first order and then used the profits to finance additional purchases.  Rosarbo set up warehousing for the product at Foremost, which was a public warehouse in Carlstadt, New Jersey.

(15)    During this time, NVE sales were growing exponentially everywhere, so the increase of sales for Smart World Netherlands was not questioned.  Additionally, one of the Conspiring Distributors, and NVE's biggest customer, Bengoa, continued to purchase product from NVE while also purchasing product from Smart World US which helped to cover up the illegal exchange.  Palmeroni placed the orders himself for Smart World US, so it appeared that the product was being exported to Smart World Netherlands.  Moreover Smart World US and Smart World Netherlands both paid for NVE products by wire transfer, making the illicit orders all but impossible to detect.  See records previously produced as BOA-SmartWorld-000001 to BOA-SmartWorld-000368 and Sarinelli-SmartWorld-0001 to Sarinelli-SmartWorld-0427.

(16)    The NVE products ordered by Smart World Netherlands went to one warehouse to be exported, while the NVE product ordered by Smart World US went to the Foremost warehouse.  Smart World US would pick up the product from Foremost

and arrange to have it shipped out to Bengoa and the other Conspiring Distributors or they would arrange to pick it up themselves from the warehouse.  Although Palmeroni and Rosarbo made it appear that the NVE products, primarily Stacker 2, was going to be sold and exported to Smart World Netherlands, the product never left the country. Instead, it was unlawfully transported from New Jersey to several other states throughout the country, including Wisconsin, California, North Carolina, Texas, Arizona and Florida.

(17)    The Conspiring Distributors knew NVE's legitimate price structure and knew that the price Palmeroni and Rosarbo were charging them for the same product was lower than what they would pay to buy the product lawfully from NVE.  Palmeroni and Rosarbo instructed the Conspiring Distributors to pay AWD and/or VAR (as well as, Smart World US and NRCG at times) for the product.  They would send out invoices, ship the product out, then transfer money to the Smart World US account to pay NVE for the next batch of product.

(18)    Palmeroni also recruited Smart World Netherlands to be a part of this scheme.  After Palmeroni and Rosarbo received orders from the Conspiring Distributors, they would often contact Thomas Sikkink, Jeroen Gravlijn and/or Smart World Netherlands to have them place bogus orders with NVE.  Once the order was placed, Palmeroni and Rosarbo would arrange for payment by wire transfer from Smart World US to NVE at the lower export price.  They would then arrange to have the product picked up, stored at Foremost and sent on to the Conspiring Distributors.  For their part, Smart World Netherlands, together with Gravelijn, Sikkink, Vital Pharma and T&J Limited received a per bottle payment from Palmeroni and Rosarbo.

(19)    For approximately a year after Palmeroni was terminated from NVE,

Rosarbo and Palmeroni continued to run their scheme with the people at Smart World

Netherlands.  When Rosarbo and Palmeroni needed more product that was not in stock

at NVE, they instructed Smart World Netherlands to purchase a certain amount of

product from NVE and then VAR or Smart World US would pay NVE directly by wire

transfer, resulting in the product being released for delivery or pickup by NVE.  See

orders placed by Smart World attached as Exhibit 25 to Smith 2010-11-22 Certification,

# 160-12.  In return for their aid and assistance in this scheme, Smart World US paid

one or more agents of Smart World Netherlands, over $900,000 in "commissions" for

their complicity.  See Bank of America Smart World Account Statements reflecting

international wire transfers to T & J Ltd., attached as Exhibit 26 to 2010-11-22 Smith

Cert., #160-13.  See also handwritten Smart World US payment ledgers indicating that

these payments were made "To Holland" for "commissions" attached as Exhibit 27 to

2010-11-22 Smith Cert., # 160-13.

(20)    Palmeroni and Rosarbo conspired and entered into secret arrangements

with the Conspiring Distributors as aforesaid for the purchase and sale of NVE products

which had been fraudulently-obtained by Smart World US at prices lower than the

legitimate prices available for NVE products in the United States, the unlawful proceeds

of which went to Palmeroni, Rosarbo or their entities.  Each of the Conspiring

Distributors  were familiar with the NVE price schedule and knew that they were paying

a lower price to Palmeroni and Rosarbo for the same products.  They further knew that

Palmeroni was employed by NVE and should not be undercutting NVE's sales in this

manner.  Thus, the Conspiring Distributors knew and/or  reasonably should have

known that this secret arrangement was improper and unlawful and defrauded NVE by depriving it of its rightful sales and profits.

(21)    Palmeroni, as NVE's Vice President of Sales, and Rosarbo, as its salesman, were obligated to perform their duties faithfully and loyally to NVE. In connection with the activities giving rise to NVE's claims for relief, each of the Defendants acted with malice, intent and knowledge and with a wanton and reckless disregard of the rights of NVE. At all relevant times, NVE was engaged in interstate and foreign commerce in that its products were sold throughout the United States and abroad and these activities caused money, products, supplies, materials, services and individuals to travel interstate and abroad. At all relevant times and in furtherance of the schemes and artifices to defraud and to obtain money by means of false pretenses, defendants, on numerous occasions, used and caused to be used mail depositories of the United States Postal Service and transmitted and or received payments by checks or wire transfers in violation of 18 U.S.C. §§ 1341 and 1343, as evidenced in the FAC and discovery materials already produced in this matter.

(22)    The Palmeroni Enterprise, through Smart World US picked up the unlawfully-obtained product from Foremost and arranged to have it shipped out to the Conspiring Distributors in several states throughout the country or they would arrange to pick it up themselves and transport it back to their home state. Thus, at all relevant times and in execution or concealment of the schemes and artifices to defraud and obtain money by means of false pretenses, Defendants, on numerous occasions, caused and induced persons to travel in interstate and foreign commerce and transported or caused to be transported money and goods of the value of five thousand

dollars ($5,000) or more, each such use of interstate or foreign commerce in the execution or concealment of the scheme or artifice to defraud constituting a separate and distinct violation of 18 U.S.C. § 2314.

(23)   The activities of the Defendants in the formation and execution of the scheme to defraud NVE, had a pervasive and debilitating impact on NVE's affairs and efforts in commerce among states of the United States and abroad.  The time of NVE's management personnel and legal counsel was diverted from other potentially profitable ventures and misspent identifying or compensating for the various activities described herein.  Services and assets of NVE were not only diverted into purposes that served the best interests of others and not those of NVE, but they were not then available for alternative uses and opportunities.  Additional services and assets have had to be employed to keep NVE's projects profitable or to keep them from becoming unduly unprofitable.  As such, NVE has been and is being directly and indirectly injured by the Kickback Scheme and the purchase and sale of its products that were fraudulently obtained, in violation of 18 U.S.C. §§1962 (c) and (d).

**3.     List the alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.**

NVE does not currently have information on other individuals and entities that may have aided and abetted the Defendants in this conspiracy.

**4.     List the alleged victims and state how each victim was allegedly injured.**

NVE is the victim of the Defendants' pattern of racketeering activity and conspiracies.  NVE was directly and distinctly injured because the Defendants illegally defrauded NVE of brokerage commissions and rightful sales profits of its products in

an as yet undetermined amount, including, but not limited to the amounts set forth in response to Question 2 above.

**5.    Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim.  A description of the pattern of racketeering shall include the following information:**

**a.    List the alleged predicate acts and the specific states which were allegedly violated;**

(1)    Defendants have engaged in numerous predicate acts of mail, wire and transportation fraud.  In carrying out these overt acts and fraudulent schemes as described throughout this RICO Case Statement, Defendants have violated federal laws, including mail fraud in violation of 18 U.S.C. § 1341; wire fraud in violation of 18 U.S.C. §1343; and transportation fraud in violation of 18 U.S.C. § 2314.  These predicate acts constitute a pattern of racketeering through which defendants have violated 18 U.S.C. §§1962 (c) and (d), in that at least two of these acts took place during the ten-year period of 1999 through 2009.[26]

(2)    Specifically, in violation of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. §1343 (wire fraud) and 18 U.S.C. §2314 (transportation fraud), after NVE paid the Conspiring Brokers commissions by means of periodic checks mailed from New Jersey to Texas, New York, Florida and California throughout the relevant time period (See records previously produced as NVE-001-A to NVE-002863-A; NVE-000001-B to NVE-003310-B; NVE-003311-B to NVE-003318-B; NVE-003504-B to NVE-003626-B; NVE-003815-B to NVE-003930-B; NVE-006027-B to NVE-006187-B; and NVE-006331-B to NVE-006605-B), the Conspiring Brokers proceeded to unlawfully pay

---

[26]    In fact, the Palmeroni Enterprise engaged in hundreds of predicate acts involving mail, wire and transportation fraud throughout the time period of 1999 to 2009, demonstrating a clear pattern of racketeering, as specifically illustrated in Exhibits "A" and "B" attached hereto.

