UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **N.V.E., INC.** | : | |
| Plaintiff, | : | Civil Action No. **06-5455**<br>(Hon. Esther Salas) |
| -vs- | : | |
| **JESUS J. PALMERONI** et al., | : | |
| Defendants. | : | |
| **JESUS J. PALMERONI**, | : | |
| Third Party Plaintiff, | : | |
| -vs- | : | |
| **ROBERT OCCHIFINTO** and **WALTER ORCUTT**, | : | |
| Third Party Defendant. | : | |

# REPLY BRIEF of JESUS J. PALMERONI in SUPPORT of MOTION for RECONSIDERATION of ORDER ENTERED SEPTEMBER 10, 2012

**ROBERT A. VORT**
2 University Plaza
Hackensack, New Jersey 07601
201-342-9501
rvort@vortlaw.com

**TABLE OF CONTENTS OF REPLY BRIEF**

Point I:   The counsel fee ordered by the Court belongs
           to the client, not to his former counsel . . . . . . . .1

Point II:  N.V.E. should pay the sanctioned fee award now . . . 10

   A.  There is no good cause to defer payment. . . . . . . 10

   B.  Payment of the counsel fee award into the
       trust account of N.V.E. counsel or into
       the Court denies relief to the injured . . . . . . . 11

   C.  The money should be paid to plaintiff or,
       if the Court disagrees, then it should be
       paid either into the trust account of Mr.
       Rostan or of present counsel pending
       completion of fee arbitration. . . . . . . . . . . . 12

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**TABLE OF AUTHORITIES CITED**

Statutes Cited

42 U.S.C. §1988. . . . . . . . . . . . . . . . . . . . . . . . .6

Federal Rules of Civil Procedure Cited

Fed.R.Civ.P. 37. . . . . . . . . . . . . . . . . . . . . .7, 11

Cases Cited

Arthur Andersen LLP v. Carlisle, 556 U.S. 624 (2009) . . . . . .1

Astrue v. Ratliff,    U.S.   , 130 S.Ct. 2521,
      177 L.Ed.2d 91 (2010) . . . . . . . . . . . . . . .1, 2, 8

Brimage v. Hayman, 2010 WL 3339830 (D.N.J. 2010) . . . . . . . 11

Buckhannon Board & Care Home, Inc. v. West Virginia
      Department of Health and Human Resources,
      532 U.S. 598 (2001) . . . . . . . . . . . . . . . . . . .1

Hampton v. Hanrahan, 446 U.S. 754 (1980) . . . . . . . . . . . .6

Home Savings of America, SSB v. Malart, Inc.,
      268 N.J.Super. 1 (App.Div. 1993). . . . . . . . . . . . .7

Key Tronic Corp. v. United States, 511 U.S. 809 (1994) . . . . .1

Marshak v. Treadwell, 595 F.3d 478 (3d Cir. 2009). . . . . . . . 11

Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980). . . . . . 10

Schmid v. Milwaukee Electric Tool Corp., 13 F.3d 76
    (3d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . 11

Secondary Authority Cited

Restatement of the Law Governing Lawyers §40(2)(c)(2000) . . . .8

POINT I

**THE COUNSEL FEE ORDERED BY THE COURT BELONGS TO THE CLIENT, NOT TO HIS PRIOR COUNSEL.**

Palmeroni's initial brief in support of reconsideration cited <u>Astrue v. Ratliff</u>,    U.S.   , 130 S.Ct. 2521, 2525-26, 2529, 177 L.Ed.2d 91 (2010) for the proposition that counsel fee awards belong to the client and not to the attorney. Neither NVE nor Messrs. Rostan and Shahrooz-Scampato cites any other case authority to support their position that the counsel fee awarded by the Court as a Rule 37 sanction belongs to them and not to their former client.

