**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

N.V.E., INC.,

         Plaintiff,

      v.

JESUS J. PALMERONI a/k/a JOSEPH
PALMERONI, et alia,

         Defendants.

Civil Action No. 06-5455 (ES) (SCM)

JESUS J. PALMERONI,

    Third-Party Plaintiff,

      v.

ROBERT OCCHIFINTO AND WALTER
ORCUTT,

    Third-Party Defendants.

---

## MEMORANDUM OF LAW IN OPPOSITION TO THE INTERNATIONAL WHOLESALE DEFENDANTS AND SUNBELT DEFENDANTS' RENEWED MOTION TO DISMISS AND THE BRAND NEW ENERGY DEFENDANTS' MOTION TO DISMISS

---

PASHMAN STEIN, P.C.
21 Main Street, Suite 100
Hackensack, N.J. 07601
(201) 488-8200
*Attorneys for Plaintiff N.V.E., Inc.*

*On the Brief:*
Aidan P. O'Connor
Samantha K. Sherman

## TABLE OF CONTENTS

Page

Preliminary Statement.................................................................................. 1

Legal Argument .......................................................................................3

I     The First Amended Complaint, in Conjunction with the RICO Case Statement,
      Satisfies the Requirements of Federal Rule of Civil Procedure 8(a) ................... 3

II    NVE Has Alleged a Civil RICO and a Civil RICO Conspiracy .............................15

III   NVE Has Alleged a Valid Claim that It Suffered Compensable Damages,
      Including "RICO Damages," as a Result of Defendants' Alleged Conduct..........25

IV    NVE Has Alleged Valid State Law Claims..........................................................27

Conclusion ..........................................................................................................31

## TABLE OF AUTHORITIES

**Cases**

Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009)……………………….            3, 12

Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006)…….            26

Am. Corp. Society v. Valley Forge Ins. Co., No. 10-3560,
   2011 U.S. App. LEXIS 8261, 8 (3rd Cir. Apr. 7, 2011)……..      29

Banco Popular N. Am. v. Gandi, 184 N.J. 161,
   876 A. 2d 253, 263 (N.J. 2005)……………………………….         29

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)……….            3, 4, 12

Bridge v. Phoenix Bond & Indem. Co,, 553 U.S. 639 (2008).            26

Boyle v. United States, 129 S.Ct. 2237 (2009)………………            15, 16, 17

Cetel v. Commonwealth Life Ins. Co., 460 F.3d 494
   (3d Cir. 2006)…………………………………………………..           27

Great Western Mining & Mineral Co. v. Fox Rothschild LLP,
   615 F.3d 159 (3d Cir. 2010)………………………………………      3, 4, 12, 14

Hammerschmidt v. United States, 265 U.S. 182, 188
   44 S.Ct. 511, 512, 68 L.Ed. 698 (1924)………………………      21

Holmes v. Securities Investor Protection Corp,
   503 U.S. 258 (1992)…………………………………………………     26

In re Insurance Brokerage Antitrust Litigation,
   618 F.3d 300 (3d Cir. 2010) ………………..…………………….   4, 15, 16, 17, 22

In re Burlington Coat Factory Sec. Litig, 114 F.3d 1410
   (3d Cir. 1997)…………………………………………………….          22

Judson v. Peoples Bank & Trust Co. of Westfield, 25 N.J. 17,
   29 (1957)………………………………………………………….            27

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F. 2d 1406
   (3d Cir. 1991)…………………………………………………….          21

Louis Kamm, Inc. v. Fink, 113 N.J.L. 582, 586
    (E. & A. 1934)……………………………………………..    28

Lum v. Bank of America, 361 F. 3d 217 (3d Cir. 2004)……..    15

McNally v. United States, 483 U.S. 350, 358, 107 S.Ct.
    2875, 2880, 97 L.Ed.2d 292 (1987)…………………………    21

Nixon v. Zickefoose, No. 10-cv-0546 (JBS), 2011 U.S.
    Dist. LEXIS 1601 (D.N.J. Jan. 7, 2011)………………………    14

Pereira v. United States, 347 U.S. 1, 74 S. Ct. 358 (1954)…    22

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008)    3, 4

Printing Mart-Morristown v. Sharp. Elec. Corp.,
    563 A.2d 31 (N.J. 1989)………………………………………..    28

Rose v. Bartle, 871 F.2d 331 (3d Cir. 1989)………………..    23

Salinas v. United States, 522 U.S. 52 (1997)………………    23

Sedima, S.P.R.I. v. Imrex Co., 473 U.S. 479, 496 (1985)…    15

Seville Indus. Machinery Corp. v. Southmost
    Machinery Corp., 742 F.2d 791 (3d Cir. 1984)……………..    20

Shulton, Inc. v. Optel Corp., No. 85-cv-2925, 1986 U.S. Dist.
    LEXIS 19775 (D.N.J. Sep. 29, 1986)…………………………    27

Smith v. Berg, 247 F.3d 532 (3d. Cir. 2001)…………………    24

Tabas v. Tabas, 47 F.3d 1280 (3d Cir. 1995)…………………    23

United States v. Frankel, 721 F.2d 917 (3d Cir. 1983)………    21

United States v. Pearlstein, 576 F.2d 531, 535
    (3d Cir. 1978)……………………………………………………    21

West Penn Allegheny Health Servs., Inc. v. UPMC,
    627 F. 3d 85 (3d Cir. 2010)……………………………………    12

Whiting v. Bonazza, No. 09-cv-113, 2011 U.S. Dist. LEXIS
    13194 (W.D Pa. Feb. 10, 2011)………………………………    13

**Statutes**

18 U.S.C. § 1961 …………………………………………………    15, 19

18 U.S.C. § 1962 …………………………………………………    15, 19, 22, 23

**Rules**

Fed. R. Civ. Pro. 12(b)(6)……………………………………    3

Fed. R. Civ. Pro. 8(a)…………………………………………    3, 14, 23

Fed. R. Civ. Pro. 9(b)…………………………………………    22, 23

**Treatise**

Restatement of Torts § 876(b) (1939)……………………    27

**Jury Instructions**

Third Circuit Model Jury Instruction 6:18.1962C-1………..    17 n., 18 n.
Third Circuit Model Jury Instruction 6:18.1962C-2………..    16 n., 17 n.
Third Circuit Model Jury Instruction 6:18.1962C-5………..    21 n.
Third Circuit Model Jury Instruction 6:18.1962D…………..    23

## PRELIMINARY STATEMENT

Plaintiff N.V.E., Inc. ("NVE") respectfully submits this Memorandum of Law in opposition to Defendants Jarrett W. Portz, John J. Portz, Sr., Katherine M. Portz, International Wholesale Service, Inc., International Wholesale Supply, Inc., (collectively the "International Wholesale Defendants") and Ronald Sumicek and Sunbelt Marketing's  (collectively the "Sunbelt Defendants") renewed motion to dismiss the complaint as against them and Brand New Energy, LLC and Darren Householder's (collectively the "Brand New Energy Defendants") motion to dismiss all counts asserted against them.

