**ROBERT A. VORT**
2 University Plaza
Hackensack, New Jersey 07601
201-342-9501
Bar Id. No. 246401968
Attorney for Defendants
     National Retail Consulting Group,
     Inc. and Global Marketing & Sales
     Group, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **N.V.E., INC.** | : | |
| Plaintiff, | : | Civil Action No. **06-5455** (Hon. Esther Salas) |
| -vs- | : | ***ANSWER OF JESUS J. PALMERONI TO AMENDED COMPLAINT, COUNTERCLAIM AND THIRD PARTY COMPLAINT*** |
| **JESUS J. PALMERONI** a/k/a Joseph Palmeroni, **MICHELLE HOOEY** a/k/a Michelle Palmeroni, **MARIA C. PALMERONI, VINCENT ROSARBO, ANGELINA ROSARBO, NICOLE DILUNCO, NATIONAL RETAIL CONSULTING GROUP, INC., AMERICAN WHOLESALE DISTRIBUTION, SMART WORLD, INC., FOREMOST INTERNATIONAL, GLOBAL MARKETING & SALES GROUP, LLC, VAR CONSULTING, INC., RONALD SUMICK, SUNBELT MARKETING, INTERNATIONAL SALES GROUP, RICHARD D. HOROWITZ, JERALD I. HOROWITZ, PROFIT MOTIVATORS, INC. PMI GLOBAL MARKETING CORP., DIRK NIEUWENHUIS, CARLOS BENGOA, CB DISTRIBUTORS, INC., DARREN HOUSEHOLDER, BRAND NEW ENERGY, INC., STEVE R. SESSIONS, SESSIONS SPECIALTY COMPANY, JARRETT W. PORTZ, JOHN J. PORTZ, SR., KATHERINE M. PORTZ, INTERNATIONAL WHOLESALE SERVICE, INC., INTERNATIONAL WHOLESALE SUPPLY, INC., ALFRE-** | : : : : : : : : : : : : : : : | |

**DO D. FELICE, CHARMAINE C. FE-   :
LICE, CURTIS BEVERAGE, LLC,   :
SMART WORLD (NETHERLANDS), VI-   
TAL PARMA, T & J LIMITED, ABC :
COMPANIES 1-10 and JOHN DOES
1-10,   :**

           Defendants.   :

_____

**JESUS J. PALMERONI,**   :

      Third Party Plaintiff, :

        -vs-   :

**ROBERT OCCHIFINTO** and **WALTER**   :
**ORCUTT,**

      Third Party Defendant.  :

_____

     Jesus J. Palmeroni ("Palmeroni") whose address is 3308 Route 940, Suite 104, 413 Route 940, Mount Pocono, Pennsylvania 18344, answers the first amended complaint as follows:

### NATURE OF THE ACTION

     1.   Palmeroni does not respond to paragraph 1 because it pleads no facts, only conclusions of law.

### JURISDICTION AND VENUE

     2.   Palmeroni does not respond to paragraphs 2, 3 and 4 because they plead no facts, only conclusions of law.

### RELEVANT TIMES

     3.   Palmeroni does not respond to paragraphs 4, 5 and 6 because they plead no facts, only conclusions of law.

**PARTIES**

4.    Palmeroni admits that plaintiff maintains an office in Andover, New Jersey and that it was engaged in the distribution and sale of product during the term of his employment.  He denies knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 7.

5.    Palmeroni admits that he was employed for over six years by NVE in sales, that he held the position of vice president of sales, and that he had some control and influence over brokers and distributors of NVE's products.  He denies the remaining allegations of paragraph 8.

6.    Palmeroni admits that he was the only shareholder of National Retail Consulting Group ("National Retail") and the only member of Global Marketing & Sales, LLC ("Global").  He admits that he and Vincent Rosarbo owned the issued and outstanding stock of American Wholesale Distribution, Inc. and of Smart World, Inc.  He denies the remaining allegations of paragraph 9.

7.    Palmeroni admits that Michelle Hooey is a former employee of NVE, a resident of Pennsylvania and his wife.  He denies the remaining allegations of paragraph 10.

8.    Palmeroni denies the allegations of paragraph 11.

9.    Palmeroni denies knowledge or information sufficient to form a belief as to the truth of paragraphs 12, 13 and 14.

10.    Palmeroni admits that he was the only shareholder of

3

National Retailing, a Nevada corporation.  He denies the remaining allegations of paragraph 15.

