## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| N.V.E., INC.,<br><br>        Plaintiff,<br><br>                v.<br><br>JESUS J. PALMERONI, a/k/a JOSEPH PALMERONI, VINCENT ROSARBO, NATIONAL RETAIL CONSULTING GROUP, INC., AMERICAN WHOLESALE DISTRIBUTION, INC., GLOBAL MARKETING & SALES GROUP, LLC, and VAR CONSULTING, INC.<br><br>        Defendants. | Civil Action No.<br>2:06-cv-05455 (MCA)(LDW) |

---

### MEMORANDUM OF LAW IN SUPPORT OF
### PLAINTIFF N.V.E., INC.'S MOTIONS IN LIMINE

---

**PASHMAN STEIN WALDER HAYDEN, P.C.**
A Professional Corporation
*Attorneys for Plaintiff*
*N.V.E., Inc.*
21 Main Street – Suite 200
Hackensack, NJ 07601
ssamaro@pashmanstein.com
T. (201) 488-8200
F. (201) 488-5556

Of Counsel and on the Brief:

Samuel J. Samaro
James W. Boyan III

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

LEGAL ARGUMENT ........................................................................................................... 4

I.    THE COURT SHOULD BAR DEFENDANTS FROM OFFERING EVIDENCE
CONCERNING PRIOR CONVICTIONS ........................................................... 4

II.   THE COURT SHOULD PRECLUDE DEFENDANTS FROM OFFERING
IRRELEVANT OR UNDULY PREJUDICIAL EVIDENCE ............................. 8

    A.  The Fact that Occhifinto had a Child with Cosentino is Not Relevant .................. 9

    B.  References to Occhifinto's Wealth or Defendants' Lack of Wealth
are Not Relevant ................................................................................................. 9

    C.  Allegations that NVE Hired Undocumented Workers ......................................... 10

    D.  Palmeroni's Testimony in NVE's 2016 Trial in Michigan .................................. 10

    E.  The Suggestion that NVE Improperly Marketed Certain Products
Is Irrelevant ........................................................................................................ 11

    F.  Rosarbo Should not be Permitted to Testify that he has Cared for Disabled
Relatives and Others Matter Designed to Appeal for Sympathy ......................... 12

    G.  Defendants Should not be Permitted to Testify About Various Matters
Concerning Jared Wheat ...................................................................................... 12

    H.  The Court Should Preclude Defendants from Referencing NVE's
Application to the DEA or the Denial of that Application ................................... 13

III.  THE COURT SHOULD PRECLUDE DEFENDANTS FROM OFFERING
EVIDENCE CONCERNING ALLEGATIONS IN THE COUNTERCLAIM ..... 14

CONCLUSION ...................................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Becker v. ARCO Chemical Co.,*
 207 F.3d 176 (3d Cir 2000)..................................................................... 16

*Blancha v. Raymark Indus.,*
 972 F.2d 507 (3d Cir. 1992)..................................................................... 19

*Coleman v. Home Depot, Inc.,*
 306 F.3d 1333 (3d Cir. 2002)..................................................................... 9

*Draper v. Airco, Inc.,*
 580 F.2d 91 (3d Cir. 1978......................................................................... 10

*Innovation Ventures, LLC v. NVE, Inc.,*
 90 F. Supp. 3d 703 (E.D. Mich. 2015)......................................................... 6

*Langer v. Monarch Life Ins. Co.,*
 966 F.2d 786 (3d Cir. 1992)..................................................................... 19

*Moore v. Morton,*
 255 F.3d 95 (3d Cir. 2001)....................................................................... 12

*Novartis Pharm. Corp. v. Teva Pharm. USA, Inc.,*
 2009 WL 3754170 (D.N.J. Nov. 5, 2009) ................................................. 10

*United States v. Butch,*
 48 F. Supp. 2d 453 (D.N.J. 1999) ............................................................... 5

*United States v. Dennis,*
 625 F.2d 782 (8th Cir.1980) ..................................................................... 19

*United States v. Johnson,*
 195 Fed. Appx. 52 (3d Cir.2006)............................................................... 17

*United States v. Mehrmanesh*
 689 F.2d 822 (9th Cir. 1982) ..................................................................... 6

*United States v. Shannon,*
 766 F.3d 346 (3d Cir. 2014)....................................................................... 5

*United States v. Sriyuth,*
 98 F.3d 739 (3d Cir. 1996).......................................................................... 8

*United States v. Vosburgh,*
  602 F.3d 512 (3d Cir. 2010)......................................................................... 8

*United States v. Watkins,*
  2009 WL 927494 (C.D. Ill. Apr. 2, 2009) ................................................... 6

**Statutes**

21 U.S.C. § 1956............................................................................................... 5

**Other Authorities**

Fed. R. Evid. 402 .............................................................................................. 8

Fed. R. Evid. 609 .......................................................................................... 5, 6

## <u>PRELIMINARY STATEMENT</u>

Pursuant to the Federal Rules of Evidence, this Court should bar Defendants from offering evidence concerning:  ( 1) the criminal convictions of Robert Occhifinto or Arthur Prindle; (2) issues that are not relevant to the claims or defenses in this matter; (3) issues that would be unduly prejudicial, misleading, or confusing to the jury; and (4) the allegations in Defendant Jesus Palmeroni's counterclaim.

