**James W. Boyan III**
Partner
jboyan@pashmanstein.com
Direct (201) 270-4935



November 9, 2021

Honorable André M. Espinosa, U.S.M.J.
Martin Luther King Jr. Federal Courthouse
50 Walnut Street
Newark, New Jersey 07101

      RE:    *N.V.E., Inc. v. Palmeroni, et al.* **- Civil Action No. 2:06-cv-05455**

Dear Judge Espinosa:

Pursuant to Your Honor's November 3, 2021 order, the parties provide the following status update. On October 20, 20201, the Court scheduled the trial for December 7, 2021. (Dkt. No. 777). On October 28, 2021, Plaintiff sent a letter to the Court requesting an adjournment of the trial date. (Dkt. No. 778). Defendants have not objected to that request. The Court has not yet ruled on NVE's request for an adjournment. In addition to NVE's adjournment request, there are several issues that need not to be decided in advance of the trial. A description of those issues and the parties' respective positions are set forth below.

**ISSUES RAISED BY NVE**

    **1.   USE OF DEFENDANT VINCENT ROSARBO'S DEPOSITION TRANSCRIPT AT TRIAL**

NVE intends to read substantial portions of Mr. Rosarbo's deposition into evidence it its direct case. On January 23, 2020, the Court held a pretrial hearing on the parties' *in limine* motions. During that hearing, the Court directed NVE to provide the deposition pages that it intends to read into evidence. (Transcript from the January 23, 2020 hearing, 46:8-23, Dkt. No. 760). On March 2, 2020, NVE filed a letter enclosing the pages from Mr. Rosarbo's deposition that it intends to use. (Dkt. No. 752). In addition, we set fort the legal and factual basis for using

Mr. Rosarbo's deposition testimony. (Id). The Court has not yet ruled on the use of Mr. Rosarbo's deposition testimony at trial. The Court's ruling on this issue will have a significant impact on NVE's trial preparation and trial strategy. Accordingly, we respectfully request a ruling on this issue in advance of the trial.

**Mr. Palmeroni's Position**

Defendant Palmeroni takes this opportunity to remind the court that he is the wholly separate defendant facing some of the same claims from plaintiff NVE and different claims from NVE then defendant Rosarbo. Mr. Rosarbo refused to answer subpoenas sent by Mr. Palmeroni's attorneys on multiple occasions over many months culminating in Judge Salas ordering Mr. Rosarbo to appear. Rosarbo has also testified against Mr. Palmeroni's interest as well as his own interest in his initial depositions. Mr. Rosarbo seemed visibly shaken at these depositions (and this was commented on by other attorneys present not representing Mr. Palmeroni). Mr. Rosarbo also requested to plead the Fifth Amendment, but after a call with judge Wettre rescinded his request. All of this seemed very odd to say the least. Only long afterwards did defendant Palmeroni find out that there had been multiple secret meetings between Mr. Occifinto president of NVE and Mr. Rosarbo, some of which took place at one of Mr. Occifinto's many homes. Defendant Palmeroni found this out in the form of a letter Mr. Rosarbo sent to court explaining extensive coercion and witness tampering by Occifinto. At a meeting at the offices of Pashmen Stein Sam Samaro refused to even talk about a request for an additional deposition of Mr. Rosarbo. Recently I learned Mr. Rosarbo has evidential proof of at least one of the meetings that has not been turned over to defendant Palmeroni. Defendant Palmeroni

2

believes he is highly prejudiced by this now discredited testimony. It is for these reasons that defendant Palmeroni moves to have Mr. Rosarbo's depositions disallowed.

**Mr. Rosarbo's Position**

Before the depositions Bob Occhinfinto contacted me requesting to speak with me stating that he wanted to talk because of things that concerned me. When I met him I was given the impression that this was a serious case and how to proceed with my deposition. I was led to believe that I was facing financial hardship and possible jail time for me and possibly my family if questions weren't answered to NVE's liking. I must say this disturbed me in many ways and that was the frame of mind that I went to the deposition with mind you without any attorney present on my behalf. When I read the deposition after it was done I don't know how many days after I realized there were certain things in there that were not true. I informed the courts and Mr. Samaro of my concerns of the meeting that I had with Mr. Occhinfinto and the answers to my deposition that were not true. I stated all this in a letter to the courts and to this day it is still being ignored so I am objecting to Mr. Samara and Pashman Stein using certain portions of my deposition to help and NVE's case. I asked for another deposition to clear up the concerns that I had and I was told no way. So as far as I'm concerned my deposition was done under extreme duress and I deserve the right to correct it.

