11/7/2021

VIA ELECTRONIC FILING

Hon. Madeleine Cox Arleo, U. S. D. J.
United States District Court
Martin Luther King Jr. federal courthouse
50 Walnut St.
Newark, NJ 07101

RE: NVE, Inc. V Palmeroni et al
civil action no. 2:06-cv-05455

**dear Judge Arleo**

    this letter is in response to plaintiff's attorney letter dated October 28, 2021 document number 778. I apologize in advance for the expected length of this letter as I know the court's time is very valuable. I do not disagree with Mr. Samaro's request for a 60 day adjournment. That being said Mr. Samaro has once again played fast and loose with the truth and I must defend my rights.

    Mr. Samaro's news about Mr. Jensen was unfortunate. I am wondering why defendant is being informed almost a full year after Mr. Jensen's stroke. Mr. Jensen has been NVE's representative throughout this case and has even shown up in Mr. Occifinto's place for settlement conferences. He has been present at every deposition throughout this case, sitting at Sam Samaro's side. We have had no less than 5 conferences scheduled with the judge in the last year and it seems very strange that Mr. Samaro would state that he "recently" found out about Mr. Jensen's stroke and uses nebulous phrases like "I am *told* there is almost no chance that he (Mr. Jensen) will recover sufficiently to participate in this trial". Learning about it at this late date does put defendant's case in more than a bit of a quandary. Mr. Jensen had testified on all matter of things in addition to spoliation (which I will address later on). NVE chose to make him their "front man" throughout this case and defendant Palmeroni had planned on an extremely thorough cross-examination of Mr. Jensen. As an unexperienced pro se defendant I am at a loss to figure out how to proceed in defendant's best interest and will use any adjournment to re-strategize.

    As far as spoliation NVE has used Mr. Jensen's alleged condition as yet another chance to take what at this point looks to be a 6th bite of the apple as far spoliation. NVE destroyed Mountains of evidence and then attempted to cover it up for many months. Only after defendant Palmeroni filed a thorough motion for spoliation did this ruse begin to unravel. In way of a little case history in 2005, one day after Mr. Palmeroni was terminated at NVE, defendant Palmeroni sent a letter to NVE's company legal counsel David Caldwell as well as president and owner

Robert Occifinto. This letter outlined defendant Palmeroni's accusations against Mr. Occifinto and NVE which was at that time in bankruptcy protection. This letter included accusations of bankruptcy fraud, insurance fraud, and sexual harassment as well as other misconduct. Mr. Palmeroni further outlined these offenses in a suit against Mr. Occifinto and NVE in state court in New Jersey, and later agreed to have it listed as a countersuit of this action. Defendant Palmeroni has maintained from the very beginning of this suit that it was in retaliation for Mr. Palmeroni's accusations mentioned above. The Hon. Judge Esther Salas found in part that the destruction of this multitude of documents, computer records and even emails impeded the defenses ability to both defend the claims against defendant as well as prove defendants countersuit against NVE and Mr. Occifinto. NVE and their attorneys (who admitted to misconduct in the spoliation motion) appealed judge Salas's decision and lost. They then filed an Interloctery appeal which they lost also. Yet somehow they are allowed to continually relitigate this matter, and continue to take bites of this apple. This has wasted the time of the court and the very limited budget of the defendant (which was part of the plan all along). At an in limine hearing in January 2020 they were allowed to take yet another bite of this apple. NVE was once again allowed to relitigate something that has already been decided in the past while defendant had licensed legal counsel defending him. Defendant Palmeroni feels he was not given sufficient input at this hearing nor did he think he would have to somehow be prepared to relitigate this once again. Mr. Palmeroni is not an attorney and not skilled as an attorney and yet NVE is allowed to bring this up and relitigate this issue. One point the plaintiff and the court seem to be stuck on is that Mr. Palmeroni's countersuit was thrown out. Notwithstanding the fact that Mr. Palmeroni believes that this was done in error, as well as the fact that Mr. Palmeroni had ineffective assistance of counsel who was very ill and soon after had a heart attack at one of the hearings and passed away , it does not change defendant Palmeroni's right to defend himself with his theory of the case which includes retaliation by Mr. Occifinto and NVE, from the day Mr. Occifinto and NVE received the letter from Mr. Palmeroni's counsel in 2005 mentioned above. Mr. Palmeroni's thoroughly prejudiced by the fact that the court seems unwilling to follow judge Salas is order for an adverse inference. I believe although I'm not an attorney that an adverse inference is also given to punish misconduct and there was plenty of it in this case by plaintiff. NVE's extended cover-up of this matter cost defendant Palmeroni tens of thousands of dollars to uncover precipitating his inability to further pay his attorneys at the time after this motion was filed. NVE was allowed to strategize on Mr. Palmeroni's counter suit as well as his defense for many years, and when they realized there was no alternative but to destroy all the documents mentioned above that's what they did. Whether or not there's a countersuit has no bearing on Mr. Palmeroni being able to defend himself and show the jury why this unscrupulous former employer would falsely accuse him of this action which we find ourselves in. Mr. Occifinto is and was a two-time felon who pleaded guilty to money laundering in what was at the time the biggest methamphetamine conspiracy to date. Being found guilty of any of the things that defendant Palmeroni accused him of put him in danger of a 3rd felony. Although the judge has ruled that the jury may be prejudiced by this information, the judge and the court can still see the possibility of retaliation. Furthermore Mr. Palmeroni will be thoroughly prejudiced if he is not allowed to show the jury that the documents NVE is using in their case are "cherry picked".