Palmeroni and/or various other of his designees, including NRCG and Global, a portion of the commissions paid by NVE by means of interstate commerce in cash, checks or wire transfers.  See bank records previously produced as LakelandBank-001 to LakelandBank-000498; NVE-ProfitMot-0001 to NVE-ProfitMot-000060; and NVE-PMI-000001 to NVE-PMI-000080.  See also "Kickback Payments from Conspiring Brokers to Palmeroni Entities" attached hereto as Exhibit "A".

(3)    Additionally, in violation of these statutes, Palmeroni and his enterprise purchased NVE products in the name of Smart World Netherlands, used Smart World US to take possession of the products, then resold them to the Conspiring Distributors at a lower price than NVE itself was charging in the United States.  Once the payments were received by Palmeroni and his enterprise, the fraudulently-obtained NVE products were then shipped from Foremost in Carlstadt, New Jersey to each of the Conspiring Distributor's corresponding state and/or the Conspiring Distributors would arrange to have the products picked up and transported back to their home state.  See, *inter alia*, records previously produced as NVE-CBDist-0001 to NVE-CBDist-0031.

(4)    The Conspiring Distributors then made payments to Palmeroni and his enterprise through NRCG, AWD, Smart World and VAR in check, wire transfer and/or cash.  Specifically, Bengoa made payments from CB Distributors in Wisconsin to the Bank of America AWD bank account in New York; the Lakeland Bank NRCG bank account in New Jersey; the Bank of America Smart World bank account in New York and the VAR Bank of America bank account in Connecticut.  See, *inter alia*, bank records previously produced as LakelandBank-001 to LakelandBank-000498; BoA-AWD-0001 to BoA-AWD-0220; BOA-SmartWorld-000001 to BOA-SmartWorld-

000368; and BoA-VAR-0001 to BoA-VAR-000663.  See also "Payments from

Conspiring Distributors to Palmeroni and Rosarbo Entities" attached hereto as Exhibit

"B".  Likewise, Householder through Brand New Energy (California); Sessions thorough

Sessions Specialty Company (North Carolina); Sumicek through Sunbelt Marketing and

International Sales Group (Texas);  the Portzes individually and through International

Wholesale Service and International Wholesale Supply (Arizona); and the Felices

individually and through Curtis Beverage, LLC (Florida) all made similar payments to the

various Palmeroni entities throughout several different states.  Id.  See also, *inter alia*,

bank records previously produced as BoA-VAR-0001 to BoA-VAR-000663;

LakelandBank-001 to LakelandBank-000498 and BoA-AWD-0001 to BoA-AWD-0220.

> **b.    Provide the dates of the predicate acts, the participants in the
>         predicate acts, and a description of the facts surrounding the
>         predicate acts;**

(1)    The predicate acts of mail fraud, wire fraud and transportation fraud took

place continuously between the years 1999 and 2009.  The predicate acts involved all

Defendants in furtherance of their schemes to defraud NVE by paying or receiving

kickbacks in connection with sales of NVE products and/or by selling or purchasing

fraudulently-obtained NVE products.  As described throughout this RICO Case

Statement, NVE paid Conspiring Brokers commissions in the usual course of business

by means of periodic checks mailed from New Jersey to Texas (Sumicek), New York

(Horowitzes), Florida (Horowitzes) and California (Nieuwenhuis) throughout the relevant

time period.  See, *inter alia*, records previously produced as NVE-001-A to NVE-

002863-A; NVE-000001-B to NVE-003310-B; NVE-003311-B to NVE-003318-B;

NVE-003504-B to NVE-003626-B; NVE-003815-B to NVE-003930-B; NVE-006027-B

to NVE-006187-B; and NVE-006331-B to NVE-006605-B.

(2)     The Conspiring Brokers then unlawfully paid Palmeroni and/or various other of his designees a portion of the commissions paid by NVE by means of interstate commerce in cash, checks or wire transfers from Texas, New York, Florida and California back to New Jersey (NRCG) and Pennsylvania (Global).  See ¶2 (5) above and bank records previously produced as LakelandBank-001 to LakelandBank-000498; NVE-ProfitMot-0001 to NVE-ProfitMot-000060; and NVE-PMI-000001 to NVE-PMI-000080.  See also specific dates in "Kickback Payments from Conspiring Brokers to Palmeroni Entities" attached hereto as Exhibit "A".

(3)     Further, with regard to the purchase and sale of fraudulently-obtained NVE products, on numerous occasions the Defendants used and caused to be used mail depositories of the United States Postal Service and transmitted and or received payments by checks or wire transfers.  Specifically, Palmeroni and Rosarbo purchased NVE products in the name of Smart World Netherlands and used their company, Smart World US, to take possession of the products.  Then, the two partners resold the products to the Conspiring Distributors (Bengoa, Householder, Sessions, Sumicek, the Portzes, and the Felices) at a lower price than NVE itself was charging.  Palmeroni and Rosarbo received payment for the fraudulently-obtained products through NRCG, AWD, Smart World and VAR in check, wire transfer and cash.

(4)     Specifically, Bengoa made payments from CB Distributors in Wisconsin to the Bank of America AWD bank account in New York; the Lakeland Bank NRCG bank account in New Jersey; the Bank of America Smart World bank account in New York and the VAR Bank of America bank account in Connecticut.  See bank records

previously produced as LakelandBank-001 to LakelandBank-000498; BoA-AWD-0001 to BoA-AWD-0220; BOA-SmartWorld-000001 to BOA-SmartWorld-000368; and BoA-VAR-0001 to BoA-VAR-000663.  See also specific transaction dates in "Payments from Conspiring Distributors to Palmeroni and Rosarbo Entities" attached hereto as Exhibit "B".  Similarly, Householder through Brand New Energy (California); Sessions thorough Sessions Specialty Company (North Carolina); Sumicek through Sunbelt Marketing and International Sales Group (Texas);  the Portzes individually and through International Wholesale Service and International Wholesale Supply (Arizona); and the Felices individually and through Curtis Beverage, LLC (Florida) all paid for the fraudulently-obtained NVE goods through the various Palmeroni entities.  See ¶2 (13) herein above and bank records previously produced as LakelandBank-001 to LakelandBank-000498; BoA-AWD-0001 to BoA-AWD-0220 and BoA-VAR-0001 to BoA-VAR-000663.

(5)    Also, on numerous occasions, Defendants caused and induced persons to travel in interstate and foreign commerce and transported  or caused to be transported  fraudulently-obtained NVE products.  Once the payments were received by the Palmeroni and Rosarbo entities, the fraudulently-obtained NVE products were then shipped from Foremost in Carlstadt, New Jersey to each of the Conspiring Distributor's corresponding state and/or the Conspiring Distributors would arrange to have the products picked up and transported back to their home state.  See, *inter alia*, records previously produced as NVE-CBDist-0001 to NVE-CBDist-0031.

    **c.**  **If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, provide the "circumstances constituting fraud or mistake [which] shall be stated with particularity." Fed. R. Civ. P. 9(b).  Identify the time**

**place and contents of the alleged misrepresentations, and the identity of the persons to whom and by whom the alleged misrepresentations were made;**

(1)　　As set forth above, the Defendants engaged in multiple acts of wire and mail fraud each time they placed an order or made payment by check or wire transfer to Palmeroni, Rosarbo and their various entities.  Beginning in 2000, Palmeroni made covert arrangements, unknown to NVE, with the Conspiring Brokers (Sumicek, the Horowitzes and Nieuwenhuis) to make unlawful payments to Palmeroni, including kickbacks on commissions, in exchange for the assignment, retention or manipulation of NVE accounts to the benefit of Conspiring Brokers.  These payments were arranged to control and extort the Conspiring Brokers to the sole benefit of Palmeroni and to the extreme determinant of NVE.  The particular dates, amounts and participants to these illicit money transfers are set forth in Exhibit "A" attached hereto.  See also, bank records previously produced as LakelandBank-001 to LakelandBank-000498; NVE-ProfitMot-0001 to NVE-ProfitMot-000060; and NVE-PMI-000001 to NVE-PMI-000080.