<u>Astrue</u> was not entirely a case of first impression. Its reasoning cited precedent, to wit, <u>Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources</u>, 532 U.S. 598, 603 (2001), <u>Key Tronic Corp. v. United States</u>, 511 U.S. 809, 819 (1994) and <u>Arthur Andersen LLP v. Carlisle</u>, 556 U.S. 624, 630 n.4 (2009) for the proposition that the term "prevailing party" refers to the prevailing litigant. <u>Astrue</u> states several times that the fee belongs to the client:

> Subsection (d)(1)(A) [of the Equal Access to Justice Act] directs that courts "shall *award to a prevailing party*. . .fees and other expenses. . . incurred by that party." (Emphasis added.) <u>We have long held that the term "prevailing party" in fee statutes is a "term of art" that refers to the prevailing litigant.</u> See, e.g., Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 603, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). This treatment reflects the fact that statutes that award attorney's fees to a prevailing party are exceptions to

> the "'American Rule'" that each *litigant* "bear [his] own attorney's fees." Id., at 602, 121 S.Ct. 1835 (citing Key Tronic Corp. v. United States, 511 U.S. 809, 819, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994)). Nothing in EAJA supports a different reading. . . .Indeed, other subsections within [28 U.S.C.] §2412(d) underscore that the term "prevailing party" in subsection (d)(1)(A) carries its usual and settled meaning—prevailing litigant. <u>Those other subsections clearly distinguish the party who receives the fees award (the litigant) from the attorney who performed the work that generated the fees</u>. See, e.g., §2412(d)(1)(B)(hereinafter subsection (d)(1)(B))(the "prevailing party" must apply for the fees award and "sho[w]" that he "is a prevailing party and is eligible to receive an award" by, among other things, submitting "an itemized statement *from any attorney. . .representing or appearing in behalf of the party* " that details the attorney's hourly rate and time spent on the case (emphasis added)); see also Part III, *infra*. 130 S.Ct. at 2525-26 (emphasis added)

Predecessor counsel cite <u>dictum</u> in <u>Astrue</u> which recognizes "the practical reality that attorneys are the beneficiaries and, almost always, the ultimate recipient of the fees that the statute awards to the parties, 130 S.Ct. at 2526. However, almost always there is a unity of interest between the client and his counsel who remain his attorneys. That is not this case and "almost always" is not the same thing as "always."

In this case, there is a fee dispute between predecessor counsel and Palmeroni. Palmeroni may have acknowledged to this Court that he owed money to his attorneys, but he did not acknowledge that he owed the entire amount they had billed.[1] Palmeroni

---

[1] The Court found on May 26, 2011 that Palmeroni owed predecessor counsel $30,000 (Transcript 183-7). It did so following

2

questioned his lawyers' billing for much the same reasons as advanced by N.V.E. and by this Court:

> MR. PALMERONI: First of all, I think there's a small misunderstanding or mischaracterization of how we were paid and billed, and also it leads into how much work there would be or that was projected in this case.
>
> Mr. Rostan and Mr. Scampato had al -- has always - has -- I'm sorry -- have always had monies up front as a retainer, so their bills were going against retainers. And so to characterize it as missing payments, certainly when the most recent payment became due, but I was warning them for months before that I just -- I just -- I was going to be running into trouble and it -- as it -- and, in fact, what - before Mr. Scampato came on, two days before, because you had instructed me I had 30 days to find a new attorney.
>
> I had been -- started to talk to Mr. Scampato immediately and wanted to try to make sure he was up and ready before the 30 days. He expressed to me that he was taking the vacation of a lifetime and he wanted to do a joint contract between the two of them, so that while he was gone, he wouldn't be required to stay and -- by you or give up his vacation.
>
> I refused to do that, because Mr. Rostan had already had a contract, but what I ended up getting is, in the mean time, Mr. Samaro sent a letter threatening to extend the scope of the case at that time, before Mr. Scampato came on. And Mr.