As set forth in the First Amended Complaint (#199) and its RICO Case Statement (# 292) NVE alleges that former employee Jesus Palmeroni and others, including the International Wholesale Defendants, the Sunbelt Defendants and the Brand New Energy Defendants, conspired to and participated in one or more elaborate schemes to defraud NVE through a pattern of racketeering activity involving interstate mail, wire and transportation fraud.  Rather than answer and submit to discovery on these claims, the International Wholesale Defendants have already filed a prior motion to dismiss (#222), which this Court denied without prejudice with the opportunity to refile following NVE's filing of a RICO Case Statement. (# 283).

In accordance with the Court's order, NVE filed a RICO Case Statement (#292) that describes the RICO violations and conspiracy and each defendant's participation in detail, including a description of the moving defendants' wrongful conduct and role in the enterprise and pattern of racketeering activity.  Nevertheless, the International Wholesale Defendants, Sunbelt Defendants and Brand New Energy Defendants

continue to refuse to answer and submit to discovery on these claims, choosing instead to stall and delay the litigation process by filing nearly identical motions to dismiss as the previous motion that depends on a misunderstanding and flawed application of the required pleading standards.  (# 316, 345).

<u>LEGAL ARGUMENT</u>

POINT ONE

**The First Amended Complaint, in Conjunction with the RICO Case Statement, Satisfies the Requirements of Federal Rule of Civil Procedure 8(a).**

A complaint under attack through a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted).  Rule 8(a) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." <u>Id.</u>  The Supreme Court noted that the "plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1950 (2009). Indeed, the Supreme Court noted that "a well pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." <u>Twombly</u>, 550 U.S. at 556; <u>Great Western Mining & Mineral Co. v. Fox Rothschild LLP</u>, 615 F.3d 159, 175 (3rd Cir. 2010).  When deciding a motion to dismiss under Rule 12(b)(6), the court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 228 (3d Cir. 2008).

The Third Circuit has summed up the <u>Twombly</u> pleading standard as follows: "'[S]tating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable

expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 at 234 (quoting Twombly, 550 U.S. at 556).  In other words, "there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation." Phillips, at 234-35; see also Great Western Mining, 615 F.3d at 177.  "The touchstone of Rule 8(a)(2) is whether a complaint's statement of facts is adequate to suggest an entitlement to relief under the legal theory invoked and thereby put the defendant on notice of the nature of the plaintiff's claim." In re Insurance Brokerage Antitrust Litigation, 618 F.3d 300, 320 n.18 (3d Cir. 2010) (citing Twombly, 550 U.S. at 565 n.10).

The First Amended Complaint ("FAC") and RICO Case Statement detail how two NVE employees, Jesus Palmeroni and Vincent Rosarbo, concocted a scheme to set up an enterprise to defraud NVE by enlisting the aid of various relatives as well as distributors and brokers of NVE in illegal kickbacks of commissions and illegal domestic sales of products designated for lower priced international sale, and forming and using sham companies and entities including Smart World US, National Retail Consulting Group ("NRCG"), Global Marketing & Sales ("Global") American Wholesale Distribution, Inc., ("AWD") and VAR Consulting ("VAR"), to hide their ongoing involvement with the other defendants in this pattern of racketeering.  See FAC ¶¶ 8-20.

The FAC and RICO Case Statement detail how Palmeroni, NVE's Vice President of Sales, conspired with certain brokers of NVE products to obtain kickbacks on commissions in return for the assignment or manipulation of NVE accounts, as well as how the Conspiring Brokers conspired with each other to engage in such illegal activities and aided and abetted one another in such activities.  FAC ¶ 37-41, 51-52;

RICO Case Statement at 4-7, 34.  The FAC and RICO Case Statement allege that the Sunbelt Defendants and other Conspiring Brokers knew that Palmeroni was NVE's agent, that Palmeroni owed NVE a duty of loyalty and that the payment of said brokerage commissions to him would be improper and unlawful.  FAC ¶ 48; RICO Case Statement at 6-7.  The RICO Case Statement further describes the formation and motivation for agreeing to the kickback scheme, including when the secret agreements were made (beginning in 2000), the general content of the representations made (that Palmeroni controlled the accounts, had the power to make agreements, that NVE's owner deferred to him, that if the conspiring brokers did not agree to pay him kickbacks he could give away their accounts and/or not give them new accounts, and where and how to make payments), and the parties to the representations (by Palmeroni to each of the conspiring brokers – i.e., alternatively Sumicek, Richard and/or Jerald Horowitz, and Dirk Niewenhuis).  RICO Case Statement at 4-5.

Contrary to defendants' claims as to lack of information, the FAC and RICO Case Statement detail the resulting operation of the kickback scheme.  For example, they include the total amount of money paid by the Conspiring Brokers as kickbacks and the respective time period – e.g., Sunbelt Marketing received $914,500 in commissions from NVE between 2000 and 2005 and kicked back approximately $466,949.35 to Palmeroni and companies that he controlled (FAC ¶42-44); PMI and Profit Motivators paid approximately $652,648.89 in kickbacks between 2001 and 2006 to NRCG and then approximately another $90,000 through Global between 2006 and 2009 (FAC ¶ 45); another broker, Dirk Niewenhuis paid approximately $51,287 in kickbacks between 2001 and 2005 (FAC ¶ 46); RICO Case Statement at 4-5.  Bank records previously

produced and set forth in a chart as Exhibit A to the RICO Case Statement lay out the details for these illicit payments, including the dates, amounts, and how the payments were made and to which bank and which account holder, in most cases showing the interstate nature of the transaction (leaving aside the interstate nature of NVE's business and the shipment of its goods in interstate commerce).  FAC ¶¶ 7, 47; RICO Case Statement at 4-5, 6-7, 17-18 (listing Bates stamped documents) and Ex. A (listing dates and amounts of payments from Sumicek in Texas to NRCG's account at Lakeland Bank in New Jersey, and the transactions of other conspiring brokers).   The FAC and RICO Case Statement detail how checks were mailed from New Jersey to Texas (Sumicek), New York (Richard and Jerald Horowitz) and California (Dirk Nieuwenhuis) and then that the Conspiring Brokers returned a portion of the money as kickbacks. FAC ¶ 49-50; RICO Case Statement at 19-20 and Ex. A.