11.    Palmeroni admits that he was a shareholder in Smart World, Inc., that he and Rosarbo owned all the issued and outstanding stock of Smart World, Inc., a Nevada corporation, and that Smart World, Inc. was formed on or about June 2001.  Palmeroni denies knowledge or information of the remaining allegations of paragraph 16.

12.    Palmeroni admits that American Wholesale Distribution, Inc. ("American Wholesale") was incorporated in Nevada by Rosarbo in or about July 2001 while both Rosarbo and he were employed by NVE.  Palmeroni denies knowledge or information sufficient to form a belief as to whether American Wholesale purchased any NVE products which were being sold by NVE.  Palmeroni denies the remaining allegations of paragraph 17.

13.    Palmeroni denies the allegations of paragraph 18.

14.    Palmeroni admits that Palmeroni was the owner of Global Marketing, and he denies the remaining allegations of paragraph 19.

15.    Palmeroni denies knowledge or information sufficient to form a belief as to the truth of paragraphs 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 and 36.

## SUBSTANTIVE FACTUAL ALLEGATIONS

16.    Palmeroni admits the allegations of paragraph 37.

4

17.    Palmeroni admits that, during his employment at NVE, he had some responsibility for sales of NVE and that its annual sales were over $2,000,000.  He denies the remaining allegations of paragraph 38.

18.    Palmeroni admits the allegations of the first sentence of paragraph 39 as it relates to the activities of NVE during the term of his employment.  Palmeroni denies the allegations of the second sentence of paragraph 39.

19.    Palmeroni denies the allegations of paragraphs 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51 and 52.

20.    Palmeroni denies the allegations of paragraph 53.

21.    Palmeroni denies knowledge or information sufficient to form a belief as to the truth of paragraphs 54, 55, 56, 57, 58, 59, 60, 61 and 62.

22.    Palmeroni denies the allegations of paragraphs 63 and 64.

23.    Palmeroni does not respond to paragraph 65 because it pleads no facts, only conclusions of law.

24.    Palmeroni denies the allegations of paragraphs 66, 67, 68, 69 and 70.

### FIRST COUNT
(Federal RICO and Conspiracy)

25.    Palmeroni repeats his answer to paragraphs 1 through 70 and, pursuant to Fed.R.Civ.P. 10(c), incorporates them into his answer to this count.

26.   Palmeroni admits the allegations of paragraphs 72 and 73.

27.   Palmeroni denies the allegations of paragraphs 74, 75, 76 and 77.

## SECOND COUNT
### (Federal RICO Substance and Conspiracy)

28.   Palmeroni repeats his answer to paragraphs 1 through 77 and, pursuant to Fed.R.Civ.P. 10(c), incorporates them into his answer to this count.

29.   Palmeroni admits the allegations of paragraphs 79 and 80.

30.   Palmeroni admits that, during the term of his employment, NVE was an enterprise within the meaning of 18 U.S.C. §1961(4), and he denies the remaining allegations of paragraph 81.

31.   Palmeroni admits that he was employed by NVE and that the activities of NVE during the term of Palmeroni's employment, affected interstate and foreign commerce.  He denies the remaining allegations of paragraph 82.

32.   Palmeroni denies the allegations of paragraphs 83 and 84.

## THIRD COUNT
### (New Jersey RICO Substantive)

33.   Palmeroni repeats his answer to paragraphs 1 through 84 and, pursuant to Fed.R.Civ.P. 10(c), incorporates them into his

answer to this count.

34.     Palmeroni admits the allegations of paragraphs 86 and 87.

35.     Palmeroni denies the allegations of paragraphs 88, 89, 90 and 91.

**FOURTH COUNT**
(New Jersey RICO Substantive)

36.     Palmeroni repeats his answer to paragraphs 1 through 91 and, pursuant to Fed.R.Civ.P. 10(c), incorporates them into his answer to this count.

37.     Palmeroni admits the allegations of paragraphs 93, 94 and 95.

38.     Palmeroni admits that he was employed by or associated with NVE and that NVE was an enterprise whose activities affected trade or commerce.  He denies the remaining allegations of paragraphs 96, 97, 98 and 99.