The Federal Rules of Evidence presumptively bar the use of criminal convictions that are more than ten years old and do not involve crimes of dishonesty or false statements.  *See* Fed. R. Evid. 609.  This Court should preclude Defendants from referring to the prior convictions of Occhifinto or Prindle because they are more than ten years old and they do not involve dishonest acts or false statements.  The order should specifically preclude defendants from asking witnesses questions that invite answers referring to the criminal history, as a way to indirectly open the door to this subject area.

The Court should also bar Defendants from offering evidence that is unduly prejudicial but has little or no probative value.  It has long been apparent in this case that Defendants' chief strategy, and only plausible route to victory, is to smear Occhifinto and his company with outrageous (and uncorroborated) claims of wrongdoing.  It can be anticipated that this will be a constant theme during the trial, and NVE requests that the appropriate order be entered ahead of time to prevent unfair prejudice to NVE, time-consuming detours into proceedings over collateral matters and risk of mistrial.  Some likely subject matters for this tactic can be gleaned from topics explored by Palmeroni's counsel during discovery and other pretrial proceedings and we specifically seek an order barring any reference in front of the jury to the following topics:

1

(1) Occhifinto having a child with NVE employee, Patti Cosentino or any other suggestion that Occhifinto was a womanizer; (2) Occhifinto's net worth, including descriptions of his financial holdings or interest in properties; (3) allegations that NVE hired illegal immigrants; (4) Palmeroni's testimony against NVE at a trial held in Michigan in 2016; (5) the suggestion that NVE improperly labeled or marketed its products; (6) the fact that certain members of Rosarbo's family are disabled; (7) NVE's and Occhifinto' prior relationship with Jared Wheat; and (8) the fact that NVE applied to the Drug Enforcement Agency ("DEA") for a license to sell pseudoephedrine and the fact that the DEA denied the application. None of those issues are relevant to the claims or defenses in this matter and all of them could unfairly prejudice NVE.

The strategy to deflect attention by making outrageous claims about NVE included, of course, the allegations made by Palmeroni in his counterclaim. That pleading was dismissed by this Court by order dated January 27, 2017. Nevertheless, NVE anticipates that Palmeroni will try to re-introduce some or all of those topics into these proceedings and, therefore, it seeks an order specifically preventing him from doing so. The particular allegations that should not be permitted are as follows: 1) evidence that NVE was falsifying records to misrepresent the amount of its insurance coverage; 2) that NVE sold certain vans for cash that it then hid from the creditor's committee in bankruptcy; 3) that NVE set up other cash deals to hide money from the creditor's committee; 4) that Occhifinto had people on the NVE payroll perform projects on his personal home; and 5) that sexual harassment was rampant at the NVE.

## STATEMENT OF FACTS

NVE is a corporation engaged in the manufacture, distribution, and sale of nutritional supplements and energy drinks. Occhifinto is the owner of NVE and its President. Palmeroni was employed for over six years in sales for NVE, rising to the positions of Vice President of

Sales and National Director of Sales. NVE terminated Palmeroni's employment on January 3, 2006 when it learned that he had defrauded the Company of millions of dollars.  Defendant Vincent Rosarbo was employed by NVE as a salesman from 2001 to 2004, when he consented to and executed a Separation Agreement.

While they were employed by NVE, Palmeroni and Rosarbo were owners of other businesses, some individually and some together.  One of those businesses was called National Retail Consulting Group ("NRCG").  Palmeroni was the 100% owner of NRCG which he formed to collect illicit payments from NVE's brokers.  Palmeroni and Rosarbo were the joint owners of Smart World, Inc. and American Wholesale Distribution, Inc. ("AWD").

At all times relevant to this dispute, NVE sold products overseas at a fraction of the wholesale price of products it sold in the United States.  The reasons for this were that foreign purchasers had to pay shipping, they did not have benefit of NVE's domestic marketing program, and NVE wished to promote market penetration in other countries.

Defendants formed Smart World, Inc. to purchase NVE products for resale.  The name "Smart World, Inc." was chosen by Palmeroni and Rosarbo because it sounded like Smart World, B.V., an NVE distributor located in the Netherlands.  Defendants formed AWD to sell the products purchased by Smart World, Inc.  Palmeroni and Rosarbo used Smart World, Inc. as a vehicle to purchase NVE products at NVE's steeply discounted export price and resell them domestically at a higher price.