**2. THE PROTOCOL FOR THE DIRECT EXAMINATION OF DEFENDANTS**

During the January 23, 2020 hearing, the Court asked NVE to submit a proposed protocol for the direct examination of Defendants. (Dkt. No. 760, T.48:2-5).  The Court stated that it would advise the parties of the protocol prior to the trial.  (Id. T.50:6-7). On March 2, 2020, NVE filed its proposed protocol on ECF. (Dkt. No. 754).  NVE's proposed protocol anticipates that Defendants

will prepare draft questions in advance that they intend to ask themselves during the trial, and thereafter we be given a chance to comment on the draft questions followed by Court rulings. The Court has not yet ruled on NVE's proposed protocol. The Court's ruling on this issue will have a significant impact on NVE's trial preparation.

**Mr. Palmeroni's Position**

Defendant Palmeroni would be highly prejudiced by plaintiff's counsel "prescreening" defendants cross-examination questions in advance. Is the plaintiff willing to do the same? That is, give the defendant all of his questions in advance to be prescreened by defendant Palmeroni? Obviously the plaintiff wants every advantage, but one only need to watch the video of the Horwitz testimony to see why plaintiff's insists on this. Mr. Horwitz was caught in several lies and Mr. Samaro scrambled to talk over and interrupt defendants' questioning to try and remedy their (plaintiff and witness Horwitz) ill preparation. Obviously questioning a witness leads to different places and is it incumbent on the defense to stop in between every question and ask the court if he can ask a different question? This would be extremely unwieldy. Defendant requests that he be allowed to engage a paralegal or lawyer to question defendant but not represent defendant. Defendant has not chosen to defend himself; the defendant has been bankrupted by this case and is forced to defend himself. Defendant Palmeroni should not have any less civil and constitutional rights because he is defending himself.

**Mr. Rosarbo's Position**

Why would I give them the questions in advance and have them think about it and then give me an answer. To me that is an unfair question to ask and it hurts the way I will proceed to

defend my case. If they know the questions in advance they will definitely be prepared to answer accordingly.

### 3. **EVIDENTIARY RULINGS ON DE *BENE ESSE* DEPOSITIONS**

On April 29, 2020, NVE filed a motion to take *de bene esse* depositions of two witnesses, Richard Horowitz and Carlos Bengoa. (Dkt. No. 761). On May 13, 2020, the Court granted that motion. (Dkt. No. 764). The parties subsequently conducted the *de bene esse* depositions. During the depositions, Defendants asked many inappropriate or otherwise objectionable questions and repeatedly inquired about issues that were not the proper subject of cross-examination.

On July 23, 2020, NVE filed a letter concerning the *de bene esse* depositions. (Docket No. 768). The letter sought guidance from the Court on how NVE should seek a ruling on which sections of the deposition should be excluded from the video recordings that will be shown to the jury. The Court has not yet provided any guidance on how NVE should seek those evidentiary rulings. We respectfully request guidance from the Court on this issue in advance of the trial. After the Court rules on which sections of the depositions will be excluded, NVE will need to have the video recordings professionally edited so that they can be played for the jury.

**Mr. Palmeroni's Position**

Defendant Palmeroni denies plaintiffs accusation that witnesses were questioned improperly during the de bene esse depositions. Mr. Samaro was allowed to do his questioning uninterrupted, but did not accord defendant Palmeroni the same courtesy. If Mr. Samaro had an objection to any question he simply had to note it for the record and later ask to have it edited out if the court so ruled. (This is the manner in which he "sold" the de bene esse depositions to the court over the objections of defendant before hand) Instead he came in with the obvious

defend my case. If they know the questions in advance they will definitely be prepared to answer accordingly.