Obviously Mr. Palmeroni now cannot show documents that can counter the documents NVE has hand-picked. Defendant Palmeroni has full right to show the jury the extent of the destruction of the computer records, documents, ordering system and email that were all in NVE's control for many years. Furthermore with all respect we must implore the court to follow judge Salas's directive of an adverse inference in this case. Unfortunately Your Honor this is just another case of Mr. Samaro and plaintiff's counsel trying to "work" the system. Even if Mr. Jensen is indeed unable to testify (and plaintiff's counsel has supplied no supporting documentation of Mr. Jensen's condition) plaintiff's counsel is playing into the their formally stated desire to (streamline this case) and transparently asking the court to do away with the "adverse inference" since Mr. Jensen supposedly will not be able to testify anyway in their estimation. Mr. Jensen is not required to testify on the destruction of documents as he has already done that and an adverse inference was granted to defendant Palmeroni. The court simply needs to administer the adverse inference to the jury.

As far as the de bene esse depositions Mr. Samaro speaks to in his letter… Mr. Horwitz is deposition was without a doubt a sight to behold. Your Honor, I'm sure that in your long career you have seen how uncomfortable a witness can get when they are caught in a lie. This was certainly the case with Mr. Horwitz. After an uninterrupted series of questions by Mr. Samaro it was my turn. And despite the fact that I had not objected or interrupted Mr. Samaro at any time through Mr. Horwitz's obviously badly rehearsed testimony, Mr. Samaro did not accord me the same courtesy. These were not simply objections for the record Your Honor. They were loud unceasing condescending arguments. I believe it was a blatant attempt to disrupt what the jury would see and how they would come to understand the testimony that was replete with inconsistencies and downright fabrications. Mr. Horwitz was neither harassed nor was he asked irrelevant questions. Quite the contrary. Furthermore, Your Honor, in plaintiff's motion to allow the de bene esse depositions they said, in part "allowing these de bene esse essay depositions will also help streamline the trial because the court will be able to rule out any objections prior to trial". If somehow as an inexperienced pro se defendant I had strayed somewhere the court thought was inadmissible, Mr. Samaro needed only to object and later wait for the court to rule on the objection. Instead Your Honor, it seems that the plaintiff would like to have their cake and eat it too. They want opportunities to slice and dice this testimony and what the jury will see, yet they also wanted to consistently interrupt the flow of the defendants questioning of Mr. Horwitz, who I my remind the court was once a defendant in this case and therefore would be thought to have quite a bit to say that would be relevant. Furthermore Mr. Horwitz was subpoenaed by 2 separate law firms representing me years apart and shows not to respond so this was defendant Palmeroni's 1st chance to question Mr. Horwitz . Mr. Horwitz's testimony was so bad for the plaintiff that it alone should show the defendant has no liability in this part of the case. It was obvious that Mr. Samaro was not only objecting and interrupting constantly but using his objections/interruptions to telegraph to the witness how he should answer and/or correct his answers. Mr. Horwitz also admitted being paid $3 million last year alone by NVE. So it certainly would behoove him to please Mr. Occifinto and NVE with his testimony. Furthermore it was obvious to anyone watching that Mr. Horwitz's lawyer was signaling him just off-camera and at least on one occasion changed his answer due to his lawyers prodding. Is this something that