(2)　　Additionally, beginning in or about 2001 and continuing well into at least 2006, Palmeroni and Rosarbo set up a scheme with Conspiring Distributors (Bengoa, Householder, Sessions, Sumicek, the Portzes and the Felices) to take advantage of NVE's legitimate sale of products to overseas customers at a price significantly lower than the price available to domestic distributors and customers.  Palmeroni and Rosarbo used their inside knowledge and connections to set up a company, Smart World US, which had a very similar name to NVE's legitimate distributor, Smart World Netherlands.  Palmeroni and Rosarbo placed orders in the name of Smart World Netherlands, falsely representing that they were to be exported to Holland at the lower

price, then used Smart World US to take possession of the products and resold them to the Conspiring Distributors at a price lower than NVE itself was charging for the same products in the United States.

(3)     Palmeroni and Rosarbo obtained these products by misrepresenting to NVE that Smart World US was the Smart World Netherlands both through verbal orders placed by Palmeroni and by written orders received from Smart World Netherlands after Palmeroni was terminated from NVE.  See Smart World orders for NVE products attached as Exhibit 25 to the Certification of Ellen Smith dated November 22, 2010, Docket # 160-12.  Palmeroni and Rosarbo then received payment from the Conspiring Distributors for the fraudulently-obtained products through their entities, NRCG, AWD, Smart World and VAR in cash, check and wire transfer.  The particular dates, amounts and participants to these illicit money transfers are set forth in Exhibit "B" attached hereto.  See also bank records previously produced as LakelandBank-001 to LakelandBank-000498; BoA-AWD-0001 to BoA-AWD-0220; BOA-SmartWorld-000001 to BOA-SmartWorld-000368; and BoA-VAR-0001 to BoA-VAR-000663.

         **d.**    **State whether there has been a criminal conviction in regard to the predicate acts;**

            No.

         **e.**    **State whether civil litigation has resulted in a judgment in regard to the predicate acts;**

            No.

         **f.**    **Describe how the predicate acts form a "pattern of racketeering activity";**

(1)     Defendants did not merely engage in two RICO predicate acts over a period of ten years, but bank records show scores, if not hundreds of separate

payments from either the Conspiring Brokers and/or the Conspiring Distributors to Palmeroni, Rosarbo and entities they controlled.  See Exhibits "A" and "B" attached hereto for a clear picture of the pattern of activity through payments from Conspiring Brokers and Conspiring Distributors to Palmeroni, Rosarbo and their entities.

(2)     These payments were arranged to control and extort the Conspiring Brokers.  The payments by the Conspiring Brokers and Conspiring Distributors were designed to victimize NVE by extracting profits and moneys due NVE through an explicit pattern of subterfuge and fraud.  The kickback payments paid by Sumicek, the Horowitzes and Nieuwenhuis to Palmeroni were not isolated and showed a continuing enterprise over a period of time and with a variety of different entities.  Similarly, with the fraudulent purchase of and payment for NVE products that were supposed to be exported to the Netherlands, Palmeroni and the other members of the Palmeroni Enterprise used their ill-gotten profits to finance the continuation of the scheme to deprive NVE of the loyalty of its employees and the profits it would have earned if the proper domestic price had been charged.  The pattern of orders and payments to Palmeroni, Rosarbo and their entities for unlawfully-obtained NVE products is documented for over five years on a consistent basis.  Id.

(3)     Defendants' predicate acts form a "pattern of racketeering activity" consisting of multiple related acts of racketeering activity from 1999 through 2009. Each and every predicate act of mail, wire and transportation fraud was related in that the purpose of each was to defraud and to prevent detection of the schemes devised to defraud NVE of profits, sales and business opportunities in an amount not yet fully known.  Each predicate act involved the same or similar participants - - Palmeroni,

Rosarbo and a combination of the other Defendants.  Each predicate act involved the same or similar method of commission and each had the similar result of obscuring Defendants' activities.  The predicate acts amount to continued racketeering activity in that the predicate acts occurred repeatedly over an extended period of time, beginning in at least 1999.  Accordingly, the predicate acts constitute a "pattern of racketeering activity."

> **g.    State whether the alleged predicate acts relate to each other as part of a common plan.  If so, describe in detail.**

The predicate acts of mail, wire and transportation fraud were part of a common scheme to defraud NVE, whereby the Defendants engaged in numerous acts of mail, wire and transportation fraud to conceal and prevent detection of both the Kickback Scheme and the purchase and sale of its products that were fraudulently obtained.

**6.    State whether the existence of an "enterprise" is alleged within the meaning of 18 U.S.C. §1961(4).  If so, for each such enterprise, provide the following information:**

Two association in fact enterprises are alleged.

> **a.    State the names of the individuals, partnerships, corporations, associations or other legal entities, which allegedly constitutes the enterprise;**

Each of the following constitutes a group of persons or entities associated in fact:

(1)    Palmeroni, Hooey, Maria C. Palmeroni, Rosarbo, Angelina Rosarbo, Dilungo, NRCG, Smart World US, AWD, Foremost, Global, VAR, Sumicek, Horowitzes, Nieuwenhuis, Bengoa, Householder, Sessions, Portzes, Felices, Smart World Netherlands, Vital Pharma and T&J Limited are a group of individuals associated in fact and not a legal entity (the "Palmeroni" Enterprise).

(2)    N.V.E., Inc. is the Plaintiff corporation and legal entity (the "NVE Enterprise").

**b.    Describe the structure, purpose, function and course of conduct of the enterprise;**

(1)    The Palmeroni Enterprise is a group of individuals with a hierarchical structure and differentiated roles of its participants, with Palmeroni and Rosarbo initiating and managing the criminal enterprise through their actions.  The criminal enterprise engaged in activities which affected interstate commerce, within the meaning of 18 U.S.C. §1962(c).  Palmeroni, Rosarbo and all other named defendants and others yet unknown conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs, and conspired to do so through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B) and (5), to wit: multiple instances of mail fraud in violation of 18 U.S.C. § 1341; multiple instances of wire fraud in violation of 18 U.S.C. §1343; and multiple instances of transportation fraud in violation of 18 U.S.C. § 2314.

(2)    The NVE Enterprise is a legal corporation organized under the laws, and a resident, of the State of New Jersey engaged in the manufacture, distribution and sale of nutritional supplements and energy drinks, the activities of which affect interstate and foreign commerce.

**c.    State whether any defendants are employees, officers or directors of the alleged enterprise;**

Palmeroni, Rosarbo and Hooey were employees of the NVE, but are no longer. Palmeroni, Rosarbo, Hooey, Angelina Rosarbo and Dilungo were owners and/or employees of several of the entities that made up the Palmeroni Enterprise, including NRCG, Global, AWD, VAR and Smart World US.  Sumicek is owner and/or principal of two of the distributors that made up the Palmeroni Enterprise, Sunbelt Marketing and International Sales Group.  The Horowitzes are owners and/or principals of two of the distributors that made up the Palmeroni Enterprise, Profit Motivators, Inc. and PMI Global Marketing Corp.  Nieuwenhuis was a broker of NVE products.  Bengoa is owner

and president of one of the distributors that made up the Palmeroni Enterprise, CB

Distributors, Inc.  Householder is president of one of the distributors that made up the

Palmeroni Enterprise, Brand New Energy.  Sessions is owner of one of the distributors

that made up the Palmeroni Enterprise, Sessions Specialty Company.  The Portzes are

owners and officers of two of the distributors that made up the Palmeroni Enterprise,

International Wholesale Service, Inc. and International Wholesale Supply, Inc.  The

Felices are part owners and members of one of the distributors that made up the

Palmeroni Enterprise, Curtis Beverage, LLC.

> **d.    State whether any defendants are associated with the alleged enterprise;**

(1)    Palmeroni, Rosarbo and all other named defendants were each
associated with the Palmeroni Enterprise.

(2)    Palmeroni, Rosarbo and Hooey were each employed at one time by NVE
and all other Defendants were associated with NVE.

> **e.    State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or member of the enterprise; and**

(1)    Palmeroni was the head and controlling member of the Palmeroni
Enterprise and all Defendants participated in and are members of the Palmeroni
Enterprise as indicated herein, but they have an existence separate and distinct from
the Palmeroni Enterprise.

(2)    While Palmeroni, Rosarbo and Hooey were employees of the NVE
Enterprise, they have an existence separate and distinct from the NVE Enterprise.

       f.      **If any defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.**

Defendants are perpetrators of the racketeering activity.  We note that some of the Conspiring Brokers claimed to have been extorted by Palmeroni.