---

an ex parte conference with Rostan and Scampato in which they provided the Court with an unspecified document. Although the Court stated that it "would have permitted Mr. Palmeroni and I would have gone in camera and discussed this matter with Mr. Palmeroni (Transcript 184-25 to 185-2), it did not do so. There was no dispute that there were differences between the client and his counsel but, to the extent that the off the record conference with Rostan and Scampato discussed fees, any statements were inadmissible and a violation of due process to the extent that the Court's finding was based on that discussion.

3

Scampato then doubled what he wanted for his retainer.

And they have been paid retainers in advance. At a certain time, the retainers did -- did -- with these latest motions, get used up and there was a request for $15,000 a month or when it had to be -- when we got down to $5,000 in the retainer account, for it to be another $15,000 to -- for each of them. And I simply told them what I have been telling them and I -- and I ref -- and part of the reason this was brought so fast was I -- I had been telling them for months, I -- I -- I can't accord (sic) $20,000 a month.

I don't know how many human beings can, but I -- I can't and I never - I refused to promise them and string them on and I -- and I requested many times that to -- to put the brakes on, to talk about what we -- because it doesn't make a lot of sense to be going forward with all this without knowing where the end game is or whatever, because in the end, if -- if this is a monetary case, the other side is looking for money and -- and I -- I expressed many, many times that -- where I was financially.

When the last retainer ran low is -- immediately I was told -- I was -- I was being requested 30,000 a month, but I wasn't able to do that and so I was -- they were fine with 20,000 a month. When the next retainer came up, I said, well, I don't have 20,000, I can give you 10. At that point, it was raised to 40.

So, you know, technically, I'm absolutely in arrears and -- and it's about six weeks worth of legal work and I don't take that lightly. But I think there was a mischaracterization. I have been paying up front for costs as long as I could until it was exhausted. The motion to amend. I didn't really want to fight that, but I was told that there was a fight there. That's money that, you know, again is getting taken out of the retainer every time.

Without getting into -- I have a lot of issues that I think that could be discussed *in camera*,

4

>    but without getting into that, I just wanted to
>    address the billing, because it was a mischaracte-
>    rization. I have been paying an up-front retainer
>    until the retainer ran out the last time and I
>    said I can -- you know, I can get 10,000, but when
>    I couldn't get 20, it was, well then it's 40. Be-
>    cause the conference was three days away, three to
>    four days. It was six days away and I was told
>    there had to be a decision by then. So, the deci-
>    sion was that -- was then changed to a $40,000 re-
>    tainer. And at this point, for me, Mr. Scampato
>    insisted on about -- I spent about $15,000 so he
>    could get cut up - caught up with the case and
>    read through the case and I just - I just -- to
>    get another lawyer to do that and to -- and to - I
>    just think it would delay -- delay the procedures.
>    (T.174-18 to T.177-16

The Court knows that predecessor counsel requested fees of $111,882 just for the sanctions motion, and the Court only awarded $37,408.75.

This Court does not have subject matter jurisdiction to determine how much a fee he owes them; that power belongs to a District Fee Arbitration Committee pursuant to New Jersey Court Rule 1:20A-1. Neither N.V.E. nor prior counsel disputes this.

Predecessor counsel moved on behalf of Palmeroni for the imposition of sanctions against N.V.E., including counsel fees. The brief they submitted recognizes implicitly that the award belonged to Palmeroni. See the cover of their brief and the first page of the brief (Document 179), both of which are appended to this reply brief. The brief is entitled "<u>BRIEF OF DEFENDANT/THIRD-PARTY PLAINTIFF JESUS J. PALMERONI</u> IN SUPPORT OF MOTION TO SANCTION NVE FOR SPOLIATION OF EVIDENCE." The first sentence

states, "<u>Defendant/third party plaintiff Jesus Joseph Palmeroni</u> submits this memorandum of law in support of <u>his</u> motion for an order pursuant to Fed.R.Civ.Proc. 37(a), (b) for sanctions against plaintiff. . ." (emphasis added)

Rostan and Scampato argue that they had a hybrid retainer agreement with Palmeroni by which he assigned attorneys fees to them for prevailing and that, because they prevailed, they are entitled to the sanction award (Rostan letter memorandum, Document 315 at page 2). We disagree.