The FAC and RICO Case Statement allege that the Conspiring Brokers, including the Sunbelt Defendants, engaged in an ongoing pattern of racketeering activity with Palmeroni and other conspiring brokers in order to obtain money from NVE to which they were not entitled.  Specifically, Palmeroni benefitted by receiving millions in kickbacks, while the defendant brokers kept their profitable accounts and continued to make millions in commissions from NVE, diverting NVE's assets and profits to the use and benefit of themselves and others.  FAC ¶  51; RICO Case Statement at 30-31. Additionally, given that the Conspiring Brokers kicked back approximately one-half of the commissions paid to them by NVE to Jesus Palmeroni, NVE suffered a loss equal to the amount of the kickbacks, because if Palmeroni and the Conspiring Brokers had not worked together to defraud NVE, it could have negotiated a lower commission payment

or some accounts could have been handled directly by NVE itself, obviating the need to pay commissions at all.

The FAC and RICO Case Statement also allege in detail how Palmeroni and Rosarbo, beginning in 2001 and continuing well into at least 2006, set up a scheme with a number of distributors and customers to take advantage of the fact that NVE sold products to overseas customers at a price significantly lower than the price available to domestic distributors and customers. FAC ¶ 53; RICO Case Statement at 7. Those documents explain that Palmeroni and Rosarbo, using their inside knowledge and connections, set up a company, Smart World US, which had a very similar name to a legitimate Dutch distributor of NVE products.  FAC ¶¶ 9, 12, 15, 16, 20, 33; RICO Case Statement at 7-8.  The FAC and RICO Case Statement allege that Palmeroni then placed orders (or had them placed) in the name of the Dutch Smart World at the lower price, falsely representing that they were to be exported to Holland.  The Palmeroni Enterprise then used Smart World US to take possession of the products and resold them to the Conspiring Distributors at a price lower than NVE itself was charging for the same identical products in the United States.  FAC ¶¶ 16-18, 33-35, 53; RICO Case Statement at 7-8.  The RICO Case Statement provides further details about the fraudulent misrepresentations, e.g., that Palmeroni and Rosarbo obtained these products by misrepresenting to NVE that Smart World US was Smart World Netherlands through verbal orders placed by Palmeroni and by written orders received from Smart World Netherlands after Palmeroni was terminated from NVE.  RICO Case Statement at 8, 12 (citing Exhibit 25 to the Certification of Ellen Smith dated November 22, 2010, # 160-12).

The FAC and RICO Case Statement allege that the Conspiring Distributors, including the International Wholesale Defendants, the Sunbelt Defendants, and the Brand New Energy Defendants, purchased millions of dollars of products that the Palmeroni Enterprise claimed were being sold to the Dutch Smart World at the lower international price, allowing Conspiring Distributors to obtain NVE products for less than NVE's own domestic price thereby causing a loss to NVE equivalent to the difference in price.  RICO Case Statement at 8.   The documents also prove that the Conspiring Distributors were located in states other than New Jersey and the NVE goods were shipped from New Jersey to other states, including Wisconsin, California, North Carolina, Texas, Florida and Arizona.  FAC ¶¶ 21-32; RICO Case Statement at 8, 12-13.  The documents show that the products were never exported but instead sold by multiple Palmeroni and Rosarbo companies, including Smart World, AWD, NRCG, and VAR, to the Conspiring Distributors (who were all prior NVE distributors) at a great profit to themselves and a corresponding loss to NVE.  RICO Case Statement at 8-9 (citing Smith Cert., Exs. 5-21, #160-5 – 160-11).

The FAC and RICO Case Statement also allege that although Palmeroni was the vice president of sales for NVE, the Conspiring Distributors did not pay NVE for the NVE products.  Instead, the Conspiring Distributors agreed with Palmeroni and Rosarbo to make payments to companies set up by them for the fraudulently obtained products, namely AWD, Smart World US, VAR and NRCG.  FAC ¶¶ 54-62; RICO Case Statement at 9, 12 (describing the formation of those companies in greater detail and listing incorporation records previously produced by Bates stamp number).  The FAC and RICO Case Statement allege as predicate acts that the payments referred to above

8

were made by means of the mails and that people, money and goods of more than $5,000 in value travelled in interstate commerce. FAC ¶¶ 68-69; RICO Case Statement at 9. The individual payments by the Conspiring Distributers, including the moving defendants, are detailed in Exhibit B to the RICO Case Statement. Palmeroni has admitted that his enterprise sent approximately $8,000,000.00 in wire transfers for illegal purchases of NVE products through the Smart World scheme, and that the proceeds of the illegal sales were transferred to Palmeroni and Rosarbo's other entities and to themselves personally. RICO Case Statement at 9 (citing Smith Certification dated November 22, 2010, #160-2 and 160-11).

The FAC and RICO Case Statement specifically set forth the amounts paid by the each of the Conspiring Distributors and to whom: defendants Carlos Bengoa and CB made payments totaling at least $6,000,000 ($35,236.64 to NRCG; $5,053,072.36 to AWD; $862,920 to Smart World US; and $44,641.26 to VAR) (FAC ¶ 54); defendant Householder paid $24,942 to AWD (FAC ¶ 55); defendant Brand New Energy paid $926,090 to AWD, NRCG and VAR (FAC ¶ 56); defendants Sessions and Sessions Specialty Company paid $274,799.58 to AWD (FAC ¶ 57); Sumicek and ISG paid $35,251.52 to AWD and NRCG (FAC ¶ 58); defendants John W. Portz and Katherine M. Portz paid $50,000 to AWD in 2004 (FAC ¶ 59); defendant International Wholesale Service paid $270,951.20 to AWD between 2003 and 2005 (and of that amount, $19,440 was paid to AWD in 2005) (FAC ¶ 60); defendants Alfredo and Charmaine Felice paid $5,031 to AWD between 2003 and 2004 (FAC ¶ 61); and defendant Curtis Beverage paid $119,124 to AWD and VAR in 2004 (FAC ¶ 62). RICO Case Statement

at 9-11, 20-21 (listing bank records previously produced by Bates stamped documents and the states involved).