**FIFTH COUNT**
(New Jersey RICO Conspiracy)

39.     Palmeroni repeats his answer to paragraphs 1 through 99 and, pursuant to Fed.R.Civ.P. 10(c), incorporates them into his answer to this count.

40.     Palmeroni denies the allegations of paragraphs 101, 102, 103 and 104.

**SIXTH COUNT**
(Fraud)

41.     Palmeroni repeats his answer to paragraphs 1 through

104 and, pursuant to Fed.R.Civ.P. 10(c), incorporates them into his answer to this count.

42.    Palmeroni denies the allegations of paragraphs 106, 107, 108, 109, 110 and 111.

### SEVENTH COUNT
(Fraud-Deceit)

43.    Palmeroni repeats his answer to paragraphs 1 through 111 and, pursuant to Fed.R.Civ.P. 10(c), incorporates them into his answer to this count.

44.    Palmeroni denies the allegations of paragraphs 113, 114, 115, 116, 117, 118, 119, 120 and 121.

### EIGHTH COUNT
(Interference with Prospective Economic Advantage)

45.    Palmeroni repeats his answer to paragraphs 1 through 121 and, pursuant to Fed.R.Civ.P. 10(c), incorporates them into his answer to this count.

46.    Palmeroni denies the allegations of paragraphs 123, 124, 125, 126 and 127.

### NINTH COUNT
(Civil Conspiracy)

47.    Palmeroni repeats his answer to paragraphs 1 through 127 and, pursuant to Fed.R.Civ.P. 10(c), incorporates them into his answer to this count.

48.    Palmeroni denies the allegations of paragraphs 129 and 130.

## TENTH COUNT
### (Interference with Property Rights)

49.   Palmeroni repeats his answer to paragraphs 1 through 130 and, pursuant to Fed.R.Civ.P. 10(c), incorporates them into his answer to this count.

50.   Palmeroni denies the allegations of paragraphs 132, 133 and 134.

## ELEVENTH COUNT
### (Breach of Duty of Loyalty)

51.   Palmeroni repeats his answer to paragraphs 1 through 134 and, pursuant to Fed.R.Civ.P. 10(c), incorporates them into his answer to this count.

52.   Palmeroni admits the allegations of paragraph 136.

53.   Palmeroni denies deny the allegations of paragraph 137.

54.   Palmeroni denies the allegations of paragraph 138.

## TWELFTH COUNT
### (Breach of Contract)

55.   Palmeroni repeats his answer to paragraphs 1 through 138 and, pursuant to Fed.R.Civ.P. 10(c), incorporates them into his answer to this count.

56.   Palmeroni denies the allegations of paragraphs 140 and 141.

## THIRTEENTH COUNT
### (Accounting)

57.   Palmeroni repeats his answer to paragraphs 1 through 141 and, pursuant to Fed.R.Civ.P. 10(c), incorporates them into

his answer to this count.

58.   Palmeroni denies the allegations of paragraphs 143, 144, 145 and 146.

### FOURTEENTH COUNT
(Constructive Trust)

59.   Palmeroni repeats his answer to paragraphs 1 through 146 and, pursuant to Fed.R.Civ.P. 10(c), incorporates them into his answer to this count.

60.   Palmeroni denies the allegations of paragraphs 148 and 149.

### FIFTEENTH COUNT
(Breach of Contract, Unjust Enrichment and Book Account)

61.   Palmeroni repeats his answer to paragraphs 1 through 149 and, pursuant to Fed.R.Civ.P. 10(c), incorporates them into his answer to this count.

62.   Palmeroni denies the allegations of paragraphs 151, 152 and 153.

### FIRST AFFIRMATIVE DEFENSE

This action is barred by statute of limitations.

### SECOND AFFIRMATIVE DEFENSE

All actions of which NVE complains were authorized by Robert Occhifinto, president and, to the knowledge of Palmeroni, the only shareholder and a director of NVE.

## COUNTERCLAIM

Parties

1.    Third party defendant Robert Occhifinto ("Occhifinto") was NVE's president during the time of Palmeroni's employment by NVE and had supervisory authority over Palmeroni.  Upon informa- tion and belief, Occhifinto is a resident of New Jersey and is employed in the State of New Jersey.