Palmeroni and Rosarbo purchased the products by having representatives of Smart World, B.V. place the orders with NVE pretending that the products were for shipment overseas. For that service, Palmeroni and Rosarbo paid a percentage of their profits to the principals of

Smart World, B.V., Thomas Sikkink and Jeroen Garvlijn.  In total, Palmeroni and Rosarbo paid them over $900,000 for their participation in the scam.

After the products were ordered by Smart World, B.V. on behalf of Smart World, Inc., they were picked up by a company called Foremost International ("Foremost"), located in Carlstadt, New Jersey, ostensibly for shipment overseas.  Instead, the products were stored by Foremost until they were shipped to domestic customers.  Palmeroni and Rosarbo sold the products to existing NVE customers at a price lower than NVE was charging them for the same products.  Palmeroni and Vincent Rosarbo received $2,302,426.02 in profit from this scheme.

In his capacity as Vice President of Sales, Palmeroni's job responsibilities included identifying, managing, and negotiating with distributors and brokers of NVE products. Generally speaking, distributors are wholesalers who purchase products at wholesale prices and sell them to retailers.  Brokers are entities that convince distributors to carry a manufacturer's product line in exchange for a commission paid by the manufacturer.   Through various means including assignment of distribution accounts and threats to take accounts away, Palmeroni convinced certain brokers to pay him a percentage of their brokerage commissions as kickbacks. Palmeroni processed the payments he received as kickbacks through NRCG.  In total, Palmeroni received $1,201,492.98 in illicit kickbacks from various NVE brokers.

## ARGUMENT

### I.    THE COURT SHOULD BAR DEFENDANTS FROM OFFERING EVIDENCE CONCERNING PRIOR CONVICTIONS

In the section of the proposed pretrial order describing Palmeroni's anticipated motions, he notes that "Palmeroni also will move for in limine instructions permitting impeachment of Occhifinto and others on t he basis of prior convictions and barring the use of Palmeroni's convictions to impeach him."  The Court should bar Defendants from offering that evidence.

4

In 1991, Occhifinto was convicted of four drug-related offenses:  (1) conspiracy to import hashish; (2) conspiracy to possess hashish; (3) importation of hashish; and (4) possession of hashish with intent to distribute.  Occhifinto was fined $200.00 and received probation based upon his minimal participation in the underlying events.  Also in 1991, Occhifinto pled guilty to one count of money laundering under 21 U.S.C. § 1956.  On June 4, 1996, he was sentenced to 18 months in federal prison and fined $50,000.00 for that offense.  He was released from prison on December 30, 1997.

Fed. R. Evid. 609 governs the use of past convictions as evidence for impeachment purposes.  Pursuant to Fed. R. Evid. 609(b), evidence concerning convictions that are more than 10 years old is presumed to be inadmissible.  The Rules preclude the admission of evidence concerning a conviction that is more than 10 years old unless "its probative value, supported by specific facts and circumstances**, substantially outweighs** its prejudicial effect."  *United States v. Shannon*, 766 F.3d 346, 352 n. 9 (3d Cir. 2014) (emphasis added) (quoting Fed. R. Evid. 609(b)(1)).  "It is intended **convictions over 10 years old will be admitted very rarely** and only in exceptional circumstances."  Fed. R. Evid. 609(b) Advisory Committee's notes (emphasis added).

In determining whether a conviction is admissible under Rule 609(b) a court may consider the factors set forth in 609(a)(1), but the threshold for admissibility under 609(b) is far higher. *United States v. Butch*, 48 F. Supp. 2d 453, 464 –65 (D.N.J. 1999).  In addition, the proponent of evidence concerning a conviction that is more than 10 years old bears the burden of establishing that the probative value of the evidence substantially outweighs its prejudicial effect. *Id*.

5

Occhifinto's convictions are more than 10 years old.  His first conviction occurred 23 years ago in 1991.  He received probation for that offense.  His second conviction also occurred in 1991.  He was released from confinement for that conviction on December 30, 1997—almost twenty years ago.   Under Fed. R. Evid. 609(b), these convictions are presumed to be inadmissible because they are more than 10 years old.

The Court should bar Defendants from offering evidence concerning these convictions at trial.  As an initial matter, the U.S. District Court for the Eastern District of Michigan has already analyzed Occhifinto's convictions under Rule 609.  *Innovation Ventures, LLC v. NVE, Inc.*, 90 F. Supp. 3d 703, 731 ( E.D. Mich. 2015).  In that case, the district court granted NVE's motion *in limine* and barred the plaintiff from offering evidence concerning Occhifinto's prior convictions.

In addition, the types of crimes do not weigh in favor of admissibility.  Occhifinto's conviction for smuggling hashish into the United States in violation of 18 U.S.C. § 545 does not fall within the scope of Rule 609(a)(2) because it is not the type of crime that involves an element of misrepresentation or a propensity to lie.  *See United States v. Mehrmanesh* 689 F.2d 822, 833 (9th Cir. 1982) (holding that a conviction for smuggling hashish under 18 U.S.C. 545 "does not fall within the scope of Rule 609(a)(2)).  Similarly, a conviction for conspiracy to commit money laundering does not qualify as a conviction involving dishonesty or false statements. *United States v. Watkins*, No. 08-30070, 2009 WL 927494, at *1 (C.D. Ill. Apr. 2, 2009) (acknowledging that conspiracy to commit money laundering is not admissible under Rule 609(a)(2)).