### 3. **EVIDENTIARY RULINGS ON DE *BENE ESSE* DEPOSITIONS**

On April 29, 2020, NVE filed a motion to take *de bene esse* depositions of two witnesses, Richard Horowitz and Carlos Bengoa. (Dkt. No. 761). On May 13, 2020, the Court granted that motion. (Dkt. No. 764). The parties subsequently conducted the *de bene esse* depositions. During the depositions, Defendants asked many inappropriate or otherwise objectionable questions and repeatedly inquired about issues that were not the proper subject of cross-examination.

On July 23, 2020, NVE filed a letter concerning the *de bene esse* depositions. (Docket No. 768). The letter sought guidance from the Court on how NVE should seek a ruling on which sections of the deposition should be excluded from the video recordings that will be shown to the jury. The Court has not yet provided any guidance on how NVE should seek those evidentiary rulings. We respectfully request guidance from the Court on this issue in advance of the trial. After the Court rules on which sections of the depositions will be excluded, NVE will need to have the video recordings professionally edited so that they can be played for the jury.

**Mr. Palmeroni's Position**

Defendant Palmeroni denies plaintiffs accusation that witnesses were questioned improperly during the de bene esse depositions. Mr. Samaro was allowed to do his questioning uninterrupted, but did not accord defendant Palmeroni the same courtesy. If Mr. Samaro had an objection to any question he simply had to note it for the record and later ask to have it edited out if the court so ruled. (This is the manner in which he "sold" the de bene esse depositions to the court over the objections of defendant before hand) Instead he came in with the obvious

strategy of consistently interrupting in a disruptive manner, most of the time to telegraph to the defendant how to answer. Would this be allowed in front of a judge and jury? Defendant Horwitz's testimony was especially a disaster for plaintiff's case and the jury should be able to see the attempted cover-up with minimal edits. Is Mr. Samaro allowed to bully defendant simply because he has a law degree? Mr. Samaro has been admonished by judge Arleo to lower his voice to the judge, and was implored by 2 different attorneys from 2 different law firms years apart to stop screaming in depositions at defendant. The judge also found misconduct in his actions and granted spoilation in this case. It's Mr. Samaro, the licensed attorney, who is acting improperly.

### Mr. Rosarbo's Position

Once again Mr. Samara only wants portions of Mr. Horowitz and Mr Bengoa depositions to be stated in front of the jury which gives us an incomplete story of what is actually going on. Mr. Horowitz and Mr Bengoa objected to stand trial because of the pandemic. I have no problem with that and that's why these depositions were taken. Now we are past the pandemic and they're still not going to come to the trial from what I gather and they only want to use portions of the deposition which is an incomplete story. These two witnesses bought a lot of the products during its time and made a lot of money. They were friends of Mr. Rosarbo Mr. Palmeroni and business was good. They are being forced by Mr. Occhinfinto to bear witness against us or else they would have been sued also. I've asked both parties for a settlement figure and to this day none is given. Which leads me to believe that there was none included except bearing witness against Mr. Rosarbo and Mr. Palmeroni. I believe their testimony should be thrown out completely.

4. **<u>MOTION TO VACATE ORDER ON MOTION FOR SANCTIONS</u>**

On several occasions, NVE has moved to vacate an order imposing sanctions on the Company for spoliation of evidence, including a negative inference instruction at trial. (Dkt. No. 673, 731). On January 27, 2020, the Court issued an Order reserving on NVE's motion to vacate until the close of the presentation of evidence at trial. (Dkt. No. 750). We recently learned that NVE's main witness on the spoliation issue, Erling Jensen, suffered a very serious stroke on December 12, 2020. As a result, he will not be able to participate in the trial in any way. Mr. Jensen was in charge of gathering documents for NVE during discovery and he was our witness in the hearing on May 26, 2011 when Judge Salas took testimony on how the documents at issue became inaccessible. In light of Mr. Jensen's inability to participate in the trial, NVE intends to renew its motion before the trial starts and in the event that the motion is unsuccessful, will need time to revise its trial strategy and perhaps the Pretrial Order in order to address the issues that Mr. Jensen was prepared to address on the company's behalf.