would've transpired in front of a judge and jury? To watch his testimony in its entirety is to watch a mockery of what the judicial system is supposed to be. And Mr. Samaro is an officer of the court that knows exactly what a de bene esse deposition is supposed to be and he used his knowledge to circumvent and prejudice the defendant's civil rights. By him constantly speaking over me, Mr. Samaro made the transcript unreadable. The video of these depositions in their entirety show clearly what Mr. Samaro was trying to do. Mr. Samaro is counting on the court deeming it unnecessary to watch the videos in their entirety.

      Mr. Samaro's own exhibits were used to impeach the witness's testimony to the point that Mr. Horwitz was either obviously lying or suddenly suffering from mental illness of some sort. Yes, Mr. Horwitz may have been uncomfortable but anybody lying under oath should be uncomfortable. During this very deposition Mr. Horwitz admitted to being greedy and not wanting to lose NVE's accounts so there was an obvious method to his madness. Mr. Horwitz called Mr. Occifinto, president of NVE "volatile". This is not surprising considering others of testified in this case that Mr. Occifinto brags about murdering someone in the Netherlands in the 1970s. And when questions did stray to a place that possibly might have had relevance and question that was only because Mr. Horwitz brought up issues to cover up his many inconsistencies. I'm not an attorney but this was textbook perjury. It's plaintiff's attorneys or any other attorneys duty to advocate for his clients, not to win at all costs.

      It should be noted among other egregious, shall we say inconsistencies, Mr. Samaro questioned Mr. Horwitz pertaining to a check dated in 2006 after Mr. Palmeroni left NVE. Mr. Horwitz's testimony was that it was a final payment to Mr. Palmeroni and he was glad to stop doing business with Mr. Palmeroni, even implying and then later saying that he (Mr. Horwitz) was somehow extorted against his will and better judgment to pay defendant Palmeroni's "ill-gotten gains." Unfortunate for plaintiff Mr. Palmeroni held in his hands at least a dozen emails from Mr. Horwitz dating to 2009. One of them which said…

      **Hi Joe, great to be with you yesterday, happy to get involved in such an exciting project! As per our conversation with David cade I need to lay out accounts and itineraries. Please put together a list of accounts by early next week so Jerry and I can spitted to Dave. As Jerry discuss with you global marketing will be paid a total commission a 5% on all your accounts signed Richard Horwitz, profit motivators.**

      The above email was sent to Mr. Palmeroni a full 3 years later after the check dated 2006 that Mr. Samaro submitted in evidence and mentioned above and a full 4 years after Mr. Palmeroni left NVE. It seems Mr. Horwitz was getting extorted all the way to the bank.

      It's this sort testimony that Mr. Samaro was trying to cover up with his pick and choose commandment to this court.

      Your Honor would really be doing the plaintiff a favor by eliminating completely this testimony as Mr. Horwitz was obviously vacillating between the worry of losing his 3 million a year from NVE, or testifying truthfully that Mr. Horwitz would constantly beg, cajole, manipulate, Mr. Palmeroni to work with him and stay at NVE because of the fear that NVE would fall apart

when Mr. Palmeroni left. Even to the point of pursuing Mr. Palmeroni and working with him years after he left NVE and flying him around at Mr. Horwitz's company's expense.