      **7.      State and describe in detail whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one activity.**

(1)      The Palmeroni Enterprise and the racketeering activity of mail, wire and transportation fraud merged into one activity with two main parts.  First, with regard the Kickback Scheme, the Conspiring Brokers received commissions from NVE by means of periodic checks mailed from New Jersey to Texas, New York, Florida and California.  See, *inter alia*, records previously produced as NVE-001-A to NVE-002863-A; NVE-000001-B to NVE-003310-B; NVE-003311-B to NVE-003318-B; NVE-003504-B to NVE-003626-B; NVE-003815-B to NVE-003930-B; NVE-006027-B to NVE-006187-B; and NVE-006331-B to NVE-006605-B.  Then, the Conspiring Brokers paid Palmeroni or various other of his designees, including NRCG and Global, a portion of the commissions paid by NVE by means of interstate commerce in cash, checks or wire transfers.  See bank records previously produced as LakelandBank-001 to LakelandBank-000498; NVE-ProfitMot-0001 to NVE-ProfitMot-000060; and NVE-PMI-000001 to NVE-PMI-000080.

(2)      Second, with regard to the purchase and sale of fraudulently-obtained NVE products, NVE was engaged in interstate and foreign commerce in that its products were sold throughout the United States and abroad and these activities caused money, products, supplies, materials, services and individuals to travel

interstate and abroad.  Palmeroni and his enterprise purchased NVE products in the name of Smart World Netherlands, used Smart World US to take possession of the products, then resold them to the Conspiring Distributors at a lower price than NVE itself was charging in the United States and shipped them to various different states throughout the country.  Once the payments were received by Palmeroni and his enterprise, the fraudulently-obtained NVE products were then shipped from Foremost in Carlstadt, New Jersey to each of the Conspiring Distributor's corresponding state and/or the Conspiring Distributors would arrange to have the products picked up and transported back to their home state.  See, *inter alia*, records previously produced as NVE-CBDist-0001 to NVE-CBDist-0031.  Then, the Conspiring Distributors made payments to Palmeroni and his enterprise through NRCG, AWD, Smart World and VAR by check, wire transfer and cash.  See, *inter alia*, bank records previously produced as BoA-VAR-0001 to BoA-VAR-000663; LakelandBank-001 to LakelandBank-000498; BoA-AWD-0001 to BoA-AWD-0220 and BOA-SmartWorld-000001 to BOA-SmartWorld-000368.

(3)     The racketeering activity and the NVE Enterprise are separate.  The NVE Enterprise is a legal corporation who has been injured by the racketeering activity of the Palmeroni Enterprise.

**8.     Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity.  Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

(1)     The Palmeroni Enterprise, with Palmeroni himself at the helm, initiated, oversaw, coordinated and facilitated the commission of the numerous predicate offenses.  First, Palmeroni orchestrated a scheme with certain brokers of NVE products

– Sumicek, the Horowitzes and Nieuwenhuis – wherein he received kickbacks on commissions from these particular brokers who agreed to do so. See bank records previously produced as LakelandBank-001 to LakelandBank-000498; NVE-ProfitMot-0001 to NVE-ProfitMot-000060; and NVE-PMI-000001 to NVE-PMI-000080. The brokers, in turn, defrauded NVE while keeping their profitable NVE accounts and continued to be assigned new accounts, thus profiting from the scheme like Palmeroni.

(2)      Next, Palmeroni and Rosarbo devised another plan to divert NVE products, purchased by their own entity specifically created for this scheme, and sold the fraudulently-obtained products at a lower price to several willing and already existing NVE distributors, namely Bengoa, Householder, Sessions, Sumicek, the Portzes and the Felices. See, *inter alia*, bank records previously produced as BoA-VAR-0001 to BoA-VAR-000663; LakelandBank-001 to LakelandBank-000498; BoA-AWD-0001 to BoA-AWD-0220 and BOA-SmartWorld-000001 to BOA-SmartWorld-000368. The relationship between the unlawful activities of the enterprise and the pattern of racketeering activity occurred in what amounts to hundreds of transactions in violation of 18 U.S.C. §§ 1341, 1343 and 2314 over a period of at least ten years. The racketeering activity made up the usual and daily activity of the enterprise on a constant and consistent basis.

(3)      NVE is a legal corporation in the State of New Jersey whose activities are the manufacture, distribution and sale of nutritional supplements and energy drinks. At least two, perhaps three, of its former employees conspired to engage in the predicate acts of mail, wire and transportation fraud involving its legitimate business.

9.     **Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

(1)     The Palmeroni Enterprise benefited by the pattern of racketeering in that Palmeroni received millions of dollars in commission kickbacks from NVE brokers; the defendant brokers kept their profitable accounts and continued to make millions in commissions from NVE; Palmeroni and Rosarbo received millions of dollars from the sale of fraudulently-obtained NVE products to NVE distributors; and defendant distributors made millions by buying fraudulently-obtained NVE products for less than the domestic price and then selling them for profit.  NRCG, Global, VAR and AWD seem to have little if any reason for existence outside of the scheme to defraud NVE.

(2)     NVE received no benefit from the pattern of racketeering, but was directly and distinctly injured in its business and property as a result of the scheme involving the manipulation of accounts and kickbacks by brokers of sales commissions, and the scheme involving fraudulent misrepresentations to NVE as to the real purchaser of its products.

10.     **Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

(1)     The Palmeroni Enterprise caused illegal kickbacks to be transferred from New York, Texas, Florida and California to New Jersey and Pennsylvania, and also caused products destined to be shipped to foreign countries to be diverted and shipped from New Jersey to Wisconsin, North Carolina, California, Texas, Arizona and Florida, and caused money to be transferred by mail and wire from New York to New Jersey and from Wisconsin, North Carolina, California, Texas, Arizona and Florida to New Jersey and New York.

(2)     NVE is engaged in interstate and foreign commerce in that its products were sold throughout the United States and abroad.  These activities cause money, products, supplies, materials, services and individuals to travel interstate and abroad. In furtherance of the schemes and artifices of the Palmeroni Enterprise to defraud and to obtain money by means of false pretenses, Defendants repeatedly used and caused to be used mail depositories of the United States Postal Service and transmitted and or received payments by checks or wire transfers.  Moreover, in execution or concealment of the schemes of the Palmeroni Enterprise to defraud and obtain money by means of false pretenses, Defendants repeatedly caused and induced persons to travel in interstate and foreign commerce and transported or caused to be transported money and goods of the value of $5,000 or more.

(3)     The activities of the Defendants in the formation and execution of the scheme to defraud NVE had a pervasive and debilitating impact on NVE's affairs and efforts in commerce among states of the United States and abroad.

**11.   If the complaint alleges a violation of 18 U.S.C. §1962(a), provide the following information:**

Plaintiff does not allege a violation of 18 U.S.C. §1962(a).

      **a.   State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and**

         Not applicable.

      **b.   Describe the use or investment of such income.**

         Not applicable.

**12.    If the complaint alleges a violation of 18 U.S.C. §1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

Plaintiff does not allege a violation of 18 U.S.C. §1962(b).

**13.    If the complaint alleges a violation of 18 U.S.C. §1962(c), provide the following information:**

**a.    State who is employed by or associated with the enterprise;**

All Defendants are associated with the Palmeroni Enterprise.  Palmeroni, Rosarbo and Hooey were employees of NVE.

**b.    State whether the same entity is both the liable "person" and the "enterprise" under §1962(c).**

The same entity is not both the liable "person" and the "enterprise" under §1962(c).

**c.    Describe specifically how the defendant(s) participated in the operation or management of the enterprise.**

Palmeroni and Rosarbo initiated and managed the Defendants of the criminal Palmeroni Enterprise,  first as the inside men in the fraudulent scheme while working for NVE.  Specifically, during and after his employment with NVE, Palmeroni entered into secret arrangements, unknown to NVE, with certain brokers of NVE products to make unlawful payments to Palmeroni, including kickbacks on commissions,  in exchange for the assignment or manipulation of NVE accounts to the benefit of the Conspiring  Broker defendants.  Palmeroni  and Rosarbo, during and after their employment with NVE, also conspired with the Conspiring Distributor defendants to distribute NVE products fraudulently-obtained  by Smart World US,  keeping the proceeds for themselves.