If there were a hybrid retainer agreement, and they have not presented it to the Court, there might be a contingency if they prevailed on the merits of the case. No lawyer presents a retainer agreement containing a bonus for prevailing on discovery disputes. Further, if Palmeroni had assigned counsel fees to Rostan and Scampato, it would constitute an explicit recognition by them that the fee award belonged to Palmeroni. Otherwise, there would be no need for an assignment.

Rostan and Scampato did not prevail; they secured only interim procedural relief. See, <u>Hampton v. Hanrahan</u>, 446 U.S. 754 (1980) in which the district court entered judgment in favor of the plaintiffs in a civil rights action. The Seventh Circuit reversed, remanded and awarded counsel fees to the plaintiffs for their services on appeal. The Supreme Court reversed because the Civil Rights Attorney Fee Awards Act, 42 U.S.C. §1988, did not

permit an interlocutory fee award unless the plaintiff prevailed on one or more substantive legal issues, 446 U.S. at 757-58. The Court stated:

> Nor may they (plaintiffs) fairly be said to have "prevailed" by reason of the Court of Appeals' other interlocutory dispositions, which affected only the extent of discovery. As is true of other procedural or evidentiary rulings, these determinations may affect the disposition on the merits, but were themselves not matters on which a party could "prevail" for purposes of shifting his counsel fees to the opposing party under §1988. See Bly v. McLeod, 605 F.2d 134, 137 (CA4 1979).

Predecessor counsel were agents of Palmeroni - their principal. An agent may not compensate himself from property of the principal just because it comes into his possession, custody or control, Home Savings of America, SSB v. Malart, Inc., 268 N.J. Super. 1 (App.Div. 1993). In that case, a law firm held money in its trust account for a transaction which did not consummate. When the transaction did not close, the money in the trust account belonged to the firm's client, and the law firm paid its fee from the money it was holding in trust. The Courts rejected the firm's claim that it was entitled to pay itself from the fund on the theory of a common law retaining lien. They ordered repayment to the client even though there was no dispute that the client owed a fee to the law firm.

N.V.E. contends that Fed.R.Civ.P. 37 authorizes payment of counsel fees to the attorneys. No language within the rule and no case law construing the rule discuss the identity of the per-

7

son to whom payment should be paid. If there is such authority, N.V.E. does not cite it. N.V.E. has no standing to oppose Palmeroni's motion for reconsideration for, in the vernacular, it has no dog in this fight. Its interest is simply to pay as little as possible and to delay that payment as long as possible.

The Restatement of the Law Governing Lawyers §40(2)(c) (2000) touches on this issue:

> **§40. Fees on Termination**
>
> If a client-lawyer relationship ends before the lawyer has completed the services due for a matter and the lawyer's fee has not been forfeited under §37:
>
> (1) a lawyer who has been discharged or withdraws may recover the lesser of the fair value of the lawyer's services as determined under §39 and the ratable proportion of the compensation provided by any otherwise enforceable contract between lawyer and client for the services performed; except that:
>
> (2) the tribunal may allow such a lawyer to recover the ratable proportion of the compensation provided by such a contract if:
>
>     (a) the discharge or withdrawal is not attributable to the misconduct of the lawyer;
>
>     (b) the lawyer has performed severable services; and
>
>     (c) allowing contractual compensation would not burden the client's choice of counsel or the client's ability to replace counsel.

Palmeroni has retained replacement counsel. Although he has paid a substantial amount to successor counsel, he owes a balance which is less than the amount of the fee awarded to predecessor

8

counsel.  Present counsel agreed to represent Palmeroni with knowledge of the holding of <u>Astrue v. Ratliff</u>, <u>supra</u>.

This case warrants substantial time and resources.  Two motions to be relieved are pending.  Present counsel is not threatening to move to be relieved, but he does not know how high the balance will go before he feels so financially choked that he needs to file such a motion.