Even though this is more than sufficient, NVE has provided further details about the individual payments from Conspiring Distributors to Palmeroni and Rosarbo entities (including the name of the paying distributor or distributor owner, payment date, amount, receiving bank and account holder, and the states involved the transaction) in Exhibit B to the RICO Case Statement, which indicates that the International Wholesale Defendants agreed to participate in the scheme during 2003-2005, the Brand New Energy Defendants agreed to participate in the scheme in 2003-2006, and the Sunbelt Defendants agreed to participate in the scheme in 2004.

The RICO Case Statement sets forth that Palmeroni and Rosarbo conspired and entered into secret arrangements with the Conspiring Distributors as aforesaid for the purchase and sale of NVE products which had been fraudulently obtained by Smart World US as prices lower than the legitimate prices available for NVE products in the United States, with the unlawful proceeds going to Palmeroni, Rosarbo or their entities. RICO Case Statement at 14.  The Conspiring Distributors, as admitted, also profited from their participation in the Palmeroni Enterprise by obtaining NVE products at a price lower than their competitors were able to get through legitimate purchases from NVE. NVE has alleged that the Conspiring Distributors were familiar with NVE's legitimate price structure and knew that the price Palmeroni and Rosarbo were charging them for the same item was lower than otherwise available domestically.  RICO Case Statement at 13, 14.  NVE has further alleged that the moving defendants knew that Palmeroni and Rosarbo were employed by NVE, were obligated to perform their duties faithfully and

loyally to NVE, and should not be undercutting NVE's sales in this manner.  RICO Case Statement at 14-15.  The RICO Case Statement states that the Conspiring Distributors knew or reasonably should have known that this secret arrangement was improper and unlawful and defrauded NVE by depriving it of its rightful sales and profits, including the difference between the export price and the domestic price for goods sold through the Smart World scheme.  RICO Case Statement at 14-15.

The RICO Case Statement also details how the Palmeroni Enterprise covered up the illegal exchanges – e.g., through the continued legitimate product purchase from NVE by its biggest customer, the separate warehouse storage of the NVE products ordered by Smart World US, and the recruitment and inclusion of Smart World Netherlands in this part of the scheme.  RICO Case Statement at 12-14 (citing orders attached as Ex. 25 to Smith Cert. dated November 22, 2010, # 160-12, bank statements attached as Ex. 26 to Smith Cert. dated November 22, 2010, # 160-13, and handwritten payment ledgers attached as Ex. 27 to Smith Cert. dated November 22, 2010, # 160-14).

The RICO Case Statement asserts that each of the Defendants acted with the necessary malice, intent and knowledge and with a wanton and reckless disregard for NVE's rights, and that in furtherance of the scheme to defraud, they used and caused to be used mail depositories of the U.S. Postal Service and transmitted and or received payments by checks or wire transfers, and that they caused and induced persons to travel in interstate and foreign commerce and transported or caused to be transported money and goods valuing $5,000 or more, with each use constituting a separate predicate act.  RICO Case Statement at 15-16.

11

The FAC and RICO Case Statement set forth sufficient detail for the moving defendants to know the nature of the claims and enough facts to receive fair notice to defend themselves.  The allegations, when read in total and taken as true as they must be at this stage, make a showing of entitlement to relief, not a mere blanket assertion of such entitlement.  See Twombly, 550 U.S. at 555, n.3.  As noted above, the FAC and RICO Case Statement specify for each of the moving defendants the nature of the offense, the total amounts of money paid or kicked back, the payment time frame, the entities paid, the states involved and the manner of payment, while the RICO Case Statement exhibits specify for each of the moving defendants the precise payment amounts, dates, the banks accepting payment, the names of the account holders, as well as the relevant states, *for each individual payment*, and therefore "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555; Great Western Mining, 615 F.3d at 176.  Thus, even though the Court need not accept legal conclusions as true, the FAC and RICO Case Statement together allege sufficient facts, which must be accepted as true, to state a plausible claim for relief.  See Iqbal, 129 S.Ct. at 1950.

The moving defendants observe that, unlike in the plaintiff in West Penn Allegheny Health Servs., Inc. v. UPMC, 627 F.3d 85 (3d Cir. 2010), NVE does not allege direct evidence of an unlawful agreement such as any specific meetings or explicit factual admissions by the moving defendants, but the law does not impose such a requirement.  Id. at 99-100 (noting that "[a] plaintiff may plead an agreement by alleging direct or circumstantial evidence, or a combination of the two," but finding it unnecessary to address the sufficiency of the circumstantial allegations because the court concluded that the allegations of direct evidence were sufficient by themselves).

Defendants also repeatedly argue that NVE must provide allegations of background facts that would make such knowledge plausible.  Clearly, as prior domestic distributors of NVE's products, the moving defendants and other Conspiring Distributors knew NVE's sales team, which included Palmeroni and Rosarbo, and would certainly know Palmeroni's relationship with NVE once he became Vice President of Sales.  As such, they knew that Palmeroni's contrivance with them to stop purchasing product directly from NVE, his employer, under the listed price structure for domestic sales and to instead buy the same product from a different entity that he controlled at a price that undercut his employer to whom he owed a duty of loyalty was illegal and wrong. Moreover the Sunbelt Defendants had been paying kickbacks to Palmeroni through NRCG since 2001 as a participant of the other half of the scheme.  Consequently, the Sunbelt Defendants clearly knew that Palmeroni and/or Rosarbo were behind NRCG when Sumicek used his other company, International Sales Group, to buy NVE products from AWD at a price below that made available from NVE for domestic resale, as plotted by Palmeroni.

The cases cited by the defendants are inapposite.  The allegations in the FAC and RICO Case Statement are not a formulaic recitation of the essential elements of the offense, in sharp contrast to the threadbare and conclusory allegations in <u>Whiting v. Bonazza</u>, No. 09-cv-113, 2011 U.S. Dist. LEXIS 13194, *34 (W.D. Pa. Feb. 10, 2011) (the *pro se* defendant's § 1983 claim of conspiracy by a judge and group of police officers to violate her constitutional rights, among others, did not allege any supporting facts and consisted of the conclusory assertion that "[a]ll defendants Conspired to help each other").  Rather, the FAC and RICO Case Statement identify the specific

defendants known to date, and set forth how, when, and why the specific defendants involved in the Smart World US scheme conspired to obtain NVE products below the domestic price, and how, when and why the defendants involved in kickbacks conspired to participate in that scheme.  In this manner, NVE's allegations contrast with the plaintiff in <u>Great Western</u>, which did not plead "any facts that plausibly suggest a meeting of the minds" as it failed to allege "the approximate time when the agreement was made, the specific parties to the agreement (i.e., which judges), the period of the conspiracy, or the object of the conspiracy."  <u>Great Western</u>, 615 F.3d at 179.