2.    Third party defndant Walter Orcutt ("Orcutt") was NVE's Senior Vice President during the time of Palmeroni's employment by NVE and had supervisory authority over Palmeroni.  Upon infor- mation and belief, Orcutt is a resident of New Jersey and is em- ployed in the State of New Jersey.

3.    Palmeroni was employed by NVE during the period commen- cing in or about October 1999 and continuing until January 3, 2006.  At the time of his termination, Palmeroni was NVE's Vice President of Sales working under the supervision of Occhifinto and Orcutt.

Wrongful termination/CEPA violation

4.    On or about August 10, 2005, NVE viled a voluntary pe- tition of bankruptcy under chapter 11 of the U.S. Bankruptcy laws.  Since that time, NVE has operated the company as debtor and as a "debtor-in-possession."

5.    During the course of his employment, Palmeroni com- plained to Occhifinto and/or Orcutt about and/or refused to

participate in various of NVE's activities which Palmeroni rea-
sonably believeed to be fraudulent and/or illegal.  These acti-
vities included, but are not limited to, the following:

a.  Palmeroni learned that NVE's National Sales Mana-
ger, Arthur Prindle, was falsifying documents, increasing NVE's
stated insurance coveage so that it could misrepresent to its
customers that it had the amount of insurance those customers
required of it.  When Palmeroni spoke to Occhifinto and Orcutt
about this, in or about October of 2005, Occhifinto responded
that the matter of insurance coverage was not Palmeroni's depart-
ment and that Palmeroni should not worry about it.

b.  NVE gave Ford cargo vans to customers who agreed
to buy certain amounts of NVE's products.  In or about the fall
of 2005, when one of NVE's customers, International Sales Group,
did not meet its commitments, a sales associate, Glenn Lee, was
told to auction off several vans for cash.  When Palmeroni told
Occhifinto that the collection of the money for the vans would
make the creditor happy, Occhifinto sarcastically replied, "What
do you have to do with the vans again?"  Palmeroni then went to
Orcutt and told him that the assets from the sale of the vans
needed to be remitted to the creditors and that not doing so was
a serious violation.  Orcutt stated that he would look into it.
Upon information and belief nothing was ever done about the com-
pany's not remitting the cash proceeds from the sale of the vans

to the creditors.

    c.    After the bankruptcy filing, Occhifinto requested that Palmeroni set up numerous cash deals with customers so that they did not have to be reported to the creditor committee.  Palmeroni objected to Occhifinto about doing this stating that this would be bankruptcy fraud.  Palmeroni refused to set up the cash deals and further told Occhifinto that he felt very uncomfortable about such transactions.  Occhifinto called Palmeroni a "pussy."  He asked Palmeroni what he was worried about, questioned Palmeroni's loyalty to the company and stated that the "bankruptcy guys don't know where all the money goes."  After this incident, Palmeroni was not asked to participate in cash deals anymore and, upon in-formation and belief, was worked around when the company was mak-ing such a deal.

    d.    After the bankruptcy petition was filed, Occhifin-to had people on NVE's payroll do construction on his personal homes.  He charged the work done and the supplies for the con-struction to NVE.  Palmeroni complained to Orcutt about this and stated that such activity was going to get the company shut down.  Nothing was done about the situation.

<u>Violations of the LAD</u>

    6.    Prior to his termination, Palmeroni opposed the sexual harassment of certain of NVE's women employees and complained to Occhifinto and to Orcutt.  These activities included, but wre not

13

limited to the following:

a.   On numerous occasions, Occhifinto bragged in the office about sexual activities he had with women employees and other women.  Palmeroni told Occhifinto that this was not right and that he had to stop.  Occhifinto told Palmeroni to "mind his own business."

b.   In or about the summer of 2005, Palmeroni was informed of an incident in which one of NVE's male employees enticed a female former intern into Occhifinto's empty office to have sex.  Unbeknownst to the former intern, there was a prearrangement for several men, including Occhifinto and Orcutt, to view the sexual encounter through a window into the office.  Palmeroni angrily went to Orcutt about what he had heard and Orcutt laughed about the incident.  A short while later, Occhifinto called Palmeroni into his office, admitted that the incident occurred and asked Palmeroni how he had heard about the incident.  Palmeroni did not answer, but told Occhifinto that the people involved had "a lot of balls," and that the situation was "serious" and "unbelievable."  Occhifinto responded that Palmeroni was "sticking his nose in where it didn't belong" and "was stepping on very thin ice."