Occhifinto's convictions are both from 1991.  More than 25 years have passed since the convictions occurred (i.e., two and half times the 10-year standard set forth in Rule 609, beyond which there is a presumption against admissibility).   In addition, the crimes do not  involve

misrepresentations or show a propensity to lie.  His prior convictions have little or no probative value but they carry the risk of a severe prejudicial effect.  Since the probative value does not substantially outweigh its prejudicial effect, the Court should exclude any evidence relating to those convictions.

For the same reasons, this Court should bar Defendants from offering evidence concerning of Arthur Prindle's prior conviction.[1]  In 1992, he was convicted of conspiracy to import controlled substances into the United States.  He served a six-year federal prison sentence and successfully completed a three-year term of supervised release.  (Transcript from the March 31, 2016 Deposition of Arthur Prindle 6:24-7:14, attached to the Certification of Samuel J. Samaro ("Samaro Cert.") as Exhibit A).  Prindle's conviction is well over 10 years old.  Accordingly, evidence concerning that conviction is presumed to be inadmissible and is subject to the more stringent analysis discussed above.  Moreover, Prindle was convicted of conspiracy to import a controlled substance – just like Occhifinto.  As explained above, this is not the type of crime that involves a misrepresentation or a propensity to lie.  Accordingly, the Court should bar Defendants from offering evidence concerning Prindle's prior conviction.

Ironically, Palmeroni and Rosarbo have similar criminal backgrounds.  On March 28, 1991, Palmeroni was sentenced to 40 months in federal prison after pleading guilty in the United States District Court for the Eastern District of Texas.  (See March 28, 1991, Judgment of Conviction, attached to the Samaro Cert as Exhibit B).   Vincent Rosarbo was convicted of bookmaking in federal court in Connecticut in 1995 and was sentenced to 10 months – five months incarceration and five months of home confinement.  (Transcript from the December 11, 2015 Deposition of Vincent Rosarbo ("Rosarbo Dep. Vol. I") 19:21-20:21, attached to Samaro

---

[1] Prindle is a sales employee of NVE, who has worked for the company since 2000 and once reported to Palmeroni.  NVE identified him as a trial witness in the Pretrial Order.

Cert. as Exhibit C).    Rosarbo spoke the truth when he testified at his deposition that Occhifinto,

as an ex-convict himself, was trying to give Palmeroni and Rosarbo, and a number of others, a

second chance.  (Transcript from the March 23, 2016 Deposition of Vincent Rosarbo ("Rosarbo

Dep. Vol. II") 226:3-13, attached to Samaro Cert. as Exhibit D).  It would be truly unjust if a

beneficiary of that kindness could somehow use it as a basis to impeach Occhifinto's credibility.

We believe that the fairest result is to bar all sides from using past criminal conviction evidence

in this trial and respectfully request an order prohibiting the parties from making any such

references in front of the jury.  In the event that the Court will not agree to that relief, the order

should reflect that Palmeroni and Rosarbo's criminal convictions are relevant to the same extent

as Occhifinto and Prindle's.

## II.    THE COURT SHOULD PRECLUDE DEFENDANTS FROM OFFERING IRRELEVANT OR UNDULY PREJUDICAL EVIDENCE

Relevant evidence, as defined by Rule 401, is "evidence having any tendency to make

the existence of any fact that is of consequence to the determination of the action more probable

or less probable than it would be without the evidence." *United States v. Sriyuth*, 98 F.3d 739,

745 (3d Cir. 1996) (quoting Fed. R. Evid. 401).  Of course, "[i]rrelevant evidence is not

admissible." Fed. R. Evid. 402).    However, even relevant evidence may be excluded if its

admission is outweighed by other considerations and the Court has broad discretion to make such

determinations.  *United States v. Vosburgh*, 602 F.3d 512, 537 (3d Cir. 2010).  Fed. R. Evid. 403

provides that "[t]he court may exclude relevant evidence if its probative value is substantially

outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The Third Circuit has explained that "evidence may be excluded if its probative value is not

worth the problems that its admission may cause . . . ."  *Coleman v. Home Depot, Inc.,* 306 F.3d

1333, 1343 (3d Cir. 2002).  As noted, it can be anticipated that Palmeroni in particular will seek to inject irrelevant or unduly prejudicial information and allegations into these proceedings and NVE therefore seeks a preemptive order preventing that from happening.