**Mr. Palmeroni's Position**

The Hon. Judge Salas entered an opinion on September 21, 2011. In this ruling judge Salas said in part "as a result Mr. Palmeroni is prejudiced in his efforts to both defend the claims against him and prosecute his counterclaims". Plaintiff filed several appeals which were denied including an interlocutory appeal. Yet somehow they are continually allowed even 10 years later to relitigate this. The dismissal of Mr. Palmeroni's counter claims notwithstanding (which Mr. Palmeroni feels was done in error as well as with ineffective counsel) Mr. Palmeroni should not be denied the right to inform the jury of the mountains of evidence that were destroyed including computer records, backup paper records, in 2 different locations, email records, and order records in a separate sales system all of which were redundant and all of which were somehow

7

destroyed. There was a years long cover-up involved and only a thorough investigation and then a motion for spoliation uncovered the ruse. Of course this came years after Mr. Palmeroni had filed his defenses and counterclaims, and it only follows that NVE decided destroying the documents were their only options. This destruction lends credence to Mr. Palmeroni's theory of the case which was in part retaliation and in part fear from Bob Occifinto owner of NVE on getting his 3rd felony if the records proved Mr. Palmeroni's allegations. This is a defense and an explanation to the jury why NVE would bring this suit, not a counterclaim. NVE is using Mr. Jensen's supposed inability to testify to get yet another bite at this apple, but Mr. Jensen has already testified about the destruction and an adverse inference was granted Mr. Palmeroni. Mr. Palmeroni begs the court to administer this adverse inference to the jury.

**Mr. Rosarbo's Position**

Another judge has already ruled on this situation in Mr Palmeroni favor. It's a fact that records for NVE 's Co. we're misplace , lost or destroyed. I don't know why they are still asking for this motion when it's already been ruled on by another judge. So I strongly object to Mr Samaro's motion on the spoliation issue.

**Issues Raised By Palmeroni**

1.    Defendant Palmeroni is concerned with the continual lumping of him together with Mr. Rosarbo as if their cases are the same or they are working together on this case. Mr. Rosarbo has testified against Mr. Palmeroni's interest and refused many attempts to be deposed by Mr. Palmeroni only agreeing to show up at plaintiff's counsel after being ordered by the judge. Defendant Palmeroni is concerned that he will be prejudiced by the jury's misunderstanding and

8

even such things as sitting together at a defense table sends the wrong message. Cross-examination by defendant Palmeroni of Mr. Rosarbo may be unsettling to Mr. Rosarbo.

2. Defendant Palmeroni requests input on the *voir dire* questions administered to the jury. Mr. Palmeroni is not a trained attorney and only recently learned from an outside source that he is allowed to have input on this. If there's anything else that Mr. Palmeroni can have input on prevent prejudice of defendant Palmeroni's rights he requests the court Inform him of that.

3. Defendant Palmeroni feels he is prejudiced by finding out of Mr. Jensen's condition at this late date. Mr. Jensen has testified on all manner of things that don't concern the spoliation ruling mentioned above. Mr. Palmeroni had planned a thorough cross-examination of Mr. Jensen. Mr. Jensen has been at every deposition and represented NVE at settlement conferences. He has been at Mr. Samaro side throughout this case. There have been no less than 5 conferences scheduled since Mr. Jensen supposedly had his stroke and yet we are just finding out on the eve of trial. This substantially affects the defendant's ability to rejigger his defense in such short order. I believe this information was held from the defendant to once again try to eliminate the adverse inference ruling at the 11th hour. Defendant also requests that proof from a medical doctor be submitted if Mr. Jensen is unable to attend the trial.

**Issue Raised by Mr. Rosarbo**

I am also requesting an adjournment of this case for at least 60 days until several issues that need to be decided are taken care of and I have concerns of how Mr. Samara wants to proceed.

Respectfully submitted,

James W. Boyan III

cc: Jesus Palmeroni and Vincent Rosarbo (via ECF and e-mail)