All of this may be moot, Your Honor, because defendant Palmeroni intends to file a motion for summary judgment due to the new evidence (from the testimony mentioned above) and judge Arleo's own rulings earlier in this case. Judge Arleo earlier ruled in a summary judgment between then defendant Ronald Sumicek in plaintiff NVE that the money given to the brokers was the brokers and not NVE's and therefore NVE could not sue claiming that they had suffered any damage when brokers paid Mr. Palmeroni. Mr. Horwitz's testimony included Mr. Horwitz testifying that he never was given any accounts by Mr. Palmeroni improperly. Therefore the money Mr. Palmeroni received from Mr. Horwitz and his companies were no longer NVE's. NVE's own actions show that their (NVE's) earlier contention that Palmeroni gave some of these brokers accounts they were not deserving of in order to get a kickback falls flat on its face considering Mr. Horwitz testified that he still handles the same accounts for NVE to this day 15 years later.

Defendant Palmeroni will also move to have former defendant Carlos Bangoa's testimony suppressed due to the fact that Mr. Bangoa refused to answer questions on his settlement with NVE as well as the amount of business he does with NVE etc. Not to mention several other valid questions. The jury deserves to know what motivates these people to testify as they do. Mr. Bangoa was rude and disrespectful and had an obvious bone to pick with defendant Palmeroni due to Mr. Palmeroni being forced to confront Mr. Bangoa due to immoral behavior by Mr. Bangoa and his soon to be son-in-law that took place in front of Mr. Palmeroni and got back to Mr. Bangoa's daughter. It's unfortunate that something with this salacious content would have to be brought up but otherwise defendant Palmeroni suffer prejudice once again. These questions needed to be asked because the jury has a right to know what would motivate these people to lie, which they are.

If the court chooses in its wisdom to not suppress the testimony Bangoa and Mr. Horwitz, Mr. Palmeroni would beg the court to have it admitted in its entirety. The defendant is prejudiced if the jury is not able to see the obvious motivations of Mr. Horwitz and Mr. Bangoa. Furthermore impeachment evidence (for the documents and emails) will have to be submitted by defendant Palmeroni as mentioned above to impeach Mr. Horwitz's testimony.

As far as plaintiffs attorney Samaro requesting that the court and its plaintiffs attorney somehow prescreen the questions defendant Palmeroni will ask on cross-examination is a blatant attempt to prepare his clients before hand. As described above Mr. Samaro's own exhibits were used to impeach Mr. Horwitz. Defendant is not responsible for plaintiffs attorney sloppy preparation and has no duty to "read him in" on our questioning before hand. Furthermore cross-examination often goes to places not quite thought yet depending on the person who's testifying's answers. Would Defendant Palmeroni have to stop mid-testimony to asked permission every time he changes his mind on a possible question? Defendant Palmeroni's highly prejudiced by the suggestion if it's allowed to go forward. Plaintiff has no right to censor defendants questions in advance. Furthermore in our last meeting the court asked Mr. Samaro

how he thought we should proceed with Mr. Palmeroni questioning himself. Defendant Palmeroni is highly prejudiced by what he sees as the court asking his adversary how to proceed with the defendant questioning himself etc. defendant Palmeroni was allowed no input on the subject. Defendant Palmeroni now suggests a paralegal or attorney of his choosing asks his questions so as to have the jury get a full picture in a normal way. The paralegal, or licensed attorney would only be responsible for asking questions, not directly represent Mr. Palmeroni as no attorney would take this case at this point and without proper payment as Mr. Palmeroni is nearly bankrupt.

      Defendant Palmeroni feels it's important to dispel the notion that he is not respectful of this courts directions or time. Mr. Palmeroni is the only person presently involved in the case whether they be a defendant, attorney or part of the court that has been at every single one of the court appearances, phone calls, depositions, settlement conferences etc. Growing up on military bases and coming from a highly regimented military family background I have been taught to respect authority, and I have done it at every point in this case. It is Mr. Samaro who has been admonished by judge Arleo to lower his voice to the judge, who has been asked by 2 separate attorneys from 2 separate law firms defending Mr. Palmeroni to stop screaming and depositions, and has admitted to misconduct in spoliation hearings. The constant drumbeat by Mr. Samaro that somehow defendant Palmeroni is the dishonest one or should be accorded less rights because he doesn't have a law degree just doesn't hold water

**Respectfully submitted,**
**Joe Palmeroni**
**pro se litigant**
**310.910.1563**

VIA ELECTRONIC FILING

Hon. Madeleine Cox Arleo, U. S. D. J.