**14.    If the complaint alleges a violation of 18 U.S.C. §1962(d), describe in detail the alleged conspiracy.**

Plaintiff alleges multiple violations of 18 U.S.C. §1962(d) as follows:

**Conspiring Brokers**

(1)    As set forth at length in the response to Question 2 above, beginning in 2000, Palmeroni entered into secret arrangements, unknown to NVE, with certain brokers of NVE products, including Sumicek, the Horowitzes and Nieuwenhuis to make illicit payments to Palmeroni, including kickbacks on commissions, in exchange for the assignment or manipulation of NVE accounts to the benefit of Conspiring Brokers.  Consequently, the Conspiring Brokers did agree and conspire together to devise and participate in schemes and plans of deceit in which they would and did abuse Palmeroni's fiduciary relationship and obligations to NVE to cause financial gain to themselves, procure unlawful commissions and divert the services, assets and profits of NVE to the use and benefit of themselves and others and to the detriment of NVE.  At all relevant times, in connection with these activities, the Conspiring Brokers conspired with each other and with others yet unknown to engage in the various illegal activities set forth herein and aided and abetted one another in such activities.

**Conspiring Distributors**

(2)    Beginning no later than 2001, Palmeroni and Rosarbo conspired with the Conspiring Distributors and others to distribute the NVE products fraudulently-obtained by Smart World US, keeping the proceeds which rightly belonged to NVE.  Palmeroni and Rosarbo conspired and covertly arranged with the Conspiring Distributors as aforesaid for the purchase and sale of NVE products which had been fraudulently-

obtained by Smart World US at prices lower than the lawful prices available for NVE products in the US.  The illicit and substantial proceeds went to Palmeroni, Rosarbo and/or their entities, while the Conspiring Distributors made a considerable profit. Palmeroni, Rosarbo and the Conspiring Distributors made sizeable efforts to avoid detection as they plotted this scheme.

(3)     At the time, the Palmeroni enterprise knew that NVE's legitimate sales were growing exponentially everywhere, so the increase of sales for Smart World Netherlands would not be questioned.  In fact, one of the Conspiring Distributors, and NVE's biggest customer, Bengoa, continued to purchase product from NVE while also purchasing product from Smart World US which helped to cover up the illegal exchange.  Palmeroni placed the orders himself for Smart World US, so it appeared that the product was being exported to Smart World Netherlands.  Moreover Smart World US and Smart World Netherlands both paid for NVE products by wire transfer, making the illicit orders all but impossible to detect.  See records previously produced as BOA-SmartWorld-000001 to BOA-SmartWorld-000368 and Sarinelli-SmartWorld-0001 to Sarinelli-SmartWorld-0427.

(4)     The NVE products ordered by Smart World Netherlands went to one warehouse to be exported, while the Palmeroni Enterprise was made sure that the NVE product ordered by Smart World US went to the Foremost warehouse.  Smart World US would pick up the product from Foremost and arrange to have it shipped out to Bengoa and the other Conspiring Distributors or they would arrange to pick it up themselves from the warehouse.  Although Palmeroni and Rosarbo made it appear that the NVE

products, primarily Stacker 2, was going to be sold and exported to Smart World
Netherlands, the product never left the country.

(5)     There came a point when Palmeroni even recruited Smart World
Netherlands to be a part of this scheme.  After Palmeroni and Rosarbo received orders
from the Conspiring Brokers, they would often contact Smart World Netherlands to
place bogus orders with NVE.  Once the order was placed, Palmeroni and Rosarbo
would arrange for payment by wire transfer to NVE at the lower export price from Smart
World US.  They would then arrange to have the product picked up, stored at Foremost
and sent on to the Conspiring Distributors.  For their part, Smart World Netherlands,
together with Gravelijn, Sikkink, Vital Pharma and T&J Limited, received a per bottle
payment from Palmeroni and Rosarbo.

(6)     In yet a further continuation of the conspiracy, for approximately a year
after Palmeroni was terminated from NVE, Rosarbo and Palmeroni continued to run
their scheme with the people at Smart World Netherlands.  When Rosarbo needed
more product, they would instruct Smart World Netherlands to place orders for the
required NVE products and then VAR or Smart World US would pay NVE by wire
transfer.  See orders placed by Smart World attached as Exhibit 25 to Smith 2010-11-22
Certification, # 160-12.  In return for their aid and assistance in this scheme, Smart
World US paid one or more agents of the Smart World Netherlands, over $900,000 in
"commissions" for their complicity.  See Bank of America Smart World Account
Statements reflecting international wire transfers to T & J Ltd., attached as Exhibit 26 to
2010-11-22 Smith Cert., #160-13.  See also handwritten Smart World US payment

ledgers indicating that these payments were made "To Holland" for "commissions" attached as Exhibit 27 to 2010-11-22 Smith Cert., # 160-13.

(7)     At all relevant times, in connection with these activities, the Conspiring Distributors conspired with Palmeroni, Rosarbo and each other to engage in the illegal activities set forth herein and aided and abetted one another in such activities.

**15.     Describe the alleged injury to business or property.**

(1)     NVE has been directly and distinctly injured in its business and property in an as yet undetermined amount by Palmeroni, Rosarbo and all of the Defendants as a result of 1) their illicit scheme involving the manipulation of accounts and kickbacks by brokers of sales commissions, and 2) their scheme involving fraudulent misrepresentations to NVE through Smart World US as to the real purchaser of its products that allowed Palmeroni and Rosarbo to siphon off millions of dollars of NVE sales, as well as an elaborate cover up of these activities.  At a minimum, NVE has lost millions of dollars as a result of both the Kickback Scheme and the creation of Smart World US as specifically set forth in ¶2(5) and ¶2(13) herein above and as illustrated in Exhibits "A" and "B" attached hereto.  Moreover, Palmeroni has admitted that his enterprise sent approximately $8,000,000 in wire transfers for illegal purchases of NVE products through the Smart World scheme.  See 2012-11-22 Smith Certification, # 160-2 and 160-11.

(2)     The activities of the Defendants in the formation and execution of the scheme to defraud NVE, has had a pervasive and debilitating impact on NVE's affairs and efforts in commerce among states of the United States and abroad.  The time of NVE's management personnel and legal counsel was diverted from other potentially

profitable ventures and misspent identifying or compensating for the various activities described herein. Services and assets of NVE were not only diverted into purposes that served the best interests of others and not those of NVE, but they were not then available for alternative uses and opportunities. Additional services and assets have had to be employed to keep NVE's projects profitable or to keep them from becoming unduly unprofitable.

**16.    Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

The fraudulent schemes and conspiracies involving all Defendants, who were among NVE's former employees and outside brokers and distributors, to steal money, products and opportunities from NVE proximately caused NVE to lose millions of dollars in brokerage commissions, sales and profits.

**17.    List the damages sustained by reason of the violation of §1962, indicating the amount for which each defendant is allegedly liable.**

Each and every Defendant is jointly and severally liable for treble damages as a result of Defendants' fraud and conspiracy, in an as yet undetermined amount, including, but not limited to the amounts set forth in Question 2 above and Exhibits "A" and "B" attached hereto.

**18.    List all other Federal causes of action, if any, and provide the relevant statute numbers.**

Plaintiff has alleged no other Federal cause of action.

**19.    List all pendent state claims, if any.**

Plaintiff alleges supplemental state claims under the New Jersey RICO statute, N.J.S.A. 2C:41-1 et seq., civil conspiracy, fraud, fraud-deceit, unlawful interference with prospective economic advantage, civil conspiracy, interference with property rights, breach of duty of loyalty, breach of contract, accounting, constructive trust, unjust enrichment and book account.