POINT II

N.V.E. SHOULD PAY THE SANCTIONED
FEE AWARD NOW.

A.   <u>There is no good cause to defer payment</u>.

The fallacy in N.V.E.'s argument is that, in almost every lawsuit, at least one party claims that another party owes money to it. If the Court finds a discovery sanction appropriate and awards fees to the non-delinquent party and if the Court were to suspend payment of those fees until the end of the case, it would be undermining the sanction for there would be a penalty without a penalty.

If the delinquent party were to prevail at trial, it would have security for its judgment that it did not have before the sanction was imposed. The delinquent party not only would not have been penalized, it would have been placed in a more advantageous position.

N.V.E. destroyed documents in 2009. The Court ruled that it would impose sanctions in 2011, and it quantified the monetary sanctions in 2012. If payment is delayed until the conclusion of this case, the recipient of those funds may not be paid until 2014 or beyond. The function of the monetary sanction is to compensate the innocent litigant from the wrong committed by the delinquent party. That function is totally undermined if payment is deferred for the indeterminate future. As stated in <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 763-64 (1980):

10

> Rule 37 sanctions must be applied diligently both "to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." National Hockey League v. Metropolitan Hockey Club, [427 U.S. 639] supra at 643 [(1976)].

Deferral of the payment of counsel fees is not a deterrent. To the extent it provides security for a judgment which may be secured (or may not be secured), it is a reward, not a penalty. The Court should direct N.V.E. to pay the sanction now.

B. Payment of the counsel fee award into the trust account of N.V.E. counsel or into the Court denies <u>relief to the injured.</u>

There is a dispute whether the fee belongs to Palmeroni or to his former counsel. There is no dispute that the money does not belong to N.V.E. To pay the money into a trust account or into the Court is to penalize the injured party or his counsel - certainly not to compensate them.

Rule 37 sanctions are intended not only to deter misconduct but also to compensate injured litigants. Payment into Court or into any attorney's trust account serves only to deny compensation - one of the very purposes of the sanctions award, <u>Schmid v. Milwaukee Electric Tool Corp.</u>, 13 F.3d 76, 79 (3d Cir. 1994)(Rule 37), <u>Marshak v. Treadwell</u>, 595 F.3d 478 (3d Cir. 2009)(civil contempt). <u>See</u> <u>also</u>, <u>Brimage v. Hayman</u>, 2010 WL 3339830 (D.N.J. 2010)(Shipp, M.J.):

> The purposes of sanctions under Rule 37 are to:

11

> (1) penalize the culpable party or attorney; (2) deter others from engaging in similar conduct; (3) compensate the court and other parties for the expense caused by the abusive conduct; and (4) compel discovery and disclosure. Wachtel v. Health Net, Inc., No. 03-1801, 2006 WL 3538935, at *20 (D.N.J. Dec. 6, 2006)(citing National Hockey League, 427 U.S. at 643). 2010 WL 3339830 at *2

There is no good reason to defer payment. The Court should deny N.V.E.'s motion to defer.

C. The money should be paid to plaintiff or, if the Court disagrees, then it should be paid either into the trust account of Mr. Rostan or of present counsel pending completion of fee <u>arbitration.</u>

Any fee arbitration between predecessor counsel and Palmeroni is not within the subject matter jurisdiction of this Court. It is none of N.V.E.'s business. For the reasons stated in this memorandum, the money belongs to Palmeroni to use to pay his bills - including those of predecessor counsel - as he deems appropriate. The Court should not and does not serve as a collection agent for Rostan and Scampato.

If the Court should disagree, then it should order N.V.E. to pay the counsel fee award either into the trust account of Rostan or of the undersigned to be held pending the outcome of fee arbitration.

12

## CONCLUSION

For the reasons stated in Palmeroni's initial brief for reconsideration, this Court should grant the motion. For the reasons stated in Mr. Rostan's memorandum and in this reply brief, the Court should deny the motion of N.V.E.

                                      Respectfully submitted,

Dated: November 27, 2012        Robert A. Vort