Finally, this case is not like <u>Nixon v. Zickefoose</u>, No. 10-cv-0546 (JBS), 2011 U.S. Dist. LEXIS 1601 (D.N.J. Jan. 7, 2011), in which the *pro se* prisoner litigants' factual allegations did not suggest a cause of action, even when accepted as true.  The FAC and RICO Case Statement allege that the International Wholesale Defendants, the Brand New Energy Defendants, the Sunbelt Defendants and other Conspiring Distributors had access to and knew NVE's legitimate price structure, that they knew about Palmeroni's relationship with NVE (and with the shell companies set up by him and Rosarbo), and that they worked with Palmeroni and Rosarbo to circumvent their employer in a continuing manner to misappropriate profits belonging to NVE.  The fact that they could make a bigger profit than they would have if they had bought the NVE products legitimately does not justify the moving defendants' actions in conspiring to fraudulently obtain the goods.

For all these reasons, this Court should find that NVE has alleged sufficient facts in the FAC and RICO Case Statement to state a claim under Rule 8(a).

POINT TWO

## NVE Has Alleged a Civil RICO Claim and a Civil RICO Conspiracy.

The FAC and RICO Case Statement together meet the requirements to state a

civil RICO and RICO conspiracy claim. To plead a RICO claim under 18 U.S.C. §

1962(c), the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern

(4) of racketeering activity.  Lum v. Bank of America, 361 F.3d 217, 233 (3d Cir. 2004)

(citing Sedima, S.P.R.I. v. Imrex Co., 473 U.S. 479, 496 (1985)). NVE has done so.

NVE has alleged that Palmeroni and the other defendants were engaged in an

association-in-fact enterprise.  Section  1961(4) defines an "enterprise" as including

"any individual, partnership, corporation, association, or other legal entity, and any union

or group of individuals associated in fact although not a legal entity." 18 U.S.C. §

1961(4).  The Supreme Court has held that this "enumeration of included enterprises is

obviously broad encompassing *any* … group of individuals associated in fact.  The term

"any" ensures that the definition has a wide reach and the very concept of an

association in fact is expansive'.  In addition, the RICO statute provides that its terms

are to be 'liberally construed to effectuate its remedial purposes'" Boyle v. United

States, 129 S.Ct. 2237, 2243 (2009) (citations omitted).

A RICO enterprise does not need to have any particular structure or form.

Insurance Brokerage Antitrust Litigation, 618 F.3d at 366.  Rather, its "structure" must

only have three features: "a purpose, relationships among those associated with the

enterprise, and longevity sufficient to pursue the enterprise's purpose." Boyle, 129 S.

Ct. at 2244.  As the Supreme Court recently held in Boyle,

> an association-in-fact enterprise is simply a continuing unit that
> functions with a common purpose.  Such a group need not have a

> hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods--by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.

129 S.Ct.at 2245-46. Consequently, the Third Circuit interprets <u>Boyle</u> as meaning that "an association-in-fact enterprise need have no formal hierarchy or means for decision-making, and no purpose or economic significance beyond or independent of the group's pattern of racketeering activity." <u>Insurance Brokerage Antitrust Litigation</u>, 618 F.3d at 368.[1] Furthermore, the same evidence used to show the pattern of racketeering can

---

[1]   See also Third Circuit Model Jury Instruction 6.18.1962C-2:

> [A]n enterprise need not be a formal business entity such as a corporation, but may be merely an informal association of ... of individuals and legal entities. A group or association of ... individuals and legal entities can be an enterprise if they have associated together for a common purpose of engaging in a course of conduct....

> To find that the enterprise was an entity separate and apart from the alleged pattern of racketeering activity, you must find that the government proved that the enterprise had an existence beyond what was necessary merely to commit the charged racketeering activity. However, the government does not have to prove that the enterprise had some function wholly unrelated to the racketeering activity; the enterprise may be formed solely for the purpose of carrying out a pattern of racketeering activity. The existence of an association-in-fact enterprise is often proved by what it does*[, rather than by abstract analysis of its structure]*. Evidence that shows a pattern of racketeering activity may be considered in determining whether the government has proved the existence of an enterprise beyond a reasonable doubt, and proof of a pattern of racketeering activity may be sufficient for you to infer the existence of an association-in-fact enterprise. Also, evidence showing the oversight or coordination of the commission of several different racketeering acts and other activities on an ongoing basis may be considered in determining whether the enterprise had a separate existence.

also be used to show the existence of the enterprise.  Boyle 129 S.Ct. at 2247;

Insurance Brokerage Antitrust Litigation, 618 F.3d at 368.  Nevertheless, the

components of the group "must function as a unit" and "be put together to form a

whole."  Id. at 374.[2]

The briefs filed by the moving defendants with regard to the requirements to

establish a RICO association-in-fact enterprise rely on cases that predate the Supreme

Court's 2009 opinion in Boyle.  As a result, to the extent that the cases they cite read

additional requirements into the statute, they are abrogated by Boyle and should be

disregarded.  Insurance Brokerage Antitrust Litigation, 618 F.3d at 368.

NVE has satisfied the requirements for showing that the defendants constitute a

RICO association-in-fact enterprise.  The FAC and RICO Case Statement allege that

Palmeroni, Rosarbo, the Conspiring Brokers and the Conspiring Distributors, and other

defendants had a common purpose of defrauding NVE by purchasing and reselling NVE

products at a price below that to which they were entitled, and/or obtaining or retaining

millions of dollars worth of commissions to which they were not entitled.  The FAC and

RICO Case Statement further allege that the defendants had relationships with one

---

To prove an association-in-fact enterprise, the government need not prove that the group had a hierarchical structure or a chain of command; decisions may be made on an ad hoc basis and by any number of methods.  The government also need not prove that members of the group had fixed roles; different members may perform different roles at different times.  The government need not prove that the group was a business-like entity, or that it had a name, or regular meetings, or established rules and regulations, or the like.  An enterprise is also not limited to groups whose crimes are sophisticated, diverse, complex, or unique.