c.   In or about the fall of 2005, several NVE employees came to Palmeroni to report to him that an accounts receivable clerk, Diane Torre, had complained to them that Mr. Orcutt

14

continually made comments about her physique and sexually sugges-
tive remarks to her.  Such comments included that Ms. Torre's
"assets speak for themselves," and that Orcutt felt that he and
Ms. Torre could "have a lot of fun together."  Palmeroni reported
these complaints to Occhifinto, who said that he would look into
them.  Shortly thereafter, Palmeroni was called into Orcutt's of-
fice.  Orcutt told Palmeroni that there was a misunderstanding
that that "if that bitch didn't want people staring at her big
tits, she should cover them up more."  He further said that Pal-
meroni was a "little rat" and that he needed to learn to keep his
mouth shut if he valued his job.

   d. On numerous occasions, including during the fall
of 2005, Orcutt made sexually suggestive and offensive comments
in front of employees.  For example, when someone was in a bad
mood, Orcutt would say that they were "obviously not getting
any."  He threatened to put young women "over his knee."  He
talked loudly about prostitutes he engaged on a trip to the Domi-
nican Republic.  He drove an employee, Jennifer Duane-Hunsicker,
to tears continually commenting on her weight and how large her
"ass" had gotten following her pregnancy.  He told Ms. Duane,
"maybe if you dropped about 30 pounds people would have time for
your petty bullshit again."  Palmeroni complained to both Orcutt
and Occhifinto about these comments on many occasions.  Orcutt
told Palmeroni that if he didn't like the situation he could

quit.  With regard to Ms. Duane-Hunsicker, Occhifinto's reply to Palmeroni was "Fuck that bitch.  Get out of my office."  Occhifinto also told Palmeroni that he was moving into "dangerous territory."

   e. At the company Christmas party in December, 2005, a receptionist, Tiffany Kistle, became very drunk.  Male employees of the company attempted to take advantage of her.  Among them, Orcutt had her sit on his lap and a sales associate, Robert Cella, grabbed her breasts.  Palmeroni put a stop to the situation.  The next day, Palmeroni told Occhifinto about the situation and suggested that Cella be fired.  Occhifinto said that he did not want to fire Cella and then said "Keep pushing Joe [Palmeroni's nickname.} I don't think it is Cella who needs to worry about getting fired."

<u>Palmeroni is terminated</u>

  7. Palmeroni went on a short vacation between Christmas and New Year's Day and returned to work on January 3, 2006.  When he returned, he was called into Occhifinto's office.  Occhifinto told Palmeroni, in front of the company's in-house counsel, David Caldwell, that things "were not working out" and that he was fired.  Palmeroni was told to leave and was not allowed to go to his office to collect his personal effects.

  8. Upon being escorted out by Mr. Caldwell, Palmeroni told him that he believed he was being fired in retaliation for his

complaints.   When Mr. Caldwell heard this, he placed Palmeroni
into a conference room and asked him to wait there.   Mr. Caldwell
returned with Occhifinto shortly thereafter.   Occhifinto then
told Palmeroni that he was being terminated for poor performance.

Fraud and/or contractual breach as to year-end bonus

9.    During the course of Palmeroni's employment by NVE, in
the late winter or early spring of 2005, his salary was dramati-
cally reduced, from approximately $175,000 per annum to approxi-
mately $75,000 pe annum.   In response to Palmeroni's complaints
about this salary reduction, Occhifinto told Palmeroni that if he
continued to work for NVE notwithstanding the salary reduction,
he would be paid a year-end bonus at least equal to the amount of
the reduction of his salary.

10.   At the time Occhifinto so advised Palmeroni, Occhifinto
knew that no such year-end bonus would be paid to Palmeroni.

11.   In reliance on Occhifinto's representation, Palmeroni
continued to work for NVE notwithstanding the dramatic reduction
in his salary.

12.   NVE accepted Palmeroni's sevices but did not pay him
the promised year-end bonus.

13.   Occhifinto and NVE thus defrauded Palmeroni of servi-
ces.

14.   NVE thus breached its agreement with Palmeroni.

Fraud and/or contractual breach as to severance benefit

15.     In late 2005, Occhifinto sought to persuade NVE's employees, including Palmeroni, to sign a draconian non-competition agreement.