      **A.**    **The Fact that Occhifinto had a Child with Cosentino is Not Relevant**

Patti Cosentino, an employee of NVE until 2002, and Occhifinto had a child together. Repeated references to that fact have been made by Palmeroni's counsel and in the Pretrial Order, the suggestion is made that Ms. Cosentino will be called as a trial witness.  There is no claim or defense in this matter that could possibly render the information that Occhifinto and Ms. Cosentino had a child together relevant.  Accordingly, this Court should bar Defendants from offering any evidence concerning that issue.

      **B.**    **References to Occhifinto's Wealth or Defendants' Lack of Wealth are Not Relevant**

Repeated references have been made by Palmeroni and his counsel to the fact that Occhifinto is wealthy.  As an example, on page 7 of Palmeroni's so-called "expert report" the following statement is made:  "Occhifinto also needed cash for substantial personal expenses such as a $10,000,000 former plantation in South Carolina and $2,000,000 for a private plane."[2] (Report of Jesus Jose Palmeroni ("Palmeroni Report") dated July 19, 2016, attached to the Samaro Cert. as Exhibit E).  Furthermore, Palmeroni has filed for bankruptcy protection and in many places throughout his deposition, Rosarbo complained that he had no m oney and was being unfairly hounded by a rich man.  (Rosarbo Dep. Vol. II 189:3-8, 197:9-11, Samaro Cert. Ex. D)  The purpose of such statements is not to make the existence of a consequential fact more or less probable, it is to invite the jury to believe that Occhifinto is greedy and the Defendants are poor and worthy of sympathy.  Making reference to a litigant's wealth or the disparity of wealth

---

[2] Needless to say, these statements are grossly inaccurate.

between parties is improper and prejudicial.  *See Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978).  For that reason the Court should enter an order prohibiting references to such matters in front of the jury.

### C.   Allegations that NVE Hired Undocumented Workers

The identity and immigration status of NVE employees is not relevant to any of the claims or defenses in this matter.  Such evidence has no probative value, and its introduction could lead to unfair prejudice.  Accordingly, Defendants should be precluded from offering evidence on this issue at trial.

### D.   Palmeroni's Testimony in NVE's 2016 Trial in Michigan

The introduction of evidence concerning prior and collateral litigations is likely to result in unfair prejudice, confusion, and undue delay.  *See Novartis Pharm. Corp. v. Teva Pharm. USA, Inc.*, No. CIV.A.05-CV-1887 DMC, 2009 WL 3754170, at *9 ( D.N.J. Nov. 5, 2009) (precluding evidence concerning prior and collateral litigations on the grounds that it was likely to result in unfair prejudice, confusion, and undue delay).  In 2016, Palmeroni testified against NVE in a trademark infringement case in the United States District Court for the Eastern District of Michigan.  Palmeroni's testimony in that case is not relevant to this matter.  Evidence that Palmeroni testified against NVE in that case could lead to unfair prejudice because it could create an inference that NVE is seeking to retaliate against Palmeroni for his involvement in that case.  That is simply not true.  NVE filed this litigation in 2006 (i.e., two years before the Michigan matter was even initiated).  A reference to Palmeroni's testimony could also lead to an explanation of the nature of that case which would pose a serious risk of unfair prejudice to NVE because that the result of that trial was a large judgment against NVE.  Since there is a distinct

possibility that that references to the Michigan case would result in unfair prejudice to NVE, this Court should preclude Defendants from offering any evidence relating to that matter.

**E.     The Suggestion that NVE Improperly Marketed Certain Products is Irrelevant**

In numerous places throughout the record, Defendants claim that NVE improperly marketed its products in questionably ethical ways.  For instance, Palmeroni has alleged that NVE named some of its products (e.g., Black Beauties and Yellow Jackets) after street drugs. (*See* Transcript from the December 16, 2009 Deposition of Jesus Palmeroni in the matter of "*Innovation Ventures LLC v. N.V.E., Inc*." 62:6-66:17 attached to the Samaro Cert. as Ex. F).  In his so-called "expert report," Palmeroni references Occhifinto's testimony before Congress where NVE's marketing practices were questioned.  (Palmeroni Report, p. 8-9, Samaro Cert. Ex. E).  During his deposition, Rosarbo testified that in his opinion, NVE was marketing its products to underage people by advertising at World Wrestling Entertainment ("WWE") matches and sponsoring a NASCAR team.  (Rosarbo Dep. Vol. II 155:15-157:3, Samaro Cert. Ex. D).  Aside from the fact that these claims are largely unsupported by anything other than anecdotal evidence, they simply do not make the existence of a consequential fact more or less probable.