Respectfully submitted,

**PASHMAN STEIN, P.C.**
*Attorneys for Plaintiff N.V.E., Inc.*

By:    _/s/ Aidan P. O'Connor___
AIDAN P. O'CONNOR

Dated:  August 21, 2012

## EXHIBIT "A"

## Kickback Payments from Conspiring Brokers to Palmeroni Entities

### Payments to Lakeland Bank (NRGC)

> ➤ **From Sumicek in Texas to NRGC in New Jersey:**

| | | |
|---|---|---|
| Sunbelt Marketing | 12/15/05 | $ 13,111.87 |
| Sunbelt Marketing | 10/14/05 | $  3,762.56 |
| Sunbelt Marketing | 10/14/05 | $  3,597.48 |
| Sunbelt Marketing | 08/15/05 | $  4,461.58 |
| Sunbelt Marketing | 08/15/05 | $  5,992.43 |
| Sunbelt Marketing | 07/15/05 | $  7,999.32 |
| Sunbelt Marketing | 05/31/05 | $  4,967.68 |
| Sunbelt Marketing | 03/15/05 | $  6,531.88 |
| Sunbelt Marketing | 03/15/05 | $  5,602.14 |
| Sunbelt Marketing | 01/31/05 | $  8,427.96 |
| Sunbelt Marketing | 10/29/04 | $  3,940.31 |
| Sunbelt Marketing | 08/31/04 | $  5,713.38 |
| Sunbelt Marketing | 11/26/03 | $  5,015.78 |
| Sunbelt Marketing | 11/26/03 | $  5,015.78 |
| Sunbelt Marketing | 10/31/03 | $  9,578.60 |
| Sunbelt Marketing | 07/06/04 | $  5,530.72 |
| Sunbelt Marketing | 07/30/04 | $ 14,002.11 |
| Sunbelt Marketing | 05/14/04 | $ 15,733.27 |
| Sunbelt Marketing | 03/15/04 | $  7,899.66 |
| Sunbelt Marketing | 03/15/04 | $  7,899.67 |
| Sunbelt Marketing | 01/30/04 | $  5,858.21 |
| Sunbelt Marketing | 03/25/04 | $  7,935.24 |
| Sunbelt Marketing | 03/25/04 | $  7,935.24 |
| Sunbelt Marketing | 02/25/04 | $  7,935.25 |
| Sunbelt Marketing | 12/22/03 | $  5,177.57 |
| Sunbelt Marketing | 12/22/03 | $  5,177.57 |
| Sunbelt Marketing | 09/19/03 | $  5,510.44 |
| Sunbelt Marketing | 09/19/03 | $  5.510.44 |
| Sunbelt Marketing | 08/25/03 | $  7,890.43 |
| Sunbelt Marketing | 04/25/03 | $  7,890.43 |
| Sunbelt Marketing | 07/24/03 | $  9,446.39 |
| Sunbelt Marketing | 07/02/03 | $  9,225.26 |
| Sunbelt Marketing | 07/02/03 | $  9,225.00 |
| Sunbelt Marketing | 07/02/03 | $  9,000.00 |
| Sunbelt Marketing | 04/28/03 | $  6,220.18 |
| Sunbelt Marketing | 04/28/03 | $  6,220.18 |
| Sunbelt Marketing | 03/14/03 | $  4,677.83 |

| | | |
|---|---|---|
| Sunbelt Marketing | 03/05/03 | $ 2,634.15 |
| Sunbelt Marketing | 12/27/02 | $ 6,116.35 |
| Sunbelt Marketing | 12/13/02 | $ 5,222.57 |
| Sunbelt Marketing | 10/21/02 | $ 8,479.02 |
| Sunbelt Marketing | 09/23/02 | $ 8,396.92 |
| Sunbelt Marketing | 08/19/02 | $ 8,201.08 |
| Sunbelt Marketing | 07/24/02 | $ 8,848.95 |
| Sunbelt Marketing | 06/15/02 | $ 4,194.08 |
| Sunbelt Marketing | 05/16/02 | $ 4,915.59 |
| Sunbelt Marketing | 04/12/02 | $ 5,969,82 |
| Sunbelt Marketing | 03/29/02 | $ 2,319.24 |
| Sunbelt Marketing | 03/04/02 | $ 6,550.38 |
| Sunbelt Marketing | 03/04/02 | $ 6,550.37 |
| Sunbelt Marketing | 01/22/02 | $ 5,143.02 |
| Sunbelt Marketing | 12/10/01 | $ 7,291.08 |
| Sunbelt Marketing | 11/13/01 | $ 7,291.09 |
| Sunbelt Marketing | 10/15/01 | $ 5,202.08 |
| Sunbelt Marketing | 10/15/01 | $ 5,202.09 |
| Sunbelt Marketing | 10/01/01 | $ 4,882.11 |
| Sunbelt Marketing | 08/14/01 | $ 6,481.36 |
| Sunbelt Marketing | 09/30/01 | $ 4,883.24 |
| Sunbelt Marketing | 07/17/01 | $ 6,036.10 |
| Sunbelt Marketing | 07/12/01 | $ 7,086.16 |
| Sunbelt Marketing | 04/30/01 | $ 6,635.28 |
| Sunbelt Marketing | 02/21/01 | $ 6,039.49 |
| Sunbelt Marketing | 02/21/01 | $ 6,039.49 |

➢ **From the Horowitzes in Florida and New York to NRGC in New Jersey:**

| | | |
|---|---|---|
| PMI Global Marketing | 11/16/05 | $ 2,874.68 |
| PMI Global Marketing | 10/31/05 | $ 6,109.09 |
| PMI Global Marketing | 08/26/05 | $ 8,182.80 |
| PMI Global Marketing | 06/14/05 | $ 4,602.88 |
| PMI Global Marketing | 07/18/05 | $ 7,977.54 |
| PMI Global Marketing | 07/18/05 | $ 9,691.02 |
| PMI Global Marketing | 05/02/05 | $ 8,402.67 |
| PMI Global Marketing | 02/24/05 | $ 11,600.89 |
| PMI Global Marketing | 03/28/05 | $ 7,699.30 |
| PMI Global Marketing | 01/24/05 | $ 14,790.23 |
| PMI Global Marketing | 10/28/04 | $ 25,432.65 |
| PMI Global Marketing | 10/28/04 | $ 7,915.18 |
| PMI Global Marketing | 11/29/04 | $ 10,293.31 |
| PMI Global Marketing | 10/12/04 | $ 8,443.97 |
| PMI Global Marketing | 08/27/04 | $ 9,341.48 |
| PMI Global Marketing | 11/13/03 | $ 7,968.61 |

| | | |
|---|---|---|
| PMI Global Marketing | 10/13/03 | $ 25,432.65 |
| PMI Global Marketing | 07/13/04 | $ 19,776.94 |
| PMI Global Marketing | 06/11/04 | $ 14,498.42 |
| PMI Global Marketing | 03/15/04 | $  6,751.85 |
| PMI Global Marketing | 04/27/04 | $  5,227.94 |
| PMI Global Marketing | 02/26/04 | $ 10,852.20 |
| PMI Global Marketing | 12/24/04 | $  6,252.21 |
| PMI Global Marketing | 08/18/03 | $  5,365.98 |
| PMI Global Marketing | 09/11/03 | $  2,325.46 |
| PMI Global Marketing | 07/25/03 | $ 10,300.50 |
| PMI Global Marketing | 06/12/03 | $ 22,398.65 |
| PMI Global Marketing | 04/18/03 | $ 14,218.91 |
| PMI Global Marketing | 03/13/03 | $  9,208.86 |
| PMI Global Marketing | 02/19/03 | $  8,489.17 |
| PMI Global Marketing | 12/22/02 | $ 11,104.07 |
| PMI Global Marketing | 11/14/02 | $  2,994.13 |
| PMI Global Marketing | 10/17/02 | $ 14,497.02 |
| PMI Global Marketing | 09/12/02 | $  4,289.83 |
| PMI Global Marketing | 07/11/02 | $  7,774.11 |
| PMI Global Marketing | 06/13/02 | $  4,121.33 |
| PMI Global Marketing | 02/12/02 | $  1,254.83 |
| PMI Global Marketing | 03/12/02 | $  1,030.72 |
| PMI Global Marketing | 01/11/02 | $  1,649.13 |

➢ **From the Horowitzes in Florida and New York to NRGC in New Jersey:**

| | | |
|---|---|---|
| Profit Motivators | 08/26/05 | $  2,548.29 |
| Profit Motivators | 06/14/05 | $  1,797.99 |
| Profit Motivators | 07/18/05 | $  4,559.44 |
| Profit Motivators | 07/18/05 | $  3,209.76 |
| Profit Motivators | 07/18/05 | $  5,400.44 |
| Profit Motivators | 03/12/05 | $  5,333.08 |
| Profit Motivators | 03/28/05 | $  2,333.75 |
| Profit Motivators | 02/24/05 | $  2,192.00 |
| Profit Motivators | 01/24/05 | $  2,604.67 |
| Profit Motivators | 10/28/04 | $  2,838.11 |
| Profit Motivators | 11/29/04 | $  3,187.11 |
| Profit Motivators | 10/12/04 | $  2,854.65 |
| Profit Motivators | 08/27/04 | $  2,236.67 |
| Profit Motivators | 11/13/03 | $  3,064.40 |
| Profit Motivators | 10/13/03 | $    961.30 |
| Profit Motivators | 07/13/04 | $  6,543.94 |
| Profit Motivators | 06/11/04 | $  3,523.61 |
| Profit Motivators | 03/15/04 | $  4,561.31 |
| Profit Motivators | 04/23/04 | $  4,811.18 |