[2]     See also Third Circuit Model Jury Instruction 6.18.1962C-1:

The term enterprise includes both legitimate enterprises and also illegitimate or completely illegal enterprises.  Thus, the enterprise need not have a purpose other than the commission of or facilitating the commission of the racketeering activity alleged in the indictment.

another associated with the enterprise.[3]  In fact, at least one defendant, Sumicek individually and through his related companies ISG and Sunbelt, (to say nothing of Palmeroni, the hub of this conspiracy) were involved in both schemes in which the enterprise engaged.  Moreover, the FAC and RICO Case Statement allege that the enterprise operated not as a series of individual actors but rather as a group centered around Palmeroni, who with Rosarbo recruited the various members to create a complex operation that used kickbacks and account manipulation to rob NVE of the benefit of commissions paid and exploited employee access to NVE's books, contacts, and awareness of the separate price structure for products intended for foreign and domestic distribution for the enterprise members' own economic advantage.  Finally, the FAC and RICO Case Statement also clearly allege that this enterprise lasted several years and that it existed for a long enough period of time to achieve its purpose.  Indeed, it was only the discovery by NVE of the perfidy of the defendants that eventually led to its demise.

---

[3]     See Third Circuit Model Jury Instruction 6.18.1962C-1:

   The third element that the [plaintiff] must prove … is that [the defendant] was either "employed by" or "associated with" the enterprise.  The [plaintiff] need not prove both.

   Alternatively, you may find that *(name)* was "associated with" the enterprise, if you find that the government proved that  *(he) (she)* was aware of the general existence and nature of the enterprise, that it extended beyond *(his) (her)* individual role, and with that awareness participated in, aided, or furthered the enterprise's activities *[or had an ownership interest in the enterprise]*.

   It is not required that *(name)* be employed by or associated with the enterprise for the entire time the enterprise existed.  The government also is not required to prove that *(name)* had a formal or managerial position in the enterprise, or participated in all the activities of the enterprise, or had full knowledge of all the activities of the enterprise, or knew about the participation of all the other members of the enterprise.  …

   To prove that *(name)* was either employed by or associated with an enterprise, the [plaintiff] must prove … that *(name)* was connected to the enterprise in some meaningful way, and that *(name)* knew of the existence of the enterprise and of the general nature of its activities.

A plaintiff bringing a section 1962(c) claim must also show that each defendant conducted or participated in a pattern of racketeering activity. The RICO statute defines a "pattern" of racketeering activity as requiring "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5). Palmeroni and the other defendants were involved in conducting the affairs of the enterprise as the means of achieving their purpose. The FAC and RICO Case Statement set forth how the Sunbelt Defendants paid for the manipulation, acquisition and/or retention of commissions through the payment of kickbacks to entities owned by Palmeroni and/or Rosarbo and caused them to be paid out of state through the mail or by wire transfer and that more than two such transactions occurred within a 10-year period, as Exhibit A to the RICO Case Statement details such payments. The FAC and RICO Case Statement also detail how the moving defendants participated in conducting the enterprise by purchasing and then domestically reselling NVE products at lower prices than otherwise available thereby causing interstate transfer of products obtained from fraud and of funds by mail or wire. Exhibit B to the RICO Case Statement details all monetary transactions by specific moving defendant, establishing that the International Wholesale Defendants and the Brand New Energy Defendants effected such activity at least two times within a 10-year period.

Palmeroni and the other defendants also attempted to control and direct the operations of NVE in order to subvert its commission system and also to ensure that they could get a supply of products that NVE thought were being exported and were priced for the international market which the defendants would then resell in the more expensive domestic market, thereby undercutting NVE itself (which still had the

expense of advertising, marketing and products liability for these misappropriated goods). It is uncontested that NVE is a legal enterprise and in this case was the victim of the actions of the defendants. See, Boyle, 129 S.Ct. at 2249.

Where a RICO or RICO conspiracy claim alleges mail fraud, wire fraud, or transportation fraud as predicate acts, facts relating to the fraudulent aspect of those offenses must be plead with particularity under the heightened pleading standard of Fed. R. Civ. Pro. 9(b). Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d at 791, 792 n.2 (3d Cir. 1984). Taken together, the FAC and RICO Case Statement provide this level of detail. For example, those documents set forth that Palmeroni and Rosarbo misrepresented to NVE the actual domestic resale destination for the products he was ordering each time they placed an order for Smart World US or arranged for Dutch Smart World to place orders on their behalf and on behalf of the Conspiring Distributers, including the International Wholesale Defendants, the Sunbelt Defendants and the Brand New Energy Defendants. The documents and information provided by NVE also set forth that Palmeroni misrepresented through omission the economic reason for his management decisions as to accounts belonging to the conspiring brokers. FAC ¶¶ 106-109. In addition, the conspiring brokers themselves misrepresented by omission who would be receiving the benefit of NVE's commission payments and their willingness to settle for lower amounts, as well as corrupting the honest services of NVE's employees. FAC ¶¶ 106-109.

The moving defendants' argument that NVE did not sufficiently plead their participation in the racketeering activity has no merit. They do not present any controlling authority for their contention that a civil RICO or RICO conspiracy claim must

be dismissed unless it alleges that *each individual defendant personally* made the misrepresentation at the heart of a claim where mail fraud, wire fraud, or transportation of fraudulent property constitute predicate acts.[4]  The nature of an enterprise is that the defendants acted jointly, as a group. In any event,

> Under the mail fraud statute, a scheme or artifice to defraud "need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." United States v. Pearlstein, 576 F.2d 531, 535 (3d Cir.1978). The scheme need not involve affirmative misrepresentation, see United States v. Frankel, 721 F.2d 917 (3d Cir.1983), but the statutory term "defraud" usually signifies " 'the deprivation of something of value by trick, deceit, chicane or overreaching.' " McNally v. United States, 483 U.S. 350, 358, 107 S.Ct. 2875, 2880, 97 L.Ed.2d 292 (1987) (quoting Hammerschmidt v. United States, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924)). Accord Carpenter v. United States, 484 U.S. 19, 27, 108 S.Ct. 316, 321, 98 L.Ed.2d 275 (1987).

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1415 (3d Cir. 1991).  For reasons already explained, the interstate wire fraud, mail fraud and transportation fraud furthered the Palmeroni enterprise's purpose, which was to enrich its members by depriving NVE of additional profit by trick, deceit, chicanery or overreaching.  Additionally, use of the

---

[4]     See Third Circuit Model Jury Instruction 6.18.1962C-5:

> The fourth element that the [plaintiff] must prove … is that *(name)* knowingly conducted the affairs of the enterprise or that *(he) (she)* knowingly participated, directly or indirectly, in the conduct of the affairs of the enterprise.  In order to prove this element, the [plaintiff] must prove  a connection between *(name)* and the conduct of the affairs of the enterprise.  The government  must prove that *(name)* took some part in the operation or management of the enterprise or that *(he) (she)* had some role in directing the enterprise's affairs.