16.     In an effort to persuade Palmeroni to enter into that non-competition agreemeent, Occhifinto advised Palmeroni that he was entitled to a generous severance arrangement as part of his employment.  On this occasion, Occhifinto reminded Palmeroni that other NVE employees had received severance packages upon their separation from NVE's employ.

17.     Palmeroni continued to work for and to provide services to NVE relying in part on Occhifinto's statement that the terms of Palmeroni's employment included a severance arrangement.

18.     Upon Palmeroni's termination, however, no severance was provided to him.

19.     Occhifinto and NVE thus defrauded Palmeroni of services.

20.     NVE thus breached its agreement with Palmeroni.

**FIRST COUNTERCLAIM AND FIRST THIRD PARTY CLAIM**
(CEPA Violations Against NVE, Occhifinto and Orcutt)

21.     Palmeroni repeats and realleges all of the foregoing allegations as if set forth at length herein.

22.     NVE illegally terminated Palmeroni in retaliation for his disclosures to his supervisors, Occhifinto and Orcutt, and for his refusal to participate in activities which Palmeroni rea-

sonably believed were in violation of the law and/or fraudulent. Said retaliation is in violation of N.J.S.A.34:19-1 et seq.

23.   At all relevant times herein, third party defendants Occhifinto and Orcutt were both individuals acting directly or indirectly on behalf of or in the interest of NVE and with NVE's consent pursuant to N.J.S.A.34:19-2(a).

24.   Third party defendants Occhifinto and Orcutt illegally participated in the termination of Palmeroni's employment in retaliation for his disclosing to them and refusing to participate with them in their and the company's activities which Palmeroni reasonably believed to be in violation of the law and/or fraudulent.  Said retaliatory activity is in violation of N.J.S.A. 34:19-1 et seq.

25.   As a result of the actions and inactions stated above, Palmeroni suffered damages including, but not limited to, economic loss, time loss, emotional distress, and humiliation.

Wherefore defendant/counterclaimant Jesus J. Palmeroni demands judgment against the plaintiff, N.V.E., Inc. and against the third party defendants, Robert Occhifinto and Walter Orcutt, jointly and severally, as follows:

(a)   for back pay;

(b)   for front pay;

(c)   for compensatory damages;

(d)   for punitive damages;

19

  (e) for costs and attorney's fees;

  (f) for pre-judgment and post-judgment interest; and

  (g) for such other relief as to this Court may seem proper.

**SECOND COUNTERCLAIM**

(Wrongful Discharge as against Public Policy Against NVE)

26. Palmeroni repeats and realleges all of the foregoing allegations as if set forth at length herein.

27. NVE owed Palmeroni a duty not to retaliate against him because of his opposition to, reporting of and/or refusal to perform any act violative of a clear mandate of public policy.

28. Palmeroni refused to participate in acts violative of a clear mandate of public policy.

29. Palmeroni opposed and reported acts by NVE and/or its employees violative of a clear mandate of public policy.

30. NVE undertook retaliatory acts against Palmeroni, including his wrongful termination, in retaliation for his opposition to, reporting of and refusal to participate in acts violating a clear mandate of public policy.

31. Palmeroni was damaged thereby.

 Wherefore defendant/counterclaimant Jesus J. Palmeroni demands judgment against the plaintiff, N.V.E., Inc. as follows:

  (a) for back pay;

  (b) for front pay;

  (c) for compensatory damages;

20

       (d)   for punitive damages;

       (e)   for costs and attorney's fees;

       (f)   for pre-judgment and post-judgment interest; and

       (g)   for such other relief as to this Court may seem

proper.

### THIRD COUNTERCLAIM AND SECOND THIRD PARTY CLAIM
(Retaliation in violation of the LAD
Against NVE, Occhifinto and Orcutt)

32.   Palmeroni repeats and realleges all of the foregoing allegations as if st forth at length herein.

33.   NVE, and Occifinto and Orcutt individually, illegally terminated or participated in the illegal termination of Palmeroni's employment in retaliation for his opposing and reporting acts of sexual harassment.  Said retaliation is in violation of N.J.S.A.10:5-12(d).