The only possible relevance of such information is the extent to which it would tend to discredit NVE in the eyes of the jury.  However, that would mean that it is being used to impugn NVE and Occhifinto's character, which is impermissible under the Federal Rules of Evidence. Fed. R. Evid 404(a) provides that "evidence of a person's character trait, including a trait or care or skill or lack thereof, is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion."  It is true that Rule 404(b) provides an exception to the exclusion of character evidence when such evidence is not being used to prove that a person acted in conformity therewith but rather to prove things like motive, intent, opportunity,

knowledge and so forth.  However, no 404(b) purpose has ever been described nor could it be described given the issues that will be decided by this jury.  As such, it is requested that the order provide that criticisms of the company's marketing practices not be permitted.[3]

F.   **Rosarbo Should not be Permitted to Testify that he has Cared for Disabled Relatives and Others Matter Designed to Appeal for Sympathy**

In his deposition, Rosarbo made repeated references to the fact that he has had to care for disabled relatives.  (Rosarbo Dep. Vol. I 38:4-40:24, Samaro Cert. Ex. C).  Especially because he is a *pro se* Defendant, it is possible that Rosarbo will seek to garner sympathy from the jury by referring to such matters, and perhaps other things, when he testifies.  Such information is obviously not relevant to any issue in the case and it is a long-established principle of trial practice that parties are not permitted to make "appeals for jurors to decide cases based on passion and emotion."  *Moore v. Morton*, 255 F.3d 95, 117 ( 3d Cir. 2001).   Accordingly, the Court should bar any reference to those issues at trial.

G.   **Defendants Should not be Permitted to Testify About Various Matters Concerning Jared Wheat**

At various points in their depositions, Rosarbo and Palmeroni testified that they complained about Occhifinto's business relationship with an individual named Jared Wheat.  They claim that Wheat is an ex-convict who developed an herbal supplement called StaminaRX that was marketed as a substitute for medications like Viagra.  (Transcript from the May 12, 2010 Deposition of Jesus Palmeroni, ("Palmeroni Dep. Vol. I") 94:20-96:21, attached to the Samaro Cert. as Exhibit H).  They allege that NVE manufactured this product for Wheat and

---

[3] The Order should also preclude any reference to Occhifinto's testimony before Congress.  That transcript is freely available on the internet.  If members of the jury hear any references to it, they may be very tempted to engage in extra-judicial research.

because it contained a substance called Tadalafil NVE was "raided" by the FDA. (Id. at 138:7-144:17).

NVE fully complied with the FDA's investigation of Wheat and his businesses and no criminal charges were brought against Occhifinto or NVE based on their relationship with Wheat.[4]   Neither Palmeroni nor Rosarbo has asserted a claim that they were penalized in any way because they complained, and thus, information about Wheat, the StaminaRx product and the so-called raid would simply be designed to impugn NVE and Occhifinto's character. Pursuant to Fed. R. Evid 404(a), the Court should prohibit Defendants from referring to those matters before the jury.

### H.   The Court Should Preclude Defendants from Referencing NVE's Application to the DEA or the Denial of that Application

During Occhifinto's deposition, Palmeroni's counsel questioned him about NVE's application to the DEA to sell pseudoephedrine.   (Transcript from the January 21, 2016 Deposition of Robert Occhifinto ("Occhifinto Dep.") 14:1-4, 39:10-15, attached as Exhibit K to the Samaro Cert.)   The fact that NVE applied to the Drug Enforcement Agency ("DEA") for a license to sell pseudoephedrine while Occhifinto was in prison is not relevant to any of the claims or defenses in this matter.   Nor is the fact that the DEA denied NVE's application.   Any references to those issues would be unfairly prejudicial.   Accordingly, the Court should bar defendants from raising those issues at trial.

---

[4] In 2009, Wheat was convicted Conspiracy to Commit Mail and Wire Fraud and to Introduce and Deliver Unapproved New and Adulterated Drugs into Interstate Commerce based on his distribution of unapproved drugs, including StaminaRX.   (Judgement of Conviction dated February 2, 2009 attached to the Samaro Cert. as Exhibit L).

13

### III.    THE COURT SHOULD PRECLUDE DEFENDANTS FROM OFFERING EVIDENCE CONCERNING ALLEGATIONS IN THE COUNTERCLAIM

On April 26, 2007, Palmeroni filed a Counterclaim against NVE and a Third Party Complaint against Occhifinto and Walter Orcutt (hereinafter, the "Counterclaim").  (Docket Nos. 13 and 401).  In the Counterclaim, Palmeroni alleged that NVE, Occhifinto and/or Orcutt:  1) falsified records to misrepresent the amount of its insurance coverage; 2) sold certain vans for cash that they then hid from the creditor's committee in bankruptcy; 3) set up other cash deals to hide money from the creditor's committee; 4) had people on the NVE payroll perform projects on Occhifinto's personal home; and 5) tolerated an environment where sexual harassment was rampant.