| | | |
|---|---|---|
| Profit Motivators | 02/26/04 | $  8,405.86 |
| Profit Motivators | 12/22/03 | $  3,141.98 |
| Profit Motivators | 08/18/03 | $  1,326.53 |
| Profit Motivators | 09/11/03 | $     574.30 |
| Profit Motivators | 07/25/03 | $ 12,793.63 |
| Profit Motivators | 06/12/03 | $  2,522.74 |
| Profit Motivators | 04/18/03 | $  4,902.75 |
| Profit Motivators | 03/13/03 | $  5,086.25 |
| Profit Motivators | 02/19/03 | $  3,933.64 |
| Profit Motivators | 12/22/02 | $  2,045.65 |
| Profit Motivators | 11/14/02 | $     773.00 |
| Profit Motivators | 10/17/02 | $ 15,278.65 |
| Profit Motivators | 09/12/02 | $  2,912.21 |
| Profit Motivators | 08/14/02 | $ 16,489.41 |
| Profit Motivators | 07/11/02 | $ 10,109.88 |
| Profit Motivators | 06/13/02 | $ 11,146.02 |
| Profit Motivators | 05/13/02 | $       34.60 |
| Profit Motivators | 05/13/02 | $ 10,511.66 |
| Profit Motivators | 04/9/02 | $ 15,492.10 |
| Profit Motivators | 02/12/02 | $  7,985.68 |
| Profit Motivators | 03/12/02 | $  5,380.02 |
| Profit Motivators | 01/11/02 | $  1,350.42 |
| Profit Motivators | 12/11/01 | $  3,831.51 |
| Profit Motivators | 11/12/01 | $  2,133.72 |
| Profit Motivators | 12/12/01 | $  6,281.79 |
| Profit Motivators | 09/20/01 | $  3,863.48 |
| Profit Motivators | 08/14/01 | $  9,456.78 |
| Profit Motivators | 07/11/01 | $  4,075.01 |
| Profit Motivators | 06/7/01 | $  8,465.26 |
| Profit Motivators | 04/23/01 | $  4,803.28 |
| Profit Motivators | 03/28/01 | $  6,428.08 |
| Profit Motivators | 02/27/01 | $  7,555.68 |
| Profit Motivators | 02/27/01 | $  7,555.68 |

➢ **From Nieuwenhuis in California to NRGC in New Jersey:**

| | | |
|---|---|---|
| Dirk & Wilma Nieuwenhuis | 03/05/05 | $  3,300.00 |
| Dirk & Wilma Nieuwenhuis | 07/21/04 | $  5,000.00 |
| Dirk & Wilma Nieuwenhuis | 11/17/03 | $ 14,300.00 |
| Dirk & Wilma Nieuwenhuis | 07/04/03 | $  2,900.00 |
| Dirk & Wilma Nieuwenhuis | 12/31/02 | $  2,500.00 |
| Dirk & Wilma Nieuwenhuis | 12/20/02 | $  6,927.00 |
| Dirk & Wilma Nieuwenhuis | 11/16/02 | $  4,000.00 |
| Dirk & Wilma Nieuwenhuis | 07/29/02 | $  2,400.00 |
| Dirk & Wilma Nieuwenhuis | 05/12/02 | $  3,900.00 |

| Dirk & Wilma Nieuwenhuis | 03/23/02 | $    700.00 |
|---|---|---|
| Dirk & Wilma Nieuwenhuis | 03/07/02 | $  1,000.00 |
| Dirk & Wilma Nieuwenhuis | 02/21/01 | $  2,180.00 |
| Dirk & Wilma Nieuwenhuis | 02/21/01 | $  2,180.00 |
| | | |
| Brand New Energy | 06/07/06 | $ 12,960.00 |
| Brand New Energy | 02/28/06 | $  9,600.00 |
| Brand New Energy | 04/14/06 | $ 20,000.00 |

## Payments to Bank of America (Global)

> **From the Horowitzes in Florida and New York to Global in Pennsylvania:**

| PMI Global Marketing | 11/17/06 | $ 20,000.00 |
|---|---|---|
| PMI Global Marketing | 02/13/07 | $ 20,000.00 |
| PMI Global Marketing | 070/9/07 | $ 20,000.00 |
| PMI Global Marketing | 02/26/09 | $   3333.33 |
| PMI Global Marketing | 03/26/09 | $   3333.33 |
| PMI Global Marketing | 05/15/09 | $   3333.33 |
| PMI Global Marketing | 05/26/09 | $   3333.33 |
| PMI Global Marketing | 06/29/09 | $   3333.33 |
| PMI Global Marketing | 07/25/09 | $   3333.33 |
| PMI Global Marketing | 08/25/09 | $   3333.33 |
| PMI Global Marketing | 09/25/09 | $   3333.33 |
| PMI Global Marketing | 10/26/09 | $   3333.33 |

EXHIBIT "B"

**Payments from Conspiring Distributors to Palmeroni and Rosarbo Entities**

**Payments to Lakeland Bank (NRGC)**

> **From Bengoa in Wisconsin to NRGC in New Jersey:**

| | | |
|---|---|---|
| CB Distributors | 01/13/04 | $  2,240.62 |
| CB Distributors | 12/24/02 | $  3,545.75 |
| CB Distributors | 09/16/02 | $  4,619.29 |
| CB Distributors | 07/01/02 | $  7,417.12 |
| CB Distributors | 08/07/02 | $  2,384.41 |
| CB Distributors | 03/25/02 | $  4,247.34 |
| CB Distributors | 02/08/02 | $  5,000.00 |
| CB Distributors | 10/01/01 | $  4,882.11 |
| CB Distributors | 03/19/01 | $     900.00 |

> **From Householder in California to NRGC in New Jersey:**

| | | |
|---|---|---|
| Brand New Energy | 06/07/06 | $ 12,960.00 |
| Brand New Energy | 02/28/06 | $  9,600.00 |
| Brand New Energy | 04/14/06 | $ 20,000.00 |

**Payments to Bank of America (AWD)**

> **From Bengoa in Wisconsin to AWD in New York:**

| | | |
|---|---|---|
| CB Distributors | 07/17/03 | $  72,000.00 |
| CB Distributors | 07/25/03 | $ 108,000.00 |
| CB Distributors | 08/07/03 | $ 162,000.00 |
| CB Distributors | 08/22/03 | $ 170,280.00 |
| CB Distributors | 08/28/03 | $ 144,000.00 |
| CB Distributors | 09/16/03 | $ 127,080.00 |
| CB Distributors | 09/26/03 | $ 136,000.00 |
| CB Distributors | 10/02/03 | $  98,000.00 |
| CB Distributors | 10/08/03 | $ 194,400.00 |
| CB Distributors | 11/03/03 | $ 117,000.00 |
| CB Distributors | 11/12/03 | $ 158,400.00 |
| CB Distributors | 12/05/03 | $  79,200.00 |
| CB Distributors | 12/23/03 | $  39,600.00 |
| CB Distributors | 01/07/04 | $  79,200.00 |
| CB Distributors | 01/12/04 | $ 158,400.00 |

| | | |
|---|---|---|
| CB Distributors | 01/26/04 | $ 100,800.00 |
| CB Distributors | 02/02/04 | $ 109,800.00 |
| CB Distributors | 02/12/04 | $ 144,000.00 |
| CB Distributors | 02/25/04 | $ 116,892.00 |
| CB Distributors | 03/08/04 | $  54,000.00 |
| CB Distributors | 03/10/04 | $ 100,000.00 |
| CB Distributors | 03/18/04 | $  82,800.00 |
| CB Distributors | 03/19/04 | $  72,000.00 |
| CB Distributors | 04/02/04 | $ 138,000.00 |
| CB Distributors | 04/16/04 | $  72,000.00 |
| CB Distributors | 04/21/04 | $  90,000.00 |
| CB Distributors | 04/27/04 | $ 108,000.00 |
| CB Distributors | 05/12/04 | $  72,000.00 |
| CB Distributors | 05/14/04 | $  82,368.00 |
| CB Distributors | 05/19/04 | $  87,588.36 |
| CB Distributors | 06/04/04 | $  93,600.00 |
| CB Distributors | 06/04/04 | $  28,800.00 |
| CB Distributors | 06/24/04 | $  72,000.00 |
| CB Distributors | 07/13/04 | $  51,480.00 |
| CB Distributors | 07/15/04 | $  90,000.00 |
| CB Distributors | 08/12/04 | $  54,000.00 |
| CB Distributors | 08/20/04 | $  54,000.00 |
| CB Distributors | 09/15/04 | $  36,000.00 |
| CB Distributors | 10/05/04 | $  53,280.00 |
| CB Distributors | 10/22/04 | $  54,000.00 |
| CB Distributors | 11/12/04 | $  28,800.00 |
| CB Distributors | 12/07/04 | $  72,000.00 |
| CB Distributors | 01/12/05 | $ 113,400.00 |
| CB Distributors | 02/16/05 | $  18,000.00 |
| CB Distributors | 03/09/05 | $  23,400.00 |
| CB Distributors | 04/28/05 | $  45,000.00 |
| CB Distributors | 06/07/05 | $  18,000.00 |
| CB Distributors | 06/28/05 | $  18,000.00 |
| CB Distributors | 07/27/05 | $  18,000.00 |
| CB Distributors | 08/12/05 | $  17,280.00 |
| CB Distributors | 09/07/05 | $  46,800.00 |
| CB Distributors | 11/03/05 | $  18,000.00 |
| CB Distributors | 12/29/05 | $  18,000.00 |
| CB Distributors | 11/18/03 | $ 116,424.00 |