> Evidence that *(name)* held a managerial position within the enterprise or exerted control over the enterprise's operations is enough to prove this element, but is not required.  You may find that *(name)* participated, directly or indirectly, in the conduct of the affairs of the enterprise if you find that *(he) (she)* was a lower level participant who acted under the direction of upper management, knowingly furthering the aims of the enterprise by implementing management decisions or carrying out the instructions of those in control, or that *(name)* knowingly performed acts, functions, or duties that were necessary to, or helpful in, the operation of the enterprise.

mails does not have to be an essential element of the fraudulent scheme in order to satisfy the mailing element of a claim based on mail fraud, provided the mailings are "incident to an essential part of the scheme." Tabas v. Tabas, 47 F.3d 1280, 1294 n.18 (3d Cir. 1995) (quoting Pereira v. United States, 347 U.S. 1, 8, 74 S. Ct. 358 (1954)).

The moving defendants' argument that 9(b) requires a plaintiff to allege facts that show the court its basis for inferring that the defendant acted with scienter likewise should be disregarded. In re Burlington Coat Factory Sec. Litig.,114 F.3d 1410, 1418 (3d Cir. 1997), the case they upon which they rely, is not a RICO action but a securities fraud case. The court considers the nature of the cause of action vital to its holding because of the threat of "strike suits based on no more than plaintiffs' detection of a few negligently made errors in company documents or statements (errors detected in the aftermath of a stock price drop)" that could subject public companies to unneeded litigation expenditures, particularly in light of the large quantities of information that public companies make publicly available. Id. In any event, this argument is moot as NVE has alleged that the defendants knew that Palmeroni was actively defrauding NVE and that they agreed to join this conspiracy. FAC ¶¶ 48-51, 53-66.

For the aforementioned reasons, NVE has pled a civil RICO claim under subsection (c) against the moving defendants.

NVE has also pled a civil RICO conspiracy claim. Under § 1962(d), it is unlawful to conspire to violate any of the substantive provisions of RICO. 18 U.S.C. § 1962(d). Contrary to the moving defendants' argument, failure to state a civil RICO claim under any of the prior subsections would not necessarily require dismissal of its RICO conspiracy claim under § 1962(d). Insurance Brokerage Antitrust Litig., 618 F.3d at

372.  The Supreme Court in Salinas v. United States, 522 U.S. 52 (1997), held that a

RICO conspiracy defendant need not commit or agree to commit predicate acts and that

a violation of §1962(c) is not a prerequisite to violating § 1962(d).  The Supreme Court

found that it "suffices that [the defendant] adopt the goal of furthering or facilitating the

criminal behavior."  Id., 522 U.S. at 65.  As the Third Circuit noted:  "The plain

implication of the standard set forth in Salinas is that one who opts into or participated in

a conspiracy is liable for the acts of his co-conspirators which violate section 1962(c)

even if the defendant did not personally agree to do, or to conspire with respect to, any

particular element."  Smith v. Berg, 247 F.3d 532, 537 (3d Cir. 2001).

The standard for reviewing a motion to dismiss is also different for § 1962(d)

conspiracy claims.  As the Third Circuit noted in Rose v. Bartle, 871 F.2d 331, 366 (3d

Cir. 1989) (involving a RICO conspiracy): "'Allegations of conspiracy are not measured

under the Fed. R. Civ. P. 9(b) standard, which requires greater particularity of

allegations of fraud, but are measured under the more liberal … Fed. R. Civ. P. 8(a)

pleading standard.' … The allegations must be sufficient to 'describe the general

composition of the conspiracy, some or all of its broad objectives, and the defendant's

general role in that conspiracy.'"  (citations omitted); see also Third Circuit Model Jury

Instruction 6.18.1962D.

NVE's allegations set forth in the FAC and RICO Case Statement describe the

general composition of the conspiracy, the conspiracy's objectives, the moving

defendants' knowledge of the main objectives and their general role in the conspiracy in

furtherance of its objectives.  RICO Case Statement at 34-37; FAC ¶¶ 12-70, 82-84.

Accordingly, NVE has met its burden at this stage, and the RICO conspiracy cause of action should not be dismissed.

POINT THREE

**NVE Has Alleged a Cognizable Claim that It Suffered RICO Damages
as a Result of the Alleged Conduct of the Moving Defendants.**

NVE has pled compensable damages claims against the moving defendants

based on civil RICO and RICO conspiracy causes of action.  This is because the factual

allegations support finding that the moving defendants' actions factually, proximately

and directly caused NVE to lose millions of dollars in brokerage commissions, sales and

profits.  FAC ¶¶ 70, 77, 84; RICO Case Statement at 37, 38.

Specifically, the Sunbelt Defendants' actions in the kickback scheme have

factually caused NVE at least $466,949.35 in damages as measured by the value of the

kickbacks paid to Palmeroni, because but for the Sunbelt Defendants'

misrepresentation by omission to NVE regarding what level of commission they needed

and how that money would be used, NVE would not have paid that much in

commissions and would have lowered the amount by the same quantity immediately.

FAC ¶ 126; RICO Case Statement at 4. Their participation in the kickback scheme also

directly caused NVE to suffer the same dollar amount in damages because the money

spent on commissions came directly out of NVE's profits and did not depend on any

contingency or other event.

As for the International Wholesale Defendants, the Brand New Energy

Defendants, ISG and Sumicek in his role as a distributor, their actions 'factually caused

NVE to suffer lost profits determined by the difference between the amounts paid by

these defendants for the NVE products sold to them by Palmeroni, Rosarbo or their

entities and what they would have paid under the higher price structure for products

intended for domestic distribution, because but for their participation in the Smart World

US scheme, NVE would have charged them the higher price for products being distributed domestically. FAC ¶ 126. The link is also a direct causal relationship because the resulting loss attributable to each of the Conspiring Distributors is not remote or dependent on some contingency occurring.