34.   As a result of the actions and inactions stated above, Palmeroni suffered damages including, but not limited to, economic loss, time loss, emotional distress, and humiliation.

Wherefore defendant/counterclaimant Jesus J. Palmeroni demands judgment against the plaintiff, N.V.E., Inc. and against the third party defendants, Robert Occhifinto and Walter Orcutt, jointly and severally, as follows:

       (a)   for back pay;

       (b)   for front pay;

       (c)   for compensatory damages;

        (d)  for punitive damages;

        (e)  for costs and attorney's fees;

        (f)  for pre-judgment and post-judgment interest; and

        (g)  for such other relief as to this Court may seem

proper.

## THIRD THIRD PARTY CLAIM
(Aiding and abetting in violation of the LAD
Against Occhifinto and Orcutt)

35.    Palmeroni repeats and realleges all of the foregoing allegations as if set forth at length herein.

36.    Defeendants Occhifinto and Orcutt illegally aided and abetted each other and NVE in retaliating against Palmeroni for reporting and opposing their sexual harassment.  Said actions are in violation of N.J.S.A.10:5-12(e).

37.    As a result of the actions and inactions stated above, Palmeroni suffered damages including, but not limited to, economic loss, time loss, emotional distress, and humiliation.

Wherefore defendant/counterclaimant Jesus J. Palmeroni demands judgment against the third party defendants, Robert Occhifinto and Walter Orcutt, jointly and severally, as follows:

        (a)  for back pay;

        (b)  for front pay;

        (c)  for compensatory damages;

        (d)  for punitive damages;

        (e)  for costs and attorney's fees;

22

(f)   for pre-judgment and post-judgment interest; and

(g)   for such other relief as to this Court may seem proper.

## FOURTH COUNTERCLAIM AND FOURTH THIRD PARTY CLAIM
(Fraud)
(Against NVE and Occhifinto)

38.   Palmeroni repeats and realleges all of the foregoing allegations as if set forth at length herein.

39.   NVE and Occhifinto represented to Palmeroni that NVE would provide him with a generous severance arrangement and would pay him a year-end bonus at least equal to the reduction in Palmeroni's salary.

40.   At the time NVE and Occhifinto made these representations, they were already aware that such representations were untrue.

41.   In reliance on these representations by NVE and Occhifinto, Palmeroni provided NVE with services.

42.   Palmeroni was damaged thereby.

Wherefore defendant/counterclaimant Jesus J. Palmeroni demands judgment against the the plaintiff, N.V.E., Inc. and against the third party defendants, Robert Occhifinto, jointly and severally, as follows:

(a)   for compensatory damages;

(b)   for punitive damages;

(c)   for costs and attorney's fees;

23

(d)  for pre-judgment and post-judgment interest; and

(e)  for such other relief as to this Court may seem

proper.

## FIFTH COUNTERCLAIM
### (Breach of Contract)
### (Against NVE)

43.  Palmeroni repeats and realleges all of the foregoing allegations as if set forth at length herein.

44.  NVE and Palmeroni entered into an agreement pursuant to which Palmeroni provided services to NVE and pursuant to which NVE was obligated in various ways to Palmeroni.

45.  NVE breached its agreement with Palmeroni by failing to provide him with a severance arrangement and by failing to pay him an agreed upon bonus.

46.  Palmeroni was thereby damaged.

Wherefore defendant/counterclaimant Jesus J. Palmeroni demands judgment against the the plaintiff, N.V.E., Inc. as follows:

(a)  for compensatory damages;

(b)  for punitive damages;

(c)  for costs and attorney's fees;

(d)  for pre-judgment and post-judgment interest; and

(e)  for such other relief as to this Court may seem

proper.

Dated: April 9, 2014

_____
Robert A. Vort

24

**DEMAND FOR JURY TRIAL**

Palmeroni demands a trial by jury of all issues triable by jury.

Dated: April 9, 2014

_____
                                    Robert A. Vort

**CERTIFICATION PURSUANT TO LOCAL RULE 11.2**

Pursuant to Local Civil Rule 11.2, I certify that the matter in controversy in this action is the subject of no other action pending in any court or of any pending arbitration proceeding, that no other action or arbitration proceeding is contemplated and that all persons who should be joined as parties to this action have been joined.

Dated: April 9, 2014

_____
                                    Robert A. Vort

25