On July 1, 2016, NVE, Occhifinto and Orcutt filed a motion for summary judgment on the Counterclaim.  (Docket No. 590).  During oral argument on that motion, Palmeroni's counsel admitted that there is no evidence to support the allegations in the Counterclaim "other than [Palmeroni's] own self-serving statements."   (Transcript from the January 26, 2017 M otion Hearing 69:11-14, attached to the Samaro Cert as Exhibit G).   In contrast, the Court found that the evidence that NVE discharged Palmeroni due to his fraudulent activity was "overwhelming." "There is overwhelming evidence that he was involved in fraudulent activity – overwhelming." (Id. at 69:15-20).  On January 27, 2017, the Court granted NVE's motion for summary judgment and dismissed the Counterclaim in its entirety.  (Docket No. 636).  On February 10, 2017, Palmeroni filed a motion for reconsideration of the Court's January 27, 2017 Order dismissing the Counterclaim, which is currently pending before the Court.  (Docket No. 641).

For several reasons, the Court should preclude Defendants from offering any evidence concerning the allegations in the Counterclaim.  First, the Court dismissed the Counterclaim on summary judgment due Plaintiff's failure to support it with admissible evidence.  As a result, the

unsubstantiated allegations in that pleading are no l onger relevant to any of the claims or defenses in this matter.  As discussed above, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402.

Second, even if it were possible to make an argument that some of the allegations in the counterclaim are tangentially relevant to some issues, this Court should exclude them under Fed. R. Evid. 403.  As discussed above, the Court may exclude evidence that is otherwise relevant if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury.   The allegations of sexual harassment and sexual impropriety are only useful to Defendants to impugn the character of Occhifinto and NVE and thus no theory, however implausible, supports the admissibility of such information now that the counterclaim has been dismissed.

It is sometimes argued that evidence like that supporting the balance of the counterclaim is admissible under other rules, specifically Fed. R. Evid. 406 ( Habit; Routine Practice) and 608(b) (court's discretion to allow cross-examination on pa rticular instances of misconduct in order to attack witness' character for truthfulness).  However, given the issues left to be tried in this case, the extreme prejudice to Plaintiff by the admission of such "evidence" and the complete dearth of facts supporting any of the allegations, the Court should preclude Defendants from using or referring to such allegations in any way for any purpose.

It will be recalled that Plaintiff's case is based on the existence of two fraudulent schemes:  t he distribution scheme and the kickback scheme.  P almeroni does not deny the existence of the distribution scheme.  He claims that he knew nothing about it because it was run by Rosarbo.  (Transcript from the February 1, 2016 Deposition of Jesus Palmeroni, ("Palmeroni Dep. Vol. II 134:19-137:14, attached to the Samaro Cert. as Exhibit I).  But he does not deny that

it occurred.  The kickback scheme is justified by Palmeroni on the basis of an agreement he claims to have made with Occhifinto.  He asserts that Occhifinto permitted him to work out private deals with NVE brokers that would require such brokers to pay Palmeroni up to 20% of their commissions.  (Id. at 37:14-42:4).  Occhifinto denies making any such deal and so the jury must decide which of the two is lying.

The Rule 406 question comes down to whether the counterclaim allegations establish a "habit or practice" on the part of NVE or Occhifinto that makes the existence of the agreement alleged by Palmeroni to be more likely.  The rule provides that "[e]vidence of the habit of a person or the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or practice."  However, it is not enough to establish that the habit or practice is consistent with the *character* of the person or organization.  Rather, it must be proven that the conduct at issue a "semi-automatic" reaction to a specific situation.  *Becker v. ARCO Chemical Co.,* 207 F.3d 176, 201 (3d Cir 2000).  "A habit . . . is the person's regular practice of meeting a particular kind of situation with a specific conduct, such as the habit or going down a particular stairway two stairs at a time, or giving the hand-signal for a left turn, or alighting from railway cars while they are moving.  The doing of habitual acts may become semi-automatic."  *Ibid.* (citing Rule 406 Advisory Committee Notes).  Palmeroni offers no evidence that when NVE or Occhifinto are presented with situations similar to those at issue here they habitually enter into agreements that would allow employees to accept kickbacks from NVE brokers.  Palmeroni wishes the jury to believe that evidence establishes that the character of NVE and Occhifinto makes such an agreement plausible, which is impermissible.

16

It is true that pursuant to Rule 608(b), the court has discretion to allow bad acts to be explored on cross-examination on the question of character for truthfulness, but such acts must be "probative," which must mean, at a minimum, that there is some reason to believe that they actually happened. *See United States v. Johnson*, 195 F ed. Appx. 52, 62 ( 3d Cir.2006) (concluding that evidence was inadmissible under Federal Rule of Evidence 608(b) because it was not probative of truthfulness and the allegations were unsubstantiated). Here there is no reason to believe that the allegations in the counterclaim actually happened.