> **From Householder in California to AWD in New York:**

| | | |
|---|---|---|
| Darren Householder | 10/03/03 | $  24,942.00 |
| Brand New Energy, Inc. | 07/14/03 | $  16,224.00 |
| Brand New Energy, Inc. | 08/11/03 | $   7,368.00 |
| Brand New Energy, Inc. | 06/13/03 | $   7,800.00 |

2

| | | |
|---|---|---|
| Brand New Energy, Inc. | 09/03/03 | $ 31,065.00 |
| Brand New Energy, Inc. | 09/17/03 | $ 24,900.00 |
| Brand New Energy, Inc. | 10/15/03 | $ 26,220.00 |
| Brand New Energy, Inc. | 10/30/03 | $ 26,220.00 |
| Brand New Energy, Inc. | 11/25/03 | $ 46,344.00 |
| Brand New Energy, Inc. | 12/10/03 | $ 46,344.00 |
| Brand New Energy, Inc. | 12/23/03 | $ 93,360.00 |
| Brand New Energy, Inc. | 01/09/04 | $ 61,491.00 |
| Brand New Energy, Inc. | 01/20/04 | $ 89,680.00 |
| Brand New Energy, Inc. | 02/11/04 | $ 81,662.00 |
| Brand New Energy, Inc. | 03/04/04 | $ 60,000.00 |
| Brand New Energy, Inc. | 03/24/04 | $ 52,300.00 |
| Brand New Energy, Inc. | 04/21/04 | $ 83,136.00 |
| Brand New Energy, Inc. | 05/25/04 | $ 31,952.00 |
| Brand New Energy, Inc. | 12/14/04 | $ 10,360.00 |
| Brand New Energy, Inc. | 03/15/05 | $ 20,720.00 |
| Brand New Energy, Inc. | 10/04/05 | $ 15,004.00 |
| Brand New Energy, Inc. | 12/16.05 | $  9,824.00 |

➤ **From Sessions in North Carolina to AWD in New York:**

| | | |
|---|---|---|
| Sessions Specialty Company | 09/23/04 | $ 40,972.00 |
| Sessions Specialty Company | 11/23/04 | $ 40,972.00 |
| Sessions Specialty Company | 02/24/05 | $ 40,972.00 |
| Sessions Specialty Company | 05/18/05 | $ 40,972.00 |
| Sessions Specialty Company | 06/07/05 | $ 21,798.00 |
| Sessions Specialty Company | 07/01/05 | $  3,908.00 |
| Sessions Specialty Company | 08/15/04 | $ 26,832.00 |
| Sessions Specialty Company | 09/29/05 | $ 19,697.00 |
| Sessions Specialty Company | 010/9/06 | $ 10,734.58 |

➤ **From Sumicek in Texas to AWD in New York:**

| | | |
|---|---|---|
| International Sales Group | 10/01/04 | $ 29,251.52 |

➤ **From the Portzes in Arizona to AWD in New York:**

| | | |
|---|---|---|
| Katherine & John Portz, Sr. | 11/03/04 | $ 50,000.00 |
| International Wholesale Service | 09/02/03 | $ 17,496.00 |
| International Wholesale Service | 09/19/03 | $ 22,939.20 |
| International Wholesale Service | 10/24/03 | $ 23,328.00 |
| International Wholesale Service | 10/10/03 | $ 15,532.00 |
| International Wholesale Service | 03/01/04 | $ 13,600.00 |
| International Wholesale Service | 04/09/04 | $ 27,216.00 |
| International Wholesale Service | 05/14/04 | $ 17,496.00 |
| International Wholesale Service | 06/04/04 | $  7,776.00 |

3

| International Wholesale Service | 05/28/04 | $ | 29,160.00 |
|---|---|---|---|
| International Wholesale Service | 06/10/04 | $ | 11,664.00 |
| International Wholesale Service | 11/12/04 | $ | 11,664.00 |
| International Wholesale Service | 01/21/05 | $ | 21,120.00 |
| International Wholesale Service | 02/21/05 | $ | 21,120.00 |
| International Wholesale Service | 03/25/05 | $ | 21,120.00 |
| International Wholesale Service | 04/08/05 | $ | 9,720.00 |
| | | | |
| International Wholesale Supply | 08/19/05 | $ | 19,440.00 |

> **From the Felices in Florida to AWD in New York:**

| Alfredo Felice | 12/09/03 | $ | 1,445.00 |
|---|---|---|---|
| Alfredo Felice | 12/01/03 | $ | 130.00 |
| Alfredo Felice | 01/27/04 | $ | 3,456.00 |
| | | | |
| Curtis Beverage, LLC | 10/21/04 | $ | 50,000.00 |
| Curtis Beverage, LLC | 11/18/04 | $ | 50,000.00 |


## Payments to Bank of America (VAR)

> **From Bengoa in Wisconsin to VAR in Connecticut:**

| CB Distributors | 01/20/06 | $ | 30,960.00 |
|---|---|---|---|
| CB Distributors | 02/01/06 | $ | 27,000.00 |
| CB Distributors | 04/18/06 | $ | 17,641.26 |
| CB Distributors | 04/18/06 | $ | 14,400.00 |

> **From Householder in California to VAR in Connecticut:**

| Brand New Energy, Inc. | 0 2/10/06 | $ | 11,512.00 |
|---|---|---|---|
| Brand New Energy, Inc. | 04/14/06 | $ | 10,360.00 |
| Brand New Energy, Inc. | 06/05/06 | $ | 19,684.00 |

> **From the Felices in Florida to VAR in Connecticut:**

| Curtis Beverage, LLC | 04/20/05 | $ | 19,124.00 |
|---|---|---|---|

## Payments to Bank of America (Smart World)

➢ **From Bengoa in Wisconsin to Smart World in New York:**

| | | |
|---|---|---|
| CB Distributors | 12/07/01 | $ 32,256.00 |
| CB Distributors | 12/26/01 | $ 20,160.00 |
| CB Distributors | 01/23/02 | $ 44,501.40 |
| CB Distributors | 01/30/02 | $ 13,523.00 |
| CB Distributors | 02/19/02 | $ 40,144.62 |
| CB Distributors | 02/21/02 | $ 38,610.00 |
| CB Distributors | 03/01/02 | $ 54,432.00 |
| CB Distributors | 03/19/02 | $ 32,614.15 |
| CB Distributors | 03/26/02 | $ 27,000.00 |
| CB Distributors | 04/03/02 | $ 25,200.00 |
| CB Distributors | 04/10/02 | $ 25,200.00 |
| CB Distributors | 04/16/02 | $ 36,000.00 |
| CB Distributors | 04/18/02 | $ 11,880.00 |
| CB Distributors | 04/19/02 | $ 21,240.00 |
| CB Distributors | 05/06/02 | $ 87,120.00 |
| CB Distributors | 07/22/02 | $ 72,000.00 |
| CB Distributors | 08/07/02 | $ 72,000.00 |
| CB Distributors | 08/14/02 | $ 63,000.00 |
| CB Distributors | 08/29/02 | $ 72,000.00 |
| CB Distributors | 09/10/02 | $ 72,000.00 |
| CB Distributors | 10/15/02 | $ 72,000.00 |
| CB Distributors | 11/06/02 | $ 71,640.00 |
| CB Distributors | 11/15/02 | $ 36,000.00 |
| CB Distributors | 11/27/02 | $ 42,480.00 |
| CB Distributors | 12/10/02 | $ 36,000.00 |
| CB Distributors | 12/18/02 | $ 54,000.00 |
| CB Distributors | 12/30/02 | $ 64,800.00 |
| CB Distributors | 01/10/03 | $ 72,000.00 |
| CB Distributors | 07/07/03 | $ 212,400.00 |