As noted above, NVE's injuries directly flow from the separate acts of the individual moving defendants, making the damages easily ascertainable as to each. Furthermore, NVE is not only the sole recipient of the misrepresentations and the intended target of the fraud, but also the most immediate and clear victim. Consequently, there is no need to the apportion damages among multiple plaintiffs. Because the Court in Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006) found that the plaintiff was not the most direct victim of the defendant's conduct, the Anza opinion is not analogous to the facts at issue.  It is instead much closer to the facts in Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008), wherein the Court stated:

> Respondents' injury – the loss of valuable liens – is the direct result of petitioners' fraud.  It was a foreseeable and natural consequence of petitioners' scheme to obtain more liens for themselves that other bidders would obtain fewer liens.  And here, unlike in Holmes and Anza, there are no independent facts that account for respondents' injury, there is no risk of duplicative recoveries by plaintiffs removed at different levels of injury from the violation, and no more immediate victim is better situated to sue. Indeed, both the District Court and the Court of Appeals concluded that respondents and other losing bidders were the *only* parties injured by petitioners' misrepresentations.

Id. at 658.

Accordingly, NVE has stated a cognizable RICO claim against the moving defendants for RICO damages.

POINT FOUR

**NVE Has Alleged Valid State Law Claims.**

Because the New Jersey RICO statute is consistent with the federal RICO

statute, NVE's sufficient allegations of federal civil RICO and RICO conspiracy

violations require finding that NVE has sufficiently alleged New Jersey state civil RICO

and RICO conspiracy violations, See Cetel v. Commonwealth Life Ins. Co., 460 F.3d

494, 510 (3d Cir. 2006) (citation omitted). As a result, the Third, Fourth and Fifth

Causes of Action based on New Jersey civil RICO and RICO conspiracy violations

should not be dismissed.

NVE adequately states a claim for the Seventh Cause of Action for common law

fraud and deceit.  As set forth in POINT TWO, the allegations contained in the FAC and

RICO Case Statement together meet the standard for pleading fraud with particularity.

As one court noted:

> The fact that plaintiff did not allege specific misrepresentations by the
> domestic distributors or their principals to the plaintiff does not release
> them from liability under a theory of common law fraud or fraudulent
> inducement. In New Jersey, a defendant may be held liable under these
> theories even if it did not utter a specific misrepresentation itself where
> the defendant "understandingly connected itself with the conspiracy [of
> others] to defraud the [plaintiff] and made possible the accomplishment of
> the fraudulent scheme." Judson v. Peoples Bank & Trust Co. of
> Westfield, 25 N.J. 17, 29 (1957) (appeal after remand) ("A person is liable
> with another if he, knows that the other's conduct constitutes a breach of
> duty and gives substantial assistance or encouragement to the other so
> to conduct himself . . .'"), quoting 4 RESTATEMENT, Torts (1939), sec.
> 876(b).

Shulton, Inc. v. Optel Corp., No. 85-cv-2925, 1986 U.S. Dist. LEXIS 19775, *65 (D.N.J.

Sep. 29, 1986).  NVE has established reliance on the misrepresentations, costing it

millions of dollars in commissions, sales and profits.  Therefore the court should

27

conclude that NVE has set forth sufficient allegations of fact for it to infer, taking all factual inferences as true, that the moving defendants made false statements and/or possessed scienter, and the seventh cause of action should not be dismissed.

The Eighth Cause of Action states a claim for interference with prospective economic advantage. What is actionable is "[t]he luring away, by devious, improper and unrighteous means, of the customer of another." Printing Mart-Morristown v. Sharp Elec. Corp., 563 A.2d 31, 37 (N.J. 1989) (quoting Louis Kamm, Inc. v. Fink, 113 N.J.L. 582, 586 (E. & A. 1934)). Specifically, the plaintiff must demonstrate that (1) it was in "pursuit" of business, (2) the interference was done intentionally and without justification or excuse, (3) that the interference caused the loss of prospective gain, and (4) that the injury caused damage. Printing Mart-Morristown, Id. at 37. The FAC and RICO Case Statement allege that NVE is actively engaged in interstate and foreign commerce, selling its products to consumers, brokers and distributors. RICO Case Statement 4. The crux of the conspiracy was the sale of NVE products. The documents also allege facts demonstrating how the Palmeroni enterprise, including the International Wholesale Defendants, Sumicek and the International Sales Group, and the Brand New Energy Defendants interfered with its pursuit, and did so intentionally and with malice by purchasing the products at the European resale price under the false pretense that it was the Dutch Smart World and not a sham corporation set up merely to undercut NVE's domestic sales price, and that as a result, NVE lost sales and prospective gain, and was economically damaged. As a result, NVE has stated a claim under this cause of action and it should not be dismissed.

The Ninth Cause of Action for civil conspiracy should not be dismissed either.  In New Jersey, a civil conspiracy is:

> a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.

Am. Corp. Society v. Valley Forge Ins. Co., No. 10-3560, 2011 U.S. App. LEXIS 8261, *8 (3d Cir. Apr. 7, 2011) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 876 A.2d 253, 263 (N.J. 2005) (internal quotation marks omitted)).  The FAC and RICO Case Statement together set forth factual allegations that the moving defendants acted in concert with Palmeroni and the other defendants to defraud NVE by obtaining fraudulently acquired NVE products at lower prices than would otherwise be available or by paying kickbacks in exchange for assignment, retention or manipulation of accounts. These acts are clearly unlawful, or at the very least were done through unlawful means. The documents also allege that a principal element was an agreement to injure or inflict a wrong against NVE.  Finally, the FAC and RICO Case Statement allege that the defendants committed overt acts that resulted in damage, as they detail the defendants' payments of kickbacks and/or purchases of fraudulently obtained NVE products, resulting in harm to NVE.   Accordingly, NVE has stated a lawful claim for conspiracy.

The Tenth Cause of Action states a claim for interference with property rights. The moving defendants have not put forth a valid argument or applicable law to warrant dismissal of the Tenth Cause of Action relating to their interference with the property rights of NVE, including their role in Palmeroni and Rosarbo's actions in taking kickbacks for commissions that NVE needlessly paid to the Conspiring Brokers and for

taking profits belonging to NVE by improperly selling domestically goods priced at a lower international rate. Consequently, this cause of action should not be dismissed.

CONCLUSION

For the reasons set forth above, Plaintiff N.V.E., Inc. respectfully requests that the Court (1) deny the renewed motion to dismiss the complaint filed by the International Wholesale Defendants and the Sunbelt Defendants (#316) and (2) deny the motion to dismiss all counts filed by the Brand New Energy Defendants (#345).

Respectfully submitted,

PASHMAN STEIN, P.C.
*Attorneys for Plaintiff N.V.E., Inc.*

By: _____

AIDAN P. O'CONNOR

Dated:  January 22, 2013