Palmeroni described the so-called insurance fraud issue during his deposition. (Palmeroni Dep. Vol. II, 71:18-84:11, Samaro Cert. Ex. I). In the early 2000s, the Company obtained self-insurance policy from a Bermuda company.  NVE provided all of the funding for the policy and the Bermuda company issued accurate certificates of insurance to NVE and its customers. ( Transcript from the Deposition of David Caldwell 31:2-33:14, attached to the Samaro Cert. as Exhibit J).  For some unexplained reasons, Palmeroni interpreted this transaction as fraudulent (Palmeroni Dep. Vol. II 79:4-14, Samaro Cert. Ex. I), but he is mistaken.  He claims that a particular NVE employee, Art Prindle, made a cryptic reference to the insurance certificates that he interpreted as admitting that they were forged.  (Id.).  But when Palmeroni was asked the direct question: "do you know if any false or forged documents were sent to customers"?  His answer was "no."  (Id. at 82:19-21).  Furthermore, he has offered no evidence that Occhifinto was in any way involved.   The sum total of Occhifinto's alleged involvement was a single conversation where Palmeroni claims to have told Occhifinto that Prindle stated that there was "something wrong with the insurance."  (Id. at 81:17-82:14).   Occhifinto's alleged response was that he (Palmeroni) should "mind his own business."  (Id. at 82:15-18).  Nothing

described by Palmeroni establishes that a bad act even occurred let alone that undermines the credibility of NVE, Occhifinto or any of NVE's other witnesses.

Palmeroni's claim that NVE entered into cash transactions in order to defraud the bankruptcy court is equally unsupported.  Regarding the allegation that certain vans were sold for cash and the cash then hidden from the creditor's committee, Palmeroni was asked:   "Did anyone at NVE ever tell you that they were not going to report this money"?  His response was: "No."  (Palmeroni Dep. Vol. II 103:6-8, 79:4-14, Samaro Cert. Ex. I).  He was then asked, Do you have any personal knowledge that this money was not accounted for properly"?  H is response was: "Not at this time."  (Id. at 103:9-11).   Similarly when asked:  "Do you have any knowledge of cash deals during the time that NVE was in bankruptcy"?  His response was:  "No direct knowledge, that's correct."  (Id at 105:9-14).

Finally, the sum total of the evidence supporting the claim that Occhifinto used NVE money to fund projects at his home was that Occhifinto was doing a great deal of construction on his homes during the bankruptcy and a "joking" conversation between Palmeroni and Occhifinto about who was paying for it.  (Id. at 105:10-110:13).  Allegedly Occhifinto showed Palmeroni some of the projects and then Palmeroni "jokingly said to him, 'all these guys that are running around NVE, you're paying them personally, right'"? (Id. at 109:5-9)  And Occhifinto's response was:  "yeah, right."  Palmeroni was then asked: "So he never admitted to you in so many words that he was having NVE pay for this work, did he"?  H is response was that he "felt the implication."  Finally, he was asked:  "Did he directly tell you that he was having NVE pay for this work"?  And his response was: "No." (Palmeroni Dep. Vol. II 109:14-22, Samaro Cert. Ex. I).

Obviously, none of the allegations of untruthfulness is sufficiently clear to justify cross examination on matters that may lead to prejudice to NVE. Thus, the Court should enter an order prohibiting Defendants from referring to any of the topics on cross-examination.

The Third Circuit has explained that "evidence may be excluded when its admission would lead to litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues. *Blancha v. Raymark Indus.*, 972 F.2d 507, 516 (3d Cir. 1992) (citing *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir.1980)). S*ee also Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 799 (3d Cir. 1992) (excluding evidence of prior settlement under Rule 403 because the evidence would have confused jury and misplaced focus on minor issue). Aside from the risk of prejudice to NVE should Defendants be permitted to use irrelevant, unsupported allegations to impugn the character of the company and its agents, allowing such evidence will require NVE to call witnesses and introduce evidence on such matters, greatly expanding the scope of the trial. To call the counterclaim issues "collateral" is to give them more credence than they deserve. They are red-herring, whole-cloth inventions designed to change the subject from what Palmeroni and Rosarbo did to whether NVE and Occhifinto are deserving of a fair trial. The tactic should not be permitted to succeed.

## CONCLUSION

For all of the foregoing reasons, the Court should preclude Defendants from offering any evidence concerning the following: (1) the criminal convictions of Occhifinto or Prindle, (2) Occhifinto having a child with Patti Cosentino; (3) Occhifinto's net worth; (4) allegations of that NVE hired illegal immigrants; (5) the fact that Palmeroni testified against NVE in 2016; (6) the suggestion that NVE marketed its products improperly; (7) the fact that members of Rosarbo's family are disabled and/or that he has taken care of them; (8) NVE and Occhifinto's former

business relationship with Jared Wheat; (9) NVE's application for a DEA license and the denial

of that application; and (8) any of the allegations in the Counterclaim.

> **PASHMAN STEIN WALDER HAYDEN**
> A Professional Corporation
> *Attorneys for Plaintiff*
> *N.V.E., Inc.*
>
> By:    /s/ Samuel J. Samaro
>        Samuel J. Samaro
>        21 Main Street – Suite 200
>        Hackensack, NJ 07601
>        ssamaro@pashmanstein.com
>        T. (201) 488-8200
>        F. (201) 488-5556

Dated: August 11, 2017